## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MATTHEW RICO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LORDSTOWN MOTORS CORP., STEPHEN S. BURNS, RICH SCHMIDT, and JULIO RODRIGUEZ, <br><br> Defendants. | Case No.: 4:21-cv-00616-PAG <br><br> Chief Judge Patricia A. Gaughan <br><br> **CLASS ACTION** <br><br> **Oral Argument Requested** |
| RAYMOND ROMANO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LORDSTOWN MOTORS CORPORATION, STEPHEN S. BURNS, DAVID T. HAMAMOTO, MARK A. WALSH, ANDREW C. RICHARDSON, STEVEN R. HASH, and JUDITH A. HANNAWAY, <br><br> Defendants. | Case No.: 4:21-cv-00994-JRA <br><br> Judge John R. Adams <br><br> **CLASS ACTION** |
| FNY MANAGED ACCOUNTS LLC, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LORDSTOWN MOTORS CORP., STEPHEN S. BURNS, RICH SCHMIDT, JULIO RODRIGUEZ, SHANE BROWN and DARREN POST, <br><br> Defendants. | Case No.: 4:21-cv-01021-BYP <br><br> Judge Benita Y. Pearson <br><br> **CLASS ACTION** |

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DANIEL TAVARES AND GLOBESTAR SYSTEMS INC. TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFFS; AND (3) APPROVE LEAD PLAINTIFFS' SELECTION OF COUNSEL**

Movants Daniel Tavares and Globestar Systems Inc.[1] ("Movants") respectfully submit this memorandum of points and authorities in support of their motion for an Order, pursuant to Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) consolidating the related actions as they involve common questions of law and fact and consolidation would promote judicial economy;

(b) appointing Movants as Lead Plaintiffs for the class of all persons or entities that: (1) purchased the securities of Lordstown Motors Corporation ("Lordstown") f/k/a DiamondPeak Holdings Corp. ("DiamondPeak" and, collectively with "Lordstown," the "Company") between August 3, 2020 and March 24, 2021, both dates inclusive; and/or (2) purchased and held DiamondPeak common stock as of September 21, 2020 (the "Record Date"), and had the right to vote on the merger between DiamondPeak and Lordstown pursuant to the Proxy Statement dated October 8, 2020 (the "Proxy Statement")[2]; and

---

[1] Daniel Tavares is the Chairman of the Board of Globestar Systems Inc. *See* Rosenthal Declaration, Ex. 2.

[2] The actions *Rico v. Lordstown Motors Corp., et al.*, 4:21-cv-00616-PAG ("*Rico* Action") and *Brury v. Lordstown Motors Corp., et al.*, 4:21-cv-00760-BYP ("*Brury* Action") have a class period of between August 3, 2020 and March 17, 2021. The action *Palumbo v. Lordstown Motors Corp., et al.*, 4:21-cv-00633-CAB ("*Palumbo* Action") has a class period of between October 26, 2020 and March 17, 2021. The action *Zuod v. Lordstown Motors Corp., et al.*, 4:21-cv-00720-BYP ("*Zuod* Action") and *Romano v. Lordstown Motors Corp., et al.*, 4:21-cv-00994-JRA ("*Romano* Action") have a class period of between August 3, 2020 and March 24, 2021 and includes the class of DiamondPeak shareholders who were eligible to vote on the merger between DiamondPeak and Lordstown. The action *FNY Managed Accounts LLC v. Lordstown Motors Corp., et al.*, Case No. 4:21-cv-01021-BYP ("*FNY* Action") has a class period of between August 3, 2020 and March 24, 2021. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y.

(c)      approving Movants' selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class and Cohen Rosenthal & Kramer LLP ("Cohen Rosenthal") as Liaison Counsel.

## INTRODUCTION AND BACKGROUND

The *Rico* Action was commenced on March 18, 2021 against Lordstown, Stephen S. Burns ("Burns"), Rich Schmidt ('Schmidt"), and Julio Rodriguez ("Rodriguez") for violations under the Exchange Act. That same day, an early notice was published pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Rosenthal Declaration, Ex. 1.

