**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MATTHEW RICO, | Case No. 4:21 CV 616 |
| Plaintiff, | Judge Patricia A. Gaughan |
| vs. | |
| LORDSTOWN MOTORS CORP., et al., | |
| Defendants. | |
| | |
| RAYMOND ROMANO, | Case No. 4:21 CV 994 |
| Plaintiff, | Judge John R. Adams |
| vs. | |
| LORDSTOWN MOTORS CORPORATION, et al., | |
| Defendants. | |
| | |
| FNY MANAGED ACCOUNTS LLC, | Case No. 4:21 CV 1021 |
| Plaintiff, | Judge Benita Y. Pearson |
| vs. | |
| LORDSTOWN MOTORS CORP., et al., | |
| Defendants. | |

## MOTION OF JOHN H. JENKINS AND ROBERT MILLER FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF SELECTION OF COUNSEL

**PLEASE TAKE NOTICE** that pursuant to Section 21D of the Securities and Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, John H. Jenkins and Robert Miller (together, "Movants") hereby move the Court for an Order:

(a) consolidating the above-captioned related actions (the "Related Actions");

(b) appointing Movants to serve as Co-Lead Plaintiffs in the Related Actions; and

(c) approving Movants' selection of Pomerantz LLP as Lead Counsel and Robert J. Wagoner Co., L.L.C. ("Wagoner") as Liaison Counsel for the Class.

In support of this Motion, Movants submit: (1) the Declaration of J. Alexander Hood II dated May 17, 2021 (with exhibits); (2) a Memorandum of Law in support of Motion dated May 17, 2021; and (3) a [Proposed] Order.

Respectfully submitted,

**ROBERT J. WAGONER CO., L.L.C.**

*/s/ Robert J. Wagoner* _____
Robert J. Wagoner (0068991)
107 W. Johnstown Road
Gahanna, Ohio 43230
Telephone: (614) 796-4110
Facsimile: (614) 796-4111
Email: bob@wagonerlawoffice.com

*Counsel for Movants and Proposed Liaison*
  *Counsel for the Class*

2

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for Movants and Proposed Lead Counsel
 for the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice application* forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Movants*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JOHN H. JENKINS AND ROBERT MILLER FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF SELECTION OF COUNSEL**

Movants John H. Jenkins and Robert Miller (together, "Movants") respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and Rule 42 of the Federal Rules of Civil Procedure:

(a) consolidating the above-captioned related actions (the "Related Actions");

(b) appointing Movants as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that (1) purchased or otherwise acquired Lordstown Motors Corp. ("Lordstown" or the "Company") securities between August 3, 2020 and March 24, 2021, inclusive (the "Class Period") and/or (2) purchased and held DiamondPeak common stock as of September 21, 2020, and had the right to vote on the merger between DiamondPeak and Lordstown pursuant to the Proxy Statement dated October 8, 2020 and were damaged thereby; and

(c)  approving Movants' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Robert J. Wagoner Co., L.L.C. ("Wagoner") as Liaison Counsel for the Class.

**PROCEDURAL HISTORY**

There are currently six actions pending against Lordstown Motors Corp. in this court: *Rico v. Lordstown Motors Corp. et al*, No. 4:21-cv-00616, filed March 18, 2021 (the "*Rico* Action"); *Palumbo v. Lordstown Motors Corporation, et al*, No. 4:21-cv-00633, filed March 19, 2021 (the "*Palumbo* Action"); *Zuod v. Lordstown Motors Corp. et al*, No. 4:21-cv-00720, filed April 2, 2021 (the "*Zuod* Action"); *Brury v. Lordstown Motors Corp. et al*, No. 4:21-cv-00760, filed April 8,

4

2021 (the "*Brury* Action"); *Romano v. Lordstown Motors Corporation et al*, No. 4:21-cv-00994, filed May 13, 2021 (the "*Romano* Action"); and *FNY Managed Accounts LLC v. Lordstown Motors Corp. et al*, No. 4:21-cv-01021, filed May 14, 2021 (the "*FNY Managed Accounts* Action"). On April 13, 2021, this Court entered an order consolidating the *Rico* Action with the *Palumbo*, *Zuod*, and *Brury* Actions, and stating that "[a]ny subsequent case filed before the undersigned or transferred as a related action will be subject to this Order. All filings must be made solely in Case No. 21 CV 616, i.e., the first-filed case, and need only contain the case caption for that case." (the "Consolidation Order"). *See Rico* Action, Dkt No. 9. Subsequent to the Consolidation Order, the *Romano* and *FNY Managed Accounts* Actions were filed, alleging substantially the same wrongdoing against overlapping defendants, and have been assigned to different judges than Actions included in the Consolidation Order.