The related *Palumbo* Action was filed on March 19, 2021 against Lordstown and Burns. The related *Zuod* Action was filed on April 2, 2021 against Lordstown, Burns, Rodriguez, Schmidt and Michael Fabian. The related *Brury* Action was filed on April 8, 2021 against Lordstown, Burns, Schmidt, and Rodriguez. The *Palumbo*, *Zuod*, and *Brury* Actions allege substantially similar claims under the Exchange Act. On April 13, 2021, the *Rico*, *Palumbo*, *Zuod*, and *Brury* Actions were consolidated. (Dkt. No. 9).

On May 13, 2021, the *Romano* Action was filed against Lordstown, Burns, David T. Hamamoto, Mark A. Walsh, Andrew C. Richardson, Steven R. Hash, and Judith A. Hannaway. The *Romano* Action was assigned to Judge John R. Adams. The *Romano* Action alleges substantially similar claims under the Exchange Act and adds a § 14(a) claim under the Exchange Act.

On May 14, 2021, the related *FNY* Action was filed against Lordstown, Burns, Schmidt, Rodriguez, Shane Brown and Darren Post. The *FNY* Action was assigned to Judge Benita Y.

2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

Pearson. The *FNY* Action alleges substantially similar claims under the Exchange Act and adds a § 20A claim under the Exchange Act.

DiamondPeak was a special purpose acquisition company ("SPAC")—also known as a "blank check" company—formed for the sole purpose of acquiring an existing business.

Lordstown is an electric vehicle startup company. In June 2020, the Company revealed its full size, all-electric pickup truck—dubbed "Endurance"—in a splashy ceremony that received national media attention. During the event, Lordstown's CEO, Defendant Burns, heavily promoted the Endurance's growth prospects, declaring that "we have our whole year, our first year of production already pre-sold."

On August 3, 2020, in a joint press release, DiamondPeak and Lordstown announced that they entered into a definitive merger agreement, through which Lordstown would be the surviving company and become publicly traded under the ticker symbol "RIDE" (the "Merger"). The combination was subject to a majority vote of DiamondPeak shareholders. The joint press release trumpeted a purported 27,000 pre-orders for the Endurance, representing $1.4 billion in potential revenue, which Defendants touted as evidence of the significant demand for the electric truck by fleet customers. The companies also declared that the Endurance was on track for commercial production in the second half of 2021.

On October 8, 2020, DiamondPeak and Lordstown issued the Proxy Statement soliciting shareholders' approval for the Merger, which was filed with the SEC on Schedule 14A. The Proxy Statement repeated Defendants' claims that Lordstown had significant demand for its vehicles and already had received 38,000 pre-orders, and that these pre-orders came primarily from fleet purchasers. In addition, the Proxy Statement touted Lordstown's ability to meet its lofty commercial production and sales milestones.

4

Defendants disseminated the Proxy Statement to DiamondPeak shareholders on October 8, 2020, and recommended they approve the Merger at an anticipated shareholder vote on October 22, 2020. The Merger was approved by a majority of DiamondPeak shareholders based on the representations in the Proxy Statement and closed on October 23, 2020.

Lordstown shares began trading on the NASDAQ on October 26, 2020, closing at a price of $18.97 per share. That same day, Defendant Burns specifically cited the 40,000 pre-order figure as "pent-up demand" for the Endurance and emphasized that "I don't think we've even scratched the surface."

By January 2021, the Company's announced that pre-orders for the Endurance had soared to 100,000, which Defendants hailed as "unprecedented in automotive history" and put Lordstown in a position to "revolutionize the pickup truck industry." In a February 23, 2021 interview with Yahoo! Finance, Defendant Burns reaffirmed the 100,000 pre-order figure and emphasized that Lordstown had "pre-sold 100,000 of these vehicles to various fleets across America— so really a big appetite." Defendants continued to tout the strong demand for the Endurance and the Company's growth prospects throughout the Class Period, consistently pointing to Lordstown's purported book of 100,000 pre-orders for the Endurance.