In addition, the complaint filed in the *Rico* Action alleges a class period that only includes persons and entities that purchased or otherwise acquired Lordstown securities between August 3, 2020 and March 17, 2021, inclusive. The *Zuod* Action alleges substantially the same wrongdoing against overlapping defendants, and with a larger class period including all persons and entities that purchased or otherwise acquired Lordstown securities between August 3, 2020 and March 24, 2021, inclusive. Further, the *Romano* Action alleges substantially the same wrongdoing against overlapping defendants and was also brought on behalf of all persons or entities that purchased and held DiamondPeak common stock as of September 21, 2020, and had the right to vote on the merger between DiamondPeak and Lordstown pursuant to the Proxy Statement dated October 8, 2020, and were damaged thereby. Therefore, to avoid excluding any potential class members, this

5

motion has adopted the larger class period alleged in the *Zuod* Action, and the broader class of investors specified in the *Romano* Action.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that is shown to be the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the one that possesses the "largest financial interest" in the outcome of the litigation and that satisfies the requirements of Fed. R. Civ. P. 23. *Id.* Movants believe that they should benefit from a rebuttable presumption arising from possessing the largest financial interest in this litigation. Movants purchased 100,000 shares of Lordstown securities during the Class Period, expended $2,349,449 on their purchases, retained 40,000 of their Lordstown shares at the end of the Class Period, and incurred losses of approximately $475,071 in connection with their Class Period purchases of Lordstown securities. *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Ex. A.

Beyond their significant financial interest, Movants also meet the applicable requirements of Rule 23 because their claims are typical of absent class members and because they will fairly and adequately represent the interests of the Class.

In order to fulfill their responsibilities as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Movants have selected Pomerantz as Lead Counsel and Wagoner as Liaison Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors. In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States, as well as an $80 million

6

recovery on behalf of investors in Yahoo! securities.  Based in New York, Pomerantz has offices in Chicago, Los Angeles, and Paris, France.

As investors with a significant financial interest in this litigation and having satisfied the Rule 23 requirements of adequacy and typicality, Movants respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs and approving Pomerantz as Lead Counsel and Wagoner as Liaison Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaint in the *Rico* Action (the "Complaint"), Defendant Lordstown is an automotive company founded for the purpose of developing and manufacturing light duty electric trucks targeted for sale to fleet customers.  Complaint at ¶ 2.  The Company's purported flagship vehicle is the "Endurance," an electric full-size pickup truck.  *Id.*  The Company is headquartered in Lordstown, Ohio.  *Id.*

On August 3, 2020, Lordstown and DiamondPeak announced that they had entered into a definitive merger agreement through which, upon closing, the combined company would remain listed on the NASDAQ stock exchange under the new ticker symbol "RIDE."  *Id.* at ¶ 3. DiamondPeak was setup as a special purpose acquisition company (also known as a SPAC).  *Id.* DiamondPeak's shares traded on the NASDAQ stock exchange under the ticker symbol "DPHC." *Id.*  The August 3, 2020 release provided, in relevant part that the transaction valued Lordstown "at an implied $1.6 billion pro forma equity value," and that the transaction as expected to deliver approximately $675 million in gross proceeds.  *Id.*  The release announced that the transaction was expected to close in the fourth quarter of 2020.  *Id.*

On October 22, 2020, Lordstown and DiamondPeak announced that DiamondPeak shareholders had approved the merger.  *Id.* at ¶ 4.  On October 23, 2020, Lordstown announced

7

that it had completed the business combination with DiamondPeak, and that beginning on October 26, 2020, Lordstown's Class A shares would begin trading on the NASDAQ Global Select market under the ticker symbol "RIDE," and that its warrants would trade on NASDAQ under the symbol "RIDEW." *Id.*

During the Class Period, and as alleged in the Complaint, Lordstown repeatedly lauded its pre-order agreements with prospective customers. *Id.* at ¶ 5. Moreover, the Company stated numerous times that it was "on track" to begin production of the Lordstown Endurance in September 2021. *Id.*

Before the markets opened on March 12, 2021, analyst Hindenburg Research published a scathing report on Lordstown entitled: "The Lordstown Motors Mirage: Fake Orders, Undisclosed Production Hurdles, and a Prototype Inferno." *Id.* at ¶ 6. As alleged in greater detail below, in this report, Hindenburg noted that Lordstown has "no revenue and no sellable product," and wrote that the Company "has misled investors on both its demand and production capabilities." *Id.* The Hindenburg report concluded that Lordstown's "orders are largely fictitious and used as a prop to raise capital and confer legitimacy," and that a former employee "explained how the company is experiencing delays and making 'drastic' design modifications, putting [Lordstown] an estimated 3-4 years away from production," rather than the Company being "on track" for a September 2021 production start. *Id.*

On this news, the price of Lordstown common stock fell approximately 16.5% in one day, down from its March 11, 2021 closing price of $17.71 to a March 12, 2021 close of just $14.78. *Id.* at ¶ 7. This represents hundreds of millions of dollars in lost market capitalization. *Id.*