The complaints allege that during the Class Period Defendants made false and misleading statements and/or failed to disclose that: (1) Lordstown never had firm commitments, much less legally binding contracts, for any of the "pre-orders" touted when the reverse merger was announced on August 3, 2020; (2) many of the purported pre-order customers touted throughout the Class Period were sham operations that were incapable of making purchases of any sort; (3) Lordstown had paid consultants to solicit pre-orders from entities that were either unable and/or unwilling to make any actual purchases; (4) the Company faced significant production obstacles and, moreover, had not yet completed testing

and validation required to meet federal safety standards; (5) Lordstown did not actually have any proprietary software or battery configuration; (6) Defendant Burns had been thrown out of Workhorse Group, another electric vehicle manufacturer, for misconduct and failed management; (7) while the price of Lordstown's common stock was artificially inflated, Company insiders unloaded hundreds of thousands of shares of Lordstown common stock into the secondary market; and (8) as a result of the foregoing, defendants' positive statements during the Class Period about the Company's business metrics and financial prospects were false and misleading and/or lacked a reasonable basis.

The truth began to emerge on February 12, 2021, less than four months after the business combination closed. Morgan Stanley analyst Adam Jonas initiated coverage on Lordstown and publicly questioned Defendants' statements concerning the commercial viability of hub motor technology. Specifically, Jonas remarked that Lordstown's "radical" new hub motor technology "has never been commercialized" and "following a series of channel checks on the propulsion tech, we believe investors would be exposed to significantly elevated execution risk." Jonas assigned Lordstown an overweight rating with a price target of $18. On this news, the price of Lordstown's common stock decreased 13.34% per share, or $3.84, from $30.75 on February 11, 2021 to close at $26.91 on February 12, 2021.

On March 12, 2021, the investment research firm Hindenburg Research issued a scathing investigative report (the "Hindenburg Report") titled, "The Lordstown Motors Mirage: Fake Orders, Undisclosed Production Hurdles, and a Prototype Inferno." Based on extensive research, including "conversations with former employees, business partners and an extensive document review," the Hindenburg Report revealed that Lordstown "is an electric vehicle SPAC with no revenue and no sellable product" that "misled investors on both its demand and production capabilities." The Hindenburg Report concluded that Lordstown's

6

book of 100,000 pre-orders for its proposed EV truck "are largely fictitious and used as a prop to raise capital and confer legitimacy." Additionally, the Hindenburg Report estimated that the Endurance was in fact three to four years away from production, citing as evidence an interview with a former Lordstown employee familiar with the production of the Endurance who explained that the Company had built fewer than 10 prototypes to date and had not completed any of the required testing and validation of the prototypes. On this news, Lordstown's share price declined $2.93 per share, or 17%, falling from $17.71 per share on March 11, 2021 to $14.78 per share on March 12, 2021.

Then, on March 17, 2021, during an earnings call with investors after market close, the Company's CEO disclosed that Lordstown was under investigation by the SEC, and that Lordstown's board of directors had formed a special committee to conduct an internal inquiry. On this news, Lordstown's share price declined $2.08 per share, or nearly 14%, falling from a close price of $15.09 per share on March 17, 2021 to a close of just $13.01 per share on March 18, 2021.

Finally, on March 24, 2021, Hindenburg Research published additional pictures of an Endurance truck after it broke down and had to be loaded onto a tow truck during the filming of a commercial that had aired just days prior to the Merger. In response to this revelation, Lordstown's stock price fell another $1.21 per share, or more than 9%, closing at $11.38 per share on March 24, 2021, 40% the closing price of Lordstown stock on its first day trading on the NASDAQ on October 26, 2020.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Movants and other Class members have suffered significant losses and damages.

7

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

All of the above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

### II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

8

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movants satisfy all three of these criteria, and thus are entitled to the presumption of being the "most adequate plaintiff" for the Class.

## A. Movants Are Willing to Serve as Class Representatives

Movants have filed herewith a PSLRA certification attesting that they are willing to serve as representatives of the class and remain willing to provide testimony at deposition and trial, if necessary. *See* Rosenthal Decl., Ex. 2. Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs for the Class.