Then on March 17, 2021, after trading had closed, the Company held an earnings call on which Defendant Burns disclosed that Lordstown had received an inquiry from the SEC. *Id.* at ¶

8. Remarkably, although Lordstown also issued a press release and a Form 8-K announcing its fourth quarter and full year 2020 financial results after trading closed on March 17, 2021, the Company failed to disclose the existence of the SEC inquiry in those filings. *Id.* On this news, the stock fell approximately another 9% in aftermarket trading. *Id.*

Then, on March 24, 2020, according to the complaint filed in the *Zuod* Action, during the trading day, Hindenburg Research published additional pictures of the Endurance EV truck after it broke down and had to be loaded onto a tow truck during the filming of a commercial that had been aired just days prior to the common stock of Lordstown being taken public via its combination with DiamondPeak. *See Zuod* Action, Dkt. No. 1 at ¶ 10. On this news the stock price fell another $1.21 per share, once again trading down on unusually high volume of more than 11 million shares trading. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business. *See* Complaint at ¶ 9. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's purported pre-orders were non-binding; (ii) many of the would-be customers who made these purported pre-orders lacked the means to make such purchases and/or would not have credible demand for Lordstown's Endurance; (iii) Lordstown is not and has not been "on track" to commence production of the Endurance in September 2021; (iv) the first test run of the Endurance led to the vehicle bursting into flames within 10 minutes; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id*.

## **ARGUMENT**

**I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

9

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a).  Specifically, "[c]ourts have found that consolidation is particularly appropriate in securities class action litigation."  *French v. CBL & Assocs. Properties, Inc.*, No. 1:16-CV-165-TWP-CHS, 2016 WL 7668501, at *1 (E.D. Tenn. Sept. 26, 2016); *see, e.g.*, *Regions Morgan Keegan*, 2010 WL 5173851, at *14 (consolidating securities class actions that "raise[d] similar legal and factual issues").  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See French*, 2016 WL 7668501, at *1 (consolidating securities fraud class actions "[a]lthough one of the complaints asserts a slightly different class period and names two additional defendants than the other two complaints . . . because all three cases present common questions of law and fact, the differences do not outweigh the interests of judicial economy, and because consolidation would benefit the parties" (citing *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods))).

The Related Actions at issue here clearly involve common questions of law *and* fact.  Each action was brought against the Company, as well as certain officers and directors of the Company,

in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Lordstown's securities and subsequently damaged the Class when the Company's share price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See French*, 2016 WL 7668501, at *1; *Regions Morgan Keegan*, 2010 WL 5173851, at *14.

## II.      MOVANTS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movants satisfy all three of these criteria and thus believe that they are entitled to the rebuttable presumption that they are the most adequate plaintiffs within the meaning of the PSLRA.  Specifically, Movants have the largest financial interest in the Related Actions to their knowledge and otherwise strongly satisfy the requirements of Rule 23.  For all these reasons, as set forth in greater detail below, Movants respectfully urge the Court to appoint them to serve

11

as Co-Lead Plaintiffs overseeing the Related Actions.

## A.  MOVANTS ARE WILLING TO SERVE AS A CLASS REPRESENTATIVES

On March 18, 2021, counsel for plaintiff in the first-filed of the Related Actions caused a notice (the "Notice") to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that the first-filed of the Related Actions had been filed against Defendants and which advised investors in Lordstown securities that they had 60 days—*i.e.*, until May 17, 2021—to file a motion to be appointed as lead plaintiff.  *See* Hood Decl., Ex. B.  Movants have filed the instant motion pursuant to that Notice, and have attached signed Certifications attesting that Movants are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See* Hood Decl., Ex. C.  Under the PSLRA, Movants' actions were timely and legally sufficient.

Accordingly, Movants readily satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

## B.  MOVANTS HAVE THE LARGEST FINANCIAL INTEREST

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Although the PSLRA does not identify a standard for determining which movant maintains the largest financial interest in the relief sought by the class, courts consider the "*Olsten/Lax*" factors: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period (i.e., shares purchased during and retained at the end of the class period), (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period.  *See, e.g.*, *French*, 2016 WL 7668501 at *3-4 (citing *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295

12

(E.D.N.Y. 1998) and *Lax v. First Merch. Acceptance Corp.*, No. 97C2715, 1997 WL 461036, at *5 (Aug. 11, 1997)).  Of the *Olsten/Lax* factors, courts tend to emphasize the estimated losses suffered during the class period.  *See Id.*; *see also Farrah v. Provectus Biopharmaceuticals, Inc.*, 68 F. Supp. 3d 800, 804 (E.D. Tenn. 2014) (appointing as lead plaintiff the movant who had suffered a larger loss and holding that said Movant had the largest financial interest) and *Blitz v. AgFeed Indus., Inc.*, No. 3:11-cv-992, 2012 WL 1192814, at *3-5 (M.D. Tenn. Apr. 10, 2012).