## B. Movants Have the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that …has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA does not specify how to decide which plaintiff group has the largest financial interest in the relief sought, courts in the Sixth Circuit have determined that the plaintiff with the largest losses has the largest financial interest. *See St. Clair Cty. Employees' Ret. System v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, *3-5 (M.D. Tenn. 2019); *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 WL 5173851, at *4 (W.D. Tenn. Dec. 15, 2010) (movant with largest loss

appointed as lead plaintiff). Of the *Lax*/*Olsten*-styled[3] factors in determining the largest financial interest, the financial loss is the most significant factor. *See St. Clair Cty. Employees' Ret. System,* 2019 WL 494129, \*4 ("This Court has forged a middle path by acknowledging the potential relevance of the first three *Olsten-Lax* factors, but giving the fourth factor the greatest weight."); *Blitz v. AgFeed Indus., Inc.,* 2012 WL 1192814, at \*7-8 (M.D. Tenn. Apr. 10, 2012). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.,* 2005 WL 627960 \*4 (N.D. Ill. Mar. 15, 2005).

Movants lost approximately $853,492.22 in connection with their purchases of Company securities. *See* Rosenthal Decl., Ex. 3. Movants are not aware of any other movant that has suffered greater losses in Company securities during the Class Period. Accordingly, Movants satisfy the largest financial interest requirement to be appointed as Lead Plaintiffs for the class.

### C. Movants Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movants will satisfy the requirements of Rule 23 is

---

[3] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 \*5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1. Movants' Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movants' claims are typical of the claims asserted by the Class. Movants, like all members of the Class, allege that Defendants violated the Securities Act by issuing false and misleading statements about Sundial's business. Movants' interests are closely aligned with the other Class members' and Movants' interests are, therefore, typical of the other members of the Class.

### 2. Movants Are Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movants have communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiffs. Movants are not aware that any conflict exists between their claims and those asserted on behalf of the Class. Movants also

11

sustained substantial financial losses from investments in Company securities and are, therefore, extremely motivated to pursue claims in this action.

### D. Movants Are Presumptively the Most Adequate Plaintiffs

The presumption in favor of appointing Movants as Lead Plaintiffs may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Movant Daniel Tavares ("Mr. Tavares") is the Chairman of the Board of Globestar Systems Inc., an enterprise software company. Mr. Tavares has been investing for 30 years and holds a degree from a university.

The presumption that Movants are the most adequate Lead Plaintiffs is not, therefore, subject to rebuttal. Accordingly, Movants have suffered financial losses and have the largest financial interest in this case of any timely lead plaintiff.

### III. MOVANTS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants have selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movants' and Class Plaintiffs' claims as well as reviewing publicly available financial and other documents while gathering information in support of the claims

against Defendants. Furthermore, Rosen Law has a long history of successfully litigating securities class actions and has prosecuted securities class actions on behalf of investors and Cohen Rosenthal has a long history of handling complex litigation including class actions. *See* Rosenthal Decl., Exs. 4 & 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movants' counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movants' selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movants respectfully request the Court issue an Order; (1) consolidating the related actions; (2) appointing Movants as Lead Plaintiffs of the Class; (3) approving Movants' selection of Rosen Law as Lead Counsel and Cohen Rosenthal as Liaison Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: May 17, 2021                                    Respectfully submitted,

                                                       **COHEN ROSENTHAL & KRAMER LLP**

                                                       By: */s/ James B. Rosenthal*
                                                       James B. Rosenthal (0062872)
                                                       3208 Clinton Avenue
                                                       One Clinton Place
                                                       Cleveland, Ohio 44113
                                                       Telephone: (216) 815-9500
                                                       Fax: (216) 815-9500
                                                       jbr@crklaw.com

                                                       *[Proposed] Liaison Counsel for Lead Plaintiffs*
                                                       *and Class*

                                                       **THE ROSEN LAW FIRM, P.A.**

13

Phillip Kim, Esq. (*pro hac vice* forthcoming)
Laurence M. Rosen, Esq. (*pro hac vice* forthcoming)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiffs and Class*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ James B. Rosenthal*