During the Class Period, Movants: (i) purchased 100,000 shares of Lordstown securities; (ii) expended $2,349,449 on Lordstown securities; (iii) retained 40,000 of their shares of Lordstown securities; and (iv) as a result of the disclosure of the fraud at issue, suffered a loss of $475,071. *See* Hood Decl., Ex. A.  Movants are not aware of any other movant that has suffered greater losses in Lordstown securities during the Class Period.  Accordingly, Movants satisfy the largest financial interest requirement to be appointed as Co-Lead Plaintiffs for the Class.

## C.  MOVANTS SATISFY THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23,

13

the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movants satisfy the requirements of Rule 23 is sufficient. *See Regions Morgan Keegan*, 2010 WL 5173851, at *5.  Moreover, "Rule 23 establishes two requirements for appointing a lead plaintiff . . . 'typicality' and 'adequacy.'" *Id.*

Movants fulfill the requirements of Rule 23.  Movants' claims share substantially similar questions of law and fact with the members of the Class, and their claims are typical of those of the members of the Class.  Movants and all members of the Class allege that Defendants violated the Exchange Act by failing to disclose material facts about Lordstown's business and financial condition.  Movants, as did all of the members of the Class, purchased Lordstown securities at prices artificially inflated by Defendants' misstatements and omissions, and were damaged thereby.  These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the Class.

Movants are adequate representatives for the Class.  Movants have submitted signed Certifications declaring their commitment to protecting the interests of the Class.  *See* Hood Decl., Ex. C.  Movants have no conflicts of interest or antagonism with the Class of Lordstown investors they seek to represent.  Movants' significant losses from its Class Period transactions in Lordstown securities demonstrate that they have a sufficient interest in the outcome of this litigation that aligns with the interests of Class members.

Moreover, Movants constitute an appropriate group of the type routinely appointed to serve as Co-Lead Plaintiffs.  *See, e.g.*, *Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups"); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss

14

was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff.") (citation omitted).

Further demonstrating their adequacy, Movants have submitted a Joint Declaration attesting to, *inter alia*, its members' backgrounds, their investing experience, their understanding of the responsibilities of Co-Lead Plaintiffs pursuant to the PSLRA, their decision to jointly seek appointment as Co-Lead Plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Hood Decl., Ex. D.

Thus, the close alignment of interests between Movants and other Class members provide ample reasons to grant Movant's motion to serve as Lead Plaintiff.

### D. MOVANTS WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS AND ARE NOT SUBJECT TO UNIQUE DEFENSES

The presumption in favor of appointing Movants as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

Movants' ability, and their desire, to represent the Class fairly and adequately is discussed above.  Movants are not aware of any unique defenses Defendants could raise against them that

15

would render Movants inadequate to represent the Class.  Accordingly, the Court should appoint Movants as Co-Lead Plaintiffs for the Class.

### III.    MOVANTS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with lead plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movants have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  *See* Hood Decl., Ex. E.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *See* Hood Decl., Ex. E.  Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company.  *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066).

Movants have also selected Wagoner as Liaison Counsel for the Class.  Robert J. Wagoner of Wagoner regularly practices in the Northern District of Ohio, has handled numerous class actions in district courts of Ohio, is admitted to practice in the Northern District, and can ably serve

the Class if so appointed. *See* Wagoner Decl., Ex. F.

As a result of both firms' experience in litigation involving issues similar to those raised in the Related Actions, Movants' counsel have the skills and knowledge to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Movants' selection of Lead Counsel and Liaison Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Movants as Co-Lead Plaintiffs for the Class; and (3) approving Co-Lead Plaintiffs' selection of Pomerantz as Lead Counsel and Wagoner as Liaison Counsel for the Class.

Respectfully submitted,

**ROBERT J. WAGONER CO., L.L.C.**

*/s/ Robert J. Wagoner* _____
Robert J. Wagoner (0068991)
107 W. Johnstown Road
Gahanna, Ohio 43230
Telephone: (614) 796-4110
Facsimile: (614) 796-4111
Email: bob@wagonerlawoffice.com

*Counsel for Movants and Proposed Liaison Counsel*
 *for the Class*

17

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for Movants and Proposed Lead Counsel
  for the Class*

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice application* forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Movants*

18

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys on record.

Respectfully submitted,

**ROBERT J. WAGONER CO., L.L.C.**

*/s/ Robert J. Wagoner*_____
Robert J. Wagoner (0068991)
107 W. Johnstown Road
Gahanna, Ohio 43230
Telephone: (614) 796-4110
Facsimile: (614) 796-4111
Email: bob@wagonerlawoffice.com