# EXHIBIT A

## CERTIFICATION

I, Ethan Fingerer, declare that:

1. I have reviewed the facts and allegations of a complaint filed in this action and have authorized the filing of a motion for appointment as Lead Plaintiff.

2. I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4. My Class Period purchase and sale transaction(s) in Lordstown Motors Corp. securities that are the subject of this action are attached in Schedule A. I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5. During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws except for:

*Caliendo v. CenturyLink, et al.*, Case No. 2:19-cv-01629 (C.D. Cal.)

6. I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 5/17/2021

Ethan Fingerer

## Schedule A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 2/22/2021 | 30,000 | $23.67000 |
| Com Stk | Buy | 2/11/2021 | 20,000 | $30.42250 |
| Com Stk | Sell | 3/12/2021 | 50,000 | $14.31000 |
| | | | | |
| CALL Mar'21 @ 15 | Buy | 3/12/2021 | 500 | $1.21000 |
| CALL Mar'21 @ 15 | Sell | 3/18/2021 | 500 | $0.07436 |

## CERTIFICATION

I, Kevin Levent, declare that:

1.    I have reviewed the facts and allegations of a complaint filed in this action and have authorized the filing of a motion for appointment as Lead Plaintiff.

2.    I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.    My Class Period purchase and sale transaction(s) in Lordstown Motors Corp. securities that are the subject of this action are attached in Schedule A.  I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.    During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ___4/29/2021___

_____
Kevin Levent

## SCHEDULE A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 12/15/2020 | 2,500 | $19.80 |
| Com Stk | Buy | 12/16/2020 | 1,000 | $19.35 |
| Com Stk | Buy | 12/31/2020 | 1,500 | $20.50 |
| Com Stk | Buy | 1/8/2021 | 2,000 | $21.45 |
| Com Stk | Buy | 1/15/2021 | 1,000 | $24.00 |
| Com Stk | Buy | 1/19/2021 | 500 | $23.60 |
| Com Stk | Buy | 1/20/2021 | 500 | $23.25 |
| Com Stk | Buy | 1/20/2021 | 1,500 | $23.50 |
| Com Stk | Buy | 1/21/2021 | 500 | $23.00 |
| Com Stk | Buy | 1/21/2021 | 1,000 | $22.72 |
| Com Stk | Buy | 1/22/2021 | 1,100 | $23.10 |
| Com Stk | Buy | 2/11/2021 | 2,000 | $29.75 |
| Com Stk | Buy | 2/12/2021 | 58 | $27.00 |
| Com Stk | Buy | 2/12/2021 | 171 | $27.00 |
| Com Stk | Buy | 2/12/2021 | 171 | $27.00 |
| Com Stk | Buy | 2/12/2021 | 356 | $27.10 |
| Com Stk | Buy | 2/12/2021 | 600 | $27.00 |
| Com Stk | Buy | 2/12/2021 | 644 | $27.10 |
| Com Stk | Buy | 2/12/2021 | 990 | $27.00 |
| Com Stk | Buy | 2/12/2021 | 1,000 | $27.50 |
| Com Stk | Buy | 2/12/2021 | 1,000 | $28.13 |
| Com Stk | Buy | 2/16/2021 | 2,000 | $25.00 |
| Com Stk | Buy | 2/16/2021 | 2,000 | $25.60 |
| Com Stk | Buy | 2/17/2021 | 900 | $24.00 |
| Com Stk | Buy | 2/17/2021 | 1,000 | $23.87 |
| Com Stk | Buy | 2/22/2021 | 1,000 | $23.45 |
| Com Stk | Buy | 2/22/2021 | 1,100 | $23.50 |
| Com Stk | Buy | 2/23/2021 | 1,000 | $21.00 |
| Com Stk | Buy | 2/23/2021 | 1,923 | $19.37 |
| Com Stk | Buy | 2/23/2021 | 2,077 | $19.39 |
| Com Stk | Buy | 2/26/2021 | 2,000 | $18.50 |
| Com Stk | Buy | 3/3/2021 | 1,500 | $19.00 |



| Com Stk | Buy | 3/3/2021 | 1,500 | $19.50 |
| Com Stk | Buy | 3/12/2021 | 700 | $14.26 |
| Com Stk | Buy | 3/12/2021 | 864 | $14.26 |
| Com Stk | Buy | 3/12/2021 | 1,050 | $14.26 |
| Com Stk | Buy | 3/12/2021 | 2,386 | $14.26 |
| Com Stk | Buy | 3/18/2021 | 5,000 | $13.76 |
| Com Stk | Sell | 1/11/2021 | 2,500 | $23.75 |
| Com Stk | Sell | 1/11/2021 | 2,000 | $23.25 |
| Com Stk | Sell | 1/11/2021 | 2,000 | $23.50 |
| Com Stk | Sell | 1/11/2021 | 500 | $25.44 |
| Com Stk | Sell | 1/26/2021 | 1,500 | $26.00 |
| Com Stk | Sell | 1/26/2021 | 1,500 | $26.50 |
| Com Stk | Sell | 1/26/2021 | 1,500 | $27.00 |
| Com Stk | Sell | 1/26/2021 | 500 | $27.50 |
| Com Stk | Sell | 1/27/2021 | 1,000 | $28.00 |
| Com Stk | Sell | 2/3/2021 | 90 | $26.50 |
| Com Stk | Sell | 3/15/2021 | 5,000 | $15.50 |
| Com Stk | Sell | 3/15/2021 | 5,000 | $16.25 |
| ✓ | SELL | 4/20/2021 | 5,000 | 8.88 |

## PLAINTIFF'S CERTIFICATION

I, Michael A. Jones, as owner and President of M.R.S. Leasing Corporation LTD ("MRS"), hereby certify under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge, information, and belief:

1. I have reviewed the complaint on file in this action against **Lordstown Motors Corp.** (the "Company") and authorize the filing of a motion, pursuant to the Private Securities Litigation Reform Act of 1995, for appointment of MRS as lead plaintiff. I have complete control and sole discretion to make investment and legal decisions on behalf of MRS.

2. MRS did not purchase the securities that are the subject of this lawsuit at the direction of counsel or to participate in any private action arising under the federal securities laws.

3. MRS' transactions in the Company's securities during the Class Period[1] are as follows:

### Units[2]

| Date | Transaction Type (Buy/Sell) | Quantity of Shares | Price Per Share |
|---|---|---|---|
| August 6, 2020[3] | Sell | 3,000 | $18.50 |
| August 6, 2020 | Sell | 50 | $16.30 |
| August 6, 2020 | Sell | 100 | $16.26 |
| August 6, 2020 | Sell | 713 | $16.25 |
| August 6, 2020 | Sell | 1,108 | $16.25 |
| August 6, 2020 | Sell | 29 | $16.31 |
| August 6, 2020 | Buy | 2,000 | $16.50 |
| August 6, 2020 | Buy | 3,000 | $17.50 |

### Stock

| Date | Transaction Type (Buy/Sell) | Quantity of Shares | Price Per Share |
|---|---|---|---|
| August 17, 2020 | Buy | 1,877 | $12.499 |
| August 17, 2020 | Buy | 252 | $12.50 |
| August 17, 2020 | Buy | 2,871 | $12.55 |

---

[1] The business combination between Lordstown Motors Corp. and DiamondPeak Holding Corp. was completed on October 23, 2020. Transactions listed herein through October 23, 2020, inclusive, were in DiamondPeak. Transactions October 26, 2020 and forward were in Lordstown Motors Corp. At the time of the business combination, MRS owned 13,000 DiamondPeak Warrants, which converted to 13,000 Lordstown Warrants.

[2] Units refer to DPHCU, which consist of one share of Class A common stock and one-third of one warrant.

[3] The dates identified herein for all transactions are settlement dates, as reflected in MRS' account statements.

Doc ID: 482c23b70a476f0a92912a0d1b964a44a7c60660

| August 17, 2020 | Sell | 5,000 | $12.965 |
| August 28, 2020 | Buy | 1,000 | $16.555 |
| August 28, 2020 | Buy | 3,000 | $15.999 |
| August 31, 2020 | Sell | 4,000 | $16.85 |
| September 2, 2020 | Buy | 2,900 | $16.49 |
| September 2, 2020 | Buy | 100 | $16.497 |
| September 2, 2020 | Sell | 3,000 | $16.60 |
| October 14, 2020 | Sell | 35 | $26.15 |
| October 14, 2020 | Sell | 220 | $26.14 |
| October 14, 2020 | Sell | 695 | $26.12 |
| October 14, 2020 | Sell | 50 | $26.17 |
| October 14, 2020 | Sell | 1,000 | $25.704 |
| October 14, 2020 | Buy | 1,000 | $25.949 |
| October 14, 2020 | Buy | 1,000 | $25.714 |
| November 3, 2020 | Buy | 1,000 | $13.415 |
| November 3, 2020 | Buy | 3,000 | $13.80 |
| November 5, 2020 | Sell | 4,000 | $13.92 |
| November 5, 2020 | Buy | 100 | $16.83 |
| November 5, 2020 | Buy | 1,016 | $16.82 |
| November 5, 2020 | Buy | 884 | $16.839 |
| November 5, 2020 | Buy | 1,000 | $16.755 |
| November 5, 2020 | Buy | 500 | $16.286 |
| November 5, 2020 | Buy | 3,000 | $15.00 |
| November 5, 2020 | Buy | 500 | $16.162 |
| November 5, 2020 | Sell | 2,000 | $16.444 |
| November 5, 2020 | Sell | 1,200 | $14.65 |
| November 5, 2020 | Sell | 1,600 | $14.66 |
| November 5, 2020 | Sell | 200 | $14.67 |
| November 5, 2020 | Buy | 1,000 | $16.428 |
| November 9, 2020 | Sell | 2,935 | $18.00 |
| November 9, 2020 | Sell | 65 | $18.20 |
| November 9, 2020 | Buy | 3,000 | $17.499 |
| November 10, 2020 | Buy | 100 | $17.84 |
| November 10, 2020 | Buy | 200 | $17.88 |
| November 10, 2020 | Buy | 500 | $17.849 |
| November 10, 2020 | Buy | 2,115 | $17.849 |
| November 10, 2020 | Buy | 85 | $17.89 |
| November 10, 2020 | Sell | 500 | $18.30 |
| November 10, 2020 | Sell | 2,200 | $18.298 |
| November 10, 2020 | Sell | 300 | $18.31 |
| November 13, 2020 | Sell | 2,182 | $17.18 |
| November 13, 2020 | Sell | 818 | $17.19 |
| November 16, 2020 | Buy | 2,000 | $16.949 |
| November 16, 2020 | Buy | 1,000 | $16.88 |
| November 18, 2020 | Buy | 1,000 | $21.755 |

Doc ID: 482c23b70a476f0a92912a0d1b964a44a7c60660

| | | | |
|---|---|---|---|
| November 18, 2020 | Buy | 1,500 | $21.789 |
| November 18, 2020 | Sell | 2,000 | $23.00 |
| November 19, 2020 | Sell | 4,000 | $25.12 |
| November 19, 2020 | Buy | 4,000 | $23.65 |
| November 19, 2020 | Sell | 4,000 | $25.35 |
| November 19, 2020 | Buy | 3,000 | $24.559 |
| November 19, 2020 | Sell | 3,500 | $24.30 |
| November 19, 2020 | Buy | 10 | $23.995 |
| November 19, 2020 | Buy | 990 | $24.00 |
| November 20, 2020 | Buy | 5,000 | $28.00 |
| November 20, 2020 | Buy | 3,000 | $28.529 |
| November 20, 2020 | Buy | 1,000 | $25.50 |
| November 20, 2020 | Sell | 1 | $28.38 |
| November 20, 2020 | Sell | 100 | $28.37 |
| November 20, 2020 | Sell | 200 | $28.42 |
| November 20, 2020 | Sell | 200 | $28.39 |
| November 20, 2020 | Sell | 1,202 | $28.45 |
| November 20, 2020 | Sell | 3,297 | $28.34 |
| November 20, 2020 | Sell | 100 | $28.582 |
| November 20, 2020 | Sell | 2,100 | $28.57 |
| November 20, 2020 | Sell | 2,800 | $28.585 |
| November 20, 2020 | Buy | 10 | $26.12 |
| November 20, 2020 | Buy | 100 | $26.11 |
| November 20, 2020 | Buy | 500 | $26.14 |
| November 20, 2020 | Buy | 2,282 | $26.15 |
| November 20, 2020 | Buy | 1,108 | $26.20 |
| November 23, 2020 | Sell | 31 | $28.75 |
| November 23, 2020 | Sell | 100 | $28.80 |
| November 23, 2020 | Sell | 2 | $28.61 |
| November 23, 2020 | Sell | 2,311 | $28.50 |
| November 23, 2020 | Sell | 556 | $28.65 |
| December 8, 2020 | Sell | 53 | $22.03 |
| December 8, 2020 | Sell | 145 | $22.02 |
| December 8, 2020 | Sell | 151 | $22.10 |
| December 8, 2020 | Sell | 353 | $22.05 |
| December 8, 2020 | Sell | 167 | $22.15 |
| December 8, 2020 | Sell | 1,378 | $22.00 |
| December 8, 2020 | Sell | 50 | $22.010 |
| December 8, 2020 | Sell | 20 | $21.90 |
| December 8, 2020 | Sell | 100 | $21.91 |
| December 8, 2020 | Sell | 143 | $21.95 |
| December 8, 2020 | Sell | 1,440 | $22.00 |
| December 8, 2020 | Buy | 4,000 | $22.40 |
| December 10, 2020 | Buy | 3,000 | $20.57 |
| December 10, 2020 | Buy | 1,000 | $19.361 |

| December 10, 2020 | Buy | 1,000 | $19.60 |
|---|---|---|---|
| December 11, 2020 | Buy | 1,000 | $19.17 |
| December 14, 2020 | Buy | 1,000 | $18.65 |
| December 14, 2020 | Sell | 4,000 | $18.95 |
| December 14, 2020 | Sell | 3,000 | $18.94 |
| December 15, 2020 | Buy | 2,000 | $20.595 |
| December 16, 2020 | Buy | 2 | $19.08 |
| December 16, 2020 | Buy | 170 | $19.09 |
| December 16, 2020 | Buy | 1,127 | $19.07 |
| December 16, 2020 | Buy | 701 | $19.10 |
| December 16, 2020 | Buy | 2,000 | $19.46 |
| December 17, 2020 | Buy | 2,000 | $20.349 |
| December 17, 2020 | Sell | 4,000 | $20.02 |
| December 17, 2020 | Buy | 2,000 | $20.539 |
| December 17, 2020 | Sell | 2,000 | $20.00 |
| December 18, 2020 | Buy | 1,000 | $19.41 |
| December 18, 2020 | Buy | 2,000 | $19.70 |
| December 21, 2020 | Sell | 1,000 | $19.154 |
| December 21, 2020 | Buy | 1,000 | $19.025 |
| December 23, 2020 | Buy | 1,000 | $19.23 |
| December 23, 2020 | Buy | 1,000 | $19.159 |
| January 4, 2021 | Sell | 7,000 | $22.060 |
| January 4, 2021 | Sell | 2,000 | $22.20 |
| January 5, 2021 | Buy | 2,000 | $20.586 |
| January 7, 2021 | Sell | 1,000 | $20.71 |
| January 7, 2021 | Sell | 1,000 | $20.71 |
| January 13, 2021 | Buy | 2,000 | $27.329 |
| January 13, 2021 | Sell | 2,000 | $27.286 |
| January 13, 2021 | Buy | 2,000 | $26.28 |
| January 13, 2021 | Sell | 1,800 | $25.917 |
| January 13, 2021 | Sell | 200 | $25.92 |
| January 13, 2021 | Sell | 2,000 | $28.415 |
| January 13, 2021 | Buy | 2,000 | $27.209 |
| January 13, 2021 | Buy | 200 | $27.97 |
| January 13, 2021 | Buy | 1,300 | $27.96 |
| January 13, 2021 | Buy | 500 | $27.979 |
| January 14, 2021 | Buy | 1,000 | $26.542 |
| January 14, 2021 | Buy | 1,000 | $25.089 |
| January 14, 2021 | Buy | 1,000 | $25.60 |
| January 14, 2021 | Buy | 1,000 | $25.79 |
| January 14, 2021 | Buy | 1,000 | $25.995 |
| January 15, 2021 | Sell | 5,000 | $27.97 |
| January 15, 2021 | Sell | 2,000 | $26.70 |
| January 15, 2021 | Buy | 1,000 | $26.025 |
| January 15, 2021 | Buy | 2,000 | $26.448 |

| January 15, 2021 | Buy | 5,000 | $27.00 |
|---|---|---|---|
| January 19, 2021 | Buy | 1,000 | $25.615 |
| January 20, 2021 | Buy | 1,000 | $24.315 |
| January 20, 2021 | Buy | 1,000 | $24.53 |
| January 26, 2021 | Sell | 2,000 | $23.74 |
| January 26, 2021 | Sell | 2,000 | $24.50 |
| January 26, 2021 | Sell | 100 | $24.63 |
| January 26, 2021 | Sell | 1,790 | $24.635 |
| January 26, 2021 | Sell | 110 | $24.67 |
| January 26, 2021 | Buy | 1,000 | $23.373 |
| January 26, 2021 | Buy | 2,000 | $23.70 |
| January 27, 2021 | Buy | 1,000 | $22.83 |
| January 27, 2021 | Buy | 1,000 | $23.628 |
| January 27, 2021 | Sell | 1,000 | $23.27 |
| January 27, 2021 | Buy | 1,000 | $22.745 |
| January 27, 2021 | Buy | 1,000 | $22.955 |
| January 27, 2021 | Sell | 1,000 | $24.40 |
| January 28, 2021 | Sell | 3,000 | $27.05 |
| January 29, 2021 | Buy | 1,000 | $25.977 |
| January 29, 2021 | Buy | 2,000 | $28.065 |
| January 29, 2021 | Buy | 1,000 | $26.359 |
| January 29, 2021 | Buy | 1,000 | $27.737 |
| January 29, 2021 | Buy | 1,000 | $27.23 |
| January 29, 2021 | Sell | 100 | $28.17 |
| January 29, 2021 | Sell | 1,154 | $28.18 |
| January 29, 2021 | Sell | 1,746 | $28.19 |
| February 1, 2021 | Buy | 500 | $25.379 |
| February 1, 2021 | Buy | 500 | $24.078 |
| February 2, 2021 | Buy | 1,000 | $25.25 |
| February 2, 2021 | Buy | 1,000 | $25.509 |
| February 2, 2021 | Buy | 2,000 | $25.920 |
| February 2, 2021 | Sell | 2,000 | $26.00 |
| February 2, 2021 | Sell | 2,000 | $26.20 |
| February 2, 2021 | Buy | 1,000 | $24.959 |
| February 2, 2021 | Sell | 2,000 | $26.40 |
| February 2, 2021 | Buy | 1,000 | $25.70 |
| February 3, 2021 | Sell | 500 | $25.00 |
| February 4, 2021 | Buy | 1,000 | $25.03 |
| February 4, 2021 | Sell | 380 | $26.20 |
| February 5, 2021 | Sell | 1,120 | $25.892 |
| February 5, 2021 | Buy | 1,120 | $26.930 |
| February 5, 2021 | Sell | 1,120 | $27.00 |
| February 8, 2021 | Buy | 1,000 | $26.75 |
| February 9, 2021 | Sell | 500 | $26.693 |
| February 9, 2021 | Buy | 10 | $26.70 |

Doc ID: 482c23b70a476f0a92912a0d1b964a44a7c60660

| February 9, 2021 | Buy | 476 | $26.709 |
| February 9, 2021 | Buy | 514 | $26.72 |
| February 10, 2021 | Sell | 1,500 | $27.52 |
| February 12, 2021 | Sell | 5,000 | $28.67 |
| February 12, 2021 | Sell | 1,731 | $27.70 |
| February 12, 2021 | Sell | 269 | $27.75 |
| February 12, 2021 | Sell | 1,967 | $27.75 |
| February 12, 2021 | Sell | 1,033 | $28.00 |
| February 12, 2021 | Sell | 5,000 | $28.95 |
| February 12, 2021 | Buy | 5,000 | $28.348 |
| February 12, 2021 | Buy | 3,000 | $30.73 |
| February 12, 2021 | Buy | 5,000 | $28.00 |
| February 12, 2021 | Buy | 2,000 | $30.089 |
| February 12, 2021 | Buy | 1,000 | $29.439 |
| February 12, 2021 | Sell | 4,800 | $28.76 |
| February 12, 2021 | Sell | 200 | $28.86 |
| February 16, 2021 | Sell | 2,852 | $30.00 |
| February 16, 2021 | Buy | 1,000 | $29.699 |
| February 16, 2021 | Buy | 1,000 | $29.54 |
| February 16, 2021 | Buy | 1,000 | $29.86 |
| February 16, 2021 | Buy | 1,000 | $30.687 |
| February 16, 2021 | Buy | 1,000 | $29.09 |
| February 17, 2021 | Buy | 1,000 | $27.269 |
| February 17, 2021 | Buy | 1,000 | $27.06 |
| February 18, 2021 | Sell | 1,148 | $27.201 |
| February 18, 2021 | Sell | 755 | $25.13 |
| February 18, 2021 | Sell | 1,200 | $25.10 |
| February 18, 2021 | Sell | 3,277 | $25.09 |
| February 18, 2021 | Sell | 3,611 | $25.14 |
| February 18, 2021 | Sell | 7 | $25.15 |
| February 18, 2021 | Sell | 150 | $25.08 |
| February 18, 2021 | Buy | 10,000 | $25.15 |
| February 19, 2021 | Buy | 100 | $23.90 |
| February 19, 2021 | Buy | 100 | $23.89 |
| February 19, 2021 | Buy | 300 | $23.92 |
| February 19, 2021 | Buy | 500 | $23.94 |
| February 19, 2021 | Sell | 1,000 | $24.31 |
| February 24, 2021 | Buy | 311 | $23.455 |
| February 24, 2021 | Buy | 689 | $23.460 |
| February 24, 2021 | Buy | 1,000 | $23.819 |
| March 2, 2021 | Buy | 200 | $19.508 |
| March 3, 2021 | Buy | 2,000 | $19.95 |
| March 3, 2021 | Sell | 2,170 | $19.925 |
| March 3, 2021 | Sell | 30 | $19.935 |
| March 5, 2021 | Buy | 200 | $19.01 |

Doc ID: 482c23b70a476f0a92912a0d1b964a44a7c60660

| March 19, 2021 | Sell | 2,200 | $14.51 |
| March 22, 2021 | Buy | 300 | $13.56 |
| March 22, 2021 | Buy | 2,000 | $14.20 |

**Warrants**

| Date | Transaction Type (Buy/Sell) | Quantity of Shares | Price Per Share |
|---|---|---|---|
| August 5, 2020 | Buy | 5,000 | $2.599 |
| August 5, 2020 | Buy | 5,000 | $2.90 |
| August 6, 2020 | Sell | 1,700 | $4.50 |
| August 6, 2020 | Buy | 1 | $4.800 |
| August 6, 2020 | Buy | 13 | $4.86 |
| August 6, 2020 | Buy | 4,986 | $4.89 |
| August 6, 2020 | Sell | 1,100 | $4.65 |
| August 6, 2020 | Sell | 2,200 | $4.67 |
| August 6, 2020 | Sell | 200 | $4.28 |
| August 6, 2020 | Sell | 200 | $4.26 |
| August 6, 2020 | Sell | 1,789 | $4.27 |
| August 6, 2020 | Sell | 5,511 | $4.30 |
| August 6, 2020 | Sell | 2,300 | $4.325 |
| August 7, 2020 | Buy | 2,500 | $4.249 |
| August 7, 2020 | Sell | 1,078 | $4.03 |
| August 7, 2020 | Sell | 1,322 | $4.02 |
| August 7, 2020 | Sell | 100 | $4.04 |
| September 16, 2020 | Sell | 25 | $12.645 |
| September 16, 2020 | Sell | 100 | $12.665 |
| September 16, 2020 | Sell | 130 | $12.675 |
| September 16, 2020 | Sell | 325 | $12.655 |
| September 16, 2020 | Sell | 21 | $12.71 |
| September 16, 2020 | Sell | 899 | $12.625 |
| September 16, 2020 | Buy | 4,800 | $14.25 |
| September 16, 2020 | Buy | 200 | $14.33 |
| September 16, 2020 | Buy | 1,500 | $12.675 |
| September 16, 2020 | Buy | 3,000 | $12.499 |
| September 16, 2020 | Buy | 1,000 | $13.950 |
| September 17, 2020 | Sell | 890 | $12.818 |
| September 17, 2020 | Buy | 1,000 | $12.80 |
| September 17, 2020 | Buy | 474 | $11.10 |
| September 17, 2020 | Buy | 2,526 | $11.11 |
| September 17, 2020 | Buy | 2,000 | $12.099 |
| September 17, 2020 | Buy | 890 | $11.12 |
| September 18, 2020 | Buy | 1,000 | $11.999 |
| September 18, 2020 | Buy | 1,000 | $11.949 |
| September 18, 2020 | Sell | 2,000 | $12.30 |

Doc ID: 482c23b70a476f0a92912a0d1b964a44a7c60660

| September 18, 2020 | Buy | 2,000 | $12.07 |
| September 21, 2020 | Sell | 10 | $12.00 |
| September 21, 2020 | Sell | 20 | $12.20 |
| September 21, 2020 | Sell | 1,944 | $12.04 |
| September 21, 2020 | Sell | 20 | $12.40 |
| September 22, 2020 | Sell | 500 | $12.80 |
| September 22, 2020 | Sell | 1,606 | $12.835 |
| September 22, 2020 | Sell | 900 | $12.901 |
| September 24, 2020 | Buy | 56 | $12.20 |
| September 24, 2020 | Buy | 2,909 | $12.29 |
| September 24, 2020 | Buy | 35 | $12.296 |
| September 24, 2020 | Buy | 1,000 | $11.75 |
| September 24, 2020 | Buy | 30 | $12.10 |
| September 28, 2020 | Sell | 700 | $8.31 |
| September 28, 2020 | Sell | 840 | $8.30 |
| September 28, 2020 | Sell | 1,000 | $8.40 |
| September 28, 2020 | Sell | 460 | $8.45 |
| September 28, 2020 | Buy | 200 | $8.325 |
| September 28, 2020 | Buy | 1,000 | $8.32 |
| September 28, 2020 | Buy | 1,200 | $8.34 |
| September 28, 2020 | Buy | 600 | $8.37 |
| September 29, 2020 | Sell | 1,030 | $9.295 |
| September 29, 2020 | Buy | 1,000 | $9.108 |
| September 30, 2020 | Sell | 110 | $11.05 |
| October 1, 2020 | Sell | 890 | $10.954 |
| October 2, 2020 | Buy | 700 | $10.718 |
| October 2, 2020 | Buy | 300 | $10.808 |
| October 14, 2020 | Sell | 100 | $8.70 |
| October 14, 2020 | Sell | 398 | $8.66 |
| October 14, 2020 | Sell | 600 | $8.75 |
| October 14, 2020 | Sell | 902 | $8.76 |
| October 16, 2020 | Sell | 100 | $9.685 |
| October 16, 2020 | Sell | 340 | $9.70 |
| October 16, 2020 | Sell | 2,200 | $9.69 |
| October 16, 2020 | Sell | 3,320 | $9.68 |
| October 16, 2020 | Sell | 200 | $9.71 |
| October 16, 2020 | Sell | 640 | $9.68 |
| October 16, 2020 | Sell | 200 | $9.775 |
| October 21, 2020 | Buy | 2,000 | $8.449 |
| October 27, 2020 | Buy | 1,668 | $6.99 |
| October 27, 2020 | Buy | 332 | $6.999 |
| October 27, 2020 | Buy | 2,000 | $6.809 |
| October 30, 2020 | Sell | 51 | $5.12 |
| November 3, 2020 | Sell | 300 | $4.41 |
| November 3, 2020 | Sell | 600 | $4.38 |

Doc ID: 482c23b70a476f0a92912a0d1b964a44a7c60660

| November 3, 2020 | Sell | 1,849 | $4.31 |
| November 3, 2020 | Sell | 200 | $4.42 |
| November 30, 2020 | Buy | 2,000 | $10.879 |
| November 30, 2020 | Buy | 1,000 | $10.429 |
| December 2, 2020 | Buy | 100 | $8.79 |
| December 2, 2020 | Buy | 100 | $8.78 |
| December 2, 2020 | Buy | 373 | $8.793 |
| December 2, 2020 | Buy | 427 | $8.92 |
| December 2, 2020 | Buy | 600 | $8.919 |
| December 2, 2020 | Buy | 600 | $8.91 |
| December 2, 2020 | Buy | 800 | $8.919 |
| December 2, 2020 | Buy | 575 | $8.739 |
| December 2, 2020 | Buy | 283 | $8.78 |
| December 2, 2020 | Buy | 142 | $8.907 |
| December 7, 2020 | Buy | 200 | $9.775 |
| December 7, 2020 | Buy | 280 | $9.789 |
| December 7, 2020 | Buy | 100 | $9.80 |
| December 7, 2020 | Buy | 1,720 | $9.827 |
| December 7, 2020 | Buy | 2,700 | $9.84 |
| December 7, 2020 | Sell | 3,984 | $10.15 |
| December 7, 2020 | Sell | 1,016 | $10.10 |
| December 7, 2020 | Buy | 260 | $9.65 |
| December 8, 2020 | Sell | 14,000 | $9.90 |
| December 8, 2020 | Sell | 3,260 | $9.95 |

4. MRS is willing to serve as a representative party, on behalf of the Class of investors who purchased or acquired the Company's securities during the class period specified in the complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. During the three-year period preceding the date of my signing this Certification, MRS has never sought to be appointed, nor ever been appointed, as lead plaintiff or class representative in any class action arising under the securities laws of the United States.

6. MRS will not accept any payment for serving as a representative party on behalf of the Class beyond MRS' *pro rata* share of any possible recovery, except for an award, as ordered or approved by the Court, for reasonable costs and expenses (including lost wages) directly relating to MRS' representation of the Class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 05 / 16 / 2021

Michael A. Jones, on behalf of M.R.S. Leasing Corporation LTD

# CERTIFICATION

I, Mario Guerrero, declare that:

1. I have reviewed the facts and allegations of a complaint filed in this action and have authorized the filing of a motion for appointment as Lead Plaintiff.

2. I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4. My Class Period purchase and sale transaction(s) in Lordstown Motors Corp. securities that are the subject of this action are attached in Schedule A. I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5. During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _April 27, 2021_

Mario Guerrero

## SCHEDULE A
## Account 1

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 2/22/2021 | 4 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 6 | $22.72 |
| Com Stk | Buy | 2/22/2021 | 45 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 45 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 45 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 53 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 60 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 60 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.71 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.71 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.71 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.71 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.71 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.72 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 100 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 110 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 200 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 200 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 200 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 300 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 300 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 400 | $22.71 |
| Com Stk | Buy | 2/22/2021 | 480 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 547 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 1,000 | $22.73 |
| Com Stk | Buy | 2/22/2021 | 1,045 | $22.72 |
| Com Stk | Buy | 2/22/2021 | 3,100 | $22.7199 |
| Com Stk | Buy | 2/23/2021 | 200 | $19.66 |
| Com Stk | Buy | 2/23/2021 | 3,200 | $19.66 |

## Account 2

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 2/22/2021 | 1,000 | $22.675 |

**CERTIFICATION**

I, Carole Cooper, declare that:

1.      I have reviewed the facts and allegations of a complaint filed in this action and have authorized the filing of a motion for appointment as Lead Plaintiff.

2.      I did not purchase and/or acquire the security that is the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in Lordstown Motors Corp. and/or DiamondPeak Holdings Corp. securities that are the subject of this action are attached in Schedule A.  I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws except for:

*Farrar v. Workhorse Group, Inc., et al.,* 2:21-cv-02072-CJC-PVC (C.D. Cal.)

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  ___5/13/2021___                  ___ *Carole Cooper* _____

                                                                              Carole Cooper

## SCHEDULE A

| Security | Buy/Sell | Date | Quantity | Price |
|---|---|---|---|---|
| Com Stk | Buy | 8/3/2020 | 2,000 | $11.70 |
| Com Stk | Buy | 8/4/2020 | 840 | $14.39 |
| Com Stk | Buy | 8/4/2020 | 850 | $14.95 |
| Com Stk | Buy | 8/28/2020 | 460 | $18.94 |
| Com Stk | Buy | 9/3/2020 | 4,000 | $18.70 |
| Com Stk | Buy | 10/5/2020 | 2,000 | $23.40 |
| Com Stk | Buy | 11/3/2020 | 7,000 | $13.60 |
| Com Stk | Buy | 11/5/2020 | 2,000 | $17.33 |
| Com Stk | Buy | 11/18/2020 | 1,000 | $26.06 |
| Com Stk | Buy | 11/19/2020 | 1,000 | $27.87 |
| Com Stk | Buy | 11/19/2020 | 1,000 | $28.20 |
| Com Stk | Buy | 11/20/2020 | 500 | $26.57 |
| Com Stk | Buy | 11/24/2020 | 2,000 | $26.38 |
| Com Stk | Sell | 8/10/2020 | 5 | $12.52 |
| Com Stk | Sell | 11/2/2020 | 2,649 | $13.50 |
| Com Stk | Sell | 11/3/2020 | 6,000 | $14.04 |
| Com Stk | Sell | 3/16/2021 | 15,996 | $15.68 |

# EXHIBIT B

*Total LIFO Loss:* ($659,832.00)

**Ethan Fingerer**
**LIFO Losses in Lordstown Motors Corp. Common Shares**
CP: 8/3/20 - 3/24/21

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 2/22/2021 | 30,000 | $23.6700 | $710,100.00 | Sale | 3/12/2021 | 50,000 | $14.3100 | $715,500.00 |
| Purchase | 2/11/2021 | 20,000 | $30.4225 | $608,450.00 | | | | | |
| | | 50,000 | | $1,318,550.00 | | | 50,000 | | $715,500.00 |

*LIFO Losses in Lordstown Motors Corp. Common Shares* ($603,050.00)

**Ethan Fingerer**
**LIFO Losses in Lordstown Motors Corp. Mar'21 Calls @ $15**
CP: 8/3/20 - 3/24/21

| Transaction | Date | Contracts | Price | Cost | Transaction | Date | Contracts | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 3/12/2021 | 500 | $1.2100 | $60,500.00 | Sale | 3/18/2021 | 500 | $0.0744 | $3,718.00 |
| | | 500 | | $60,500.00 | | | 500 | | $3,718.00 |

*LIFO Losses in Lordstown Motors Corp. Mar'21 Calls @ $15* ($56,782.00)

**Kevin Levent**
**LIFO Losses in Lordstown Motors Corp. Common Shares**
CP: 8/3/20 - 3/24/21
Retained Shares Priced at          $10.02

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 12/15/2020 | 2,500 | $19.8000 | $49,500.00 | Sale | 1/11/2021 | 500 | $25.4350 | $12,717.50 |
| Purchase | 12/16/2020 | 1,000 | $19.3450 | $19,345.00 | Sale | 1/11/2021 | 2,000 | $23.2500 | $46,500.00 |
| Purchase | 12/31/2020 | 1,500 | $20.5000 | $30,750.00 | Sale | 1/11/2021 | 2,000 | $23.5000 | $47,000.00 |
| Purchase | 1/8/2021 | 2,000 | $21.4500 | $42,900.00 | Sale | 1/11/2021 | 2,500 | $23.7500 | $59,375.00 |
| Purchase | 1/15/2021 | 1,000 | $24.0000 | $24,000.00 | Sale | 1/26/2021 | 500 | $27.5000 | $13,750.00 |
| Purchase | 1/19/2021 | 500 | $23.6000 | $11,800.00 | Sale | 1/26/2021 | 1,500 | $26.0000 | $39,000.00 |
| Purchase | 1/20/2021 | 1,500 | $23.5000 | $35,250.00 | Sale | 1/26/2021 | 1,500 | $26.5000 | $39,750.00 |
| Purchase | 1/20/2021 | 500 | $23.2500 | $11,625.00 | Sale | 1/26/2021 | 1,500 | $27.0000 | $40,500.00 |
| Purchase | 1/21/2021 | 1,000 | $22.7229 | $22,722.90 | Sale | 1/27/2021 | 1,000 | $28.0000 | $28,000.00 |
| Purchase | 1/21/2021 | 500 | $23.0000 | $11,500.00 | Sale | 2/3/2021 | 90 | $26.5000 | $2,385.00 |
| Purchase | 1/22/2021 | 1,100 | $23.1000 | $25,410.00 | Sale | 3/15/2021 | 5,000 | $15.5000 | $77,500.00 |
| Purchase | 2/11/2021 | 2,000 | $29.7500 | $59,500.00 | Sale | 3/15/2021 | 5,000 | $16.2500 | $81,250.00 |
| Purchase | 2/12/2021 | 1,000 | $28.1300 | $28,130.00 | Sale * | 4/20/2021 | 5,000 | $11.1800 | $55,900.00 |
| Purchase | 2/12/2021 | 1,000 | $27.5000 | $27,500.00 | Retained | | 20,000 | $10.0213 | $200,426.32 |
| Purchase | 2/12/2021 | 990 | $27.0000 | $26,730.00 | | | | | |
| Purchase | 2/12/2021 | 644 | $27.1000 | $17,452.40 | | | | | |
| Purchase | 2/12/2021 | 600 | $27.0000 | $16,200.00 | | | | | |
| Purchase | 2/12/2021 | 356 | $27.1000 | $9,647.60 | | | | | |
| Purchase | 2/12/2021 | 171 | $27.0000 | $4,617.00 | | | | | |
| Purchase | 2/12/2021 | 171 | $27.0000 | $4,617.00 | | | | | |
| Purchase | 2/12/2021 | 58 | $27.0000 | $1,566.00 | | | | | |
| Purchase | 2/16/2021 | 2,000 | $25.6000 | $51,200.00 | | | | | |
| Purchase | 2/16/2021 | 2,000 | $25.0000 | $50,000.00 | | | | | |
| Purchase | 2/17/2021 | 1,000 | $23.8699 | $23,869.90 | | | | | |
| Purchase | 2/17/2021 | 900 | $24.0000 | $21,600.00 | | | | | |
| Purchase | 2/22/2021 | 1,100 | $23.5000 | $25,850.00 | | | | | |
| Purchase | 2/22/2021 | 1,000 | $23.4500 | $23,450.00 | | | | | |
| Purchase | 2/23/2021 | 2,077 | $19.3900 | $40,273.03 | | | | | |
| Purchase | 2/23/2021 | 1,923 | $19.3701 | $37,248.70 | | | | | |
| Purchase | 2/23/2021 | 1,000 | $21.0000 | $21,000.00 | | | | | |
| Purchase | 2/26/2021 | 2,000 | $18.5000 | $37,000.00 | | | | | |
| Purchase | 3/3/2021 | 1,500 | $19.5000 | $29,250.00 | | | | | |
| Purchase | 3/3/2021 | 1,500 | $19.0000 | $28,500.00 | | | | | |
| Purchase | 3/12/2021 | 2,386 | $14.2599 | $34,024.12 | | | | | |
| Purchase | 3/12/2021 | 1,050 | $14.2600 | $14,973.00 | | | | | |
| Purchase | 3/12/2021 | 864 | $14.2550 | $12,316.32 | | | | | |
| Purchase | 3/12/2021 | 700 | $14.2560 | $9,979.20 | | | | | |
| Purchase | 3/18/2021 | 5,000 | $13.7600 | $68,800.00 | | | | | |
| | | 48,090 | | $1,010,097.17 | | | 48,090 | | $744,053.82 |

*LIFO Losses in Lordstown Motors Corp. Common Shares*   ($266,043.36)

* Post-class sale adjusted per PSLRA.

*Total LIFO Loss:*  ($284,291.94)

**M.R.S. Leasing Corporation LTD**
**LIFO Gains in DiamondPeak Holdings Corp. Units**
CP: 8/3/20 - 3/24/21

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 8/6/2020 | 2,000 | $16.5000 | $33,000.00 | Sale | 8/6/2020 | 3,000 | $18.5000 | $55,500.00 |
| Purchase | 8/6/2020 | 3,000 | $17.5000 | $52,500.00 | Sale | 8/6/2020 | 50 | $16.3000 | $815.00 |
| | | | | | Sale | 8/6/2020 | 100 | $16.2600 | $1,626.00 |
| | | | | | Sale | 8/6/2020 | 713 | $16.2500 | $11,586.25 |
| | | | | | Sale | 8/6/2020 | 1,108 | $16.2500 | $18,005.00 |
| | | | | | Sale | 8/6/2020 | 29 | $16.3100 | $472.99 |
| | | 5,000 | | $85,500.00 | | | 5,000 | | $88,005.24 |

*LIFO Gains in DiamondPeak Holdings Corp. Units*  $2,505.24

**M.R.S. Leasing Corporation LTD**
**LIFO Losses in Lordstown Motors Corp. Common Shares**
CP: 8/3/20 - 3/24/21
Retained Shares Priced at       $10.02

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 8/17/2020 | 1,877 | $12.4990 | $23,460.62 | Sale | 8/17/2020 | 5,000 | $12.9650 | $64,825.00 |
| Purchase | 8/17/2020 | 252 | $12.5000 | $3,150.00 | Sale | 8/31/2020 | 4,000 | $16.8500 | $67,400.00 |
| Purchase | 8/17/2020 | 2,871 | $12.5500 | $36,031.05 | Sale | 9/2/2020 | 3,000 | $16.6000 | $49,800.00 |
| Purchase | 8/28/2020 | 1,000 | $16.5550 | $16,555.00 | Sale | 10/14/2020 | 35 | $26.1500 | $915.25 |
| Purchase | 8/28/2020 | 3,000 | $15.9990 | $47,997.00 | Sale | 10/14/2020 | 220 | $26.1400 | $5,750.80 |
| Purchase | 9/2/2020 | 2,900 | $16.4900 | $47,821.00 | Sale | 10/14/2020 | 695 | $26.1200 | $18,153.40 |
| Purchase | 9/2/2020 | 100 | $16.4970 | $1,649.70 | Sale | 10/14/2020 | 50 | $26.1700 | $1,308.50 |
| Purchase | 10/14/2020 | 1,000 | $25.9490 | $25,949.00 | Sale | 10/14/2020 | 1,000 | $25.7040 | $25,704.00 |
| Purchase | 10/14/2020 | 1,000 | $25.7140 | $25,714.00 | Sale | 11/5/2020 | 4,000 | $13.9200 | $55,680.00 |
| Purchase | 11/3/2020 | 1,000 | $13.4150 | $13,415.00 | Sale | 11/5/2020 | 2,000 | $16.4440 | $32,888.00 |
| Purchase | 11/3/2020 | 3,000 | $13.8000 | $41,400.00 | Sale | 11/5/2020 | 1,200 | $14.6500 | $17,580.00 |
| Purchase | 11/5/2020 | 100 | $16.8300 | $1,683.00 | Sale | 11/5/2020 | 1,600 | $14.6600 | $23,456.00 |
| Purchase | 11/5/2020 | 1,016 | $16.8200 | $17,089.12 | Sale | 11/5/2020 | 200 | $14.6700 | $2,934.00 |
| Purchase | 11/5/2020 | 884 | $16.8390 | $14,885.68 | Sale | 11/9/2020 | 2,935 | $18.0000 | $52,830.00 |
| Purchase | 11/5/2020 | 1,000 | $16.7550 | $16,755.00 | Sale | 11/9/2020 | 65 | $18.2000 | $1,183.00 |
| Purchase | 11/5/2020 | 500 | $16.2860 | $8,143.00 | Sale | 11/10/2020 | 500 | $18.3000 | $9,150.00 |
| Purchase | 11/5/2020 | 3,000 | $15.0000 | $45,000.00 | Sale | 11/10/2020 | 2,200 | $18.2980 | $40,255.60 |
| Purchase | 11/5/2020 | 500 | $16.1620 | $8,081.00 | Sale | 11/10/2020 | 300 | $18.3100 | $5,493.00 |
| Purchase | 11/5/2020 | 1,000 | $16.4280 | $16,428.00 | Sale | 11/13/2020 | 2,182 | $17.1800 | $37,486.76 |
| Purchase | 11/9/2020 | 3,000 | $17.4990 | $52,497.00 | Sale | 11/13/2020 | 818 | $17.1900 | $14,061.42 |
| Purchase | 11/10/2020 | 100 | $17.8400 | $1,784.00 | Sale | 11/18/2020 | 2,000 | $23.0000 | $46,000.00 |
| Purchase | 11/10/2020 | 200 | $17.8800 | $3,576.00 | Sale | 11/19/2020 | 4,000 | $25.1200 | $100,480.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 11/10/2020 | 500 | $17.8490 | $8,924.50 | Sale | 11/19/2020 | 4,000 | $25.3500 | $101,400.00 |
| Purchase | 11/10/2020 | 2,115 | $17.8490 | $37,750.64 | Sale | 11/19/2020 | 3,500 | $24.3000 | $85,050.00 |
| Purchase | 11/10/2020 | 85 | $17.8900 | $1,520.65 | Sale | 11/20/2020 | 1 | $28.3800 | $28.38 |
| Purchase | 11/16/2020 | 2,000 | $16.9490 | $33,898.00 | Sale | 11/20/2020 | 100 | $28.3700 | $2,837.00 |
| Purchase | 11/16/2020 | 1,000 | $16.8800 | $16,880.00 | Sale | 11/20/2020 | 200 | $28.4200 | $5,684.00 |
| Purchase | 11/18/2020 | 1,000 | $21.7550 | $21,755.00 | Sale | 11/20/2020 | 200 | $28.3900 | $5,678.00 |
| Purchase | 11/18/2020 | 15,000 | $21.7890 | $326,835.00 | Sale | 11/20/2020 | 1,202 | $28.4500 | $34,196.90 |
| Purchase | 11/19/2020 | 4,000 | $23.6500 | $94,600.00 | Sale | 11/20/2020 | 3,297 | $28.3400 | $93,436.98 |
| Purchase | 11/19/2020 | 3,000 | $24.5590 | $73,677.00 | Sale | 11/20/2020 | 100 | $28.5820 | $2,858.20 |
| Purchase | 11/19/2020 | 10 | $23.9950 | $239.95 | Sale | 11/20/2020 | 2,100 | $28.5700 | $59,997.00 |
| Purchase | 11/19/2020 | 990 | $24.0000 | $23,760.00 | Sale | 11/20/2020 | 2,800 | $28.5850 | $80,038.00 |
| Purchase | 11/20/2020 | 5,000 | $28.0000 | $140,000.00 | Sale | 11/23/2020 | 31 | $28.7500 | $891.25 |
| Purchase | 11/20/2020 | 3,000 | $28.5290 | $85,587.00 | Sale | 11/23/2020 | 100 | $28.8000 | $2,880.00 |
| Purchase | 11/20/2020 | 1,000 | $25.5000 | $25,500.00 | Sale | 11/23/2020 | 2 | $28.6100 | $57.22 |
| Purchase | 11/20/2020 | 10 | $26.1200 | $261.20 | Sale | 11/23/2020 | 2,311 | $28.5000 | $65,863.50 |
| Purchase | 11/20/2020 | 100 | $26.1100 | $2,611.00 | Sale | 11/23/2020 | 556 | $28.6500 | $15,929.40 |
| Purchase | 11/20/2020 | 500 | $26.1400 | $13,070.00 | Sale | 12/8/2020 | 53 | $22.0300 | $1,167.59 |
| Purchase | 11/20/2020 | 2,282 | $26.1500 | $59,674.30 | Sale | 12/8/2020 | 145 | $22.0200 | $3,192.90 |
| Purchase | 11/20/2020 | 1,108 | $26.2000 | $29,029.60 | Sale | 12/8/2020 | 151 | $22.1000 | $3,337.10 |
| Purchase | 12/8/2020 | 4,000 | $22.4000 | $89,600.00 | Sale | 12/8/2020 | 353 | $22.0500 | $7,783.65 |
| Purchase | 12/10/2020 | 3,000 | $20.5700 | $61,710.00 | Sale | 12/8/2020 | 167 | $22.1500 | $3,699.05 |
| Purchase | 12/10/2020 | 1,000 | $19.3610 | $19,361.00 | Sale | 12/8/2020 | 1,378 | $22.0000 | $30,316.00 |
| Purchase | 12/10/2020 | 1,000 | $19.6000 | $19,600.00 | Sale | 12/8/2020 | 50 | $22.0100 | $1,100.50 |
| Purchase | 12/11/2020 | 1,000 | $19.1700 | $19,170.00 | Sale | 12/8/2020 | 20 | $21.9000 | $438.00 |
| Purchase | 12/14/2020 | 1,000 | $18.6500 | $18,650.00 | Sale | 12/8/2020 | 100 | $21.9100 | $2,191.00 |
| Purchase | 12/15/2020 | 2,000 | $20.5950 | $41,190.00 | Sale | 12/8/2020 | 143 | $21.9500 | $3,138.85 |
| Purchase | 12/16/2020 | 2 | $19.0800 | $38.16 | Sale | 12/8/2020 | 1,440 | $22.0000 | $31,680.00 |
| Purchase | 12/16/2020 | 170 | $19.0900 | $3,245.30 | Sale | 12/14/2020 | 4,000 | $18.9500 | $75,800.00 |
| Purchase | 12/16/2020 | 1,127 | $19.0700 | $21,491.89 | Sale | 12/14/2020 | 3,000 | $18.9400 | $56,820.00 |
| Purchase | 12/16/2020 | 701 | $19.1000 | $13,389.10 | Sale | 12/17/2020 | 4,000 | $20.0200 | $80,080.00 |
| Purchase | 12/16/2020 | 2,000 | $19.4600 | $38,920.00 | Sale | 12/17/2020 | 2,000 | $20.0000 | $40,000.00 |
| Purchase | 12/17/2020 | 2,000 | $20.3490 | $40,698.00 | Sale | 12/21/2020 | 1,000 | $19.1540 | $19,154.00 |
| Purchase | 12/17/2020 | 2,000 | $20.5390 | $41,078.00 | Sale | 1/4/2021 | 7,000 | $22.0600 | $154,420.00 |
| Purchase | 12/18/2020 | 1,000 | $19.4100 | $19,410.00 | Sale | 1/4/2021 | 2,000 | $22.2000 | $44,400.00 |
| Purchase | 12/18/2020 | 2,000 | $19.7000 | $39,400.00 | Sale | 1/7/2021 | 1,000 | $20.7100 | $20,710.00 |
| Purchase | 12/21/2020 | 1,000 | $19.0250 | $19,025.00 | Sale | 1/7/2021 | 1,000 | $20.7100 | $20,710.00 |
| Purchase | 12/23/2020 | 1,000 | $19.2300 | $19,230.00 | Sale | 1/13/2021 | 2,000 | $27.2860 | $54,572.00 |
| Purchase | 12/23/2020 | 1,000 | $19.1590 | $19,159.00 | Sale | 1/13/2021 | 1,800 | $25.9170 | $46,650.60 |
| Purchase | 1/5/2021 | 2,000 | $20.5860 | $41,172.00 | Sale | 1/13/2021 | 200 | $25.9200 | $5,184.00 |
| Purchase | 1/13/2021 | 2,000 | $27.3290 | $54,658.00 | Sale | 1/13/2021 | 2,000 | $28.4150 | $56,830.00 |
| Purchase | 1/13/2021 | 2,000 | $26.2800 | $52,560.00 | Sale | 1/15/2021 | 5,000 | $27.9700 | $139,850.00 |
| Purchase | 1/13/2021 | 2,000 | $27.2090 | $54,418.00 | Sale | 1/15/2021 | 2,000 | $26.7000 | $53,400.00 |
| Purchase | 1/13/2021 | 200 | $27.9700 | $5,594.00 | Sale | 1/26/2021 | 2,000 | $23.7400 | $47,480.00 |
| Purchase | 1/13/2021 | 1,300 | $27.9600 | $36,348.00 | Sale | 1/26/2021 | 2,000 | $24.5000 | $49,000.00 |
| Purchase | 1/13/2021 | 500 | $27.9790 | $13,989.50 | Sale | 1/26/2021 | 100 | $24.6300 | $2,463.00 |
| Purchase | 1/14/2021 | 1,000 | $26.5420 | $26,542.00 | Sale | 1/26/2021 | 1,790 | $24.6350 | $44,096.65 |
| Purchase | 1/14/2021 | 1,000 | $25.0890 | $25,089.00 | Sale | 1/26/2021 | 110 | $24.6700 | $2,713.70 |
| Purchase | 1/14/2021 | 1,000 | $25.6000 | $25,600.00 | Sale | 1/27/2021 | 1,000 | $23.2700 | $23,270.00 |

| Purchase | 1/14/2021 | 1,000 | $25.7900 | $25,790.00 | Sale | 1/27/2021 | 1,000 | $24.4000 | $24,400.00 |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 1/14/2021 | 1,000 | $25.9950 | $25,995.00 | Sale | 1/28/2021 | 3,000 | $27.0500 | $81,150.00 |
| Purchase | 1/15/2021 | 1,000 | $26.0250 | $26,025.00 | Sale | 1/29/2021 | 100 | $28.1700 | $2,817.00 |
| Purchase | 1/15/2021 | 2,000 | $26.4480 | $52,896.00 | Sale | 1/29/2021 | 1,154 | $28.1800 | $32,519.72 |
| Purchase | 1/15/2021 | 5,000 | $27.0000 | $135,000.00 | Sale | 1/29/2021 | 1,746 | $28.1900 | $49,219.74 |
| Purchase | 1/19/2021 | 1,000 | $25.6150 | $25,615.00 | Sale | 2/2/2021 | 2,000 | $26.0000 | $52,000.00 |
| Purchase | 1/20/2021 | 1,000 | $24.3150 | $24,315.00 | Sale | 2/2/2021 | 2,000 | $26.2000 | $52,400.00 |
| Purchase | 1/20/2021 | 1,000 | $24.5300 | $24,530.00 | Sale | 2/2/2021 | 2,000 | $26.4000 | $52,800.00 |
| Purchase | 1/26/2021 | 1,000 | $23.3730 | $23,373.00 | Sale | 2/3/2021 | 500 | $25.0000 | $12,500.00 |
| Purchase | 1/26/2021 | 2,000 | $23.7000 | $47,400.00 | Sale | 2/4/2021 | 380 | $26.2000 | $9,956.00 |
| Purchase | 1/27/2021 | 1,000 | $22.8300 | $22,830.00 | Sale | 2/5/2021 | 1,120 | $25.8920 | $28,999.04 |
| Purchase | 1/27/2021 | 1,000 | $23.6280 | $23,628.00 | Sale | 2/5/2021 | 1,120 | $27.0000 | $30,240.00 |
| Purchase | 1/27/2021 | 1,000 | $22.7450 | $22,745.00 | Sale | 2/9/2021 | 500 | $26.6930 | $13,346.50 |
| Purchase | 1/27/2021 | 1,000 | $22.9550 | $22,955.00 | Sale | 2/10/2021 | 1,500 | $27.5200 | $41,280.00 |
| Purchase | 1/29/2021 | 1,000 | $25.9770 | $25,977.00 | Sale | 2/12/2021 | 5,000 | $28.6700 | $143,350.00 |
| Purchase | 1/29/2021 | 2,000 | $28.0650 | $56,130.00 | Sale | 2/12/2021 | 1,731 | $27.7000 | $47,948.70 |
| Purchase | 1/29/2021 | 1,000 | $26.3590 | $26,359.00 | Sale | 2/12/2021 | 269 | $27.7500 | $7,464.75 |
| Purchase | 1/29/2021 | 1,000 | $27.7370 | $27,737.00 | Sale | 2/12/2021 | 1,967 | $27.7500 | $54,584.25 |
| Purchase | 1/29/2021 | 1,000 | $27.2300 | $27,230.00 | Sale | 2/12/2021 | 1,033 | $28.0000 | $28,924.00 |
| Purchase | 2/1/2021 | 500 | $25.3790 | $12,689.50 | Sale | 2/12/2021 | 5,000 | $28.9500 | $144,750.00 |
| Purchase | 2/1/2021 | 500 | $24.0780 | $12,039.00 | Sale | 2/12/2021 | 4,800 | $28.7600 | $138,048.00 |
| Purchase | 2/2/2021 | 1,000 | $25.2500 | $25,250.00 | Sale | 2/12/2021 | 200 | $28.8600 | $5,772.00 |
| Purchase | 2/2/2021 | 1,000 | $25.5090 | $25,509.00 | Sale | 2/16/2021 | 2,852 | $30.0000 | $85,560.00 |
| Purchase | 2/2/2021 | 2,000 | $25.9200 | $51,840.00 | Sale | 2/18/2021 | 1,148 | $27.2010 | $31,226.75 |
| Purchase | 2/2/2021 | 1,000 | $24.9590 | $24,959.00 | Sale | 2/18/2021 | 755 | $25.1300 | $18,973.15 |
| Purchase | 2/2/2021 | 1,000 | $25.7000 | $25,700.00 | Sale | 2/18/2021 | 1,200 | $25.1000 | $30,120.00 |
| Purchase | 2/4/2021 | 1,000 | $25.0300 | $25,030.00 | Sale | 2/18/2021 | 3,277 | $25.0900 | $82,219.93 |
| Purchase | 2/5/2021 | 1,120 | $26.9300 | $30,161.60 | Sale | 2/18/2021 | 3,611 | $25.1400 | $90,780.54 |
| Purchase | 2/8/2021 | 1,000 | $26.7500 | $26,750.00 | Sale | 2/18/2021 | 7 | $25.1500 | $176.05 |
| Purchase | 2/9/2021 | 10 | $26.7000 | $267.00 | Sale | 2/18/2021 | 150 | $25.0800 | $3,762.00 |
| Purchase | 2/9/2021 | 476 | $26.7090 | $12,713.48 | Sale | 2/19/2021 | 1,000 | $24.3100 | $24,310.00 |
| Purchase | 2/9/2021 | 514 | $26.7200 | $13,734.08 | Sale | 3/3/2021 | 2,170 | $19.9250 | $43,237.25 |
| Purchase | 2/12/2021 | 5,000 | $28.3480 | $141,740.00 | Sale | 3/3/2021 | 30 | $19.9350 | $598.05 |
| Purchase | 2/12/2021 | 3,000 | $30.7300 | $92,190.00 | Sale | 3/19/2021 | 2,200 | $14.5100 | $31,922.00 |
| Purchase | 2/12/2021 | 5,000 | $28.0000 | $140,000.00 | Retained | | 25,800 | $10.0213 | $258,549.95 |
| Purchase | 2/12/2021 | 2,000 | $30.0890 | $60,178.00 | | | | | |
| Purchase | 2/12/2021 | 1,000 | $29.4390 | $29,439.00 | | | | | |
| Purchase | 2/16/2021 | 1,000 | $29.6990 | $29,699.00 | | | | | |
| Purchase | 2/16/2021 | 1,000 | $29.5400 | $29,540.00 | | | | | |
| Purchase | 2/16/2021 | 1,000 | $29.8600 | $29,860.00 | | | | | |
| Purchase | 2/16/2021 | 1,000 | $30.6870 | $30,687.00 | | | | | |
| Purchase | 2/16/2021 | 1,000 | $29.0900 | $29,090.00 | | | | | |
| Purchase | 2/17/2021 | 1,000 | $27.2690 | $27,269.00 | | | | | |
| Purchase | 2/17/2021 | 1,000 | $27.0600 | $27,060.00 | | | | | |
| Purchase | 2/18/2021 | 10,000 | $25.1500 | $251,500.00 | | | | | |
| Purchase | 2/19/2021 | 100 | $23.9000 | $2,390.00 | | | | | |
| Purchase | 2/19/2021 | 100 | $23.8900 | $2,389.00 | | | | | |
| Purchase | 2/19/2021 | 300 | $23.9200 | $7,176.00 | | | | | |

| Transaction | Date | Shares | Price | Cost |
|---|---|---|---|---|
| Purchase | 2/19/2021 | 500 | $23.9400 | $11,970.00 |
| Purchase | 2/24/2021 | 311 | $23.4550 | $7,294.51 |
| Purchase | 2/24/2021 | 689 | $23.4600 | $16,163.94 |
| Purchase | 2/24/2021 | 1,000 | $23.8190 | $23,819.00 |
| Purchase | 3/2/2021 | 200 | $19.5080 | $3,901.60 |
| Purchase | 3/3/2021 | 2,000 | $19.9500 | $39,900.00 |
| Purchase | 3/5/2021 | 200 | $19.0100 | $3,802.00 |
| Purchase | 3/22/2021 | 300 | $13.5600 | $4,068.00 |
| Purchase | 3/22/2021 | 2,000 | $14.2000 | $28,400.00 |
| | | 189,820 | | $4,367,672.66 |

189,820     $4,111,714.52

*LIFO Losses in Lordstown Motors Corp. Common Shares* ($255,958.15)

**M.R.S. Leasing Corporation LTD**
**LIFO Losses in Lordstown Motors Corp. Warrants**
CP: 8/3/20 - 3/24/21

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 8/5/2020 | 5,000 | $2.5990 | $12,995.00 | Sale | 8/6/2020 | 1,700 | $4.5000 | $7,650.00 |
| Purchase | 8/5/2020 | 5,000 | $2.9000 | $14,500.00 | Sale | 8/6/2020 | 1,100 | $4.6500 | $5,115.00 |
| Purchase | 8/6/2020 | 1 | $4.8000 | $4.80 | Sale | 8/6/2020 | 2,200 | $4.6700 | $10,274.00 |
| Purchase | 8/6/2020 | 13 | $4.8600 | $63.18 | Sale | 8/6/2020 | 200 | $4.2800 | $856.00 |
| Purchase | 8/6/2020 | 4,986 | $4.8900 | $24,381.54 | Sale | 8/6/2020 | 200 | $4.2600 | $852.00 |
| Purchase | 8/7/2020 | 2,500 | $4.2490 | $10,622.50 | Sale | 8/6/2020 | 1,789 | $4.2700 | $7,639.03 |
| Purchase | 9/16/2020 | 4,800 | $14.2500 | $68,400.00 | Sale | 8/6/2020 | 5,511 | $4.3000 | $23,697.30 |
| Purchase | 9/16/2020 | 200 | $14.3300 | $2,866.00 | Sale | 8/6/2020 | 2,300 | $4.3250 | $9,947.50 |
| Purchase | 9/16/2020 | 1,500 | $12.6750 | $19,012.50 | Sale | 8/7/2020 | 1,078 | $4.0300 | $4,344.34 |
| Purchase | 9/16/2020 | 3,000 | $12.4990 | $37,497.00 | Sale | 8/7/2020 | 1,322 | $4.0200 | $5,314.44 |
| Purchase | 9/16/2020 | 1,000 | $13.9500 | $13,950.00 | Sale | 8/7/2020 | 100 | $4.0400 | $404.00 |
| Purchase | 9/17/2020 | 1,000 | $12.8000 | $12,800.00 | Sale | 9/16/2020 | 25 | $12.6450 | $316.13 |
| Purchase | 9/17/2020 | 474 | $11.1000 | $5,261.40 | Sale | 9/16/2020 | 100 | $12.6650 | $1,266.50 |
| Purchase | 9/17/2020 | 2,526 | $11.1100 | $28,063.86 | Sale | 9/16/2020 | 130 | $12.6750 | $1,647.75 |
| Purchase | 9/17/2020 | 2,000 | $12.0990 | $24,198.00 | Sale | 9/16/2020 | 325 | $12.6550 | $4,112.88 |
| Purchase | 9/17/2020 | 890 | $11.1200 | $9,896.80 | Sale | 9/16/2020 | 21 | $12.7100 | $266.91 |
| Purchase | 9/18/2020 | 1,000 | $11.9990 | $11,999.00 | Sale | 9/16/2020 | 899 | $12.6250 | $11,349.88 |
| Purchase | 9/18/2020 | 1,000 | $11.9490 | $11,949.00 | Sale | 9/17/2020 | 890 | $12.8180 | $11,408.02 |
| Purchase | 9/18/2020 | 2,000 | $12.0700 | $24,140.00 | Sale | 9/18/2020 | 2,000 | $12.3000 | $24,600.00 |
| Purchase | 9/24/2020 | 56 | $12.2000 | $683.20 | Sale | 9/21/2020 | 10 | $12.0000 | $120.00 |
| Purchase | 9/24/2020 | 2,909 | $12.2900 | $35,751.61 | Sale | 9/21/2020 | 20 | $12.2000 | $244.00 |
| Purchase | 9/24/2020 | 35 | $12.2960 | $430.36 | Sale | 9/21/2020 | 1,944 | $12.0400 | $23,405.76 |
| Purchase | 9/24/2020 | 1,000 | $11.7500 | $11,750.00 | Sale | 9/21/2020 | 20 | $12.4000 | $248.00 |
| Purchase | 9/24/2020 | 30 | $12.1000 | $363.00 | Sale | 9/22/2020 | 500 | $12.8000 | $6,400.00 |
| Purchase | 9/28/2020 | 200 | $8.3250 | $1,665.00 | Sale | 9/22/2020 | 1,606 | $12.8350 | $20,613.01 |
| Purchase | 9/28/2020 | 1,000 | $8.3200 | $8,320.00 | Sale | 9/22/2020 | 900 | $12.9010 | $11,610.90 |
| Purchase | 9/28/2020 | 1,200 | $8.3400 | $10,008.00 | Sale | 9/28/2020 | 700 | $8.3100 | $5,817.00 |
| Purchase | 9/28/2020 | 600 | $8.3700 | $5,022.00 | Sale | 9/28/2020 | 840 | $8.3000 | $6,972.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 9/29/2020 | 1,000 | $9.1080 | $9,108.00 | Sale | 9/28/2020 | 1,000 | $8.4000 | $8,400.00 |
| Purchase | 10/2/2020 | 700 | $10.7180 | $7,502.60 | Sale | 9/28/2020 | 460 | $8.4500 | $3,887.00 |
| Purchase | 10/2/2020 | 300 | $10.8080 | $3,242.40 | Sale | 9/29/2020 | 1,030 | $9.2950 | $9,573.85 |
| Purchase | 10/21/2020 | 2,000 | $8.4490 | $16,898.00 | Sale | 9/30/2020 | 110 | $11.0500 | $1,215.50 |
| Purchase | 10/27/2020 | 1,668 | $6.9900 | $11,659.32 | Sale | 10/1/2020 | 890 | $10.9540 | $9,749.06 |
| Purchase | 10/27/2020 | 332 | $6.9990 | $2,323.67 | Sale | 10/14/2020 | 100 | $8.7000 | $870.00 |
| Purchase | 10/27/2020 | 2,000 | $6.8090 | $13,618.00 | Sale | 10/14/2020 | 398 | $8.6600 | $3,446.68 |
| Purchase | 11/30/2020 | 2,000 | $10.8790 | $21,758.00 | Sale | 10/14/2020 | 600 | $8.7500 | $5,250.00 |
| Purchase | 11/30/2020 | 1,000 | $10.4290 | $10,429.00 | Sale | 10/14/2020 | 902 | $8.7600 | $7,901.52 |
| Purchase | 12/2/2020 | 100 | $8.7900 | $879.00 | Sale | 10/16/2020 | 100 | $9.6850 | $968.50 |
| Purchase | 12/2/2020 | 100 | $8.7800 | $878.00 | Sale | 10/16/2020 | 340 | $9.7000 | $3,298.00 |
| Purchase | 12/2/2020 | 373 | $8.7930 | $3,279.79 | Sale | 10/16/2020 | 2,200 | $9.6900 | $21,318.00 |
| Purchase | 12/2/2020 | 427 | $8.9200 | $3,808.84 | Sale | 10/16/2020 | 3,320 | $9.6800 | $32,137.60 |
| Purchase | 12/2/2020 | 600 | $8.9190 | $5,351.40 | Sale | 10/16/2020 | 200 | $9.7100 | $1,942.00 |
| Purchase | 12/2/2020 | 600 | $8.9100 | $5,346.00 | Sale | 10/16/2020 | 640 | $9.6800 | $6,195.20 |
| Purchase | 12/2/2020 | 800 | $8.9190 | $7,135.20 | Sale | 10/16/2020 | 200 | $9.7750 | $1,955.00 |
| Purchase | 12/2/2020 | 575 | $8.7390 | $5,024.93 | Sale | 10/30/2020 | 51 | $5.1200 | $261.12 |
| Purchase | 12/2/2020 | 283 | $8.7800 | $2,484.74 | Sale | 11/3/2020 | 300 | $4.4100 | $1,323.00 |
| Purchase | 12/2/2020 | 142 | $8.9070 | $1,264.79 | Sale | 11/3/2020 | 600 | $4.3800 | $2,628.00 |
| Purchase | 12/7/2020 | 200 | $9.7750 | $1,955.00 | Sale | 11/3/2020 | 1,849 | $4.3100 | $7,969.19 |
| Purchase | 12/7/2020 | 280 | $9.7890 | $2,740.92 | Sale | 11/3/2020 | 200 | $4.4200 | $884.00 |
| Purchase | 12/7/2020 | 100 | $9.8000 | $980.00 | Sale | 12/7/2020 | 3,984 | $10.1500 | $40,437.60 |
| Purchase | 12/7/2020 | 1,720 | $9.8270 | $16,902.44 | Sale | 12/7/2020 | 1,016 | $10.1000 | $10,261.60 |
| Purchase | 12/7/2020 | 2,700 | $9.8400 | $26,568.00 | Sale | 12/8/2020 | 14,000 | $9.9000 | $138,600.00 |
| Purchase | 12/7/2020 | 260 | $9.6500 | $2,509.00 | Sale | 12/8/2020 | 3,260 | $9.9500 | $32,437.00 |
| | | 66,180 | | $590,240.79 | | | 66,180 | | $559,401.76 |

*LIFO Losses in Lordstown Motors Corp. Warrants*  ($30,839.03)

*Total LIFO Losses:* ($159,742.55)

**Mario Guerrero - Account 1**
**LIFO Losses in Lordstown Motors Corp. Common Shares**
CP: 8/3/20 - 3/24/21
Retained Shares Priced at          $10.02

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 2/22/2021 | 53 | $22.7300 | $1,204.69 | Retained | | 12,400 | $10.0213 | $124,264.32 |
| Purchase | 2/22/2021 | 200 | $22.7300 | $4,546.00 | | | | | |
| Purchase | 2/22/2021 | 300 | $22.7300 | $6,819.00 | | | | | |
| Purchase | 2/22/2021 | 6 | $22.7200 | $136.32 | | | | | |
| Purchase | 2/22/2021 | 1,045 | $22.7200 | $23,742.40 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7200 | $2,272.00 | | | | | |
| Purchase | 2/22/2021 | 3,100 | $22.7199 | $70,431.69 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7100 | $2,271.00 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7100 | $2,271.00 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7100 | $2,271.00 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7100 | $2,271.00 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7100 | $2,271.00 | | | | | |
| Purchase | 2/22/2021 | 400 | $22.7100 | $9,084.00 | | | | | |
| Purchase | 2/22/2021 | 45 | $22.7300 | $1,022.85 | | | | | |
| Purchase | 2/22/2021 | 45 | $22.7300 | $1,022.85 | | | | | |
| Purchase | 2/22/2021 | 4 | $22.7300 | $90.92 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7300 | $2,273.00 | | | | | |
| Purchase | 2/22/2021 | 300 | $22.7300 | $6,819.00 | | | | | |
| Purchase | 2/22/2021 | 480 | $22.7300 | $10,910.40 | | | | | |
| Purchase | 2/22/2021 | 60 | $22.7300 | $1,363.80 | | | | | |
| Purchase | 2/22/2021 | 60 | $22.7300 | $1,363.80 | | | | | |
| Purchase | 2/22/2021 | 45 | $22.7300 | $1,022.85 | | | | | |
| Purchase | 2/22/2021 | 200 | $22.7300 | $4,546.00 | | | | | |
| Purchase | 2/22/2021 | 110 | $22.7300 | $2,500.30 | | | | | |
| Purchase | 2/22/2021 | 200 | $22.7300 | $4,546.00 | | | | | |
| Purchase | 2/22/2021 | 1,000 | $22.7300 | $22,730.00 | | | | | |
| Purchase | 2/22/2021 | 100 | $22.7300 | $2,273.00 | | | | | |
| Purchase | 2/22/2021 | 547 | $22.7300 | $12,433.31 | | | | | |
| Purchase | 2/23/2021 | 200 | $19.6600 | $3,932.00 | | | | | |
| Purchase | 2/23/2021 | 3,200 | $19.6600 | $62,912.00 | | | | | |
| | | 12,400 | | $271,353.18 | | | 12,400 | | $124,264.32 |

*LIFO Losses in Lordstown Motors Corp. Common Shares*  ($147,088.86)

**Mario Guerrero - Account 2**
**LIFO Losses in Lordstown Motors Corp. Common Shares**
CP: 8/3/20 - 3/24/21
Retained Shares Priced at                              $10.02

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 2/22/2021 | 1,000 | $22.6750 | $22,675.00 | Retained | | 1,000 | $10.0213 | $10,021.32 |
| | | 1,000 | | $22,675.00 | | | 1,000 | | $10,021.32 |

*LIFO Losses in Lordstown Motors Corp. Common Shares*  ($12,653.68)

**Carole Cooper**
**LIFO Losses in Lordstown Motors Corp. Common Shares**
CP: 8/3/20 - 3/24/21

| Transaction | Date | Shares | Price | Cost | Transaction | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| Purchase | 8/3/2020 | 2,000 | $11.7000 | $23,400.00 | Sale | 8/10/2020 | 5 | $12.5200 | $62.60 |
| Purchase | 8/4/2020 | 850 | $14.9500 | $12,707.50 | Sale | 11/2/2020 | 2,649 | $13.5000 | $35,761.50 |
| Purchase | 8/4/2020 | 840 | $14.3900 | $12,087.60 | Sale | 11/3/2020 | 6,000 | $14.0400 | $84,240.00 |
| Purchase | 8/28/2020 | 460 | $18.9400 | $8,712.40 | Sale | 3/16/2021 | 15,996 | $15.6800 | $250,817.28 |
| Purchase | 9/3/2020 | 4,000 | $18.7000 | $74,800.00 | | | | | |
| Purchase | 10/5/2020 | 2,000 | $23.4000 | $46,800.00 | | | | | |
| Purchase | 11/3/2020 | 7,000 | $13.6000 | $95,200.00 | | | | | |
| Purchase | 11/5/2020 | 2,000 | $17.3300 | $34,660.00 | | | | | |
| Purchase | 11/18/2020 | 1,000 | $26.0600 | $26,060.00 | | | | | |
| Purchase | 11/19/2020 | 1,000 | $28.2000 | $28,200.00 | | | | | |
| Purchase | 11/19/2020 | 1,000 | $27.8700 | $27,870.00 | | | | | |
| Purchase | 11/20/2020 | 500 | $26.5700 | $13,285.00 | | | | | |
| Purchase | 11/24/2020 | 2,000 | $26.3800 | $52,760.00 | | | | | |
| | | 24,650 | | $456,542.50 | | | 24,650 | | $370,881.38 |

*LIFO Losses in Lordstown Motors Corp. Common Shares* ($85,661.12)

# EXHIBIT C

**JOINT DECLARATION OF ETHAN FINGERER, KEVIN LEVENT, MICHAEL A. JONES, MARIO GUERRERO, AND CAROLE COOPER**

We, Ethan Fingerer, Kevin Levent, Michael A. Jones, Mario Guerrero, and Carole Cooper, pursuant to 28 U.S.C. § 1746, declare as follows:

1. We respectfully submit this Joint Declaration in support of our motion for appointment as Lead Plaintiff in the securities class action litigation against Lordstown Motors Corp. (the "Company" or "Lordstown") and certain of the Company's executive officers. Each of us has personal knowledge about the information in this Declaration relating to ourselves or to the institution with which we are associated.

2. I, Ethan Fingerer, am a financial advisor. I graduated from the New York University Stern School of Business with a bachelor's degree in finance and international business. I have been investing in the stock market for approximately 30 years. I am familiar with the facts and circumstances that are the subject matter of this litigation. As set forth in our motion for appointment as Lead Plaintiff and supporting papers, I suffered substantial losses from my personal investments in the relevant securities during the Class Period. I understand the responsibilities and obligations with which a lead plaintiff is charged under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which include acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel. I accept these responsibilities and am willing to oversee the vigorous prosecution of this litigation in order to maximize the class's recovery.

3. I, Kevin Levent, am the President, Chief Executive Officer, and owner of one of the largest real estate, insurance, and mortgage brokerage companies in Georgia, with 28 offices and more than 2,400 agents. In connection with my business, I have been deposed multiple times

1

and have extensive experience working with and managing attorneys. I have been investing in the stock market for more than 20 years. I am familiar with the facts and circumstances that are the subject matter of this litigation. As set forth in our motion for appointment as Lead Plaintiff and supporting papers, I suffered substantial losses from my investments in the relevant securities during the Class Period. I understand the responsibilities and obligations with which a lead plaintiff is charged under the PSLRA, which include acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel. I accept these responsibilities and am willing to oversee the vigorous prosecution of this litigation in order to maximize the class's recovery.

4.      I, Michael A. Jones, am the owner and President of M.R.S. Leasing Corporation LTD ("MRS"), and am authorized to make this Joint Declaration on its behalf. MRS is a heavy equipment rental company that I founded in 2003, which is now non-operational due to my retirement. Through 2018, MRS was primarily a contracting company doing concrete form works, city building sites, and offsite civil works. I have been investing on behalf of MRS for approximately five years. MRS is familiar with the facts and circumstances that are the subject matter of this litigation. As set forth in our motion for appointment as Lead Plaintiff and supporting papers, MRS suffered substantial losses from its investments in the relevant securities during the Class Period. MRS understands the responsibilities and obligations with which a lead plaintiff is charged under the PSLRA, which include acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel. MRS accepts these responsibilities and is willing to oversee the vigorous prosecution of this litigation in order to maximize the class's recovery.

5. I, Mario Guerrero, have worked as an engineer for the United States Army for 12 years. I received undergraduate and graduate degrees in civil engineering from the Polytechnic University of Puerto Rico and Missouri University of Science and Technology, respectively. I am familiar with the facts and circumstances that are the subject matter of this litigation. As set forth in our motion for appointment as Lead Plaintiff and supporting papers, I suffered substantial losses from my investments in the relevant securities during the Class Period. I understand the responsibilities and obligations with which a lead plaintiff is charged under the PSLRA, which include acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel. I accept these responsibilities and am willing to oversee the vigorous prosecution of this litigation in order to maximize the class's recovery.

6. I, Carole Cooper, am currently retired. Prior to my retirement in 2017, I managed my husband's podiatry practice for forty years. I have been investing in the stock market for more than 30 years. I am familiar with the facts and circumstances that are the subject matter of this litigation. As set forth in our motion for appointment as Lead Plaintiff and supporting papers, I suffered substantial losses from my investments in the relevant securities during the Class Period. I understand the responsibilities and obligations with which a lead plaintiff is charged under the PSLRA, which include acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel. I accept these responsibilities and am willing to oversee the vigorous prosecution of this litigation in order to maximize the class's recovery.

7. We are each strongly motivated to recover the significant losses we suffered as a result of the defendants' violations of the federal securities laws. Accordingly, we believe that this case should be prosecuted by investors with a financial interest substantial enough to ensure that the action is prosecuted zealously, efficiently, and in the best interests of the class. Our principal

3

goal in seeking to serve as Lead Plaintiff in this case is to maximize the class's recovery from all culpable parties.

8.      We believe that we can maximize the class's recovery by seeking joint appointment as Lead Plaintiff and by seeking the appointment of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Block & Leviton LLP ("Block & Leviton") as Lead Counsel.  After reviewing the allegations in this litigation and consulting with our counsel, we each independently determined to seek joint appointment as Lead Plaintiff, and subsequently approved the filing of a joint motion seeking appointment as Lead Plaintiff.  We believe our ability to jointly lead this case would provide the class the benefits of joint decision-making.

9.      Prior to seeking appointment as Lead Plaintiff, we convened a joint conference call to formalize our commitment to jointly prosecute this litigation and to discuss our duties as Lead Plaintiff.  During the joint conference call, we discussed our respective losses arising from defendants' misconduct; the claims against the various defendants; and the procedures and protocols we would follow in jointly prosecuting the case (including exchanging contact information so we can communicate directly if needed).  We intend to make all decisions jointly, taking into consideration Kessler Topaz and Block & Leviton's advice.  We are confident in our ability to reach joint decisions regarding litigation matters and will use consensus decision making to maximize the recovery for the class.

10.      We each understand that we are under no obligation to seek appointment as Lead Plaintiff (individually or as a group) or to propose the appointment of Kessler Topaz and Block & Leviton as Lead Counsel.  Each of us understands that we were free to select and propose any qualified counsel to serve as Lead Counsel.

11.     Through supervision of proposed Lead Counsel, we will ensure that this action is prosecuted for the benefit of the class in an efficient and effective manner.  In order to achieve this result, we plan on consulting with each other and with counsel regarding the prosecution of this lawsuit via telephone, email, and videoconference.  We also understand that some of these meetings may need to be conducted without counsel.  To this end, we each have exchanged contact information for one another, and are able to call each other with and without counsel as needed, including on an emergency basis if circumstances arise requiring such urgent communications.

12.     We hereby reaffirm our commitment to satisfying the fiduciary obligations that we will assume if appointed Lead Plaintiff, including by conferring with each other and counsel regarding litigation strategy and other matters, attending court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents.  Through these and other measures, we will ensure that the Lordstown securities litigation will be vigorously prosecuted consistently with the Lead Plaintiff's obligation under the PSLRA and in the best interests of the class, and will seek to obtain the greatest possible recovery for the class.

**[REMAINDER INTENTIONALLY BLANK]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements relating to me are true and correct to the best of my knowledge.

Executed this date _____5/17/2021_____.


_____ [signature] _____

Ethan Fingerer

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to me are true and correct to the best of my knowledge.

Executed this date _____5/17/2021_____.


_____ *kevin levent* _____
Kevin Levent

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements relating to me and MRS are true and correct to the best of my knowledge.

Executed this date ____05 / 17 / 2021_____.

_____
Michael A. Jones
Owner and President of M.R.S. Leasing Corporation LTD

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to me are true and correct to the best of my knowledge.

Executed this date _____5/17/2021_____.


_____ _____

Mario Guerrero

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements relating to me are true and correct to the best of my knowledge.

Executed this date _____5/17/2021_____.


_____ *Carole Cooper* _____
Carole Cooper

# EXHIBIT D

LAWSUIT FILED: Block & Leviton LLP Has Filed a Lawsuit



LAWSUIT FILED: Block & Leviton LLP Has Filed a Laws...

**SIGN IN**



# LAWSUIT FILED: Block & Leviton LLP Has Filed a Lawsuit Against Lordstown Motors Corp. for Securities Fraud; Investors Who Lost Money Should Contact the Firm

March 18, 2021 11:54 ET | Source: [Block & Leviton LLP](#)

BOSTON, March 18, 2021 (GLOBE NEWSWIRE) -- Block & Leviton LLP ([www.blockleviton.com](#)), a national securities litigation firm, announces that it has filed a class action lawsuit on behalf of shareholders against Lordstown Motors Corp. (NASDAQ: RIDE) and certain of its executives for securities fraud. Investors who purchased Lordstown shares between August 3, 2020 and March 17, 2021 and who lost money are strongly encouraged to contact Block & Leviton attorneys at (617) 309-5600, via email at [cases@blockleviton.com](#), or to visit our [website](#) for information on the case. The deadline to seek appointment as lead plaintiff is May 17, 2021.

Before the markets opened on March 12, 2021, analyst Hindenburg Research published a scathing report on the electric light duty truck manufacturer entitled "The Lordstown Motors Mirage: Fake Orders, Undisclosed Production Hurdles, and a Prototype Inferno." According to Hindenburg, the company's claimed 100,000 pre-orders for its EV truck are "largely fictitious and used as a prop to raise capital and confer legitimacy." Hindenburg further cited significant, undisclosed production delays and a prototype that "burst into flames 10 minutes before the test drive" in January 2021, substantiating claims by former employees that the company is not conducting the needed testing or validation required by the NHTSA. On this news, Lordstown shares fell by 17% in one trading day.

Then, after the markets closed on March 17, 2021, reports emerged that Lordstown disclosed that the Company is the subject of an SEC inquiry for information following the release of the Hindenburg Research report. Then

Case: 4:21-cv-00616-DAR   Doc #: 25-9   Filed: 05/17/21   45 of 134.   PageID #: 1022



**LAWSUIT FILED: Block & Leviton LLP Has Filed a Laws...**      SIGN IN

don't have a product yet so by definition you can't have orders." Lordstown shares fell approximately another 9% on this news.

The lawsuit is captioned *Rico v. Lordstown Motors Corp., et al.*, No. 4:21-cv-00616 (N.D. Ohio). The case was filed in the U.S. District Court for the Northern District of Ohio, and has been assigned to Judge Patricia A. Gaughan. The class period is between August 3, 2020 and March 17, 2021, inclusive. A class has not yet been certified, and until a certification occurs, you are not represented by an attorney. If you choose to take no action, you can remain an absent class member.

Investors who purchased Lordstown shares between August 3, 2020 and March 17, 2021 and have questions about your legal rights or possess information relevant to this matter, please contact Block & Leviton attorneys at (617) 309-5600, via email at [cases@blockleviton.com](mailto:cases@blockleviton.com), or visit our [website](website) for information on the case. The deadline to seek appointment as lead plaintiff is May 17, 2021.

Block & Leviton LLP is a firm dedicated to representing investors and maintaining the integrity of the country's financial markets. The firm represents many of the nation's largest institutional investors as well as individual investors in securities litigation throughout the United States. The firm's lawyers have recovered billions of dollars for its clients.

This notice may constitute attorney advertising.

CONTACT:

BLOCK & LEVITON LLP

260 Franklin St., Suite 1860

Boston, MA 02110

Phone: (617) 398-5600

Email: [cases@blockleviton.com](mailto:cases@blockleviton.com)

SOURCE: Block & Leviton LLP

[www.blockleviton.com](http://www.blockleviton.com)

---

**Tags**

Class Action

# Recommended Reading


LAWSUIT FILED: Block & Leviton LLP Has Filed a Laws...                    SIGN IN      ☰

Source:  Block & Leviton LLP

LAWSUIT FILED: Block
& Leviton LLP Has
Filed a Lawsuit
Against PureCycle
Technologies, Inc. for
Securities Fraud;
Investors Who Lost
Money...

BOSTON, May 17, 2021
(GLOBE NEWSWIRE) -- Block
& Leviton LLP
(www.blockleviton.com), a
national securities litigation
firm, announces that it has
filed a class action lawsuit on
behalf of...

Source:  Block & Leviton LLP

LAWSUIT FILED: Block
& Leviton LLP Has
Filed a Lawsuit
Against Aterian, Inc.
for Securities Fraud;
Investors Who Lost
Money Should
Contact...

BOSTON, May 13, 2021
(GLOBE NEWSWIRE) -- Block
& Leviton LLP
(www.blockleviton.com), a
national securities litigation
firm, announces that it has
filed a class action lawsuit on
behalf of...

# Explore

JostensPIX School
Photography Delivers
on Strong Y...

Rover Reports First
Quarter 2021 Financial
Results



**About Us**

GlobeNewswire is one of the world's largest
newswire distribution networks, specializing in
the delivery of corporate press releases, financial
disclosures and multimedia content to media,
investors, and consumers worldwide.

Follow us on social media:

© 2021 GlobeNewswire, Inc. All Rights Reserved.

**Newswire Distribution Network &
Management**

· Home                · RSS Feeds

· Newsroom         · Legal

# EXHIBIT E



**280 King of Prussia Road, Radnor, Pennsylvania 19087 • 610-667-7706 • Fax: 610-667-7056 • info@ktmc.com**
**One Sansome Street, Suite 1850, San Francisco, CA 94104 • 415-400-3000 • Fax: 415-400-3001 • info@ktmc.com**

**www.ktmc.com**

# FIRM PROFILE

Since 1987, Kessler Topaz Meltzer & Check, LLP has specialized in the prosecution of securities class actions and has grown into one of the largest and most successful shareholder litigation firms in the field. With offices in Radnor, Pennsylvania and San Francisco, California, the Firm is comprised of 94 attorneys as well as an experienced support staff consisting of over 80 paralegals, in-house investigators, legal clerks and other personnel. With a large and sophisticated client base (numbering over 180 institutional investors from around the world -- including public and Taft-Hartley pension funds, mutual fund managers, investment advisors, insurance companies, hedge funds and other large investors), Kessler Topaz has developed an international reputation for excellence and has extensive experience prosecuting securities fraud actions. For the past several years, the National Law Journal has recognized Kessler Topaz as one of the top securities class action law firms in the country. In addition, the Legal Intelligencer recently awarded Kessler Topaz with its Class Action Litigation Firm of The Year award. Lastly, Kessler Topaz and several of its attorneys are regularly recognized by Legal500 and Benchmark: Plaintiffs as leaders in our field.

Kessler Topaz is serving or has served as lead or co-lead counsel in many of the largest and most significant securities class actions pending in the United States, including actions against: Bank of America, Duke Energy, Lehman Brothers, Hewlett Packard, Johnson & Johnson, JPMorgan Chase, Morgan Stanley and MGM Mirage, among others. As demonstrated by the magnitude of these high-profile cases, we take seriously our role in advising clients to seek lead plaintiff appointment in cases, paying special attention to the factual elements of the fraud, the size of losses and damages, and whether there are viable sources of recovery.

Kessler Topaz has recovered billions of dollars in the course of representing defrauded shareholders from around the world and takes pride in the reputation we have earned for our dedication to our clients. Kessler Topaz devotes significant time to developing relationships with its clients in a manner that enables the Firm to understand the types of cases they will be interested in pursuing and their expectations. Further, the Firm is committed to pursuing meaningful corporate governance reforms in cases where we suspect that systemic problems within a company could lead to recurring litigation and where such changes also have the possibility to increase the value of the underlying company. The Firm is poised to continue protecting rights worldwide.

## NOTEWORTHY ACHIEVEMENTS
*During the Firm's successful history, Kessler Topaz has recovered billions of dollars for defrauded stockholders and consumers. The following are among the Firm's notable achievements:*

## Securities Fraud Litigation

*In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* **Master File No. 09 MDL 2058:**
Kessler Topaz, as Co-Lead Counsel, brought an action on behalf of lead plaintiffs that asserted claims for violations of the federal securities laws against Bank of America Corp. ("BoA") and certain of BoA's officers and board members relating to BoA's merger with Merrill Lynch & Co. ("Merrill") and its failure to inform its shareholders of billions of dollars of losses which Merrill had suffered before the pivotal shareholder vote, as well as an undisclosed agreement allowing Merrill to pay up to $5.8 billion in bonuses before the acquisition closed, despite these losses. On September 28, 2012, the Parties announced a $2.425 billion case settlement with BoA to settle all claims asserted against all defendants in the action which has since received final approval from the Court. BoA also agreed to implement significant corporate governance improvements. The settlement, reached after almost four years of litigation with a trial set to begin on October 22, 2012, amounts to 1) the sixth largest securities class action lawsuit settlement ever; 2) the fourth largest securities class action settlement ever funded by a single corporate defendant; 3) the single largest settlement of a securities class action in which there was neither a financial restatement involved nor a criminal conviction related to the alleged misconduct; 4) the single largest securities class action settlement ever resolving a Section 14(a) claim (the federal securities provision designed to protect investors against misstatements in connection with a proxy solicitation); and 5) by far the largest securities class action settlement to come out of the subprime meltdown and credit crisis to date.

*In re Tyco International, Ltd. Sec. Litig.,* **No. 02-1335-B (D.N.H. 2002):**
Kessler Topaz, which served as Co-Lead Counsel in this highly publicized securities fraud class action on behalf of a group of institutional investors, achieved a record $3.2 billion settlement with Tyco International, Ltd. ("Tyco") and their auditor PricewaterhouseCoopers ("PwC"). The $2.975 billion settlement with Tyco represents the single-largest securities class action recovery from a single corporate defendant in history. In addition, the $225 million settlement with PwC represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history.

The action asserted federal securities claims on behalf of all purchasers of Tyco securities between December 13, 1999 and June 7, 2002 ("Class Period") against Tyco, certain former officers and directors of Tyco and PwC. Tyco is alleged to have overstated its income during the Class Period by $5.8 billion through a multitude of accounting manipulations and shenanigans. The case also involved allegations of looting and self-dealing by the officers and directors of the Company. In that regard, Defendants L. Dennis Kozlowski, the former CEO and Mark H. Swartz, the former CFO have been sentenced to up to 25 years in prison after being convicted of grand larceny, falsification of business records and conspiracy for their roles in the alleged scheme to defraud investors.

As presiding Judge Paul Barbadoro aptly stated in his Order approving the final settlement, "[i]t is difficult to overstate the complexity of [the litigation]." Judge Barbadoro noted the extraordinary effort required to pursue the litigation towards its successful conclusion, which included the review of more than 82.5 million pages of documents, more than 220 depositions and over 700 hundred discovery requests and responses. In addition to the complexity of the litigation, Judge Barbadoro also highlighted the great risk undertaken by

Co-Lead Counsel in pursuit of the litigation, which he indicated was greater than in other multi-billion dollar securities cases and "put [Plaintiffs] at the cutting edge of a rapidly changing area of law."

In sum, the Tyco settlement is of historic proportions for the investors who suffered significant financial losses and it has sent a strong message to those who would try to engage in this type of misconduct in the future.

### *In re Tenet Healthcare Corp. Sec. Litig.,* No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002):

Kessler Topaz served as Co-Lead Counsel in this action. A partial settlement, approved on May 26, 2006, was comprised of three distinct elements: (i) a substantial monetary commitment of $215 million by the company; (ii) personal contributions totaling $1.5 million by two of the individual defendants; and (iii) the enactment and/or continuation of numerous changes to the company's corporate governance practices, which have led various institutional rating entities to rank Tenet among the best in the U.S. in regards to corporate governance. The significance of the partial settlement was heightened by Tenet's precarious financial condition. Faced with many financial pressures — including several pending civil actions and federal investigations, with total contingent liabilities in the hundreds of millions of dollars — there was real concern that Tenet would be unable to fund a settlement or satisfy a judgment of any greater amount in the near future. By reaching the partial settlement, we were able to avoid the risks associated with a long and costly litigation battle and provide a significant and immediate benefit to the class. Notably, this resolution represented a unique result in securities class action litigation — personal financial contributions from individual defendants. After taking the case through the summary judgment stage, we were able to secure an additional $65 million recovery from KPMG – Tenet's outside auditor during the relevant period – for the class, bringing the total recovery to $281.5 million.

### *In re Wachovia Preferred Securities and Bond/Notes Litigation,* Master File No. 09 Civ. 6351 (RJS) (S.D.N.Y.):

Kessler Topaz, as court-appointed Co-Lead Counsel, asserted class action claims for violations of the Securities Act of 1933 on behalf of all persons who purchased Wachovia Corporation ("Wachovia") preferred securities issued in thirty separate offerings (the "Offerings") between July 31, 2006 and May 29, 2008 (the "Offering Period").  Defendants in the action included Wachovia, various Wachovia related trusts, Wells Fargo as successor-in-interest to Wachovia, certain of Wachovia's officer and board members, numerous underwriters that underwrote the Offerings, and KPMG LLP ("KPMG"), Wachovia's former outside auditor.  Plaintiffs alleged that the registration statements and prospectuses and prospectus supplements used to market the Offerings to Plaintiffs and other members of the class during the Offerings Period contained materially false and misleading statements and omitted material information. Specifically, the Complaint alleged that in connection with the Offerings, Wachovia: (i) failed to reveal the full extent to which its mortgage portfolio was increasingly impaired due to dangerously lax underwriting practices; (ii) materially misstated the true value of its mortgage-related assets; (iii) failed to disclose that its loan loss reserves were grossly inadequate; and (iv) failed to record write-downs and impairments to those assets as required by Generally Accepted Accounting Principles ("GAAP").  Even as Wachovia faced insolvency, the Offering Materials assured investors that Wachovia's capital and liquidity positions were "strong," and that it was so "well capitalized" that it was actually a "provider of liquidity" to the market.  On August 5, 2011, the Parties announced a $590 million cash settlement with Wells Fargo (as successor-in-interest to Wachovia) and a $37 million cash settlement with KPMG, to settle all claims asserted against all defendants in the action.  This settlement was approved by the Hon. Judge Richard J. Sullivan by order issued on January 3, 2012.

### *In re Initial Public Offering Sec. Litig.,* Master File No. 21 MC 92(SAS):

This action settled for $586 million on January 1, 2010, after years of litigation overseen by U.S. District Judge Shira Scheindlin. Kessler Topaz served on the plaintiffs' executive committee for the case, which was based upon the artificial inflation of stock prices during the dot-com boom of the late 1990s that led to

the collapse of the technology stock market in 2000 that was related to allegations of laddering and excess commissions being paid for IPO allocations.

***In re Longtop Financial Technologies Ltd. Securities Litigation***, **No. 11-cv-3658 (S.D.N.Y.):**
Kessler Topaz, as Lead Counsel, brought an action on behalf of lead plaintiffs that asserted claims for violations of the federal securities laws against Longtop Financial Technologies Ltd. ("Longtop"), its Chief Executive Officer, Weizhou Lian, and its Chief Financial Officer, Derek Palaschuk. The claims against Longtop and these two individuals were based on a massive fraud that occurred at the company. As the CEO later confessed, the company had been a fraud since 2004. Specifically, Weizhou Lian confessed that the company's cash balances and revenues were overstated by hundreds of millions of dollars and it had millions of dollars in unrecorded bank loans. The CEO further admitted that, in 2011 alone, Longtop's revenues were overstated by about 40 percent. On November 14, 2013, after Weizhou Lian and Longtop failed to appear and defend the action, Judge Shira Scheindlin entered default judgment against these two defendants in the amount of $882.3 million plus 9 percent interest running from February 21, 2008 to the date of payment. The case then proceeded to trial against Longtop's CFO who claimed he did not know about the fraud - and was not reckless in not knowing – when he made false statements to investors about Longtop's financial results. On November 21, 2014, the jury returned a verdict on liability in favor of plaintiffs. Specifically, the jury found that the CFO was liable to the plaintiffs and the class for each of the eight challenged misstatements. Then, on November 24, 2014, the jury returned its damages verdict, ascribing a certain amount of inflation to each day of the class period and apportioning liability for those damages amongst the three named defendants. The Longtop trial was only the 14th securities class action to be tried to a verdict since the passage of the Private Securities Litigation Reform Act in 1995 and represents a historic victory for investors.

***Operative Plasterers and Cement Masons International Association Local 262 Annuity Fund v. Lehman Brothers Holdings, Inc.,*** **No. 1:08-cv-05523-LAK (S.D.N.Y.):**
Kessler Topaz, on behalf of lead plaintiffs, asserted claims against certain individual defendants and underwriters of Lehman securities arising from misstatements and omissions regarding Lehman's financial condition, and its exposure to the residential and commercial real estate markets in the period leading to Lehman's unprecedented bankruptcy filing on September 14, 2008. In July 2011, the Court sustained the majority of the amended Complaint finding that Lehman's use of Repo 105, while technically complying with GAAP, still rendered numerous statements relating to Lehman's purported Net Leverage Ration materially false and misleading. The Court also found that Defendants' statements related to Lehman's risk management policies were sufficient to state a claim. With respect to loss causation, the Court also failed to accept Defendants' contention that the financial condition of the economy led to the losses suffered by the Class. As the case was being prepared for trial, a $517 million settlement was reached on behalf of shareholders --- $426 million of which came from various underwriters of the Offerings, representing a significant recovery for investors in this now bankrupt entity. In addition, $90 million came from Lehman's former directors and officers, which is significant considering the diminishing assets available to pay any future judgment. Following these settlements, the litigation continued against Lehman's auditor, Ernst & Young LLP. A settlement for $99 million was subsequently reached with Ernst & Young LLP and was approved by the Court.

***Minneapolis Firefighters' Relief Association v. Medtronic, Inc. et al.*** **Case No. 0:08-cv-06324-PAM-AJB (D. Minn.):**
Kessler Topaz brought an action on behalf of lead plaintiffs that alleged that the company failed to disclose its reliance on illegal "off-label" marketing techniques to drive the sales of its INFUSE Bone Graft ("INFUSE") medical device. While physicians are allowed to prescribe a drug or medical device for any use they see fit, federal law prohibits medical device manufacturers from marketing devices for any uses not specifically approved by the United States Food and Drug Administration. The company's off-label marketing practices have resulted in the company becoming the target of a probe by the federal government

which was revealed on November 18, 2008, when the company's CEO reported that Medtronic received a subpoena from the United States Department of Justice which is "looking into off-label use of INFUSE." After hearing oral argument on Defendants' Motions to Dismiss, on February 3, 2010, the Court issued an order granting in part and denying in part Defendants' motions, allowing a large portion of the action to move forward. The Court held that Plaintiff successfully stated a claim against each Defendant for a majority of the misstatements alleged in the Complaint and that each of the Defendants knew or recklessly disregarded the falsity of these statements and that Defendants' fraud caused the losses experienced by members of the Class when the market learned the truth behind Defendants' INFUSE marketing efforts. While the case was in discovery, on April 2, 2012, Medtronic agreed to pay shareholders an $85 million settlement. The settlement was approved by the Court by order issued on November 8, 2012.

*In re Brocade Sec. Litig.*, **Case No. 3:05-CV-02042 (N.D. Cal. 2005) (CRB):**
The complaint in this action alleges that Defendants engaged in repeated violations of federal securities laws by backdating options grants to top executives and falsified the date of stock option grants and other information regarding options grants to numerous employees from 2000 through 2004, which ultimately caused Brocade to restate all of its financial statements from 2000 through 2005. In addition, concurrent SEC civil and Department of Justice criminal actions against certain individual defendants were commenced. In August, 2007 the Court denied Defendant's motions to dismiss and in October, 2007 certified a class of Brocade investors who were damaged by the alleged fraud. Discovery is currently proceeding and the case is being prepared for trial. Furthermore, while litigating the securities class action Kessler Topaz and its co-counsel objected to a proposed settlement in the Brocade derivative action. On March 21, 2007, the parties in *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. C05-02233 (N.D. Cal. 2005) (CRB) gave notice that they had obtained preliminary approval of their settlement. According to the notice, which was buried on the back pages of the Wall Street Journal, Brocade shareholders were given less than three weeks to evaluate the settlement and file any objection with the Court. Kessler Topaz client Puerto Rico Government Employees' Retirement System ("PRGERS") had a large investment in Brocade and, because the settlement was woefully inadequate, filed an objection. PRGERS, joined by fellow institutional investor Arkansas Public Employees Retirement System, challenged the settlement on two fundamental grounds. First, PRGERS criticized the derivative plaintiffs for failing to conduct any discovery before settling their claims. PRGERS also argued that derivative plaintiff's abject failure to investigate its own claims before providing the defendants with broad releases from liability made it impossible to weigh the merits of the settlement. The Court agreed, and strongly admonished derivative plaintiffs for their failure to perform this most basic act of service to their fellow Brocade shareholders. The settlement was rejected and later withdrawn. Second, and more significantly, PRGERS claimed that the presence of the well-respected law firm Wilson, Sonsini Goodrich and Rosati, in this case, created an incurable conflict of interest that corrupted the entire settlement process. The conflict stemmed from WSGR's dual role as counsel to Brocade and the Individual Settling Defendants, including WSGR Chairman and former Brocade Board Member Larry Sonsini. On this point, the Court also agreed and advised WSGR to remove itself from the case entirely. On May 25, 2007, WSGR complied and withdrew as counsel to Brocade. The case settled for $160 million and was approved by the Court.

*In re Satyam Computer Services, Ltd. Sec. Litig.*, **No. 09 MD 02027 (BSJ) (S.D.N.Y.):**
Kessler Topaz served as Co-Lead Counsel in this securities fraud class action in the Southern District of New York. The action asserts claims by lead plaintiffs for violations of the federal securities laws against Satyam Computer Services Limited ("Satyam" or the "Company") and certain of Satyam's former officers and directors and its former auditor PricewaterhouseCoopers International Ltd. ("PwC") relating to the Company's January 7, 2009, disclosure admitting that B. Ramalinga Raju ("B. Raju"), the Company's former chairman, falsified Satyam's financial reports by, among other things, inflating its reported cash balances by more than $1 billion. The news caused the price of Satyam's common stock (traded on the National Stock Exchange of India and the Bombay Stock Exchange) and American Depository Shares ("ADSs") (traded on the New York Stock Exchange ("NYSE")) to collapse. From a closing price of $3.67

per share on January 6, 2009, Satyam's common stock closed at $0.82 per share on January 7, 2009. With respect to the ADSs, the news of B. Raju's letter was revealed overnight in the United States and, as a result, trading in Satyam ADSs was halted on the NYSE before the markets opened on January 7, 2009. When trading in Satyam ADSs resumed on January 12, 2009, Satyam ADSs opened at $1.14 per ADS, down steeply from a closing price of $9.35 on January 6, 2009. Lead Plaintiffs filed a consolidated complaint on July 17, 2009, on behalf of all persons or entities, who (a) purchased or otherwise acquired Satyam's ADSs in the United States; and (b) residents of the United States who purchased or otherwise acquired Satyam shares on the National Stock Exchange of India or the Bombay Stock Exchange between January 6, 2004 and January 6, 2009. Co-Lead Counsel secured a settlement for $125 million from Satyam on February 16, 2011. Additionally, Co-Lead Counsel was able to secure a $25.5 million settlement from PwC on April 29, 2011, who was alleged to have signed off on the misleading audit reports.

**In re BankAtlantic Bancorp, Inc. Sec. Litig., Case No. 07-CV-61542 (S.D. Fla. 2007):**
On November 18, 2010, a panel of nine Miami, Florida jurors returned the first securities fraud verdict to arise out of the financial crisis against BankAtlantic Bancorp. Inc., its chief executive officer and chief financial officer. This case was only the tenth securities class action to be tried to a verdict following the passage of the Private Securities Litigation Reform Act of 1995, which governs such suits. Following extensive post-trial motion practice, the District Court upheld all of the Jury's findings of fraud but vacated the damages award on a narrow legal issue and granted Defendant's motion for a judgment as a matter of law. Plaintiffs appealed to the U.S. Court of Appeals for the Eleventh Circuit. On July 23, 2012, a three-judge panel for the Appeals Court found the District Court erred in granting the Defendant's motion for a judgment as a matter of law based in part on the Jury's findings (perceived inconsistency of two of the Jury's answers to the special interrogatories) instead of focusing solely on the sufficiency of the evidence. However, upon its review of the record, the Appeals Court affirmed the District Court's decision as it determined the Plaintiffs did not introduce evidence sufficient to support a finding in its favor on the element of loss causation. The Appeals Court's decision in this case does not diminish the five years of hard work which Kessler Topaz expended to bring the matter to trial and secure an initial jury verdict in the Plaintiffs' favor. This case is an excellent example of the Firm's dedication to our clients and the lengths it will go to try to achieve the best possible results for institutional investors in shareholder litigation.

**In re AremisSoft Corp. Sec. Litig., C.A. No. 01-CV-2486 (D.N.J. 2002):**
Kessler Topaz is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, one of whom remains a fugitive. In settling the action, Kessler Topaz, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new company to allow for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The approved Settlement enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of any amounts recovered by the litigation trust. During this litigation, actions have been initiated in the Isle of Man, Cyprus, as well as in the United States as we continue our efforts to recover assets stolen by corporate insiders and related entities.

**In re CVS Corporation Sec. Litig., C.A. No. 01-11464 JLT (D.Mass. 2001):**
Kessler Topaz, serving as Co-Lead Counsel on behalf of a group of institutional investors, secured a cash recovery of $110 million for the class, a figure which represents the third-largest payout for a securities action in Boston federal court. Kessler Topaz successfully litigated the case through summary judgment before ultimately achieving this outstanding result for the class following several mediation sessions, and just prior to the commencement of trial.

***In re Marvell Technology, Group, Ltd. Sec. Lit., Master* File No. 06-06286 RWM:**
Kessler Topaz served as Co-Lead Counsel in this securities class action brought against Marvell Technology Group Ltd. ("Marvell") and three of Marvell's executive officers. This case centered around an alleged options backdating scheme carried out by Defendants from June 2000 through June 2006, which enabled Marvell's executives and employees to receive options with favorable option exercise prices chosen with the benefit of hindsight, in direct violation of Marvell's stock option plan, as well as to avoid recording hundreds of millions of dollars in compensation expenses on the Marvell's books. In total, the restatement conceded that Marvell had understated the cumulative effect of its compensation expense by $327.3 million, and overstated net income by $309.4 million, for the period covered by the restatement. Following nearly three years of investigation and prosecution of the Class' claims as well as a protracted and contentious mediation process, Co-Lead Counsel secured a settlement for $72 million from defendants on June 9, 2009. This Settlement represents a substantial portion of the Class' maximum provable damages, and is among the largest settlements, in total dollar amount, reached in an option backdating securities class action.

***In re Delphi Corp. Sec. Litig.,* Master File No. 1:05-MD-1725 (E.D. Mich. 2005):**
In early 2005, various securities class actions were filed against auto-parts manufacturer Delphi Corporation in the Southern District of New York. Kessler Topaz its client, Austria-based mutual fund manager Raiffeisen Kapitalanlage-Gesellschaft m.b.H. ("Raiffeisen"), were appointed as Co-Lead Counsel and Co-Lead Plaintiff, respectively. The Lead Plaintiffs alleged that (i) Delphi improperly treated financing transactions involving inventory as sales and disposition of inventory; (ii) improperly treated financing transactions involving "indirect materials" as sales of these materials; and (iii) improperly accounted for payments made to and credits received from General Motors as warranty settlements and obligations. As a result, Delphi's reported revenue, net income and financial results were materially overstated, prompting Delphi to restate its earnings for the five previous years. Complex litigation involving difficult bankruptcy issues has potentially resulted in an excellent recovery for the class. In addition, Co-Lead Plaintiffs also reached a settlement of claims against Delphi's outside auditor, Deloitte & Touche, LLP, for $38.25 million on behalf of Delphi investors.

***In re Royal Dutch Shell European Shareholder Litigation,* No. 106.010.887, Gerechtshof Te Amsterdam (Amsterdam Court of Appeal):**
Kessler Topaz was instrumental in achieving a landmark $352 million settlement on behalf non-US investors with Royal Dutch Shell plc relating to Shell's 2004 restatement of oil reserves. This settlement of securities fraud claims on a class-wide basis under Dutch law was the first of its kind, and sought to resolve claims exclusively on behalf of European and other non-United States investors. Uncertainty over whether jurisdiction for non-United States investors existed in a 2004 class action filed in federal court in New Jersey prompted a significant number of prominent European institutional investors from nine countries, representing more than one billion shares of Shell, to actively pursue a potential resolution of their claims outside the United States. Among the European investors which actively sought and supported this settlement were Alecta pensionsförsäkring, ömsesidigt, PKA Pension Funds Administration Ltd., Swedbank Robur Fonder AB, AP7 and AFA Insurance, all of which were represented by Kessler Topaz.

***In re Computer Associates Sec. Litig.,* No. 02-CV-1226 (E.D.N.Y. 2002):**
Kessler Topaz served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, Kessler Topaz helped obtain a settlement of $150 million in cash and stock from the company.

***In re The Interpublic Group of Companies Sec. Litig.,* No. 02 Civ. 6527 (S.D.N.Y. 2002):**
Kessler Topaz served as sole Lead Counsel in this action on behalf of an institutional investor and received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of the final hearing in the case, the stock had an approximate value of $87 million, resulting in a total

settlement value of approximately $107 million. In granting its approval, the Court praised Kessler Topaz for acting responsibly and noted the Firm's professionalism, competence and contribution to achieving such a favorable result.

*In re Digital Lightwave, Inc. Sec. Litig.,* **Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):**
The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions in history measured by the percentage of damages recovered. After extensive litigation and negotiations, a settlement consisting primarily of stock was worth over $170 million at the time when it was distributed to the Class. Kessler Topaz took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses.

*In re Transkaryotic Therapies, Inc. Sec. Litig.,* **Civil Action No.: 03-10165-RWZ (D. Mass. 2003):**
After five years of hard-fought, contentious litigation, Kessler Topaz as Lead Counsel on behalf of the Class, entered into one of largest settlements ever against a biotech company with regard to non-approval of one of its drugs by the U.S. Food and Drug Administration ("FDA"). Specifically, the Plaintiffs alleged that Transkaryotic Therapies, Inc. ("TKT") and its CEO, Richard Selden, engaged in a fraudulent scheme to artificially inflate the price of TKT common stock and to deceive Class Members by making misrepresentations and nondisclosures of material facts concerning TKT's prospects for FDA approval of Replagal, TKT's experimental enzyme replacement therapy for Fabry disease. With the assistance of the Honorable Daniel Weinstein, a retired state court judge from California, Kessler Topaz secured a $50 million settlement from the Defendants during a complex and arduous mediation.

*In re PNC Financial Services Group, Inc. Sec. Litig.,* **Case No. 02-CV-271 (W.D. Pa. 2002):**
Kessler Topaz served as Co-Lead Counsel in a securities class action case brought against PNC bank, certain of its officers and directors, and its outside auditor, Ernst & Young, LLP ("E&Y"), relating to the conduct of Defendants in establishing, accounting for and making disclosures concerning three special purpose entities ("SPEs") in the second, third and fourth quarters of PNC's 2001 fiscal year. Plaintiffs alleged that these entities were created by Defendants for the sole purpose of allowing PNC to secretly transfer hundreds of millions of dollars worth of non-performing assets from its own books to the books of the SPEs without disclosing the transfers or consolidating the results and then making positive announcements to the public concerning the bank's performance with respect to its non-performing assets. Complex issues were presented with respect to all defendants, but particularly E&Y. Throughout the litigation E&Y contended that because it did not make any false and misleading statements itself, the Supreme Court's opinion in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1993) foreclosed securities liability for "aiding or abetting" securities fraud for purposes of Section 10(b) liability. Plaintiffs, in addition to contending that E&Y did make false statements, argued that Rule 10b-5's deceptive conduct prong stood on its own as an independent means of committing fraud and that so long as E&Y itself committed a deceptive act, it could be found liable under the securities laws for fraud. After several years of litigation and negotiations, PNC paid $30 million to settle the action, while also assigning any claims it may have had against E&Y and certain other entities that were involved in establishing and/or reporting on the SPEs. Armed with these claims, class counsel was able to secure an additional $6.6 million in settlement funds for the class from two law firms and a third party insurance company and $9.075 million from E&Y. Class counsel was also able to negotiate with the U.S. government, which had previously obtained a disgorgement fund of $90 million from PNC and $46 million from the third party insurance carrier, to combine all funds into a single settlement fund that exceeded $180 million and is currently in the process of being distributed to the entire class, with PNC paying all costs of notifying the Class of the settlement.

***In re SemGroup Energy Partners, L.P., Sec. Litig.*, No. 08-md-1989 (DC) (N.D. Okla.):**
Kessler Topaz, which was appointed by the Court as sole Lead Counsel, litigated this matter, which ultimately settled for $28 million. The defense was led by 17 of the largest and best capitalized defense law firms in the world. On April 20, 2010, in a fifty-page published opinion, the United States District Court for the Northern District of Oklahoma largely denied defendants' ten separate motions to dismiss Lead Plaintiff's Consolidated Amended Complaint. The Complaint alleged that: (i) defendants concealed SemGroup's risky trading operations that eventually caused SemGroup to declare bankruptcy; and (ii) defendants made numerous false statements concerning SemGroup's ability to provide its publicly-traded Master Limited Partnership stable cash-flows. The case was aggressively litigated out of the Firm's San Francisco and Radnor offices and the significant recovery was obtained, not only from the Company's principals, but also from its underwriters and outside directors.

***In re Liberate Technologies Sec. Litig.*, No. C-02-5017 (MJJ) (N.D. Cal. 2005):**
Kessler Topaz represented plaintiffs which alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earning. As sole Lead Counsel, Kessler Topaz successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

***In re Riverstone Networks, Inc. Sec. Litig.*, Case No. CV-02-3581 (N.D. Cal. 2002):**
Kessler Topaz served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five months of extensive mediation, the parties reached a settlement of $18.5 million.

## Shareholder Derivative Actions

***In re Facebook, Inc. Class C Reclassification Litig.*, C.A. No. 12286-VCL (Del. Ch. Sept. 25, 2017):**
Kessler Topaz served as co-lead counsel in this stockholder class action that challenged a proposed reclassification of Facebook's capital structure to accommodate the charitable giving goals of its founder and controlling stockholder Mark Zuckerberg.  The Reclassification involved the creation of a new class of nonvoting Class C stock, which would be issued as a dividend to all Facebook Class A and Class B stockholders (including Zuckerberg) on a 2-for-1 basis.  The purpose and effect of the Reclassification was that it would allow Zuckerberg to sell billions of dollars worth of nonvoting Class C shares without losing his voting control of Facebook.  The litigation alleged that Zuckerberg and Facebook's board of directors breached their fiduciary duties in approving the Reclassification at the behest of Zuckerberg and for his personal benefit.  At trial Kessler Topaz was seeking a permanent injunction to prevent the consummation of the Reclassification.  The litigation was carefully followed in the business and corporate governance communities, due to the high-profile nature of Facebook, Zuckerberg, and the issues at stake.  After almost a year and a half of hard fought litigation, just one business day before trial was set to commence, Facebook and Zuckerberg abandoned the Reclassification, granting Plaintiffs complete victory.

***In re CytRx Stockholder Derivative Litig.*, Consol. C.A. No. 9864-VCL (Del. Ch. Nov. 20, 2015):**
Kessler Topaz served as co-lead counsel in a shareholder derivative action challenging 2.745 million "spring-loaded" stock options.   On the day before CytRx announced the most important news in the Company's history concerning the positive trial results for one of its significant pipeline drugs, the Compensation Committee of CytRx's Board of Directors granted the stock options to themselves, their

fellow directors and several Company officers which immediately came "into the money" when CytRx's stock price shot up immediately following the announcement the next day.  Kessler Topaz negotiated a settlement recovering 100% of the excess compensation received by the directors and approximately 76% of the damages potentially obtainable from the officers. In addition, as part of the settlement, Kessler Topaz obtained the appointment of a new independent director to the Board of Directors and the implementation of significant reforms to the Company's stock option award processes.  The Court complimented the settlement, explaining that it "serves what Delaware views as the overall positive function of stockholder litigation, which is not just recovery in the individual case but also deterrence and norm enforcement."

***International Brotherhood of Electrical Workers Local 98 Pension Fund v. Black, et al.*, Case No. 37-2011-00097795-CU-SL-CTL (Sup. Ct. Cal., San Diego Feb. 5, 2016) (*"Encore Capital Group, Inc."*):**
Kessler Topaz, as co-lead counsel, represented International Brotherhood of Electrical Workers Local 98 Pension Fund in a shareholder derivative action challenging breaches of fiduciary duties and other violations of law in connection with Encore's debt collection practices, including robo-signing affidavits and improper use of the court system to collect alleged consumer debts.  Kessler Topaz negotiated a settlement in which the Company implemented industry-leading reforms to its risk management and corporate governance practices, including creating Chief Risk Officer and Chief Compliance Officer positions, various compliance committees, and procedures for consumer complaint monitoring.

***In re Southern Peru Copper Corp. Derivative Litigation,* Consol. CA No. 961-CS (Del. Ch. 2011):**
Kessler Topaz served as co-lead counsel in this landmark $2 billion post-trial decision, believed to be the largest verdict in Delaware corporate law history.  In 2005, Southern Peru, a publicly-traded copper mining company, acquired Minera Mexico, a private mining company owned by Southern Peru's majority stockholder Grupo Mexico.  The acquisition required Southern Peru to pay Grupo Mexico more than $3 billion in Southern Peru stock.  We alleged that Grupo Mexico had caused Southern Peru to grossly overpay for the private company in deference to its majority shareholder's interests.  Discovery in the case spanned years and continents, with depositions in Peru and Mexico.  The trial court agreed and ordered Grupo Mexico to pay more than $2 billion in damages and interest.  The Delaware Supreme Court affirmed on appeal.

***Quinn v. Knight*, No. 3:16-cv-610 (E.D. Va. Mar. 16, 2017) (*"Apple REIT Ten"*):**
This shareholder derivative action challenged a conflicted "roll up" REIT transaction orchestrated by Glade M. Knight and his son Justin Knight.  The proposed transaction paid the Knights millions of dollars while paying public stockholders less than they had invested in the company.  The case was brought under Virginia law, and settled just ten days before trial, with stockholders receiving an additional $32 million in merger consideration.

***Kastis v. Carter*, C.A. No. 8657-CB (Del. Ch. Sept. 19, 2016) (*"Hemispherx Biopharma, Inc."*):**
This derivative action challenged improper bonuses paid to two company executives of this small pharmaceutical company that had never turned a profit. In response to the complaint, Hemispherx's board first adopted a "fee-shifting" bylaw that would have required stockholder plaintiffs to pay the company's legal fees unless the plaintiffs achieved 100% of the relief they sought. This sort of bylaw, if adopted more broadly, could substantially curtail meritorious litigation by stockholders unwilling to risk losing millions of dollars if they bring an unsuccessful case. After Kessler Topaz presented its argument in court, Hemispherx withdrew the bylaw. Kessler Topaz ultimately negotiated a settlement requiring the two executives to forfeit several million dollars' worth of accrued but unpaid bonuses, future bonuses and director fees. The company also recovered $1.75 million from its insurance carriers, appointed a new independent director to the board, and revised its compensation program.

*Montgomery v. Erickson, Inc., et al.*, **C.A. No. 8784-VCL (Del. Ch. Sept. 12, 2016):**
Kessler Topaz represented an individual stockholder who asserted in the Delaware Court of Chancery class action and derivative claims challenging merger and recapitalization transactions that benefitted the company's controlling stockholders at the expense of the company and its minority stockholders. Plaintiff alleged that the controlling stockholders of Erickson orchestrated a series of transactions with the intent and effect of using Erickson's money to bail themselves out of a failing investment. Defendants filed a motion to dismiss the complaint, which Kessler Topaz defeated, and the case proceeded through more than a year of fact discovery. Following an initially unsuccessful mediation and further litigation, Kessler Topaz ultimately achieved an $18.5 million cash settlement, 80% of which was distributed to members of the stockholder class to resolve their direct claims and 20% of which was paid to the company to resolve the derivative claims. The settlement also instituted changes to the company's governing documents to prevent future self-dealing transactions like those that gave rise to the case.

*In re Helios Closed-End Funds Derivative Litig.*, **No. 2:11-cv-02935-SHM-TMP (W.D. Tenn.):**
Kessler Topaz represented stockholders of four closed-end mutual funds in a derivative action against the funds' former investment advisor, Morgan Asset Management. Plaintiffs alleged that the defendants mismanaged the funds by investing in riskier securities than permitted by the funds' governing documents and, after the values of these securities began to precipitously decline beginning in early 2007, cover up their wrongdoing by assigning phony values to the funds' investments and failing to disclose the extent of the decrease in value of the funds' assets. In a rare occurrence in derivative litigation, the funds' Boards of Directors eventually hired Kessler Topaz to prosecute the claims against the defendants on behalf of the funds. Our litigation efforts led to a settlement that recovered $6 million for the funds and ensured that the funds would not be responsible for making any payment to resolve claims asserted against them in a related multi-million dollar securities class action. The fund's Boards fully supported and endorsed the settlement, which was negotiated independently of the parallel securities class action.

*In re Viacom, Inc. Shareholder Derivative Litig.*, **Index No. 602527/05 (New York County, NY 2005):**
Kessler Topaz represented the Public Employees' Retirement System of Mississippi and served as Lead Counsel in a derivative action alleging that the members of the Board of Directors of Viacom, Inc. paid excessive and unwarranted compensation to Viacom's Executive Chairman and CEO, Sumner M. Redstone, and co-COOs Thomas E. Freston and Leslie Moonves, in breach of their fiduciary duties. Specifically, we alleged that in fiscal year 2004, when Viacom reported a record net loss of $17.46 billion, the board improperly approved compensation payments to Redstone, Freston, and Moonves of approximately $56 million, $52 million, and $52 million, respectively. Judge Ramos of the New York Supreme Court denied Defendants' motion to dismiss the action as we overcame several complex arguments related to the failure to make a demand on Viacom's Board; Defendants then appealed that decision to the Appellate Division of the Supreme Court of New York. Prior to a decision by the appellate court, a settlement was reached in early 2007. Pursuant to the settlement, Sumner Redstone, the company's Executive Chairman and controlling shareholder, agreed to a new compensation package that, among other things, substantially reduces his annual salary and cash bonus, and ties the majority of his incentive compensation directly to shareholder returns.

*In re Family Dollar Stores, Inc. Derivative Litig.*, **Master File No. 06-CVS-16796 (Mecklenburg County, NC 2006):**
Kessler Topaz served as Lead Counsel, derivatively on behalf of Family Dollar Stores, Inc., and against certain of Family Dollar's current and former officers and directors. The actions were pending in Mecklenburg County Superior Court, Charlotte, North Carolina, and alleged that certain of the company's officers and directors had improperly backdated stock options to achieve favorable exercise prices in violation of shareholder-approved stock option plans. As a result of these shareholder derivative actions, Kessler Topaz was able to achieve substantial relief for Family Dollar and its shareholders. Through Kessler Topaz's litigation of this action, Family Dollar agreed to cancel hundreds of thousands of stock options

granted to certain current and former officers, resulting in a seven-figure net financial benefit for the company. In addition, Family Dollar has agreed to, among other things: implement internal controls and granting procedures that are designed to ensure that all stock options are properly dated and accounted for; appoint two new independent directors to the board of directors; maintain a board composition of at least 75 percent independent directors; and adopt stringent officer stock-ownership policies to further align the interests of officers with those of Family Dollar shareholders. The settlement was approved by Order of the Court on August 13, 2007.

*Carbon County Employees Retirement System, et al., Derivatively on Behalf of Nominal Defendant Southwest Airlines Co. v. Gary C. Kelly, et al.* **Cause No. 08-08692 (District Court of Dallas County, Texas):**
As lead counsel in this derivative action, we negotiated a settlement with far-reaching implications for the safety and security of airline passengers.

Our clients were shareholders of Southwest Airlines Co. (Southwest) who alleged that certain officers and directors had breached their fiduciary duties in connection with Southwest's violations of Federal Aviation Administration safety and maintenance regulations. Plaintiffs alleged that from June 2006 to March 2007, Southwest flew 46 Boeing 737 airplanes on nearly 60,000 flights without complying with a 2004 FAA Airworthiness Directive requiring fuselage fatigue inspections. As a result, Southwest was forced to pay a record $7.5 million fine. We negotiated numerous reforms to ensure that Southwest's Board is adequately apprised of safety and operations issues, and implementing significant measures to strengthen safety and maintenance processes and procedures.

*The South Financial Group, Inc. Shareholder Litigation,* **C.A. No. 2008-CP-23-8395 (S.C. C.C.P. 2009):**
Represented shareholders in derivative litigation challenging board's decision to accelerate "golden parachute" payments to South Financial Group's CEO as the company applied for emergency assistance in 2008 under the Troubled Asset Recovery Plan (TARP).

We sought injunctive relief to block the payments and protect the company's ability to receive the TARP funds. The litigation was settled with the CEO giving up part of his severance package and agreeing to leave the board, as well as the implementation of important corporate governance changes one commentator described as "unprecedented."

## Options Backdating

In 2006, the Wall Street Journal reported that three companies appeared to have "backdated" stock option grants to their senior executives, pretending that the options had been awarded when the stock price was at its lowest price of the quarter, or even year.  An executive who exercised the option thus paid the company an artificially low price, which stole money from the corporate coffers.  While stock options are designed to incentivize recipients to drive the company's stock price up, backdating options to artificially low prices undercut those incentives, overpaid executives, violated tax rules, and decreased shareholder value.

Kessler Topaz worked with a financial analyst to identify dozens of other companies that had engaged in similar practices, and filed more than 50 derivative suits challenging the practice.  These suits sought to force the executives to disgorge their improper compensation and to revamp the companies' executive compensation policies.  Ultimately, as lead counsel in these derivative actions, Kessler Topaz achieved significant monetary and non-monetary benefits at dozens of companies, including:

*Comverse Technology, Inc.*:  Settlement required Comverse's founder and CEO Kobi Alexander, who fled to Namibia after the backdating was revealed, to disgorge more than $62 million in excessive backdated option compensation.  The settlement also overhauled the company's corporate governance and internal controls, replacing a number of directors and corporate executives, splitting the Chairman and CEO positions, and instituting majority voting for directors.

*Monster Worldwide, Inc.*:  Settlement required recipients of backdated stock options to disgorge more than $32 million in unlawful gains back to the company, plus agreeing to significant corporate governance measures. These measures included (a) requiring Monster's founder Andrew McKelvey to reduce his voting control over Monster from 31% to 7%, by exchanging super-voting stock for common stock; and (b) implementing new equity granting practices that require greater accountability and transparency in the granting of stock options moving forward. In approving the settlement, the court noted "the good results, mainly the amount of money for the shareholders and also the change in governance of the company itself, and really the hard work that had to go into that to achieve the results…."

*Affiliated Computer Services, Inc.*:  Settlement required executives, including founder Darwin Deason, to give up $20 million in improper backdated options.  The litigation was also a catalyst for the company to replace its CEO and CFO and revamp its executive compensation policies.

## Mergers & Acquisitions Litigation

*City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc., et al.*, C.A. No. 12481-VCL (Del. Ch.):
On September 12, 2017, the Delaware Chancery Court approved one of the largest class action M&A settlements in the history of the Delaware Chancery Court, a $86.5 million settlement relating to the acquisition of ExamWorks Group, Inc. by private equity firm Leonard Green & Partners, LP.

The settlement caused ExamWorks stockholders to receive a 6% improvement on the $35.05 per share merger consideration negotiated by the defendants. This amount is unusual especially for litigation challenging a third-party merger. The settlement amount is also noteworthy because it includes a $46.5 million contribution from ExamWorks' outside legal counsel, Paul Hastings LLP.

*In re ArthroCare Corporation S'holder Litig., Consol.* C.A. No. 9313-VCL (Del. Ch. Nov. 13, 2014):
Kessler Topaz, as co-lead counsel, challenged the take-private of Arthrocare Corporation by private equity firm Smith & Nephew.  This class action litigation alleged, among other things, that Arthrocare's Board breached their fiduciary duties by failing to maximize stockholder value in the merger.  Plaintiffs also alleged that that the merger violated Section 203 of the Delaware General Corporation Law, which prohibits mergers with "interested stockholders," because Smith & Nephew had contracted with JP Morgan to provide financial advice and financing in the merger, while a subsidiary of JP Morgan owned more than 15% of Arthrocare's stock.  Plaintiffs also alleged that the agreement between Smith & Nephew and the JP Morgan subsidiary violated a "standstill" agreement between the JP Morgan subsidiary and Arthrocare. The court set these novel legal claims for an expedited trial prior to the closing of the merger.  The parties agreed to settle the action when Smith & Nephew agreed to increase the merger consideration paid to Arthrocare stockholders by $12 million, less than a month before trial.

*In re Safeway Inc. Stockholders Litig.*, C.A. No. 9445-VCL (Del. Ch. Sept. 17, 2014):
Kessler Topaz represented the Oklahoma Firefighters Pension and Retirement System in class action litigation challenging the acquisition of Safeway, Inc. by Albertson's grocery chain for $32.50 per share in cash and contingent value rights.  Kessler Topaz argued that the value of CVRs was illusory, and Safeway's shareholder rights plan had a prohibitive effect on potential bidders making superior offers to acquire

Safeway, which undermined the effectiveness of the post-signing "go shop." Plaintiffs sought to enjoin the transaction, but before the scheduled preliminary injunction hearing took place, Kessler Topaz negotiated (i) modifications to the terms of the CVRs and (ii) defendants' withdrawal of the shareholder rights plan. In approving the settlement, Vice Chancellor Laster of the Delaware Chancery Court stated that "the plaintiffs obtained significant changes to the transaction . . . that may well result in material increases in the compensation received by the class," including substantial benefits potentially in excess of $230 million.

***In re MPG Office Trust, Inc. Preferred Shareholder Litig., Cons. Case No. 24-C-13-004097 (Md. Cir. Oct. 20, 2015):***
Kessler Topaz challenged a coercive tender offer whereby MPG preferred stockholders received preferred stock in Brookfield Office Properties, Inc. without receiving any compensation for their accrued and unpaid dividends. Kessler Topaz negotiated a settlement where MPG preferred stockholders received a dividend of $2.25 per share, worth approximately $21 million, which was the only payment of accrued dividends Brookfield DTLA Preferred Stockholders had received as of the time of the settlement.

***In re Globe Specialty Metals, Inc. Stockholders Litig., C.A. 10865-VCG (Del. Ch. Feb. 15, 2016):***
Kessler Topaz served as co-lead counsel in class action litigation arising from Globe's acquisition by Grupo Atlantica to form Ferroglobe. Plaintiffs alleged that Globe's Board breached their fiduciary duties to Globe's public stockholders by agreeing to sell Globe for an unfair price, negotiating personal benefits for themselves at the expense of the public stockholders, failing to adequately inform themselves of material issues with Grupo Atlantica, and issuing a number of materially deficient disclosures in an attempt to mask issues with the negotiations. At oral argument on Plaintiffs' preliminary injunction motion, the Court held that Globe stockholders likely faced irreparable harm from the Board's conduct, but reserved ruling on the other preliminary injunction factors. Prior to the Court's final ruling, the parties agreed to settle the action for $32.5 million and various corporate governance reforms to protect Globe stockholders' rights in Ferroglobe.

***In re Dole Food Co., Inc. Stockholder Litig., Consol. C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015):***
On August 27, 2015, Vice Chancellor J. Travis Laster issued his much-anticipated post-trial verdict in litigation by former stockholders of Dole Food Company against Dole's chairman and controlling stockholder David Murdock. In a 106-page ruling, Vice Chancellor Laster found that Murdock and his longtime lieutenant, Dole's former president and general counsel C. Michael Carter, unfairly manipulated Dole's financial projections and misled the market as part of Murdock's efforts to take the company private in a deal that closed in November 2013. Among other things, the Court concluded that Murdock and Carter "primed the market for the freeze-out by driving down Dole's stock price" and provided the company's outside directors with "knowingly false" information and intended to "mislead the board for Mr. Murdock's benefit."

Vice Chancellor Laster found that the $13.50 per share going-private deal underpaid stockholders, and awarded class damages of $2.74 per share, totaling $148 million. That award represents the largest post-trial class recovery in the merger context. The largest post-trial derivative recovery in a merger case remains Kessler Topaz's landmark 2011 $2 billion verdict in *In re Southern Peru*.

***In re Genentech, Inc. Shareholders Lit., Cons. Civ. Action No. 3991-VCS (Del. Ch. 2008):***
Kessler Topaz served as Co-Lead Counsel in this shareholder class action brought against the directors of Genentech and Genentech's majority stockholder, Roche Holdings, Inc., in response to Roche's July 21, 2008 attempt to acquire Genentech for $89 per share. We sought to enforce provisions of an Affiliation Agreement between Roche and Genentech and to ensure that Roche fulfilled its fiduciary obligations to Genentech's shareholders through any buyout effort by Roche. After moving to enjoin the tender offer, Kessler Topaz negotiated with Roche and Genentech to amend the Affiliation Agreement to allow a

negotiated transaction between Roche and Genentech, which enabled Roche to acquire Genentech for $95 per share, approximately $3.9 billion more than Roche offered in its hostile tender offer. In approving the settlement, then-Vice Chancellor Leo Strine complimented plaintiffs' counsel, noting that this benefit was only achieved through "real hard-fought litigation in a complicated setting."

*In re GSI Commerce, Inc. Shareholder Litig.*, **Consol. C.A. No. 6346-VCN (Del. Ch. Nov. 15, 2011):**
On behalf of the Erie County Employees' Retirement System, we alleged that GSI's founder breached his fiduciary duties by negotiating a secret deal with eBay for him to buy several GSI subsidiaries at below market prices before selling the remainder of the company to eBay.  These side deals significantly reduced the acquisition price paid to GSI stockholders. Days before an injunction hearing, we negotiated an improvement in the deal price of $24 million.

*In re Amicas, Inc. Shareholder Litigation,* **10-0174-BLS2 (Suffolk County, MA 2010):**
Kessler Topaz served as lead counsel in class action litigation challenging a proposed private equity buyout of Amicas that would have paid Amicas shareholders $5.35 per share in cash while certain Amicas executives retained an equity stake in the surviving entity moving forward. Kessler Topaz prevailed in securing a preliminary injunction against the deal, which then allowed a superior bidder to purchase the Company for an additional $0.70 per share ($26 million). The court complimented Kessler Topaz attorneys for causing an "exceptionally favorable result for Amicas' shareholders" after "expend[ing] substantial resources."

*In re Harleysville Mutual*, **Nov. Term 2011, No. 02137 (C.C.P., Phila. Cnty.):**
Kessler Topaz served as co-lead counsel in expedited merger litigation challenging Harleysville's agreement to sell the company to Nationwide Insurance Company.  Plaintiffs alleged that policyholders were entitled to receive cash in exchange for their ownership interests in the company, not just new Nationwide policies. Plaintiffs also alleged that the merger was "fundamentally unfair" under Pennsylvania law. The defendants contested the allegations and contended that the claims could not be prosecuted directly by policyholders (as opposed to derivatively on the company's behalf). Following a two-day preliminary injunction hearing, we settled the case in exchange for a $26 million cash payment to policyholders.

## Consumer Protection and Fiduciary Litigation

*In re: J.P. Jeanneret Associates Inc., et al.,* **No. 09-cv-3907 (S.D.N.Y.):**
Kessler Topaz served as lead counsel for one of the plaintiff groups in an action against J.P. Jeanneret and Ivy Asset Management relating to an alleged breach of fiduciary and statutory duty in connection with the investment of retirement plan assets in Bernard Madoff-related entities.  By breaching their fiduciary duties, Defendants caused significant losses to the retirement plans.  Following extensive hard-fought litigation, the case settled for a total of $216.5 million.

*In re: National City Corp. Securities, Derivative and ERISA Litig,* **No. 08-nc-7000 (N.D. Ohio):**
Kessler Topaz served as a lead counsel in this complex action alleging that certain directors and officers of National City Corp. breached their fiduciary duties under the Employee Retirement Income Security Act of 1974. These breaches arose from an investment in National City stock during a time when defendants knew, or should have known, that the company stock was artificially inflated and an imprudent investment for the company's 401(k) plan. The case settled for $43 million on behalf of the plan, plaintiffs and a settlement class of plan participants.

*Alston, et al. v. Countrywide Financial Corp. et al.*, **No. 07-cv-03508 (E.D. Pa.):**
Kessler Topaz served as lead counsel in this novel and complex action which alleged that Defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc. and Balboa Reinsurance Co. violated

the Real Estate Settlement Procedure Act ("RESPA") and ultimately cost borrowers millions of dollars. Specifically, the action alleged that Defendants engaged in a scheme related to private mortgage insurance involving kickbacks, which are prohibited under RESPA. After three and a half years of hard-fought litigation, the action settled for $34 million.

### *Trustees of the Local 464A United Food and Commercial Workers Union Pension Fund, et al. v. Wachovia Bank, N.A., et al.*, No. 09-cv-00668 (DNJ):

For more than 50 years, Wachovia and its predecessors acted as investment manager for the Local 464A UFCW Union Funds, exercising investment discretion consistent with certain investment guidelines and fiduciary obligations. Until mid-2007, Wachovia managed the fixed income assets of the funds safely and conservatively, and their returns closely tracked the Lehman Aggregate Bond Index (now known as the Barclay's Capital Aggregate Bond Index) to which the funds were benchmarked. However, beginning in mid-2007 Wachovia significantly changed the investment strategy, causing the funds' portfolio value to drop drastically below the benchmark. Specifically, Wachovia began to dramatically decrease the funds' holdings in short-term, high-quality, low-risk debt instruments and materially increase their holdings in high-risk mortgage-backed securities and collateralized mortgage obligations. We represented the funds' trustees in alleging that, among other things, Wachovia breached its fiduciary duty by: failing to invest the assets in accordance with the funds' conservative investment guidelines; failing to adequately monitor the funds' fixed income investments; and failing to provide complete and accurate information to plaintiffs concerning the change in investment strategy. The matter was resolved privately between the parties.

### *In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.*, No. 1:12-md-02335 (S.D.N.Y.):

On behalf of the Southeastern Pennsylvania Transportation Authority Pension Fund and a class of similarly situated domestic custodial clients of BNY Mellon, we alleged that BNY Mellon secretly assigned a spread to the FX rates at which it transacted FX transactions on behalf of its clients who participated in the BNY Mellon's automated "Standing Instruction" FX service. BNY Mellon determining this spread by executing its clients' transactions at one rate and then, typically, at the end of the trading day, assigned a rate to its clients which approximated the worst possible rates of the trading day, pocketing the difference as riskless profit. This practice was despite BNY Mellon's contractual promises to its clients that its Standing Instruction service was designed to provide "best execution," was "free of charge" and provided the "best rates of the day." The case asserted claims for breach of contract and breach of fiduciary duty on behalf of BNY Mellon's custodial clients and sought to recover the unlawful profits that BNY Mellon earned from its unfair and unlawful FX practices. The case was litigated in collaboration with separate cases brought by state and federal agencies, with Kessler Topaz serving as lead counsel and a member of the executive committee overseeing the private litigation. After extensive discovery, including more than 100 depositions, over 25 million pages of fact discovery, and the submission of multiple expert reports, Plaintiffs reached a settlement with BNY Mellon of $335 million. Additionally, the settlement is being administered by Kessler Topaz along with separate recoveries by state and federal agencies which bring the total recovery for BNY Mellon's custodial customers to $504 million. The settlement was finally approved on September 24, 2015. In approving the settlement, Judge Lewis Kaplan praised counsel for a "wonderful job," recognizing that they were "fought tooth and nail at every step of the road." In further recognition of the efforts of counsel, Judge Kaplan noted that "[t]his was an outrageous wrong by the Bank of New York Mellon, and plaintiffs' counsel deserve a world of credit for taking it on, for running the risk, for financing it and doing a great job."

### *CompSource Oklahoma v. BNY Mellon Bank, N.A.*, No. CIV 08-469-KEW (E.D. Okla. October 25, 2012):

Kessler Topaz served as Interim Class Counsel in this matter alleging that BNY Mellon Bank, N.A. and the Bank of New York Mellon (collectively, "BNYM") breached their statutory, common law and contractual duties in connection with the administration of their securities lending program. The Second Amended

Complaint alleged, among other things, that BNYM imprudently invested cash collateral obtained under its securities lending program in medium term notes issued by Sigma Finance, Inc. -- a foreign structured investment vehicle ("SIV") that is now in receivership -- and that such conduct constituted a breach of BNYM's fiduciary obligations under the Employee Retirement Income Security Act of 1974, a breach of its fiduciary duties under common law, and a breach of its contractual obligations under the securities lending agreements. The Complaint also asserted claims for negligence, gross negligence and willful misconduct. The case recently settled for $280 million.

***Transatlantic Holdings, Inc., et al. v. American International Group, Inc., et al.,* American Arbitration Association Case No. 50 148 T 00376 10:**
Kessler Topaz served as counsel for Transatlantic Holdings, Inc., and its subsidiaries ("TRH"), alleging that American International Group, Inc. and its subsidiaries ("AIG") breached their fiduciary duties, contractual duties, and committed fraud in connection with the administration of its securities lending program. Until June 2009, AIG was TRH's majority shareholder and, at the same time, administered TRH's securities lending program. TRH's Statement of Claim alleged that, among other things, AIG breached its fiduciary obligations as investment advisor and majority shareholder by imprudently investing the majority of the cash collateral obtained under its securities lending program in mortgage backed securities, including Alt-A and subprime investments. The Statement of Claim further alleged that AIG concealed the extent of TRH's subprime exposure and that when the collateral pools began experiencing liquidity problems in 2007, AIG unilaterally carved TRH out of the pools so that it could provide funding to its wholly owned subsidiaries to the exclusion of TRH. The matter was litigated through a binding arbitration and TRH was awarded $75 million.

***Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A.* – Consolidated Action No. 09-cv-00686 (SAS) (S.D.N.Y.):**
On January 23, 2009, the firm filed a class action complaint on behalf of all entities that were participants in JPMorgan's securities lending program and that incurred losses on investments that JPMorgan, acting in its capacity as a discretionary investment manager, made in medium-term notes issue by Sigma Finance, Inc. – a now defunct structured investment vehicle.  The losses of the Class exceeded $500 million. The complaint asserted claims for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), as well as common law breach of fiduciary duty, breach of contract and negligence. Over the course of discovery, the parties produced and reviewed over 500,000 pages of documents, took 40 depositions (domestic and foreign) and exchanged 21 expert reports. The case settled for $150 million. Trial was scheduled to commence on February 6, 2012.

***In re Global Crossing, Ltd. ERISA Litigation,* No. 02 Civ. 7453 (S.D.N.Y. 2004):**
Kessler Topaz served as Co-Lead Counsel in this novel, complex and high-profile action which alleged that certain directors and officers of Global Crossing, a former high-flier of the late 1990's tech stock boom, breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to certain company-provided 401(k) plans and their participants. These breaches arose from the plans' alleged imprudent investment in Global Crossing stock during a time when defendants knew, or should have known, that the company was facing imminent bankruptcy. A settlement of plaintiffs' claims restoring $79 million to the plans and their participants was approved in November 2004. At the time, this represented the largest recovery received in a company stock ERISA class action.

***In re AOL Time Warner ERISA Litigation,* No. 02-CV-8853 (S.D.N.Y. 2006):**
Kessler Topaz, which served as Co-Lead Counsel in this highly-publicized ERISA fiduciary breach class action brought on behalf of the Company's 401(k) plans and their participants, achieved a record $100 million settlement with defendants. The $100 million restorative cash payment to the plans (and, concomitantly, their participants) represents the largest recovery from a single defendant in a breach of fiduciary action relating to mismanagement of plan assets held in the form of employer securities. The

action asserted claims for breach of fiduciary duties pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of the participants in the AOL Time Warner Savings Plan, the AOL Time Warner Thrift Plan, and the Time Warner Cable Savings Plan (collectively, the "Plans") whose accounts purchased and/or held interests in the AOLTW Stock Fund at any time between January 27, 1999 and July 3, 2003. Named as defendants in the case were Time Warner (and its corporate predecessor, AOL Time Warner), several of the Plans' committees, as well as certain current and former officers and directors of the company. In March 2005, the Court largely denied defendants' motion to dismiss and the parties began the discovery phase of the case. In January 2006, Plaintiffs filed a motion for class certification, while at the same time defendants moved for partial summary judgment. These motions were pending before the Court when the settlement in principle was reached. Notably, an Independent Fiduciary retained by the Plans to review the settlement in accordance with Department of Labor regulations approved the settlement and filed a report with Court noting that the settlement, in addition to being "more than a reasonable recovery" for the Plans, is "one of the largest ERISA employer stock action settlements in history."

### *In re Honeywell International ERISA Litigation,* No. 03-1214 (DRD) (D.N.J. 2004):

Kessler Topaz served as Lead Counsel in a breach of fiduciary duty case under ERISA against Honeywell International, Inc. and certain fiduciaries of Honeywell defined contribution pension plans. The suit alleged that Honeywell and the individual fiduciary defendants, allowed Honeywell's 401(k) plans and their participants to imprudently invest significant assets in company stock, despite that defendants knew, or should have known, that Honeywell's stock was an imprudent investment due to undisclosed, wide-ranging problems stemming from a consummated merger with Allied Signal and a failed merger with General Electric. The settlement of plaintiffs' claims included a $14 million payment to the plans and their affected participants, and significant structural relief affording participants much greater leeway in diversifying their retirement savings portfolios.

### *Henry v. Sears, et. al.,* Case No. 98 C 4110 (N.D. Ill. 1999):

The Firm served as Co-Lead Counsel for one of the largest consumer class actions in history, consisting of approximately 11 million Sears credit card holders whose interest rates were improperly increased in connection with the transfer of the credit card accounts to a national bank. Kessler Topaz successfully negotiated a settlement representing approximately 66% of all class members' damages, thereby providing a total benefit exceeding $156 million. All $156 million was distributed automatically to the Class members, without the filing of a single proof of claim form. In approving the settlement, the District Court stated: ". . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance."

## Antitrust Litigation

### *In re: Flonase Antitrust Litigation,* No. 08-cv-3149 (E.D. Pa.):

Kessler Topaz served as a lead counsel on behalf of a class of direct purchaser plaintiffs in an antitrust action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging, among other things, that defendant GlaxoSmithKline (GSK) violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by engaging in "sham" petitioning of a government agency. Specifically, the Direct Purchasers alleged that GSK unlawfully abused the citizen petition process contained in Section 505(j) of the Federal Food, Drug, and Cosmetic Act and thus delayed the introduction of less expensive generic versions of Flonase, a highly popular allergy drug, causing injury to the Direct Purchaser Class. Throughout the course of the four year litigation, Plaintiffs defeated two motions for summary judgment, succeeded in having a class certified and conducted extensive discovery. After lengthy negotiations and shortly before trial, the action settled for $150 million.

*In re: Wellbutrin SR Antitrust Litigation,* **No. 04-cv-5898 (E.D. Pa.):**
Kessler Topaz was a lead counsel in an action which alleged, among other things, that defendant GlaxoSmithKline (GSK) violated the antitrust, consumer fraud, and consumer protection laws of various states.  Specifically, Plaintiffs and the class of Third-Party Payors alleged that GSK manipulated patent filings and commenced baseless infringement lawsuits in connection wrongfully delaying generic versions of Wellbutrin SR and Zyban from entering the market, and that Plaintiffs and the Class of Third-Party Payors suffered antitrust injury and calculable damages as a result.  After more than eight years of litigation, the action settled for $21.5 million.

*In re: Metoprolol Succinate End-Payor Antitrust Litigation,* **No. 06-cv-71 (D. Del.):**
Kessler Topaz was co-lead counsel in a lawsuit which alleged that defendant AstraZeneca prevented generic versions of Toprol-XL from entering the market by, among other things, improperly manipulating patent filings and filing baseless patent infringement lawsuits.  As a result, AstraZeneca unlawfully monopolized the domestic market for Toprol-XL and its generic bio-equivalents.  After seven years of litigation, extensive discovery and motion practice, the case settled for $11 million.

*In re Remeron Antitrust Litigation,* **No. 02-CV-2007 (D.N.J. 2004):**
Kessler Topaz was Co-Lead Counsel in an action which challenged Organon, Inc.'s filing of certain patents and patent infringement lawsuits as an abuse of the Hatch-Waxman Act, and an effort to unlawfully extend their monopoly in the market for Remeron. Specifically, the lawsuit alleged that defendants violated state and federal antitrust laws in their efforts to keep competing products from entering the market, and sought damages sustained by consumers and third-party payors. After lengthy litigation, including numerous motions and over 50 depositions, the matter settled for $36 million.

## OUR PROFESSIONALS

## PARTNERS

**JULES D. ALBERT,** a partner of the Firm, concentrates his practice in mergers and acquisition litigation and stockholder derivative litigation. Mr. Albert received his law degree from the University of Pennsylvania Law School, where he was a Senior Editor of the *University of Pennsylvania Journal of Labor and Employment Law* and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated *magna cum laude* with a Bachelor of Arts in Political Science from Emory University. Mr. Albert is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Mr. Albert has litigated in state and federal courts across the country, and has represented stockholders in numerous actions that have resulted in significant monetary recoveries and corporate governance improvements, including: *In re Sunrise Senior Living, Inc. Deriv. Litig*., No. 07-00143 (D.D.C.); *Mercier v. Whittle, et al.*, No. 2008-CP-23-8395 (S.C. Ct. Com. Pl., 13th Jud. Cir.); *In re K-V Pharmaceutical Co. Deriv. Litig.*, No. 06-00384 (E.D. Mo.); *In re Progress Software Corp. Deriv. Litig.*, No. SUCV2007-01937-BLS2 (Mass. Super. Ct., Suffolk Cty.); *In re Quest Software, Inc. Deriv. Litig.* No 06CC00115 (Cal. Super. Ct., Orange Cty.); and *Quaco v. Balakrishnan, et al.,* No. 06-2811 (N.D. Cal.).

**NAUMON A. AMJED,** a partner of the Firm, concentrates his practice on new matter development with a focus on analyzing securities class action lawsuits, direct (or opt-out) actions, non-U.S. securities and shareholder litigation, SEC whistleblower actions, breach of fiduciary duty cases, antitrust matters, data

breach actions and oil and gas litigation. Mr. Amjed is a graduate of the Villanova University School of Law, *cum laude*, and holds an undergraduate degree in business administration from Temple University, *cum laude*. Mr. Amjed is a member of the Delaware State Bar, the Bar of the Commonwealth of Pennsylvania, the New York State Bar, and is admitted to practice before the United States Courts for the District of Delaware, the Eastern District of Pennsylvania and the Southern District of New York.

As a member of the Firm's lead plaintiff practice group, Mr. Amjed has represented clients serving as lead plaintiffs in several notable securities class action lawsuits including: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09MDL2058 (S.D.N.Y.) (settled -- $2.425 billion); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery) and *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-3852-GBD ("London Whale Litigation") ($150 million recovery). Additionally, Mr. Amjed served on the national Executive Committee representing financial institutions suffering losses from Target Corporation's 2013 data breach – one of the largest data breaches in history. The Target litigation team was responsible for a landmark data breach opinion that substantially denied Target's motion to dismiss and was also responsible for obtaining certification of a class of financial institutions. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304 (D. Minn. 2014); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 PAM/JJK, 2015 WL 5432115 (D. Minn. Sept. 15, 2015). At the time of its issuance, the class certification order in Target was the first of its kind in data breach litigation by financial institutions.

Mr. Amjed also has significant experience conducting complex litigation in state and federal courts including federal securities class actions, shareholder derivative actions, suits by third-party insurers and other actions concerning corporate and alternative business entity disputes. Mr. Amjed has litigated in numerous state and federal courts across the country, including the Delaware Court of Chancery, and has represented shareholders in several high profile lawsuits, including: *LAMPERS v. CBOT Holdings, Inc. et al.*, C.A. No. 2803-VCN (Del. Ch.); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006); *In re Global Crossing Sec. Litig.,* 02— Civ. — 910 (S.D.N.Y.); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687 (S.D. Tex. 2006); and *In re Marsh McLennan Cos., Inc. Sec. Litig.* 501 F. Supp. 2d 452 (S.D.N.Y. 2006).

**ETHAN J. BARLIEB,** a partner of the Firm, concentrates his practice in the areas of ERISA, consumer protection and antitrust litigation. Mr. Barlieb received his law degree, *magna cum laude*, from the University of Miami School of Law in 2007 and his undergraduate degree from Cornell University in 2003. Mr. Barlieb is licensed to practice in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Mr. Barlieb was an associate with Pietragallo Gordon Alfano Bosick & Raspanti, LLP, where he worked on various commercial, securities and employment matters. Before that, Mr. Barlieb served as a law clerk for the Honorable Mitchell S. Goldberg in the U.S. District Court for the Eastern District of Pennsylvania.

**STUART L. BERMAN,** a partner of the Firm, concentrates his practice on securities class action litigation in federal courts throughout the country, with a particular emphasis on representing institutional investors active in litigation. Mr. Berman received his law degree from George Washington University National Law Center, and is an honors graduate from Brandeis University. Mr. Berman is licensed to practice in Pennsylvania and New Jersey.

Mr. Berman regularly counsels and educates institutional investors located around the world on emerging legal trends, new case ideas and the rights and obligations of institutional investors as they relate to securities fraud class actions and individual actions. In this respect, Mr. Berman has been instrumental in

courts appointing the Firm's institutional clients as lead plaintiffs in class actions as well as in representing institutions individually in direct actions. Mr. Berman is currently representing institutional investors in direct actions against Vivendi and Merck, and took a very active role in the precedent setting Shell settlement on behalf of many of the Firm's European institutional clients.

Mr. Berman is a frequent speaker on securities issues, especially as they relate to institutional investors, at events such as The European Pension Symposium in Florence, Italy; the Public Funds Symposium in Washington, D.C.; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; the New England Pension Summit in Newport, Rhode Island; the Rights and Responsibilities for Institutional Investors in Amsterdam, Netherlands; and the European Investment Roundtable in Barcelona, Spain.

**DAVID A. BOCIAN**, a partner of the Firm, focuses his practice on whistleblower representation and False Claims Act litigation. Mr. Bocian received his law degree from the University of Virginia School of Law and graduated *cum laude* from Princeton University. He is licensed to practice law in the Commonwealth of Pennsylvania, New Jersey, New York and the District of Columbia.

Mr. Bocian began his legal career in Washington, D.C., as a litigation associate at Patton Boggs LLP, where his practice included internal corporate investigations, government contracts litigation and securities fraud matters. He spent more than ten years as a federal prosecutor in the U.S. Attorney's Office for the District of New Jersey, where he was appointed Senior Litigation Counsel and managed the Trenton U.S. Attorney's office. During his tenure, Mr. Bocian oversaw multifaceted investigations and prosecutions pertaining to government corruption and federal program fraud, commercial and public sector kickbacks, tax fraud, and other white collar and financial crimes. He tried numerous cases before federal juries, and was a recipient of the Justice Department's Director's Award for superior performance by an Assistant U.S. Attorney, as well as commendations from federal law enforcement agencies including the FBI and IRS.

Mr. Bocian has extensive experience in the health care field. As an adjunct professor of law, he has taught Healthcare Fraud and Abuse at Rutgers School of Law – Camden, and previously was employed in the health care industry, where he was responsible for implementing and overseeing a system-wide compliance program for a complex health system.

**GREGORY M. CASTALDO,** a partner of the Firm, concentrates his practice in the area of securities litigation. Mr. Castaldo received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey.

Mr. Castaldo served as one of Kessler Topaz's lead litigation partners in *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion). Mr. Castaldo also served as the lead litigation partner in *In re Tenet Healthcare Corp.*, No. 02-CV-8462 (C.D. Cal. 2002), securing an aggregate recovery of $281.5 million for the class, including $65 million from Tenet's auditor. Mr. Castaldo also played a primary litigation role in the following cases: *In re Liberate Technologies Sec. Litig.*, No. C-02-5017 (MJJ) (N.D. Cal. 2005) (settled — $13.8 million); *In re Sodexho Marriott Shareholders Litig.*, Consol. C.A. No. 18640-NC (Del. Ch. 1999) (settled — $166 million benefit); *In re Motive, Inc. Sec. Litig.*, 05-CV-923 (W.D.Tex. 2005) (settled — $7 million cash, 2.5 million shares); and *In re Wireless Facilities, Inc., Sec. Litig.*, 04-CV-1589 (S.D. Cal. 2004) (settled — $16.5 million). In addition, Mr. Castaldo served as one of the lead trial attorneys for shareholders in the historic *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.) trial, which resulted in a verdict in favor of investors on liability and damages.

**DARREN J. CHECK,** a Partner of the Firm, manages Kessler Topaz's portfolio monitoring & claims filing service, *SecuritiesTracker™*, and works closely with the Firm's litigators and new matter development department. He consults with institutional investors from around the world with regard to implementing systems to best identify, analyze, and monetize claims they have in shareholder litigation.

In addition, Darren assists Firm clients in evaluating opportunities to take an active role in shareholder litigation, arbitration, and other loss recovery methods. This includes U.S. based litigation and arbitration, as well as actions in an increasing number of jurisdictions around the globe. With an increasingly complex investment and legal landscape, Mr. Check has experience advising on traditional class actions, direct actions (opt-outs), non-U.S. opt-in actions, fiduciary actions, appraisal actions and arbitrations to name a few. Over the last twenty years Darren has become a trusted advisor to hedge funds, mutual fund managers, asset managers, insurance companies, sovereign wealth funds, central banks, and pension funds throughout North America, Europe, Asia, Australia, and the Middle East.

Darren regularly speaks on the subjects of shareholder litigation, corporate governance, investor activism, and recovery of investment losses at conferences around the world. He has also been actively involved in the precedent setting Shell and Fortis settlements in the Netherlands, the Olympus shareholder case in Japan, direct actions against Petrobras and Merck, and securities class actions against Bank of America, Lehman Brothers, Royal Bank of Scotland (U.K.), and Hewlett-Packard. Currently Mr. Check represents investors in numerous high profile actions in the United States, the Netherlands, Germany, France, Japan, and Australia.

Darren received his law degree from Temple University School of Law and is a graduate of Franklin & Marshall College. He is admitted to practice in numerous state and federal courts across the United States.

**EMILY N. CHRISTIANSEN,** a partner of the Firm, focuses her practice in securities litigation and international actions, in particular. Ms. Christiansen received her Juris Doctor and Global Law certificate, *cum laude*, from Lewis and Clark Law School in 2012. Ms. Christiansen is a graduate of the University of Portland, where she received her Bachelor of Arts, *cum laude*, in Political Science and German Studies. Ms. Christiansen is currently licensed to practice law in New York and Pennsylvania.

While in law school, Ms. Christiansen worked as an intern in Trial Chambers III at the International Criminal Tribunal for the Former Yugoslavia. Ms. Christiansen also spent two months in India as foreign legal trainee with the corporate law firm of Fox Mandal. Ms. Christiansen is a 2007 recipient of a Fulbright Fellowship and is fluent in German.

Ms. Christiansen devotes her time to advising clients on the challenges and benefits of pursuing particular litigation opportunities in jurisdictions outside the U.S.  In those non-US actions where Kessler Topaz is actively involved, Emily liaises with local counsel, helps develop case strategy, reviews pleadings, and helps clients understand and successfully navigate the legal process. Her experience includes non-US opt-in actions, international law, and portfolio monitoring and claims administration. In her role, Ms. Christiansen has helped secure recoveries for institutional investors in litigation in Japan against *Olympus Corporation* (settled - ¥11 billion) and in the Netherlands against *Fortis Bank N.V*. (settled - €1.2 billion).

**JOSHUA E. D'ANCONA,** a partner of the Firm, concentrates his practice in the securities litigation and lead plaintiff departments of the Firm. Mr. D'Ancona received his J.D., *magna cum laude*, from the Temple University Beasley School of Law in 2007, where he served on the Temple Law Review and as president of the Moot Court Honors Society, and graduated with honors from Wesleyan University. He is licensed to practice in Pennsylvania and New Jersey.

Before joining the Firm in 2009, he served as a law clerk to the Honorable Cynthia M. Rufe of the United States District Court for the Eastern District of Pennsylvania.

**RYAN T. DEGNAN,** a partner of the Firm, concentrates his practice on new matter development with a specific focus on analyzing securities class action lawsuits, antitrust actions, and complex consumer actions. Mr. Degnan received his law degree from Temple University Beasley School of Law, where he was a Notes and Comments Editor for the Temple Journal of Science, Technology & Environmental Law, and earned his undergraduate degree in Biology from The Johns Hopkins University. While a law student, Mr. Degnan served as a Judicial Intern to the Honorable Gene E.K. Pratter of the United States District Court for the Eastern District of Pennsylvania. Mr. Degnan is licensed to practice in Pennsylvania and New Jersey.

As a member of the Firm's lead plaintiff litigation practice group, Mr. Degnan has helped secure the Firm's clients' appointments as lead plaintiffs in: *In re HP Sec. Litig.*, No. 12-cv-5090, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013); *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-3852-GBD ("London Whale Litigation") ($150 million recovery); *Freedman v. St. Jude Medical, Inc., et al.*, No. 12-cv-3070 (D. Minn.); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, No. 14 Civ. 81057 (WPD), 2014 WL 7236985 (S.D. Fla. Nov. 7, 2014); *Louisiana Municipal Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc., et al.*, No. 11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012); and *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, No. 11-cv-3658, 2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011). Additional representative matters include: *In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.*, No. 12-md-02335 (S.D.N.Y.) ($335 million settlement); and *Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al.*, No. 12-cv-02865 (S.D.N.Y.) ($69 million settlement).

**ERIC K. GERARD**, a partner of the Firm, is a former federal prosecutor and experienced trial lawyer whose practice focuses on securities fraud, antitrust, and consumer protection litigation. Eric received his law degree from the University of Virginia School of Law, earning Order of the Coif honors while completing a master's degree in international economics at the Johns Hopkins University.

Before joining Kessler Topaz, Eric served an Assistant District Attorney at the Manhattan District Attorney's Office, as a civil litigator at an international law firm in Houston and a prominent boutique in New Orleans, and as an Assistant U.S. Attorney in Florida. He has tried a range of complex cases to verdict, including international money laundering, wire fraud conspiracy, securities counterfeiting, identity theft, obstruction of justice, extraterritorial child exploitation, civil healthcare liability claims, and murder-for-hire.

**ELI R. GREENSTEIN** is managing partner of the Firm's San Francisco office and a member of the Firm's federal securities litigation practice group. Mr. Greenstein concentrates his practice on federal securities law violations and white collar fraud, including violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Mr. Greenstein received his J.D. from Santa Clara University School of Law in 2001, and his M.B.A. from Santa Clara's Leavey School of Business in 2002. Mr. Greenstein received his B.A. in Business Administration from the University of San Diego in 1997 where he was awarded the Presidential Scholarship. He is licensed to practice in California.

Mr. Greenstein also was a judicial extern for the Honorable James Ware (Ret.), Chief Judge of the United States District Court for the Northern District of California. Prior to joining the Firm, Mr. Greenstein was a partner at Robbins Geller Rudman & Dowd LLP in its federal securities litigation practice group. His relevant background also includes consulting for PricewaterhouseCoopers LLP's International Tax and Legal Services division, and work on the trading floor of the Chicago Mercantile Exchange, S&P 500 futures and options division.

Mr. Greenstein has been involved in dozens of high-profile securities fraud actions resulting in more than $1 billion in recoveries for clients and investors, including: *Nieman v. Duke Energy Corp.*, 2013 U.S. Dist. LEXIS 110693 (W.D.N.C.) ($146 million recovery); *In re HP Secs. Litig.*, 2013 U.S. Dist. LEXIS 168292 (N.D. Cal.) ($100 million recovery); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (N.D. Cal) ($95 million recovery); *In re AOL Time Warner Sec. Litig. State Opt-Out Actions* (*Regents of the Univ. of Cal. v. Parsons* (Cal. Super. Ct.), *Ohio Pub. Emps. Ret. Sys. v. Parsons* (Franklin County Ct. of Common Pleas) ($618 million in total recoveries); *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.*, No. 08-cv-06324-PAM-AJB (D. Minn.) (settled -- $85 million); *In re MGM Mirage Securities Litigation*, Case No. 2:09-cv-01558-GMN-VCF (D. Nev.) ($75 million settlement); *In re Weatherford Int'l Securities Litigation*, No. 11-cv-01646-LAK-JCF (S.D.N.Y.) (settled -- $52.5 million); *In re Sunpower Secs. Litig.*, 2011 U.S. Dist. LEXIS 152920 (N.D. Cal.) ($19.7 million recovery); *In re Am. Serv. Group, Inc.*, 2009 U.S. Dist. LEXIS 28237 (M.D. Tenn.) ($15.1 million recovery); *In re Terayon Communs. Sys. Sec. Litig.*, 2002 U.S. Dist. LEXIS 5502 (N.D. Cal.) ($15 million recovery); *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217 (N.D. Cal.) ($8.9 million recovery); *In re Endocare, Inc. Sec. Litig.*, No. CV02-8429 DT (CTX) (C.D. Cal.) ($8.95 million recovery); *Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, 2005 U.S. Dist. LEXIS 12971 (N.D. Ill.) ($7.5 million recovery); *In re Am. Apparel, Inc. S'holder Litig.*, 2013 U.S. Dist. LEXIS 6977 (C.D. Cal.) ($4.8 million recovery); *In re Purus* Sec. Litig. No. C-98-20449-JF(RS) (N.D. Cal) ($9.95 million recovery).

**SEAN M. HANDLER,** a partner of the Firm and member of Kessler Topaz's Management Committee, currently concentrates his practice on all aspects of new matter development for the Firm including securities, consumer and intellectual property. Mr. Handler earned his Juris Doctor, *cum laude*, from Temple University School of Law, and received his Bachelor of Arts degree from Colby College, graduating *with distinction* in American Studies. Mr. Handler is licensed to practice in Pennsylvania, New Jersey and New York.

As part of his responsibilities, Mr. Handler also oversees the lead plaintiff appointment process in securities class actions for the Firm's clients. In this role, Mr. Handler has achieved numerous noteworthy appointments for clients in reported decisions including *Foley v. Transocean*, 272 F.R.D. 126 (S.D.N.Y. 2011); *In re Bank of America Corp. Sec., Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260 (S.D.N.Y. 2009) and *Tanne v. Autobytel, Inc.,* 226 F.R.D. 659 (C.D. Cal. 2005) and has argued before federal courts throughout the country.

Mr. Handler was also one of the principal attorneys in *In re Brocade Securities Litigation* (N.D. Cal. 2008)*,* where the team achieved a $160 million settlement on behalf of the class and two public pension fund class representatives. This settlement is believed to be one of the largest settlements in a securities fraud case in terms of the ratio of settlement amount to actual investor damages.

Mr. Handler also lectures and serves on discussion panels concerning securities litigation matters, most recently appearing at American Conference Institute's National Summit on the Future of Fiduciary Responsibility and Institutional Investor's The Rights & Responsibilities of Institutional Investors.

**GEOFFREY C. JARVIS**, a partner of the Firm, focuses on securities litigation for institutional investors. Mr. Jarvis graduated from Harvard Law School in 1984, and received his undergraduate degree from Cornell University in 1980.  He is licensed to practice in Pennsylvania, Delaware, New York and Washington, D.C.

Following law school, Mr. Jarvis served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry.

Mr. Jarvis had a major role in *Oxford Health Plans Securities Litigation, DaimlerChrysler Securities Litigation*, and *Tyco Securities Litigation* all of which were among the top ten securities settlements in U.S. history at the time they were resolved, as well as a large number of other securities cases over the past 16 years. He has also been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial, and a Delaware appraisal case that was tried in October, argued in 2016, which is still awaiting a final decision.

Mr. Jarvis then became an associate in the Washington office of Rogers & Wells (subsequently merged into Clifford Chance), principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well as counseling corporate clients in diverse industries on general legal and regulatory compliance matters. He was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the U.S. Court of Appeals for the Third Circuit. From 2000 until early 2016, Mr. Jarvis was a Director (Senior Counsel through 2001) at Grant & Eisenhofer, P.A., where he engaged in a number of federal securities, and state fiduciary cases (primarily in Delaware), including several of the largest settlements of the past 15 years. He also was lead trial counsel and/or associate counsel in a number of cases that were tried to a verdict (or are pending final decision).

**JENNIFER L. JOOST,** a partner in the Firm's San Francisco office, focuses her practice on securities litigation.  Ms. Joost received her law degree, *cum laude*, from Temple University Beasley School of Law, where she was the Special Projects Editor for the *Temple International and Comparative Law Journal.* Ms. Joost earned her undergraduate degree with honors from Washington University in St. Louis. She is licensed to practice in Pennsylvania and California and is admitted to practice before the United States Courts of Appeals for the Second, Fourth, Ninth, and Eleventh Circuits, and the United States District Courts for the Eastern District of Pennsylvania, the Northern District of California and the Southern District of California.

Ms. Joost has represented institutional investors in numerous securities fraud class actions including *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion); *In re Citigroup Bond Litigation*, No. 08-cv-09522-SHS (S.D.N.Y.) ($730 million recovery); *David H. Luther, et al., v. Countrywide Financial Corp., et. al*., 2:12-cv-05125 (C.D.Cal. 2012) (settled -- $500 million); *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-3852-GBD ("London Whale *Litigation*") ($150 million recovery); *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.,* No. 08-cv-06324-PAM-AJB (D. Minn.) (settled -- $85 million); *In re MGM Mirage Securities Litigation,* Case No. 2:09-cv-01558-GMN-VCF (D. Nev.) ($75 million settlement); and *In re Weatherford Int'l Securities Litigation*, No. 11-cv-01646-LAK-JCF (S.D.N.Y.) (settled -- $52.5 million).

**STACEY KAPLAN**, a partner in the Firm's San Francisco office, concentrates her practice on prosecuting securities class actions. Ms. Kaplan received her J.D. from the University of California at Los Angeles School of Law in 2005, and received her Bachelor of Business Administration from the University of Notre Dame in 2002, with majors in Finance and Philosophy. Ms. Kaplan is admitted to the California Bar and is licensed to practice in all California state courts, as well as the United States District Courts for the Northern and Central Districts of California.

During law school, Ms. Kaplan served as a Judicial Extern to the Honorable Terry J. Hatter, Jr., United States District Court, Central District of California. Prior to joining the Firm, Ms. Kaplan was an associate with Robbins Geller Rudman & Dowd LLP in San Diego, California.

**DAVID KESSLER**, a partner of the Firm, manages the Firm's internationally recognized securities department. Mr. Kessler graduated with distinction from the Emory School of Law, after receiving his undergraduate B.S.B.A. degree from American University. Mr. Kessler is licensed to practice law in Pennsylvania, New Jersey and New York, and has been admitted to practice before numerous United States District Courts. Prior to practicing law, Mr. Kessler was a Certified Public Accountant in Pennsylvania.

Mr. Kessler has achieved or assisted in obtaining Court approval for the following outstanding results in federal securities class action cases: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) ($3.2 billion settlement); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); *In re: Lehman Brothers Securities and ERISA Litigation*, Master File No. 09 MD 2017 (LAK) (S.D.N.Y) (settled - $516,218,000); *In re Satyam Computer Services Ltd. Sec. Litig.*, Master File No. 09 MD 02027 (BSJ) ($150.5 million settlement); *In re Tenet Healthcare Corp.*, 02-CV-8462 (C.D. Cal. 2002) (settled — $281.5 million); *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92(SAS) ($586 million settlement).

Mr. Kessler is also currently serving as one of the Firm's primary litigation partners in the Citigroup, JPMorgan, Hewlett Packard, Pfizer and Morgan Stanley securities litigation matters.

In addition, Mr. Kessler often lectures and writes on securities litigation related topics and has been recognized as "Litigator of the Week" by the American Lawyer magazine for his work in connection with the Lehman Brothers securities litigation matter in December of 2011 and was honored by Benchmark as one of the preeminent plaintiffs practitioners in securities litigation throughout the country. Most recently Mr. Kessler co-authored *The FindWhat.com Case: Acknowledging Policy Considerations When Deciding Issues of Causation in Securities Class Actions* published in Securities Litigation Report.

**JAMES A. MARO, JR.,** a partner of the Firm, concentrates his practice in the Firm's case development department. He also has experience in the areas of consumer protection, ERISA, mergers and acquisitions, and shareholder derivative actions. Mr. Maro received his law degree from the Villanova University School of Law, and received a B.A. in Political Science from the Johns Hopkins University. Mr. Maro is licensed to practice law in Commonwealth of Pennsylvania and New Jersey. He is admitted to practice in the United States Court of Appeals for the Third Circuit and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

**JOSHUA A. MATERESE**, a partner of the Firm, concentrates his practice primarily in the areas of securities litigation and corporate governance. He represents institutional investors and individual clients at all stages of litigation in high-stakes cases involving a wide array of matters, including financial fraud, market manipulation, anti-competitive conduct, and corporate takeovers.

Since joining the firm directly after law school, Josh has helped recover hundreds of millions of dollars for investors harmed by fraud. These matters include: *In re Allergan, Inc. Proxy Violation Securities Litigation* (C.D. Cal.), a case alleging unlawful insider trading by hedge fund billionaire Bill Ackman in connection with a hostile takeover attempt, which settled for $250 million just weeks before trial; *In re JPMorgan Chase & Co. Securities Litigation* (S.D.N.Y.), a securities fraud class action arising out of misrepresentations and omissions about the trading activities of the so-called "London Whale," which resolved for $150 million; and, most recently, *Baker v. SeaWorld Entertainment, Inc.* (S.D. Cal.), a securities fraud class action arising out of misrepresentations and omissions about the impact of the documentary Blackfish on SeaWorld's business, which settled for $65 million days before trial. Josh has also assisted in obtaining favorable settlements for mutual funds and institutional investors in securities

fraud opt-out actions, including in several actions against Brazilian oil giant Petrobras arising from it's long-running bribery and kickback scheme.

In addition to his securities litigation practice, Josh has represented plaintiffs in shareholder derivative actions, consumer class actions stemming from violations of the Employees Retirement Income Security Act of 1974 ("ERISA"), and antitrust matters arising out of violations of the Sherman Act.

**MARGARET E. MAZZEO,** a partner of the Firm, focuses her practice on securities litigation. Ms. Mazzeo received her law degree, *cum laude*, from Temple University Beasley School of Law, where she was a Beasley Scholar and a staff editor for the Temple Journal of Science, Technology, and Environmental Law. Ms. Mazzeo graduated with honors from Franklin and Marshall College. She is licensed to practice in Pennsylvania and New Jersey.

Ms. Mazzeo has been involved in several nationwide securities cases on behalf of investors, including *In re Lehman Brothers Securities Litigation*, No. 1:09-md-02017-LAK (S.D.N.Y.) ($616 million recovery); and *David H. Luther, et al., v. Countrywide Financial Corp.*, *et. al.*, 2:12-cv-05125 (C.D. Cal. 2012) (settled -- $500 million). Ms. Mazzeo also was a member of the trial team who won a jury verdict in favor of investors in the *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (S.D.N.Y.) action.

**JAMIE M. MCCALL**, a partner of the Firm, concentrates his practice on securities fraud litigation.  Prior to joining the Firm, Mr. McCall spent twelve years with the Department of Justice in the U.S. Attorney's Offices for Miami, Florida and Wilmington, Delaware, where he oversaw complex criminal investigations ranging from securities, tax, bank and wire frauds, to the theft of trade secrets and cybercrime, among others.

Mr. McCall has successfully tried numerous jury trials, including: *United States v. Wilmington Trust Corp., et al.,* a seven-week securities fraud trial, which arose from financial conduct during the Great Recession, and resulted in both the conviction of four bank executives and a $60 million civil settlement to victim-shareholders; and *United States v. David Matusiewicz, et al.*, a five-week multi-defendant stalking-murder case, which stemmed from the 2013-shootout at the New Castle County Courthouse in Delaware, and resulted in first-in-the-nation convictions for "cyberstalking resulting in death" under the Violence Against Women Act.  For his work on both of these cases, Mr. McCall was twice awarded the Director's Award for Superior Performance by the Department of Justice.  Most recently, Mr. McCall served as the section chief for the National Security and Cybercrime Division for the Delaware U.S. Attorney's Office.

Mr. McCall also spent several years practicing civil law at Morgan, Lewis & Bockius in Philadelphia, where he worked on major, high-stakes litigation matters involving Fortune 250 companies.  Mr. McCall began his legal career as a Judge Advocate in the Marine Corps, working primarily as a prosecutor and achieving the rank of Captain.  In 2004, Mr. McCall served for nearly five months as the principal legal advisor to 1st Battalion, 5th Marine Regiment in and around Fallujah, Iraq, including during the First Battle of Fallujah.

**JOSEPH H. MELTZER,** a partner of the Firm, concentrates his practice in the areas of ERISA, fiduciary and antitrust complex litigation. Mr. Meltzer received his law degree with honors from Temple University School of Law and is an honors graduate of the University of Maryland. Honors include being named a Pennsylvania Super Lawyer. Mr. Meltzer is licensed to practice in Pennsylvania, New Jersey, New York, the Supreme Court of the United States, and the U.S. Court of Federal Claims.

Mr. Meltzer leads the Firm's Fiduciary Litigation Group which has excelled in the highly specialized area of prosecuting cases involving breach of fiduciary duty claims. Mr. Meltzer has served as lead or co-lead

counsel in numerous nationwide class actions brought under ERISA. Since founding the Fiduciary Litigation Group, Mr. Meltzer has helped recover hundreds of millions of dollars for clients and class members including some of the largest settlements in ERISA fiduciary breach actions. Mr. Meltzer represented the Board of Trustees of the Buffalo Laborers Security Fund in its action against J.P. Jeanneret Associates which involved a massive, fraudulent scheme orchestrated by Bernard L. Madoff, No. 09-3907 (S.D.N.Y.). Mr. Meltzer also represented an institutional client in a fiduciary breach action against Wells Fargo for large losses sustained while Wachovia Bank and its subsidiaries, including Evergreen Investments, were managing the client's investment portfolio.

As part of his fiduciary litigation practice, Mr. Meltzer was actively involved in actions related to losses sustained in securities lending programs, including *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank,* No. 09-00686 (S.D.N.Y.) ($150 million settlement) and *CompSource Okla. v. BNY Mellon,* No. 08-469 (E.D. OK) ($280 million settlement). In addition, Mr. Meltzer represented a publicly traded company in a large arbitration against AIG, Inc. related to securities lending losses, *Transatlantic Holdings, Inc. v. AIG,* No. 50-148T0037610 (AAA) ($75million settlement).

A frequent lecturer on ERISA litigation, Mr. Meltzer is a member of the ABA and has been recognized by numerous courts for his ability and expertise in this complex area of the law. Mr. Meltzer is also a patron member of Public Justice and a member of the Class Action Preservation Committee.

Mr. Meltzer also manages the Firm's Antitrust and Pharmaceutical Pricing Groups. Here, Mr. Meltzer focuses on helping clients that have been injured by anticompetitive and unlawful business practices, including with respect to overcharges related to prescription drug and other health care expenditures. Mr. Meltzer served as co-lead counsel for direct purchasers in the *Flonase Antitrust Litigation,* No.08-3149 (E.D. PA) ($150 million settlement) and has served as lead or co-lead counsel in numerous nationwide actions. Mr. Meltzer also serves as a special assistant attorney general for the states of Montana, Utah and Alaska. Mr. Meltzer also lectures on issues related to antitrust litigation.

**MATTHEW L. MUSTOKOFF**, a partner of the Firm, is an experienced securities and corporate governance litigator. He has represented clients at the trial and appellate level in numerous high-profile shareholder class actions and other litigations involving a wide array of matters, including financial fraud, market manipulation, mergers and acquisitions, fiduciary mismanagement of investment portfolios, and patent infringement. Mr. Mustokoff received his law degree from the Temple University School of Law, and is a Phi Beta Kappa honors graduate of Wesleyan University. At law school, Mr. Mustokoff was the articles and commentary editor of the *Temple Political and Civil Rights Law Review* and the recipient of the Raynes, McCarty, Binder, Ross and Mundy Graduation Prize for scholarly achievement in the law. He is admitted to practice before the state courts of New York and Pennsylvania, the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Pennsylvania and the District of Colorado, and the United States Courts of Appeals for the Eleventh and Federal Circuits.

Mr. Mustokoff is currently prosecuting several nationwide securities cases on behalf of U.S. and overseas institutional investors, including *In re JPMorgan Chase Securities Litigation (*S.D.N.Y.), arising out of the "London Whale" derivatives trading scandal which led to over $6 billion in losses in the bank's proprietary trading portfolio. He serves as lead counsel for six public pension funds in the multi-district securities litigation against BP in Texas federal court stemming from the 2010 Deepwater Horizon disaster in the Gulf of Mexico. He successfully argued the opposition to BP's motion to dismiss, resulting in a landmark decision sustaining fraud claims under English law for purchasers of BP shares on the London Stock Exchange.

Mr. Mustokoff also played a major role in prosecuting *In re Citigroup Bond Litigation* (S.D.N.Y.), involving allegations that Citigroup concealed its exposure to subprime mortgage debt on the eve of the

2008 financial crisis. The $730 million settlement marks the second largest recovery under Section 11 of the Securities Act in the history of the statute. Mr. Mustokoff's significant courtroom experience includes serving as one of the lead trial lawyers for shareholders in the only securities fraud class action arising out of the financial crisis to be tried to jury verdict. In addition to his trial practice in federal courts, he has successfully tried cases before the Financial Industry Regulatory Authority (FINRA).

Prior to joining the Firm, Mr. Mustokoff practiced at Weil, Gotshal & Manges LLP in New York, where he represented public companies and financial institutions in SEC enforcement and white collar criminal matters, shareholder litigation and contested bankruptcy proceedings.

**SHARAN NIRMUL,** a partner of the Firm, concentrates his practice in the area of securities, consumer and fiduciary class action and complex commercial litigation, exclusively representing the interests of plaintiffs and particularly, institutional investors.

Sharan represents a number of the world's largest institutional investors in cutting edge, high stakes complex litigation. In addition to his securities litigation practice, he has been at the forefront of developing the Firm's fiduciary litigation practice and has litigated ground-breaking cases in areas of securities lending, foreign exchange, and MBS trustee litigation. Mr. Nirmul was instrumental in developed the underlying theories that propelled the successful recoveries for customers of custodial banks in *Compsource Oklahoma v. BNY Mello*n, a $280 million recovery for investors in BNY Mellon's securities lending program, and *AFTRA v. JP Morgan*, a $150 million recovery for investors in JP Morgan's securities lending program. In *Transatlantic Re v. A.I.G.*, Mr. Nirmul recovered $70 million for Transatlantic Re in a binding arbitration against its former parent, American International Group, arising out of AIG's management of a securities lending program.

Focused on issues of transparency by fiduciary banks to their custodial clients, Mr. Nirmul served as lead counsel in a multi-district litigation against BNY Mellon for the excess spreads it charged to its custodial customers for automated FX services. Litigated over four years, involving 128 depositions and millions of pages of document discovery, and with unprecedented collaboration with the U.S. Department of Justice and the New York Attorney General, the litigation resulted in a settlement for the Bank's custodial customers of $504 million. Mr. Nirmul also spearheaded litigation against the nation's largest ADR programs, Citibank, BNY Mellon and JP Morgan, which alleged they charged hidden FX fees for conversion of ADR dividends. The litigation resulted in $100 million in recoveries for ADR holders and significant reforms in the FX practices for ADRs.

Mr. Nirmul has served as lead counsel in several high-profile securities fraud cases, including a $2.4 billion recovery for Bank of America shareholders arising from BoA's shotgun merger with Merrill Lynch in 2009. More recently, Mr. Nirmul was lead trial counsel in litigation arising from the IPO of social media company Snap, Inc., which has resulted in a $187.5 million settlement for Snap's investors, claims against Endo Pharmaceuticals, arising from its disclosures concerning the efficacy of its opioid drug, Opana ER, which resulted in a recovery of $80.5 million for Endo's shareholders, and claims against Ocwen Financial, arising from its mortgage servicing practices and disclosures to investors, which settled on the eve of trial for $56 million. Mr. Nirmul currently serves as lead trial counsel in pending securities class actions involving General Electric, Kraft-Heinz, and the stunning collapse of Luckin Coffee Inc., following disclosure of a massive accounting fraud just ten months after its IPO. He also currently serves on the Executive Committee for the multi-district litigation involving the Chicago Board Options Exchange and the manipulation of its key product, the Cboe Volatility Index.

Mr. Nirmul received his law degree from The George Washington University National Law Center and undergraduate degree from Cornell University. He was born and grew up in Durban, South Africa.

**JUSTIN O. RELIFORD,** a partner of the Firm, concentrates his practice on mergers and acquisition litigation and shareholder derivative litigation. Mr. Reliford graduated from the University of Pennsylvania Law School in 2007 and received his B.A. from Williams College in 2003, majoring in Psychology with a concentration in Leadership Studies. Mr. Reliford is a member of the Pennsylvania and New Jersey bars, and he is admitted to practice in the Third Circuit Court of Appeals, the Eastern District of Pennsylvania, and the District of New Jersey.

Mr. Reliford has extensive experience representing clients in connection with nationwide class and collective actions. Most notably, Mr. Reliford, was part of the trial team *In re Dole Food Co., Inc. Stockholder Litig.*, C.A. No. 8703-VCL, that won a trial verdict in favor of Dole stockholders for $148 million. Mr. Reliford also obtained a favorable recovery for an institutional investor in a securities class action *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-02004 (C.D. Cal. 2018), which challenged a brazen insider trading scheme by Valeant Pharmaceuticals to tip Bill Ackman's hedge fund Pershing Square Capital that it intended to launch a hostile takeover attempt to buy rival pharma company Allergan.  After three years, the case settled weeks before trial for $250 million.  He also litigated *In re GFI Group, Inc. Stockholder Litig.* Consol. C.A. No. 10136-VCL (Del. Ch.) ($10.75 million cash settlement); *In re Globe Specialty Metals, Inc. Stockholders Litig.*, Consol. C.A. No. 10865-VCG (Del. Ch.) ($32.5 million settlement); and *In re Harleysville Mutual* (CCP, Phila. Cnty. 2012) (an expedited merger litigation case challenging Harleysville's agreement to sell the company to Nationwide Insurance Company, which lead to a $26 million cash payment to policyholders). Prior to joining the Firm, Mr. Reliford was an associate in the labor and employment practice group of Morgan Lewis & Bockius, LLP. There, Mr. Reliford concentrated his practice on employee benefits, fiduciary, and workplace discrimination litigation.

**LEE D. RUDY**, a partner of the Firm, manages the Firm's mergers and acquisition and shareholder derivative litigation. Mr. Rudy received his law degree from Fordham University, and his undergraduate degree, *cum laude*, from the University of Pennsylvania. Mr. Rudy is licensed to practice in Pennsylvania and New York.

Representing both institutional and individual shareholders in these actions, he has helped cause significant monetary and corporate governance improvements for those companies and their shareholders. Mr. Rudy also co-chairs the Firm's qui tam and whistleblower practices, where he represents whistleblowers before administrative agencies and in court.  Mr. Rudy regularly practices in the Delaware Court of Chancery, where he served as co-lead trial counsel in the landmark case of *In re S. Peru Copper Corp. S'holder Derivative Litig.*, C.A. No. 961-CS, a $2 billion trial verdict against Southern Peru's majority shareholder. He previously served as lead counsel in dozens of high profile derivative actions relating to the "backdating" of stock options.  Mr. Rudy also obtained a favorable recovery for an institutional investor in a securities class action *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-02004 (C.D. Cal. 2018), which challenged a brazen insider trading scheme by Valeant Pharmaceuticals to tip Bill Ackman's hedge fund Pershing Square Capital that it intended to launch a hostile takeover attempt to buy rival pharma company Allergan.  After three years, the case settled weeks before trial for $250 million.  In addition, Mr. Rudy represented stockholders in obtaining substantial recoveries in numerous shareholder derivative and class actions, many of which resulted in significant monetary relief, including: *In re Facebook, Inc. Class C Reclassification Litigation*, C.A. No. 12286-VCL (Del. Ch. Sept. 25, 2017) (KTMC challenged a proposed reclassification of Facebook's stock structure as harming the company's public stockholders. Facebook abandoned the proposal just one business day before trial was to commence; granting Plaintiffs complete victory); *City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc., et al.*, C.A. No. 12481-VCL (Del. Ch. Sept. 12, 2017) ($86.5 million settlement relating to the acquisition of ExamWorks Group, Inc. by private equity firm Leonard Green & Partners, LP.); *Quinn v. Knight*, No. 3:16-cv-610 (E.D. Va. Mar. 16, 2017) (class action settling just ten days before trial, with stockholders receiving an additional $32 million in merger consideration); *In re MPG Office Trust, Inc. Preferred Shareholder*

*Litigation,* Cons. Case No. 24-C-13-004097 (Md. Cir. Oct. 20, 2015) (Kessler Topaz negotiated a settlement where MPG preferred stockholders received a dividend of $2.25 per share, worth approximately $21 million); *In re Harleysville Mutual* (CCP, Phila. Cnty. 2012) (an expedited merger litigation case challenging Harleysville's agreement to sell the company to Nationwide Insurance Company, which lead to a $26 million cash payment to policyholders); and *In re Amicas, Inc. Shareholder Litigation*, 10-0174-BLS2 (Suffolk County, MA 2010) (Kessler Topaz prevailed in securing a preliminary injunction against the deal, which allowed a superior bidder to purchase the Company for an additional $0.70 per share ($26 million)).

Prior to civil practice, Mr. Rudy served for several years as an Assistant District Attorney in the Manhattan (NY) District Attorney's Office, and as an Assistant United States Attorney in the US Attorney's Office (DNJ).

**RICHARD A. RUSSO, JR.**, a partner of the Firm, focuses his practice on securities litigation. Mr. Russo received his law degree from the Temple University Beasley School of Law, where he graduated *cum laude* and was a member of the Temple Law Review, and graduated *cum laude* from Villanova University, where he received a Bachelor of Science degree in Business Administration. Mr. Russo is licensed to practice in Pennsylvania and New Jersey.

Mr. Russo has represented individual and institutional investors in obtaining significant recoveries in numerous class actions arising under the federal securities laws, including *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion), *In re Citigroup Bond Litigation*, No. 08-cv-09522-SHS (S.D.N.Y.) ($730 million recovery), *In re Lehman Brothers Securities Litigation*, No. 1:09-md-02017-LAK (S.D.N.Y.) ($616 million recovery).

**MARC A. TOPAZ**, a partner of the Firm, oversees the Firm's derivative, transactional and case development departments. Mr. Topaz received his law degree from Temple University School of Law, where he was an editor of the *Temple Law Review* and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the *New York University Tax Law Review*. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Mr. Topaz has been heavily involved in all of the Firm's cases related to the subprime mortgage crisis, including cases seeking recovery on behalf of shareholders in companies affected by the subprime crisis, as well as cases seeking recovery for 401K plan participants that have suffered losses in their retirement plans. Mr. Topaz has also played an instrumental role in the Firm's option backdating litigation. These cases, which are pled mainly as derivative claims or as securities law violations, have served as an important vehicle both for re-pricing erroneously issued options and providing for meaningful corporate governance changes. In his capacity as the Firm's department leader of case initiation and development, Mr. Topaz has been involved in many of the Firm's most prominent cases, including *In re Initial Public Offering Sec. Litig.*, Master File No. 21 MC 92(SAS) (S.D.N.Y. Dec. 12, 2002); *Wanstrath v. Doctor R. Crants, et al.*, No. 99-1719-111 (Tenn. Chan. Ct., 20th Judicial District, 1999); *In re Tyco International, Ltd. Sec. Lit.*, No. 02-1335-B (D.N.H. 2002) (settled — $3.2 billion); and virtually all of the 80 options backdating cases in which the Firm is serving as Lead or Co-Lead Counsel. Mr. Topaz has played an important role in the Firm's focus on remedying breaches of fiduciary duties by corporate officers and directors and improving corporate governance practices of corporate defendants.

**MELISSA L. TROUTNER,** a partner of the Firm, concentrates her practice on new matter development with a specific focus on analyzing securities class action lawsuits, antitrust actions, and complex consumer actions. Ms. Troutner is also a member of the Firm's Consumer Protection group. Ms. Troutner received her law degree, Order of the Coif, *cum laude*, from the University of Pennsylvania Law School in 2002 and her Bachelor of Arts, Phi Beta Kappa, *magna cum laude*, from Syracuse University in 1999. Ms. Troutner is licensed to practice law in Pennsylvania, New York and Delaware.

Prior to joining Kessler Topaz, Ms. Troutner practiced as a litigator with several large defense firms, focusing on complex commercial, products liability and patent litigation, and clerked for the Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey.

**JOHNSTON de F. WHITMAN, JR**., a partner of the Firm, focuses his practice on securities litigation, primarily in federal court. Mr. Whitman received his law degree from Fordham University School of Law, where he was a member of the Fordham International Law Journal, and graduated *cum laude* from Colgate University. He is licensed to practice in Pennsylvania and New York., and is admitted to practice in courts around the country, including the United States Courts of Appeal for the Second, Third, and Fourth Circuits.

Mr. Whitman has represented institutional investors in obtaining substantial recoveries in numerous securities fraud class actions, including: (i) *In re Bank of America Securities Litigation*, a case which represents the sixth largest recovery for shareholders under the federal securities laws (settled --$2.425 billion); (ii) *In re Royal Ahold Sec. Litig.*, No. 03-md-01539 (D. Md. 2003) ($1.1 billion settlement); (iii) *In re DaimlerChrysler AG Sec. Litig.*, No. 00-0993 (D. Del. 2000) ($300 million settlement); (iv) *In re Dollar General, Inc. Sec. Litig.*, No. 01-cv-0388 (M.D. Tenn. 2001) ( $162 million settlement); and (v) *In re JPMorgan Chase & Co. Securities Litigation,* No. 12-3852-GBD ("London Whale Litigation") ($150 million recovery). Mr. Whitman has also obtained favorable recoveries for institutional investors pursuing direct securities fraud claims, including cases against Merck & Co., Inc., Qwest Communications International, Inc. and Merrill Lynch & Co., Inc. In addition, Mr. Whitman  represented a publicly traded company in a large arbitration against AIG, Inc. related to securities lending losses, *Transatlantic Holdings, Inc. v. AIG,* No. 50-148T0037610 (AAA) ($75million settlement).

**ROBIN WINCHESTER,** a partner of the Firm, concentrated her practice in the areas of securities litigation and lead plaintiff litigation, when she joined the Firm. Presently, Ms. Winchester concentrates her practice in the area of shareholder derivative actions. Ms. Winchester earned her Juris Doctor degree from Villanova University School of Law, and received her Bachelor of Science degree in Finance from St. Joseph's University. Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania.

Ms. Winchester has served as lead counsel in numerous high-profile derivative actions relating to the backdating of stock options, including *In re Eclipsys Corp. Derivative Litigation*, Case No. 07-80611-Civ-MIDDLEBROOKS (S.D. Fla.); *In re Juniper Derivative Actions,* Case No. 5:06-cv-3396-JW (N.D. Cal.); *In re McAfee Derivative Litigation,* Master File No. 5:06-cv-03484-JF (N.D. Cal.); *In re Quest Software, Inc. Derivative Litigation,* Consolidated Case No. 06CC00115 (Cal. Super. Ct., Orange County); and *In re Sigma Designs, Inc. Derivative Litigation,* Master File No. C-06-4460-RMW (N.D. Cal.). Settlements of these, and similar, actions have resulted in significant monetary returns and corporate governance improvements for those companies, which, in turn, greatly benefits their public shareholders.

**ERIC L. ZAGAR,** a partner of the Firm, concentrates his practice in the area of shareholder derivative litigation. Mr. Zagar received his law degree from the University of Michigan Law School, *cum laude*, where he was an Associate Editor of the *Michigan Law Review*, and his undergraduate degree from

Washington University in St. Louis. He is admitted to practice in Pennsylvania, California and New York. Mr. Zagar previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court.

Since 2001 Mr. Zagar has served as Lead or Co-Lead counsel in hundreds of derivative actions in courts throughout the nation. He was a member of the trial team in the landmark case of *In re S. Peru Copper Corp. S'holder Derivative Litig.*, C.A. No. 961-CS, a $2 billion trial verdict against Southern Peru's majority shareholder. Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees.

**TERENCE S. ZIEGLER,** a partner of the Firm, concentrates a significant percentage of his practice to the investigation and prosecution of pharmaceutical antitrust actions, medical device litigation, and related anticompetitive and unfair business practice claims. Mr. Ziegler received his law degree from the Tulane University School of Law and received his undergraduate degree from Loyola University. Mr. Ziegler is licensed to practice law in Pennsylvania and the State of Louisiana, and has been admitted to practice before several courts including the United States Court of Appeals for the Third Circuit.

Mr. Ziegler has represented investors, consumers and other clients in obtaining substantial recoveries, including: *In re Flonase Antitrust Litigation; In re Wellbutrin SR Antitrust Litigation; In re Modafinil Antitrust Litigation; In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (against manufacturers of defective medical devices — pacemakers/implantable defibrillators — seeking costs of removal and replacement); and *In re Actiq Sales and Marketing Practices Litigation* (regarding drug manufacturer's unlawful marketing, sales and promotional activities for non-indicated and unapproved uses).

**ANDREW L. ZIVITZ**, a partner of the Firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor. Mr. Zivitz is licensed to practice in Pennsylvania and New Jersey.

Drawing on two decades of litigation experience, Mr. Zivitz concentrates his practice in the area of securities litigation and is currently litigating several of the largest federal securities fraud class actions in the U.S. Andy is skilled in all aspects of complex litigation, from developing and implementing strategies, to conducting merits and expert discovery, to negotiating resolutions. He has represented dozens of major institutional investors in securities class actions and has helped the firm recover more than $1 billion for damaged clients and class members in numerous securities fraud matters in which Kessler Topaz was Lead or Co-Lead Counsel, including *David H. Luther, et al., v. Countrywide Financial Corp., et. al.*, 2:12-cv-05125 (C.D.Cal. 2012) (settled -- $500 million); *In re Pfizer Sec. Litig.*, 1:04-cv-09866 (S.D.N.Y. 2004) (settled -- $486 million); *In re Tenet Healthcare Corp.*, 02-CV-8462 (C.D. Cal. 2002) (settled — $281.5 million); *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-3852-GBD ("London Whale Litigation") ($150 million recovery); *In re Computer Associates Sec. Litig.*, No. 02-CV-122 6 (E.D.N.Y. 2002) (settled — $150 million); *In re Hewlett-Packard Sec. Litig.*, 12-cv-05980 (N.D.Cal. 2012) (settled -- $100 million); and *In re Minneapolis Firefighters' Relief Association v. Medtronic, Inc.*, No. 08-cv-06324-PAM-AJB (D. Minn.) (settled -- $ 85 million).

Andy's extensive courtroom experience serves his clients well in trial situations, as well as pre-trial proceedings and settlement negotiations. He served as one of the lead plaintiffs' attorneys in the only securities fraud class action arising out of the financial crisis to be tried to a jury verdict, has handled a Daubert trial in the U.S. District Court for the Southern District of New York, and successfully argued back-to-back appeals before the Ninth Circuit Court of Appeals. Before joining Kessler Topaz, Andy worked at the international law firm Drinker Biddle and Reath, primarily representing defendants in large,

complex litigation. His experience on the defense side of the bar provides a unique perspective in prosecuting complex plaintiffs' litigation.

## COUNSEL

**JENNIFER L. ENCK,** Counsel to the Firm, concentrates her practice in the area of securities litigation and settlement matters. Ms. Enck received her law degree, *cum laude*, from Syracuse University College of Law, where she was a member of the Syracuse Journal of International Law and Commerce, and her undergraduate degree in International Politics/International Studies from The Pennsylvania State University. Ms. Enck also received a Master's degree in International Relations from Syracuse University's Maxwell School of Citizenship and Public Affairs. She is licensed to practice in Pennsylvania and has been admitted to practice before the United States Court of Appeals for the Third and Eleventh Circuits and the United States District Court for the Eastern District of Pennsylvania.

Ms. Enck has been involved in documenting and obtaining the required court approval for many of the firm's largest and most complex securities class action settlements, including *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation,* No. 09 MDL 2058 (S.D.N.Y.) (settled -- $2.425 billion); *David H. Luther, et al., v. Countrywide Financial Corp., et. al.*, 2:12-cv-05125 (C.D. Cal. 2012) (settled -- $500 million); *In re: Lehman Brothers Securities and ERISA Litigation*, Master File No. 09 MD 2017 (LAK) (S.D.N.Y) (settled - $516,218,000); and *In re Satyam Computer Services Ltd. Sec. Litig.*, Master File No. 09 MD 02027 (BSJ) ($150.5 million settlement).

**LISA LAMB PORT**, Counsel to the Firm, concentrates her practice on consumer, antitrust, and securities fraud class actions.  Ms. Lamb Port received her law degree, Order of the Coif, summa cum laude, from the Villanova University School of Law in 2003 and her Bachelor of Arts, cum laude, from Princeton University in 2000.  Ms. Lamb Port is licensed to practice law in the Commonwealth Pennsylvania.

Prior to joining Kessler Topaz, Ms. Lamb Port was a partner at another class action firm, where she represented institutional and individual investors in securities fraud, breach of fiduciary duty, and shareholder derivative cases, as well as in litigation resulting from mergers and acquisitions.

**DONNA SIEGEL MOFFA,** Counsel to the Firm, concentrates her practice in the area of consumer protection litigation. Ms. Siegel Moffa received her law degree, with honors, from Georgetown University Law Center in May 1982 and a master's degree in Public Administration from Rutgers, the State University of New Jersey, Graduate School-Camden in January 2017. She received her undergraduate degree, *cum laude*, from Mount Holyoke College in Massachusetts. Ms. Siegel Moffa is admitted to practice before the Third Circuit Court of Appeals, the United States Courts for the District of New Jersey and the District of Columbia, as well as the Supreme Court of New Jersey and the District of Columbia Court of Appeals.

Prior to joining the Firm, Ms. Siegel Moffa was a member of the law firm of Trujillo, Rodriguez & Richards, LLC, where she litigated, and served as co-lead counsel, in complex class actions arising under federal and state consumer protection statutes, lending laws and laws governing contracts and employee compensation. Prior to entering private practice, Ms. Siegel Moffa worked at both the Federal Energy Regulatory Commission (FERC) and the Federal Trade Commission (FTC). At the FTC, she prosecuted cases involving allegations of deceptive and unsubstantiated advertising. In addition, both at FERC and the FTC, Ms. Siegel Moffa was involved in a wide range of administrative and regulatory issues including labeling and marketing claims, compliance, FOIA and disclosure obligations, employment matters, licensing and rulemaking proceedings.

Ms. Siegel Moffa served as co-lead counsel for the class in *Robinson v. Thorn Americas, Inc.*, L-03697-94 (Law Div. 1995), a case that resulted in a significant monetary recovery for consumers and changes to rent-to-own contracts in New Jersey. Ms. Siegel Moffa was also counsel in *Muhammad v. County Bank of Rehoboth Beach, Delaware,* 189 N.J. 1 (2006), U.S. Sup. Ct. cert. denied, 127 S. Ct. 2032(2007), in which the New Jersey Supreme Court struck a class action ban in a consumer arbitration contract. She has served as class counsel representing consumers pressing TILA claims, e.g. *Cannon v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540 (D.N.J. 1999), and *Dal Ponte v. Am. Mortg. Express Corp.*, CV- 04-2152 (D.N.J. 2006), and has pursued a wide variety of claims that impact consumers and individuals including those involving predatory and sub-prime lending, mandatory arbitration clauses, price fixing, improper medical billing practices, the marketing of light cigarettes and employee compensation. Ms. Siegel Moffa's practice has involved significant appellate work representing individuals, classes, and non-profit organizations participating as amicus curiae, such as the National Consumer Law Center and the AARP. In addition, Ms. Siegel Moffa has regularly addressed consumer protection and litigation issues in presentations to organizations and professional associations.

**JONATHAN F. NEUMANN,** Counsel to the Firm, concentrates his practice in the area of securities litigation and fiduciary matters. Mr. Neumann earned his Juris Doctor degree from Temple University Beasley School of Law, where he was an editor for the Temple International and Comparative Law Journal and a member of the Moot Court Honor Society. Mr. Neumann earned his undergraduate degree from the University of Delaware. Mr. Neumann is licensed to practice in Pennsylvania and New York. Prior to joining the Firm, Mr. Neumann served as a law clerk to the Honorable Douglas E. Arpert of the United States District Court for the District of New Jersey.

Mr. Neumann has represented institutional investors in obtaining substantial recoveries in numerous cases, including *In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litig.*, No. 12-md-02335 (S.D.N.Y.) ($335 million settlement); *Policemen's Annuity and Benefit Fund of the City of Chicago, et al. v. Bank of America, NA, et al.*, No. 12-cv-02865 (S.D.N.Y.) ($69 million settlement); *In re NII Holdings Sec. Litig.*, No. 14-cv-227 (E.D. Va.) (settled $41.5 million).

**MICHELLE M. NEWCOMER**, Counsel to the Firm, concentrates her practice in the area of securities litigation. Ms. Newcomer earned her law degree from Villanova University School of Law in 2005, and earned her B.B.A. in Finance and Art History from Loyola University Maryland in 2002. Ms. Newcomer is licensed to practice law in the Commonwealth of Pennsylvania and the State of New Jersey and has been admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Second, Ninth and Tenth Circuits, and the United States District Court for the Districts of New Jersey and Colorado.

Ms. Newcomer has represented shareholders in numerous securities class actions in which the Firm has served as Lead or Co-Lead Counsel, through all aspects of pre-trial proceedings, including complaint drafting, litigating motions to dismiss and for summary judgment, conducting document, deposition and expert discovery, and appeal. Ms. Newcomer also has been involved in the Firm's securities class action trials, including most recently serving as part of the trial team in the Longtop Financial Technologies securities class action trial that resulted in a jury verdict on liability and damages in favor of investors. Ms. Newcomer began her legal career with the Firm in 2005. Prior to joining the Firm, she was a summer law clerk for the Hon. John T.J. Kelly, Jr. of the Pennsylvania Superior Court.

Ms. Newcomer's representative cases include: *In re Longtop Financial Technologies Ltd. Sec. Litig*. No. 11-cv-3658 (SAS) (S.D.N.Y.) – obtained on behalf of investors a jury verdict on liability and damages against the company's former CFO; *re Lehman Brothers Securities Litigation*, No. 1:09-md-02017-LAK (S.D.N.Y.) ($616 million recovery); *In re Pfizer, Inc. Sec. Litig.*, No. 04-9866-LTS (S.D.N.Y.) – represents three of the court-appointed class representatives, and serves as additional counsel for the class in securities

fraud class action based on alleged misrepresentations and omissions concerning cardiovascular risks associated with Celebrex® and Bextra®, which survived Defendants' motion for summary judgment; *Connecticut Retirement Plans & Trust Funds et al. v. BP p.l.c. et al.* (S.D. Tex.) – represents several public pension funds in direct action asserting claims under Section 10(b) and Rule 10b-5, for purchases of BP ADRs on the NYSE, and under English law for purchasers of BP ordinary shares on the London Stock Exchange, which recently survived Defendants' motion to dismiss; litigation is ongoing.

## ASSOCIATES & STAFF ATTORNEYS

**CHIOMA C. ABARA,** a staff attorney of the Firm, concentrates her practice in the area of corporate governance. Ms. Abara received her J.D. from Widener University School of Law, Harrisburg in 2005, and her B.S. in Computer & Information Sciences from Temple University in 2002. Ms. Abara is licensed to practice in Pennsylvania New Jersey and before the United States Patent & Trademark Office. Prior to joining the Kessler Topaz, Ms. Abara worked in pharmaceutical litigation.

**SCOTT B. ADAMS,** a staff attorney of the Firm, concentrates his practice in the areas of securities and consumer protection. Mr. Adams earned his Juris Doctor degree from Drexel University Thomas R. Kline School of Law in Philadelphia, Pennsylvania and his undergraduate degree from Saint Vincent College.

**ASHER S. ALAVI,** an associate of the Firm, concentrates his practice in the area of qui tam litigation. Mr. Alavi received his law degree, cum laude, from Boston College Law School in 2011 where he served as Note Editor for the Boston College Journal of Law & Social Justice. He received his undergraduate degree in Communication Studies and Political Science from Northwestern University in 2007. Mr. Alavi is licensed to practice law in Pennsylvania and Maryland. Prior to joining Kessler Topaz, Mr. Alavi was an associate with Pietragallo Gordon Alfano Bosick & Raspanti LLP in Philadelphia, where he worked on a variety of whistleblower and healthcare matters.

**SARA A. ALSALEH,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Alsaleh earned her Juris Doctor degree from Widener University School of Law in Wilmington, Delaware, and her undergraduate degree from Pennsylvania State University. Ms. Alsaleh is admitted to practice in Pennsylvania and New Jersey.

During law school, Ms. Alsaleh interned at the U.S. Food and Drug Administration and the Delaware Department of Justice in the Consumer Protection & Fraud Division where she was heavily involved in protecting consumers within a wide variety of subject areas. Prior to joining the Firm, Ms. Alsaleh practiced in the areas of pharmaceutical & health law litigation, and was an Associate at a general practice firm in Bensalem, Pennsylvania.

**DANIEL M. BAKER,** an associate of the Firm, concentrates his practice in the areas of merger and acquisition litigation and shareholder derivative actions. Through his practice, Mr. Baker helps institutional and individual shareholders obtain significant financial recoveries and corporate governance reforms.

While in law school, Mr. Baker interned at the Securities Exchange Commission and the Financial Industry Regulatory Authority.  Mr. Baker was also a member of the Villanova Law Review, and served as Online Articles Editor.

**LaMARLON R. BARKSDALE,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Barksdale received his law degree from Temple University, James E. Beasley School of Law in 2005 and his undergraduate degree, cum laude, from the University of Delaware in 2001.

He is licensed to practice law in Pennsylvania and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

Prior to joining Kessler Topaz, Mr. Barksdale worked in complex pharmaceutical litigation, commercial litigation, criminal law and bankruptcy law.

**ADRIENNE BELL,** an associate of the Firm, focuses her practice on case development and client relations. Ms. Bell received her law degree from Brooklyn Law School and her undergraduate degree in Music Theory and Composition from New York University, where she graduated *magna cum laude.* Ms. Bell is licensed to practice in Pennsylvania. Prior to joining the Firm, Ms. Bell practiced in the areas of entertainment law and commercial litigation.

**MATTHEW BENEDICT,** an associate of the Firm, concentrates his practice in the area of mergers and acquisitions litigation and shareholder derivative litigation. Mr. Benedict earned his law degree from Villanova University School of Law and his undergraduate degree from Haverford College. He is licensed to practice law in Pennsylvania and New Jersey.

**ELIZABETH WATSON CALHOUN,** a staff attorney of the Firm, focuses on securities litigation. She has represented investors in major securities fraud and has also represented shareholders in derivative and direct shareholder litigation. Ms. Calhoun received her law degree from Georgetown University Law Center (*cum laude*), where she served as Executive Editor of the Georgetown Journal of Gender and the Law. She received her undergraduate degree in Political Science from the University of Maine, Orono (*with high distinction*). Ms. Calhoun is admitted to practice before the state court of Pennsylvania and the U.S. District Court for the Eastern District of Pennsylvania. Prior to joining the Firm, Ms. Calhoun was employed with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A.

**KEVIN E.T. CUNNINGHAM, JR.** an associate of the Firm, and focuses his practice in securities litigation. Kevin is a graduate of Temple University Beasley School of Law.  Prior to joining the Firm, Kevin served as a law clerk for the Hon. Judge Paula Dow of the New Jersey Superior Court, Burlington County - Chancery Division.  Kevin also served as a law clerk to the Hon. Brian A. Jackson of the United States District Court for the Middle District of Louisiana. Kevin is licensed to practice in Pennsylvania.

**QUIANA CHAPMAN-SMITH,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Temple University Beasley School of Law in Pennsylvania and her Bachelor of Science in Management and Organizations from The Pennsylvania State University. Ms. Chapman-Smith is licensed to practice law in the Commonwealth of Pennsylvania. Prior to joining Kessler Topaz, she worked in pharmaceutical litigation.

**ELIZABETH DRAGOVICH,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Dragovich received her law degree from the University of Pennsylvania Law School in 2002, and her undergraduate degree from Carnegie Mellon University in 1999. Ms. Dragovich is licensed to practice law in Pennsylvania. Prior to joining Kessler Topaz, Elizabeth was a staff attorney with the Wilmington, Delaware law firm of Grant & Eisenhofer, P.A.

**STEPHEN J. DUSKIN**, a staff attorney of the Firm, concentrates his practice in the area of antitrust litigation. Mr. Duskin received his law degree from Rutgers School of Law at Camden in 1985, and his undergraduate degree in Mathematics from the University of Rochester in 1976. Mr. Duskin is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Duskin practiced corporate and securities law in private practice and in corporate legal departments, and also worked for the U.S. Securities and Exchange Commission and the Resolution Trust Corporation.

**DONNA EAGLESON,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation discovery matters. She received her law degree from the University of Dayton School of Law in Dayton, Ohio. Ms. Eagleson is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Ms. Eagleson worked as an attorney in the law enforcement field, and practiced insurance defense law with the Philadelphia firm Margolis Edelstein.

**PATRICK J. EDDIS,** a staff attorney of the Firm, concentrates his practice in the area of corporate governance litigation.  Mr. Eddis received his law degree from Temple University School of Law in 2002 and his undergraduate degree from the University of Vermont in 1995. Mr. Eddis is licensed to practice in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Eddis was a Deputy Public Defender with the Bucks County Office of the Public Defender.  Before that, Mr. Eddis was an attorney with Pepper Hamilton LLP, where he worked on various pharmaceutical and commercial matters.

**KIMBERLY V. GAMBLE**, a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Widener University, School of Law in Wilmington, DE. While in law school, she was a CASA/Youth Advocates volunteer and had internships with the Delaware County Public Defender's Office as well as The Honorable Judge Ann Osborne in Media, Pennsylvania. She received her Bachelor of Arts degree in Sociology from The Pennsylvania State University. Ms. Gamble is licensed to practice law in the Commonwealth of Pennsylvania. Prior to joining Kessler Topaz, she worked in pharmaceutical litigation.

**GRANT D. GOODHART**, an associate of the Firm, concentrates his practice in the areas of mergers and acquisitions litigation and stockholder derivative actions. Mr. Goodhart received his law degree, cum laude, from Temple University Beasley School of Law and his undergraduate degree, magna cum laude, from the University of Pittsburgh. He is licensed to practice law in Pennsylvania and New Jersey.

**TYLER S. GRADEN,** an associate of the Firm, focuses his practice on consumer protection and whistleblower litigation. Mr. Graden received his Juris Doctor degree from Temple Law School and his undergraduate degrees in Economics and International Relations from American University. Mr. Graden is licensed to practice law in Pennsylvania and New Jersey and has been admitted to practice before numerous United States District Courts.

Prior to joining Kessler Topaz, Mr. Graden practiced with a Philadelphia law firm where he litigated various complex commercial matters, and also served as an investigator with the Chicago District Office of the Equal Employment Opportunity Commission.

Mr. Graden has represented individuals and institutional investors in obtaining substantial recoveries in numerous class actions, including *Board of Trustees of the Buffalo Laborers Security Fund v. J.P. Jeanneret Associates, Inc.,* Case No. 09 Civ. 8362 (S.D.N.Y.) (settled - $219 million); *Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, NA*., Case No. 09 Civ. 0686 (S.D.N.Y.) (settled - $150 million); *In re Merck & Co., Inc. Vytorin ERISA Litig*., Case No. 09 Civ. 197 4 (D.N.J.) (settled - $10.4 million); and *In re 2008 Fannie Mae ERISA Litigation*, Case No. 09-cv-1350 (S.D.N.Y.) (settled - $9 million). Mr. Graden has also obtained favorable recoveries on behalf of multiple, nationwide classes of borrowers whose insurance was force-placed by their mortgage servicers.

**STACEY A. GREENSPAN,** an associate of the Firm, concentrates her practice in the areas of merger and acquisition litigation and shareholder derivative actions. Ms. Greenspan received her law degree from Temple University in 2007 and her undergraduate degree from the University of Michigan in 2001, with honors. Ms. Greenspan is licensed to practice in Pennsylvania.

Prior to joining Kessler Topaz, Ms. Greenspan served as an Assistant Public Defender in Philadelphia for almost a decade, litigating hundreds of trials to verdict. Ms. Greenspan also worked at the Trial and Capital Habeas Units of the Federal Community Defender Office of the Eastern District of Pennsylvania throughout law school. At Kessler Topaz, she has assisted the Firm in obtaining a substantial recovery in a large class action on behalf of an institutional client in *City of Daytona Beach Police and Fire Pension Fund v. ExamWorks Group, Inc., et al.*, C.A. No. 12481-VCL (Del. Ch. Sept. 12, 2017) ($86.5 million settlement relating to the acquisition of ExamWorks Group, Inc. by private equity firm Leonard Green & Partners, LP.).  In addition, Ms. Greenspan served as co-lead counsel in *In re Ebix, Inc. S'holder Litig.*, Consol. C.A. No. 8526-VCS (Del. Ch. Apr. 5, 2019), a case that challenged an improper executive bonus worth $825 million for the company's CEO.  After five years of hard fought litigation and a trial the case settled for corporate governance measures and an amendment to the CEO's stock appreciation rights agreement.

**KEITH S. GREENWALD,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Greenwald received his law degree from Temple University, Beasley School of Law in 2013 and his undergraduate degree in History, summa cum laude, from Temple University in 2004. Mr. Greenwald is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Greenwald was a contract attorney on various projects in Philadelphia and was at the International Criminal Tribunal for the Former Yugoslavia, at The Hague in The Netherlands, working in international criminal law.

**JOHN J. GROSSI**, a staff attorney at the Firm, focuses his practice on securities litigation. Mr. Grossi received his law degree from Widener University Delaware School of Law and graduated *cum laude* from Curry College. He is licensed to practice law in Pennsylvania. Prior to joining the Firm as a Staff Attorney, Mr. Grossi was employed in the Firm's internship program as a Summer Law Clerk, where he was also a member of the securities fraud department.

During his time as a Summer Law Clerk, Mr. Grossi conducted legal research for several securities fraud class actions on behalf of shareholders, including Bank of America related to its acquisition of Merrill Lynch, Lehman Brothers, St. Jude Medical and NII Holdings.

**NATHAN A. HASIUK**, an associate of the Firm, concentrates his practice on securities litigation.  Mr. Hasiuk received his law degree from Temple University Beasley School of Law, and graduated *summa cum laude* from Temple University. He is licensed to practice in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the District of New Jersey. Prior to joining the Firm, Mr. Hasiuk was an Assistant Public Defender in Philadelphia.

**ALEX B. HELLER**, an associate of the Firm, concentrates his practice in the areas of merger and acquisition litigation and shareholder derivative actions. Alex helps shareholders obtain financial recoveries and the implementation of corporate governance reforms. Alex received his law degree from the George Mason University Antonin Scalia Law School in 2015 and his undergraduate degree from American University in 2008. While in law school, Alex served as an associate editor for the George Mason Law Review. Prior to joining the Firm, Alex was a partner at a plaintiffs' litigation firm, where he served as chair of the shareholder derivative litigation practice group. Alex is a Certified Public Accountant (CPA). Prior

to his legal career, Alex practiced as a CPA for several years, advising businesses and auditing large corporations.

**EVAN R. HOEY**, an associate of the Firm, focuses his practice on securities litigation.  Mr. Hoey received his law degree from Temple University Beasley School of Law, where he graduated *cum laude*, and graduated *summa cum laude* from Arizona State University.  He is licensed to practice in Pennsylvania and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

**SUFEI HU,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her J.D. from Villanova University School of Law, where she was a member of the Moot Court Board. Ms. Hu received her undergraduate degree from Haverford College in Political Science, with honors. She is licensed to practice law in Pennsylvania and New Jersey, and is admitted to the United States District Court of the Eastern District of Pennsylvania. Prior to joining the Firm, Ms. Hu worked in pharmaceutical, anti-trust, and securities law.

**JORDAN JACOBSON**, an associate of the Firm, concentrates her practice in securities litigation. Ms. Jacobson received her law degree from Georgetown University in 2014 and her undergraduate degrees in history and political science from Arizona State University in 2011.  Prior to joining the Firm, Ms. Jacobson clerked for the honorable Deborah J. Saltzman, United States Bankruptcy Judge, in the Central District of California.  Ms. Jacobson was also previously an associate at O'Melveny & Myers LLP, and an attorney in the General Counsel's office of the Pension Benefit Guaranty Corporation in Washington, D.C.  Ms. Jacobson is licensed to practice law in California and Virginia and will sit for the July 2020 Pennsylvania bar exam.

**JOSHUA A. LEVIN,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Levin received his law degree from Widener University School of Law, and earned his undergraduate degree from The Pennsylvania State University. Mr. Levin is licensed to practice in Pennsylvania and New Jersey. Prior to joining Kessler Topaz, he worked in pharmaceutical litigation.

**HENRY W. LONGLEY,** an associate of the Firm, concentrates his practice in the area of securities litigation. Mr. Longley earned his law degree from Temple University Beasley School of Law, where he was Note/Comment Editor of the Temple International & Comparative Law Journal. He was also a member of the Jessup International Law Moot Court Team and the Rubin Public Interest Law Honor Society, and received Temple's Certificate in Trial Advocacy and Litigation. Mr. Longley earned his undergraduate degree from William & Mary.

**JOHN J. McCULLOUGH,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. In 2012, Mr. McCullough passed the CPA Exam. Mr. McCullough earned his Juris Doctor degree from Temple University School of Law, and his undergraduate degree from Temple University. Mr. McCullough is licensed to practice in Pennsylvania.

**LAUREN M. McGINLEY,** an associate of the Firm, concentrates her practice in the areas of securities and consumer protection. Ms. McGinley received her undergraduate degree from Temple University in 2013 and her law degree from Drexel University, Thomas R. Kline School of Law in 2017. While at Drexel, Ms. McGinley received the Dean's Scholar for Excellence in Civil Procedure in 2015.

Prior to joining the Firm, Ms. McGinley clerked for the honorable Judge Alia Moses in the Western District of Texas from September 2017-August 2019.

**STEVEN D. McLAIN,** a staff attorney of the Firm, concentrates his practice in mergers and acquisition litigation and stockholder derivative litigation. He received his law degree from George Mason University School of Law, and his undergraduate degree from the University of Virginia. Mr. McLain is licensed to practice in Virginia. Prior to joining Kessler, Topaz, he practiced with an insurance defense firm in Virginia.

**STEFANIE J. MENZANO,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Menzano received her law degree from Drexel University School of Law in 2012 and her undergraduate degree in Political Science from Loyola University Maryland. Ms. Menzano is licensed to practice law in Pennsylvania and New Jersey.

Prior to joining Kessler Topaz, Ms. Menzano was a fact witness for the Institute for Justice. During law school, Ms. Menzano served as a case worker for the Pennsylvania Innocence Project and as a judicial intern under the Honorable Judge Mark Sandson in the Superior Court of New Jersey, Atlantic County.

**VANESSA M. MILAN,** a staff attorney of the Firm, concentrates her practice in the area of securities fraud litigation. Ms. Milan is an associate in the Firm's Philadelphia office and received her law degree from Temple University Beasley School of Law in 2019 and her undergraduate degrees in Government & Law and English from Lafayette College in 2016. While in law school, Ms. Milan served as an Articles Editor for the Temple Law Review. Prior to joining the firm, Ms. Milan served as a judicial law clerk to the Honorable Robert D. Mariani, United States District Court Judge for the Middle District of Pennsylvania. Ms. Milan is licensed to practice law in New York.

**TIMOTHY A. NOLL,** a staff attorney of the Firm, concentrates his practice in the area of securities fraud litigation. Mr. Noll received his law degree from the Southwestern University School of Law and his undergraduate degree in Communications from Temple University. Prior to joining the Firm, Mr. Noll was a staff attorney at Grant & Eisenhofer, P.A. and also worked in pharmaceutical litigation.

**ELAINE M. OLDENETTEL,** a staff attorney of the Firm, concentrates her practice in consumer and ERISA litigation. She received her law degree from the University of Maryland School of Law and her undergraduate degree in International Studies from the University of Oregon. While attending law school, Ms. Oldenettel served as a law clerk for the Honorable Robert H. Hodges of the United States Court of Federal Claims and the Honorable Marcus Z. Shar of the Baltimore City Circuit Court. Ms. Oldenettel is licensed to practice in Pennsylvania and Virginia.

**ALLYSON M. ROSSEEL**, a staff attorney of the Firm, concentrates her practice at Kessler Topaz in the area of securities litigation. She received her law degree from Widener University School of Law, and earned her B.A. in Political Science from Widener University. Ms. Rosseel is licensed to practice law in Pennsylvania and New Jersey. Prior to joining the Firm, Ms. Rosseel was employed as general counsel for a boutique insurance consultancy/brokerage focused on life insurance sales, premium finance and structured settlements.

**DANIEL B. ROTKO**, an associate of the Firm, concentrates his practice in the area of securities-related litigation matters. Prior to joining Kessler Topaz, Daniel was an associate for over five years at Drinker Biddle & Reath LLP (now known as Faegre Drinker Biddle & Reath LLP) and his practice primarily concerned representing insurers in civil matters litigated across the country. Daniel received his law degree from the University of Pennsylvania and his undergraduate degree from Gettysburg College. Daniel is admitted to practice in Pennsylvania and New Jersey.

**KARRISA J. SAUDER,** an associate of the Firm, concentrates her practice on new matter development with a focus on analyzing securities, consumer, and antitrust class action lawsuits, as well as direct (or opt-out) actions.  Prior to joining the firm, Karissa was an associate with Berger Montague, where she litigated

complex antitrust class action lawsuits, and served as a judicial law clerk to the Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania.  Karissa received her law degree from Harvard Law School in 2014 and her undergraduate degree from Eastern Mennonite University in 2010.  While in law school, Karissa served as Managing Editor of the Harvard Law Review.

**MICHAEL J. SECHRIST,** a staff attorney at the Firm, concentrates his practice in the area of securities litigation. Mr. Sechrist received his law degree from Widener University School of Law in 2005 and his undergraduate degree in Biology from Lycoming College in 1998. Mr. Sechrist is licensed to practice law in Pennsylvania. Prior to joining Kessler Topaz, Mr. Sechrist worked in pharmaceutical litigation.

**IGOR SIKAVICA**, a staff attorney of the Firm, practices in the area of corporate governance litigation, with a focus on transactional and derivative cases. Mr. Sikavica received his J.D. from the Loyola University Chicago School of Law and his LL.B. from the University of Belgrade Faculty Of Law. Mr. Sikavica is licensed to practice in Pennsylvania. Mr. Sikavica's licenses to practice law in Illinois and the former Yugoslavia are no longer active.

Prior to joining Kessler Topaz, Mr. Sikavica has represented clients in complex commercial, civil and criminal matters before trial and appellate courts in the United States and the former Yugoslavia. Also, Mr. Sikavica has represented clients before international courts and tribunals, including – the International Criminal Tribunal for the Former Yugoslavia (ICTY), European Court of Human Rights and the UN Committee Against Torture.

**NATHANIEL SIMON,** an associate of the Firm, concentrates his practice in securities litigation. Before joining the firm, Nathaniel served as a judicial law clerk to the Honorable Mark A. Kearney, United States District Judge for the Eastern District of Pennsylvania. Nathaniel received his law degree from Villanova University, Charles Widger School of Law in 2018 and his undergraduate degree from Gettysburg College in 2014.  While in law school, Nathaniel served as an Articles Editor for the *Villanova Law Review.*

**MELISSA J. STARKS,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Starks earned her Juris Doctor degree from Temple University--Beasley School of Law, her LLM from Temple University--Beasley School of Law, and her undergraduate degree from Lincoln University. Ms. Starks is licensed to practice in Pennsylvania.

**MARIA THEODORA STARLING,** a staff attorney of the Firm, concentrates her practice in the area of corporate governance litigation. Ms. Starling graduated from the Villanova University Charles Widger School of Law in 2020. While in law school, Ms. Starling interned as a law clerk to the Hon. Steven C. Tolliver of the Montgomery County Court of Common Pleas and as a summer associate at Fox Rothschild. Ms. Starling was also a member of the Villanova Law Moot Court Board and the Vice President of the Fashion Law Society.

**MICHAEL P. STEINBRECHER,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Steinbrecher earned his Juris Doctor from Temple University James E. Beasley School of Law, and received his Bachelors of Arts in Marketing from Temple University. Mr. Steinbrecher is licensed to practice in Pennsylvania and New Jersey. Prior to joining Kessler Topaz, he worked in pharmaceutical litigation.

**BRIAN W. THOMER,** a staff attorney of the Firm, concentrates his practice in the area of securities litigation. Mr. Thomer received his Juris Doctor degree from Temple University Beasley School of Law, and his undergraduate degree from Widener University. Mr. Thomer is licensed to practice in Pennsylvania.

**ALEXANDRA H. TOMICH,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. She received her law degree from Temple Law School and her undergraduate degree from Columbia University with a B.A. in English. She is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, she worked as an associate at Trujillo, Rodriguez, and Richards, LLC in Philadelphia. Ms. Tomich volunteers as an advocate for children through the Support Center for Child Advocates in Philadelphia and at Philadelphia VIP.

**JACQUELINE A. TRIEBL,** a staff attorney of the Firm, concentrates her practice in the area of securities litigation. Ms. Triebl received her law degree, cum laude, from Widener University School of Law in 2007 and her undergraduate degree in English from The Pennsylvania State University in 1990. Ms. Triebl is licensed to practice law in Pennsylvania and New Jersey.

**KURT WEILER**, a staff attorney of the Firm, concentrates his practice in the area of securities litigation. He received his law degree from Duquesne University School of Law, where he was a member of the Moot Court Board and McArdle Wall Honoree, and received his undergraduate degree from the University of Pennsylvania. Mr. Weiler is licensed to practice law in Pennsylvania.

Prior to joining Kessler Topaz, Mr. Weiler was associate corporate counsel for a Philadelphia-based mortgage company, where he specialized in the area of foreclosures and bankruptcy.

**ANNE M. ZANESKI**\*, a staff attorney of the Firm, concentrates her practice in the area of securities litigation.  Ms. Zaneski received her J.D. from Brooklyn Law School where she was a recipient of the CALI Award of Excellence, and her B.A. from Wellesley College.  She is licensed to practice law in New York and Pennsylvania.

Prior to joining the Firm, she was an associate with a boutique securities litigation law firm in New York City and served as a legal counsel with the New York City Economic Development Corporation in the areas of bond financing and complex litigation.

\* Admitted as Anne M. Zaniewski in Pennsylvania.

## PROFESSIONALS

**WILLIAM MONKS**, CPA, CFF, CVA, Director of Investigative Services at Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), brings nearly 30 years of white collar investigative experience as a Special Agent of the Federal Bureau of Investigation (FBI) and "Big Four" Forensic Accountant. As the Director, he leads the Firm's Investigative Services Department, a group of highly trained professionals dedicated to investigating fraud, misrepresentation and other acts of malfeasance resulting in harm to institutional and individual investors, as well as other stakeholders.

William's recent experience includes being the corporate investigations practice leader for a global forensic accounting firm, which involved widespread investigations into procurement fraud, asset misappropriation, financial statement misrepresentation, and violations of the Foreign Corrupt Practices Act (FCPA).

While at the FBI, William worked on sophisticated white collar forensic matters involving securities and other frauds, bribery, and corruption. He also initiated and managed fraud investigations of entities in the manufacturing, transportation, energy, and sanitation industries. During his 25 year FBI career, William also conducted dozens of construction company procurement fraud and commercial bribery investigations, which were recognized as a "Best Practice" to be modeled by FBI offices nationwide.

William also served as an Undercover Agent for the FBI on long term successful operations targeting organizations and individuals such as the KGB, Russian Organized Crime, Italian Organized Crime, and numerous federal, state and local politicians. Each matter ended successfully and resulted in commendations from the FBI and related agencies.

William has also been recognized by the FBI, DOJ, and IRS on numerous occasions for leading multi-agency teams charged with investigating high level fraud, bribery, and corruption investigations. His considerable experience includes the performance of over 10,000 interviews incident to white collar criminal and civil matters. His skills in interviewing and detecting deception in sensitive financial investigations have been a featured part of training for numerous law enforcement agencies (including the FBI), private sector companies, law firms and accounting firms.

Among the numerous government awards William has received over his distinguished career is a personal commendation from FBI Director Louis Freeh for outstanding work in the prosecution of the West New York Police Department, the largest police corruption investigation in New Jersey history.

William regards his work at Kessler Topaz as an opportunity to continue the public service that has been the focus of his professional life. Experience has shown and William believes, one person with conviction can make all the difference. William looks forward to providing assistance to any aggrieved party, investor, consumer, whistleblower, or other witness with information relative to a securities fraud, consumer protection, corporate governance, qui-tam, anti-trust, shareholder derivative, merger & acquisition or other matter.

Education
Pace University: Bachelor of Business Administration (cum laude)
Florida Atlantic University: Master's in Forensic Accounting (cum laude)

**BRAM HENDRIKS,** European Client Relations Manager at Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), guides European institutional investors through the intricacies of U.S. class action litigation as well as securities litigation in Europe and Asia. His experience with securities litigation allows him to translate complex document and discovery requirements into straightforward, practical action. For shareholders who want to effect change without litigation, Bram advises on corporate governance issues and strategies for active investment.

Bram has been involved in some of the highest-profile U.S. securities class actions of the last 20 years. Before joining Kessler Topaz, he handled securities litigation and policy development for NN Group N.V., a publicly-traded financial services company with approximately EUR 197 billion in assets under management. He previously oversaw corporate governance activities for a leading Amsterdam pension fund manager with a portfolio of more than 4,000 corporate holdings.

A globally-respected investor advocate, Bram has co-chaired the International Corporate Governance Network Shareholder Rights Committee since 2009. In that capacity, he works with investors from more than 50 countries to advance public policies that give institutional investors a voice in decision-making. He is a sought-after speaker, panelist and author on corporate governance and responsible investment policies. Based in the Netherlands, Bram is available to meet with clients personally and provide hands-on-assistance when needed.

Education
University of Amsterdam, MSc International Finance, specialization Law & Finance, 2010

Maastricht Graduate School of Governance, MSc in Public Policy and Human Development, specialization WTO law, 2006 Tilburg University, Public Administration and administrative law B.A., 2004

# EXHIBIT F

# BLOCK & LEVITON LLP

260 Franklin Street, Suite 1860 | Boston, MA 02110
100 Pine Street, Suite 1250 | San Francisco, CA 94111
1735 20th St NW | Washington, DC 20009
8 W. Mozart Dr. | Wilmington, DE 19807

T. (617) 398-5600 | F. (617) 507-6020

www.blockleviton.com

Firm Resume

## BLOCK & LEVITON LLP

### FIGHT FOR A LEVEL PLAYING FIELD.

Block & Leviton believes investors, pensioners, consumers and employees deserve an advocate who will take a stand to protect their rights. We value our role not only in recovering our clients' immediate losses, but in protecting their long-term interests by helping to shape corporate policy. We genuinely enjoy our work, which each day offers an opportunity to tackle novel problems and unique challenges in a continuously evolving economy. We concur with Aristotle's observation that pleasure in the job puts perfection in the work. We believe this is reflected in our track record, which includes our ability to take a case to trial and win, as well as our appointment as lead or co-lead counsel in many dozens of high profile securities litigation matters, including:

In re BP Securities Litig., Case No. 4:10-MD-02185 (S.D. Tex.) (settled for $175 million), In re Google Class C Shareholder Litig., Case No. 7469-CS (Del. Ch.) (settled for $522 million), Snap Inc. Securities Cases, Case No. JCCP 4960 (Cal. Superior Ct.) ($32.8 million settlement preliminarily approved), In re Tezos Securities Litig., Case No. 3:17-cv-07095 (N.D.Cal.) ($25 million preliminarily approved), Plains Exploration & Prod. Co. Stockholder Litig., Case No. 8090-VCN (Del. Ch.) ($400 million), In re Pilgrim's Pride Corporation Derivate Litigation, case no. 2018-0058-JTL (Del. Ch.) ($42.5 million settlement)and In re Swisher Hygiene, Inc. Securities and Derivative Litig., Case No. 3:12-md-2384 (N.D.Cal.) (recovering 30% of the class's recoverable damages).

The Firm has also been appointed to represent, and succeeded in obtaining substantial recoveries on behalf of, class members in the areas of consumer protection, antitrust, and ERISA.  See In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litig., Case No. 3:15-md- 02672 (N.D. Cal.) (settlement valued at approximately $15 billion), In re Thalomid & Revlimid Antitrust Litig., Case No. 14-cv-6997 (D.N.J.) ($34 million settlement preliminarily approved), and Pfeifer v. Wawa, Case No. 2:16-cv-00497 (E.D. Pa.) ($25 million settlement in ESOP litigation).

Our attorneys have successfully recovered billions for our clients and class members and have done so even under adverse conditions, including successfully litigating against bankrupt and foreign-based corporations.

### DEFY CONVENTION.

Instrumental to our philosophy is the willingness to embrace new ways of seeing, and solving, our clients' problems. For example, we challenged Google Inc.'s plan to issue a new class of non-voting stock that threatened to diminish the value of minority investors' holdings in the company. With trial set to begin in less than two days, Block & Leviton brokered a settlement with Google Inc. and its directors that provided for a forwardlooking payment ladder (valued at up to $7.5 billion) to protect minority investors against future diminution in their stock value. As a result of the payment ladder, shareholders ultimately recovered $522 million in cash and stock in May 2015. Appreciation of the fact that each of our clients has a unique viewpoint allows us to tailor our advice and representation accordingly to achieve superior results, and to do so with maximum efficiency.

### SURROUND YOURSELF WITH THE BEST.

The Firm credits its success to its entire team of extremely talented, dedicated attorneys, the majority of whom have significant litigation experience. An in-depth curriculum vitae highlighting each attorney's areas of expertise, unique experience, recognition in the field and education credentials follows.



## JEFFREY C. BLOCK

Partner

 jeff@blockleviton.com

### EDUCATION

- Brooklyn Law School, J.D., cum laude 1986
- State University of New York, B.A., Political Science, cum laude 1983

### BAR ADMISSIONS

- New York
- Massachusetts

### COURT ADMISSIONS

- United States Supreme Court
- First, Second, Third, Ninth, and Eleventh Circuit Courts of Appeal
- D. Mass.
- S.D.N.Y. and E.D.N.Y.

### PUBLICATIONS | SPEAKING EVENTS

- ALI-ABA Conference for Insurance and Financial Services Industry Litigation, July 2009, Lecturer and Panelist
- Damages in Securities Litigation, sponsored by Law Seminars International at the Harvard Club, Panelist
- Litigation to Remedy Meltdown Damages: What Can Be Gained?, Harvard Law School's Capital Matters Conference, Speaker
- Guest commentator on NBC
- International Strategies Recoveries for Foreign Investments, Post Morrison, San Francisco Bar Association, Panel Moderator

Jeffrey Block is a co-founding partner of Block & Leviton. With a career spanning thirty years, Jeff is recognized as one of the nation's preeminent class action attorneys and is recognize as a "Super Lawyer" by Massachusetts Super Lawyers. Jeff was one of the lead attorneys representing the Ohio Public Employees Retirement System in In re BP Sec. Litig., No. 4:10-MD-02185 (S.D. Tex.), charging that BP misled investors as to the amount of oil leaking from the Macondo well after the explosion aboard the Deepwater Horizon oil rig in the Gulf of Mexico in 2010. Jeff, on behalf of the plaintiffs, successfully argued against defendants' motions to dismiss, in favor of class certification, in opposition to summary judgment, and helped secure a settlement of $175 million for the class, which represents more than 60% of the class' actual losses. Jeff also represented the Brockton Retirement System in an action challenging Google's attempt to split its stock into voting and non-voting shares. See In re Google, Inc. Class C S'holder Litig., Case No. 7469-CS (Del. Ch. Ct.). Two days before the start of trial, the action settled for significant corporate governance changes and a payment ladder valued up to $7.5 billion, which was designed to protect shareholders against any diminution in the value of their shares during the first year of trading. Because of the payment ladder, shareholders ultimately recovered $522 million in cash and stock in May 2015.

Jeff also oversaw the Firm's litigation efforts in In re McKesson Corporation Derivative Litigation (N.D. Cal.), in which the McKesson Board agreed to re-pay to the company $175 million and agreed to significant corporate governance reforms to ensure that McKesson would comply with Federal law regarding the sales and distribution of dangerous drugs, including opioids. Jeff also spearheaded the Firm's litigation involving the offering of unregistered cryptocurrency by the Tezos Foundation. Defendants' agreed to pay $25 million to resolve the case, the first settlement of a cryptocurrency case by a private plaintiff in the country. In re Tezos Securities Litigation (N.D. Cal.) Finally, Jeff played a key role in helping to secure $175 million in the aggregate to resolve claims that Snap, Inc. misled its investors in connection with its public offering of securities. Snap, Inc. Securities Cases (Sup. Ct. Cal.).

In addition, Jeff represents some of the country's largest institutional investors, including the Massachusetts Pension Reserves Investment Management Board (PRIM), the Ohio Public Employees Retirement System, the Ohio State Teachers Retirement System, the Washington State Investment Board, the New Mexico Educational Retirement Board, the New Mexico Public Employees Retirement System, and the New Mexico State Investment Council.

Some of the major class actions that Jeff has either led, or played a significant role in, include: *In re First Executive Corp. Securities Litig.*, 89-cv-7135 (C.D. Cal.) (settled for $100 million); *In re Xerox Corp. Sec. Litig.*, 3:00-cv- 01621 (D. Co11nn.) (settled for $750 million); *In re Bristol Myers Squibb Sec. Litig.*, 02-cv-2251 (S.D.N.Y.) (settled for $300 million); *In re Lernout & Hauspie Sec. Litig.*, 1:00-cv-11589 (D. Mass.) (settled for $180 million); *In re Symbol Technologies Sec. Litig.*, 2:02-cv-1383 (E.D.N.Y.) (settled for $127 million); *In re Prison Realty*

**BLOCK & LEVITON LLP**

*Corp. Sec. Litig.*, 3:99-cv-0452 (M.D. Tenn.) (settled for over $100 million); *In re Philip Services Corp. Sec. Litig.*, 98-cv-835 (S.D.N.Y.) (settled for $79.75 million); *In re American Home Mortgage Sec. Litig.*, 07-MD-1898 (E.D.N.Y.) (settled for $50.5 million); *In re Force Protection Sec. Litig.*, 2:08-cv-845 (D.S.C.) ($24 million settlement); *In re Swisher Hygiene, Inc., Securities and Derivative Litig.*, 3:12-md-2384 GCM (W.D.N.C.) ($5.5 million settlement).

Jeff has a proven record of overcoming significant challenges to obtain substantial recoveries on behalf of his clients. For example, in the Philip Services securities litigation, Jeff persuaded the United States Court of Appeals for the Second Circuit to reverse the District Court's dismissal of the action on the grounds of forum non conveniens. *See Dirienzo v. Philip Services Corp.*, 294 F.3d 21 (2d. Cir. 2002).

Upon reversal, Jeff led the team of attorneys in taking more than 40 depositions and, upon the eve of trial, the action settled for $79.50 million, among the largest recoveries ever in a securities action from a Canadian accounting firm. Jeff's skills were discussed in great lengths by the court, specifically noting that counsel:



> "pursued this fact-intensive and legally complex litigation vigorously over a nine-year period, rejected offers of settlement for amounts inferior to the amounts upon which the parties ultimately agreed, and assumed significant risks of non-recovery. Co-Lead Counsel had to overcome the disclaimers and uncertainties of insurance coverage, and vigorous advocacy of extremely able and deeply-staffed defense counsel. … And **they did their work efficiently, with minimal duplication, and maximum effectiveness.**

**I was careful to choose attorneys who have great ability [and] great reputation… And I think you've undertaken the representation of these people, you've done an excellent job, you've reached a settlement that I think is fair and in their benefit.**

**Honorable C. Weston Houck**

*In re Force Protection Sec. Litig., 2:08-cv-845 CWH (D.S.C.)*
($24 million settlement)

*In re Philip Servs. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 101427, 13-14 (S.D.N.Y. Mar. 27, 2007) (Honorable Alvin K. Hellerstein). Similarly, in *Lernout & Hauspie Sec. Litig.*, Jeff was the lead attorney in securing over $180 million for defrauded investors. The action involved an accounting fraud of a company headquartered in both the United States and Belgium.

Recently, Jeff led a team of litigators, private investigators and a forensic accountant through a complex accounting fraud case. Jeff settled the case on terms extremely beneficial to the class, as recognized by the court. *See In re Swisher Hygiene, Inc., Securities and Derivative Litig.*, 3:12-md-2384 GCM (W.D.N.C.).



## JASON M. LEVITON
*Partner*

✉ jason@blockleviton.com

### EDUCATION
- Georgetown University Law Center, LL.M., Securities and Financial Regulations - Dean's Award (1 of 6)
- Gonzaga University School of Law, J.D., *cum laude*, Moot Court Council, International Law Review
- Gonzaga University, B.A., Philosophy and Political Science

### BAR ADMISSIONS
- Massachusetts
- District of Columbia
- Washington (voluntarily inactive)
- Florida (voluntarily inactive)

### COURT ADMISSIONS
- First Circuit Court of Appeals
- D. Mass.
- D. D.C.
- W.D. Wash.

### PUBLICATIONS | SPEAKING EVENTS
- Guest on Rights Radio
- Law360 Securities Law Editorial Advisory Board
- SEC Litigation Release No. 18638, primary author
- Contributor, After the Ball is Over: Investor Remedies in the Wake of the Dot-Com Crash and Recent Scandals, Nebraska Law Review,
- 2005
- Speaker at Georgetown University Law Center on prosecution of securities class action lawsuits
- Presenter at Business Law Symposium entitled Shareholder Rights: An Idea Whose Time has Come, November 2013
- Presenter at National Conference on Public Employee Retirement Systems

Jason is a co-founding partner of Block & Leviton and focuses his practice on investor protection and shareholder rights matters. He serves as Co-Chair of the Firm's New Case Investigation and Monitoring Team and Chair of the Merger and Acquisition/Deal Litigation Team.

Since 2011, Jason was named either a "Super Lawyer" or "Rising Star" by Massachusetts Super Lawyers, an honor given to only 3% and 5% of all lawyers, respectively. Jason also has a Martindale-Hubbell AV Preeminent Rating, the highest rating possible. In 2014, Jason was named as a Top 100 Trial Lawyer by the National Trial Lawyer Association.

Jason has focused his practice on claims alleging breaches of fiduciary duty against officers and directors of publicly traded companies. Indeed, in just the last few years alone, his litigation efforts have led to hundreds of millions of dollars being returned to aggrieved stockholders. More specifically, Jason served as lead or co-lead counsel in the following breach of fiduciary duty actions: In re Plains Exploration & Production Co. Stockholder Litig., Case No. 8090-VCN (Del. Ch.) (litigation led to an increase of approximately $400 million to the original merger amount); In re Pilgrim's Pride Corp. Derivative Litig., Case No. 2018-0058-VCL (Del. Ch.) ($42.5 million settlement); In re Handy & Harman, Ltd., S'holders Litig., Case No. 2017-0882-TMR (Del. Ch.) (settled for $30 million, making it one of the largest sell-side premiums ever achieved for stockholders through Delaware litigation); In re Onyx Pharmaceuticals Inc. Shareholder Litigation, Case No. CIV523789 (Cal. Sup. Ct) (settled for $30 million; at the time, the largest M&A class action in California state court history); and In re Rentrak Shareholders Litig., Case No. 15CV27429 (Ore. Sup.) ($19 million settlement and with the related action, $23.75 million; the largest Oregon M&A settlement); Garfield v. Blackrock Mortgage Ventures, LLC (In re PennyMac Financial Services, Inc.), Case No. 2018-0917-KSJM (Del. Ch.) (settlement of $6.85 million reached, pending court approval).

He has also litigated numerous actions pursuant to the federal securities laws, including, but not limited to: In re BP plc Securities Litigation, Case No. MDL 2185 (S.D.Tex) (settlement of $175 million); Rubin v. MF Global, LTD., et al., Case No. 08-cv- 02233 (S.D.N.Y.) ($90 million settlement); In re VeriSign Securities Litigation, Case No. C-02-2270 (N.D. Cal.) ($78 million settlement); Welmon v. Chicago Bridge & Iron, Case No. 06-cv-01283 (S.D.N.Y.) (settlement of $10.5 million; in approving the settlement, the court noted: "Plaintiffs' counsel have conducted the litigation and achieved the settlement with skill, perseverance and diligent advocacy.");

Ong v. Sears Roebuck & Co., Case No. 03 C 4142 (N.D. Ill.) ($15.5 million settlement); and In re Swisher Hygiene, Inc., Securities and Derivative Litig., Case No. 3:12-md-2384 GCM (W.D.N.C.) ($5.5 million settlement; in approving the settlement, the court held:

> "
> **The settlement is – gosh. . . . the fact that it's occurring within the context of a securities case, which is very difficult for plaintiffs to win, is extremely impressive to me. . . . [T]his is a matter which has been fairly litigated by people.**

**Honorable Graham C. Mullen,**

*In re Swisher Hygiene, Inc., Securities and Derivative Litig.,* 3:12-md-2384 GCM (W.D.N.C.) ($5.5 million settlement)

Jason has considerable experience litigating consumer class action cases involving deceptive business practices as well. For example, Jason, as co-lead counsel, successfully recovered 100% of the class's alleged damages stemming from the overcharging of scooped coffee beans at Starbucks stores throughout the country. See In re Starbucks Consumer Litig., Case No. 2:11-cv-01985-MJP (W.D. Wa.); Keenholtz v. GateHouse Media, LLC, et al., Case No. 17-184-A (Mass. Sup.) (settlement involved complete relief to punitive class members and significant corporate governance measures); MabVax Therapeutics Holdings, Inc. v. Sichenzia Ross Ference LLP, et al., Case No. 3:18-cv-02494-WQH-MSB (S.D. Cal.) (representing a formerly-public company in its malpractice action against its former law firm).

In addition to his class action experiences, Jason has litigated other forms of complex litigation. For instance, he worked with a former State of New York Attorney General in the defense of an attorney accused of insider trading, which included a criminal referral to the United States Department of Justice. Similarly, Jason represented a former employee whistleblower before the S.E.C. where, in one instance, he successfully argued that his clients should receive the maximum whistleblower award of 30% pursuant to the Dodd-Frank Act, which equated to nearly $1 million. He also represented the same whistleblower in a retaliation claim against his old employer, a large, multinational financial institution.  See John Doe v. Oppenheimer Asset Management, Inc., et al., Case No. 1:14-cv-00779-LAP (S.D.N.Y.).  Finally, he was also heavily involved in the representation of four detainees being held at the Guantánamo Bay Naval Station in Cuba.

After receiving his law degree from Gonzaga University School of Law, with honors, Jason attended the Georgetown University Law Center and received a Master of Laws (LL.M.) in Securities and Financial Regulation (Dean's Award, 1 of 6). During that time, he was the inaugural LL.M. student selected for an externship with the S.E.C., Enforcement Division. Jason is now a member of the Association of Securities and Exchange Commission Alumni.

Jason is currently litigating a number of investor suits against large corporations, including: Charter Communications; Facebook; Surgery Partners; PennyMac; John Hancock; Fidelity; GE; Putnam; and Craft Brew Alliance, among others.



## WHITNEY E. STREET
*Partner*

 whitney@blockleviton.com

### EDUCATION
- University of Virginia School of Law, J.D.
- University of Virginia, B.A., Economics and Literature

### BAR ADMISSIONS
- California
- New York
- Massachusetts
- Texas

### COURT ADMISSIONS
- All California Federal Courts
- S.D.N.Y. and E.D.N.Y.
- D. Mass.

### PROFESSIONAL ACTIVITIES
- Co-Founder and former Co-Chair of the American Association for Justice Antitrust Litigation Group (2014-2016)
- Law360 Competition Law Editorial Advisory Board Member (2014-2018)
- American Bar Association Member
- Contributor, Complex Litigation E-Discovery Forum

Block & Leviton Partner Whitney Street has over seventeen years of complex litigation experience and significant expertise in securities and antitrust class action litigation.  Whitney represented the Brockton Retirement System and the class in an action challenging Google's attempt to split its stock into voting and non-voting shares in *In re Google, Inc. Class C S'holder Litig.*, case no. 7469-CS (Del. Ch. Ct.). Two days before the start of trial, the action settled for significant corporate governance changes and a payment ladder valued up to $7.5 billion, which was designed to protect shareholders against any diminution in the value of their shares during the first year of trading. As a result of the payment ladder, shareholders ultimately recovered $522 million in cash and stock in May 2015.  Whitney was also a key member of the litigation team representing the Ohio Pension Funds *In re: BP Sec. Litig.*, No. 4:10-MD-02185 (S.D. Tex.).  The case was litigated for over six years, through an interlocutory appeal to the Fifth Circuit and a decision on summary judgment, and ultimately resulted in a $175 million recovery for the class.

In addition, Whitney served as co-lead counsel in *In re Thalomid & Revlimid Antitrust Litig.*, 14-cv-6997 (D.N.J.) ($34 million settlement preliminarily approved) and in *In re Domestic Drywall Antitrust Litig.*, 13-md-02437 (E.D. Pa.) ($17 million settlement).  Whitney was also appointed to the Plaintiffs' Steering Committee in *In re Liquid Aluminum Sulfate Antitrust Litig.*, 16-md-02687 (D.N.J.) (settlements totaling over $110 million) and in *In re Packaged Seafood Antitrust Litig.*, 15-md-02670 (S.D. Cal.) (litigation pending).  Whitney is currently litigating a number of class action cases in federal courts around the country, including *In re Lyft Securities Litig.*, case no. 4:19-cv-02690-HSG (N.D.Cal.), *In re Mammoth Energy Services, Inc. Securities Litig.*, case no. 19-cv-00522 (W.D. Okla.), *In re Broiler Chicken Antitrust Litig.*, 16- cv-08637 (N.D. Ill.), and in *In re Pork Antitrust Litig.*, 18-cv-01776 (D. Minn.).

Prior to joining Block & Leviton, Whitney was an integral part of the litigation teams in the following class actions: *Air Cargo Shipping Services Antitrust Litigation,* 06-md- 1775 (E.D.N.Y.) (settlements totaling more than $270.0 million); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation,* 3:03-md-1542 (D. Conn.) (partial settlements totaling $87.0 million); *In re Methyl Methacrylate (MMA) Antitrust Litigation,* 06-md-01768 (E.D. Pa.) (settled for $15.0 million); and *In re Hydrogen Peroxide Antitrust Litigation,* 05-civ-666 (E.D. Pa.) (partial settlements of more than $4.0 million).

**BLOCK & LEVITON LLP**

## PUBLICATIONS | SPEAKING EVENTS

- Panelist, Healthcare & Pharma Regulation through Antitrust Legislation, American Bar Association (April 2019).
- Panelist, Big Data & Storylines, Complex Litigation E-Discovery Forum (September 2016).
- Moderator, Introduction to the Use of Regression Analysis in Antitrust Class Action Litigation, American Association for Justice Webinar (August 2016).
- Co-Author, What Lies Ahead in High Stakes Pay-For-Delay Antitrust Litigation, American Association of Justice Business Torts Newsletter (May 2015).
- Author, Technology Assisted Review: The Disclosure of Training Sets and Related Transparency Issues, Georgetown Law Advanced eDiscovery Institute (Fall 2014).
- Faculty, Georgetown University Law Advanced eDiscovery Institute (November 2014).
- Co-Author, Decision Re-Affirms Critical Role of Shareholders, Benefits and Pensions Monitor (October 2014).
- Panelist, American Association for Justice Class Certification Seminar (2013).

Whitney received her training at prominent litigation firms in New York and Boston where she represented clients in antitrust and securities class actions. She began her career at Pillsbury Winthrop Shaw Pittman, one of the largest law firms in California.

# R. JOSEPH BARTON
*Partner*

 joe@blockleviton.com

## EDUCATION

- College of William & Mary, Marshall-Wythe Law School, J.D. Order of the Coif
- College of William & Mary, B.A., History and Minor in Classical Studies

## BAR ADMISSIONS

- California
- District of Columbia

## COURT ADMISSIONS

- First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeal
- All California Federal Courts
- D. Colorado
- D.D.C.
- N. D. Illinois
- D. Maryland
- E. D.  Michigan
- D. Nebraska
- D. North Dakota
- N. D. Texas and W.D. Texas
- E. D. Wisconsin and W.D. Wisconsin

R. Joseph Barton is the Chair of the Firm's Employee Benefits Group and the Firm's Veterans/Servicemember Rights Group at the Firm. Joe has significant experience handling a diverse array of complex and class litigation. Joe has a Martindale-Hubbell AV Preeminent Rating, has been selected every year since 2013 as a Washington, D.C. Super Lawyer, has a 10.0 rating from Avvo, and is listed in the Marquis' Who's Who in American Law.

## Notable ERISA Cases

Since 2001, Joe has handled a wide variety of employee benefit (i.e. ERISA) cases. He has been trial counsel in four ERISA cases. He was lead trial counsel in a case challenging a complex transaction involving the Trachte ESOP and the Alliance ESOP on behalf of a class of employees of Trachte, *Chesemore v. Alliance Holdings, Inc.*, No. 3:09-cv-00413 (W.D. Wis.). In that case, Joe obtained a favorable trial decision on liability and remedies of $17.2 million (plus prejudgment interest) for the Class which was affirmed by the Seventh Circuit. In *Severstal Wheeling Inc. Ret. Comm. v. WPN Corporation*, No. 10-cv-954 (S.D.N.Y.), Joe was lead trial counsel representing the fiduciaries of two pension plans suing their former investment manager for improper investments and obtained a judgment for plaintiffs of over $15 million which was affirmed by the Second Circuit.

Mr. Barton was Co-Lead Class Counsel in *Ahrens. v. UCB Pension Plan* (N.D. Ga.) representing participants challenging the calculation of their benefits in a defined benefit plan. He also obtained a class settlement of $5.5 million which was 60% of claimed benefits.

Joe is among a handful of lawyers who regularly represent participants in litigation involving ESOPs holding privately held stock. In addition to the Alliance/Trachte ESOP litigation, Joe has litigated and successfully settled a number of private ESOP cases, including the Azon Corporation ESOP, the Jeld-Wen ESOP, the Tharaldson Motels, Inc. ESOP and the Wawa ESOP.

Joe has also been involved in a number of cases involving breaches of fiduciary duty and self-dealing, including improperly investing 401k plan assets in artificially inflated stock of publicly traded companies and in improper and risky investments such as hedge funds or private equity. He litigated one of the earliest cases challenging the prudence of investing in the pension and 401k plans sponsored by New York Life Insurance Company.

Joe has also litigated cases involving the failure to properly pay benefits. In *Slipchenko v. Brunel*, No. 4-11-cv- 01465 (S.D. Tex.), Joe obtained a settlement in a COBRA class action which resulted in the largest per classmember recovery in any reported COBRA class action. In *Simpson v. Fireman's Fund Insurance Company* (N.D. Cal.), Joe represented a class of employees alleging that FFIC's policy of terminating persons on disability violated the discrimination provisions of ERISA, and obtained a settlement restoring their right to benefits for a period of years and also reimbursement of past expenses.

**BLOCK & LEVITON LLP**

## PROFESSIONAL ACTIVITIES

- Co-Chair of the Civil Procedure Subcommittee for the ABA Employee Benefits Committee  (2012 to Present)
- Current member AAJ Publications Committee (2013-Present)
- Current member, Advisory Board, Employee Benefits Law360 (2019 to Present)
- Former Co-Chair of the American Association of Justice (AAJ) Class Action Litigation Group (2014 to 2016).
- Former Chair of Employment Rights Section of the AAJ (2013 to 2014)

## PUBLICATIONS & SPEAKING ENGAGEMENTS

- Author, "Navigating the Unfriendly Skies of ERISA Reimbursement," Trial Magazine (2014)
- Author, "Determining the Meaning of 'Direct Evidence' in Discrimination Cases Within the Eleventh Circuit: Why Judge Tjoflat was (W) right," 77 Fla.B.J. 42 (2003)
- Author, "Drowning in A Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims," 41 Wm. & Mary L. Rev. 1789 (2000)
- Author, "Utilizing Statistics and Bellweather Plaintiff Trials: What do the Constitution and the Federal Rules of Civil Procedure, Permit?" 8 Wm. & Mary Bill Rts. J. 199 (1999).
- Speaker on ERISA, USERRA, Class Actions or Civil Procedure at numerous ABA conferences (including the ABA Employee Benefits Committee, the ABA Joint Committee on Employee Benefits, and ABA Labor & Employment Section) and conferences by the American Conference Institute, Defined Contribution Institutional Investments Association (DCIIA), National Employment Lawyers Association ("NELA"), the American Association of Justice ("AAJ") and others. For a full list, see https://www.linkedin.com/in/r-joseph-barton-6ba0273/.

## Notable Cases Involving Veterans & Service members

In cases involving the rights of veterans and service members, Joe is proud to have achieved results which one court described as **"outstanding, worthy of being emulated by class representatives and counsel in other comparable litigation."** In that case, *Tuten v. United Airlines*, No. 12-cv-1561-WJM-MEH (D. Col.), he was lead counsel for a class of United Airlines Pilots alleging USERRA violations in connection with their pension contributions. The case was settled for an amount that provided the Class with 100% of their actual damages. Also, in *Allman v. American Airlines* (D. Mass.) Joe was Lead Class Counsel in an action alleging USERRA and ERISA violations where American Airlines pilots who took leave to serve in the United States Armed Forces did not receive the full amount of pension contributions they were entitled to receive during their period of military leave; the settlement was for 100 percent of actual damages.

In *Bush v. Liberty Life Assurance Co.,* Joe was lead class counsel on behalf of a class participants whose long-term disability benefits were insured by Liberty Life. The case alleged that those benefits should not have been reduced by the amount of benefits provided through the Department of Veterans Affairs. As part of the settlement, Liberty Life agreed to return 60% of the monies imposed as offsets and to cease imposing such reductions/offsets unless and until the state departments of insurance had approved them.

In *Martin, et al. v. Washington State Patrol, et al.* (Sup. Ct. Wash.) Joe was Co-Lead Class Counsel on behalf of Washington State Troopers alleging that the Washington State Patrol failed to provide military veterans with veteran's preference when such veterans applied to become state troopers or applied for a promotion.

## Notable Other Cases

Joe has been significantly involved in litigating antitrust cases. In *In re Mercedes-Benz Antitrust Litigation* (D.N.J.), a class action alleging price-fixing of new Mercedes-Benz vehicles in the New York Region, Joe briefed, argued and obtained summary judgment on an issue of first impression that established that lessee-plaintiffs had standing to sue as direct purchasers under the federal antitrust laws. That case later settled for $17.5 million. Joe was a part of the team that engaged in intensive trial preparations in *In re High Fructose Corn Syrup Antitrust Litigation* (C.D. Ill.), a class action alleging price-fixing by the manufacturers of high fructose corn syrup, which settled for more than $500 million shortly before trial.

In a case alleging securities fraud, Joe represented limited partners of Lipper Convertibles, a defunct hedge fund, in an arbitration against the fund's former general partners, and in litigation against the outside auditor in federal district court. He has also litigated securities fraud cases involving publicly traded companies.

## Pro Bono Cases

Joe considers pro bono representation an important part of his practice and has represented clients in actions concerning their employer's failure to pay wages and/or overtime. In one such case, the Judge in D.C. Superior Court described his work: **"everything done on behalf of the Plaintiff has been professional, timely and thorough."**

## Clerkship

After graduating law school, Joe served as a judicial law clerk to the Honorable Lenore C. Nesbitt, United States District Judge for Southern District of Florida (2000-2001).

## NATHAN COOK
*Partner*

 nathan@blockleviton.com

### EDUCATION
- University of Virginia School of Law, J.D.
- University of Virginia, B.A., *with distinction,* Economics and History (Jefferson Scholar and Echols Scholar)

### BAR ADMISSIONS
- New York
- Delaware

### COURT ADMISSIONS
- U.S. District Court for the District of Delaware
- U.S. District Court for the Southern District of New York

### PUBLICATIONS | SPEAKING EVENTS
- Led roundtable discussion on "D&O Fiduciary Duties during Insolvency" sponsored by the Institutional Investor Educational Foundation (October 2019)
- Litigation panelist for the Delaware State Bar Association's conference "Hot Topics in Delaware Corporate Law: Updates that Transactional Lawyers and Litigators Need to Know – A View from the Bench and Bar" (May 2019)
- Co-hosted presentation on "Recent Developments in Delaware Case Law and Changes to the Delaware General Corporation Law" sponsored by the Council of Institutional Investors (June 2018)
- Panelist for the Securities Litigation Panel at the Perrin Class Action Litigation Conference (May 2017)

Nathan is the managing partner of Block & Leviton's Delaware office and focuses his practice on trial and appellate litigation relating to Delaware corporations and alternative entities. Nathan has experience with a broad range of complex Delaware corporate law matters, including fiduciary duties, appraisal, hostile takeovers, and inspection of corporate books and records. He has had a leading role in multiple trials before the Delaware Court of Chancery, presented argument before the Delaware Supreme Court, and obtained recoveries of hundreds of millions of dollars. Nathan's experience also includes expedited corporate arbitration and significant corporate advisory work for boards of directors, special committees, and corporate officers.

In 2019 and 2020, Lawdragon listed Nathan in its Lawdragon 500 Leading Plaintiff Financial Lawyers guide, which showcases the best of the U.S. plaintiff bar who specialize in representing investors and businesses harmed by corporate misconduct.

After receiving his law degree from the University of Virginia School of Law, Nathan clerked for Vice Chancellor John W. Noble of the Delaware Court of Chancery. After his clerkship, Mr. Cook joined Abrams & Laster (now known as Abrams & Bayliss, after J. Travis Laster joined the Court of Chancery) and worked on a wide range of high-stakes, bet-the-company corporate advisory and litigation matters. Prior to joining Block & Leviton, Mr. Cook was a director at one of the preeminent securities and corporate governance class-action firms in the nation and worked on behalf of numerous institutional investors.

Nathan focuses his practice on claims alleging breaches of fiduciary duty against directors and officers of publicly-traded companies. In the last few years alone, Nathan's litigation efforts have led to recoveries of hundreds of millions of dollars:  In re Dole Food Co. Stockholder Litigation and In re Dole Food Co. Appraisal Litigation, C.A. Nos. 8703-VCL, 9079-VCL (Del. Ch.) (co-lead counsel in stockholder class action and appraisal litigation relating to a take-private merger by a controlling stockholder that resulted in a damages award of $148 million, plus interest, following a nine-day trial in the Delaware Court of Chancery); In re Clear Channel Outdoor Holdings, Inc. Derivative Litigation, C.A. No. 7315-CS (Del. Ch.) (co-lead counsel in a stockholder derivative lawsuit relating to an alleged unfair cash-sweep lending arrangement imposed on a publicly-traded subsidiary by its parent entity, resulting in a settlement that returned $200 million to Clear Channel Outdoor Holdings stockholders); In re News Corporation Shareholder Derivative Litigation, C.A. No. 6316-VCN (Del. Ch.) (stockholder derivative lawsuit alleging corporate overpayment and failure to investigate and remedy cover-up of illegal activity associated with phone-hacking, resulting in a settlement of $139 million);In re Delphi Financial Group Shareholder Litigation, C.A. No. 7144-VCG (Del. Ch.) (stockholder class action relating to

- Panelist for the "M&A and Advising the Board" panel at the Delaware Law Issues Update Conference sponsored by the John L. Weinberg Center and the Society of Corporate Secretaries & Governance Professionals (November 2015)
- Panelist for the "Section 220 Litigation" panel at the Practising Law Institute's seminar "Delaware Law Developments 2015:  What All Business Lawyers Need to Know" ( June 2015)
- Co-author with Adam Levitt, Delaware Supreme Court Okays One-Way Fee-Shifting Bylaws, AAJ (Summer 2014)
- Co-author with A. Thompson Bayliss and Adam Schulman, Frequently Asked Questions, Answers and More Questions about the Business Strategy Immunity, PLI (2011)
- Co-author with J. Travis Laster, The Delaware Supreme Court Weighs in on Fiduciary Duties to Creditors, Insights ( June 2007)

**PROFESSIONAL ORGANIZATIONS / AWARDS**
- Delaware Corporation Law Council's Sub-Committee on Common Law Trusts
- Richard S. Rodney Inn of Court (Executive Committee member)
- Delaware State Bar Association
- Delaware Trial Lawyers Association
- Volunteer for the Delaware Office of the Child Advocate
- Volunteer for the Delaware Volunteer Legal Services protection from abuse program
- Listed in 2019 and 2020 in the Lawdragon 500 Leading Plaintiff Financial Lawyers
- Listed in 2019 in The National Trial Lawyers: Top 40 under 40

allegations that founder, CEO and Chairman improperly diverted merger consideration to himself, resulting in a $49 million settlement); Indiana Electrical Workers Pension Trust Fund IBEW v. Wal-Mart Stores, Inc., C.A. No. 7779-CB (Del. Ch.) (stockholder books and records lawsuit that resulted in a landmark Delaware Supreme Court ruling recognizing the "Garner doctrine" as Delaware law); and Lillis v. AT&T and AT&T Wireless, Nos. 459, 2007 and 490, 2007 (Del.) (successful action on behalf of former directors and executive offices of MediaOne to recover the value of out-of-the-money stock options, which were cancelled in the AT&T-Cingular Wireless merger).

In addition to the matters described above, Nathan served as lead counsel in multiple complex appraisal actions before the Delaware Court of Chancery that were confidentially settled. Nathan served as co-lead counsel for the trial of the largest appraisal matter in Delaware Court of Chancery history, representing petitioners seeking judicial appraisal on their nearly $900 million equity stake in the respondent corporation.

Nathan also has broad experience enforcing investors' rights to inspect internal corporate books and records.  In addition to the landmark Wal-Mart Stores action referenced above, Nathan has served as lead and co-lead counsel in multiple books and records actions before the Delaware courts.  In UnitedHealth Group Inc. v. Amalgamated Bank, No. 162, 2018 (Del.), Nathan served as lead trial and appellate counsel, which included the presentation of successful oral argument before the Delaware Supreme Court.

In addition, Nathan has experience serving as corporate advisory and litigation counsel in hostile takeover matters.  Nathan's hostile takeover work includes serving as lead counsel before the Court of Chancery in a stockholder's successful bid to oust and replace the longtime incumbent board of directors of a corporation.  Nathan also served as co-lead counsel in expedited arbitration of a merger earn-out dispute.

Nathan has also served as counsel to boards of directors, special committees, corporate officers and alternative entities, providing extensive corporate advisory services and legal opinions on a variety of transactional matters relating to Delaware law, including advising in connection with mergers, tender offers, reorganizations and other fundamental strategic transactions; corporate charters and bylaws; stockholder rights plans (i.e., poison pills); and dividends and distributions.

Nathan devotes a portion of his time to pro bono work for the Delaware Office of the Child Advocate and Delaware Volunteer Legal Services protection from abuse program.

Nathan's current cases involve multiple other companies, including Charter Communications and Facebook.



# JOEL FLEMING

*Partner*

 joel@blockleviton.com

## EDUCATION

- Harvard Law School, J.D., *cum laude*
- Wilfrid Laurier University, B.A., Political Science with high distinction

## BAR ADMISSIONS

- California
- Massachusetts

## COURT ADMISSIONS

- First and Ninth Circuit Courts of Appeal
- N.D. Cal., C.D. Cal, and S.D. Cal.
- D. Mass.

## PUBLICATIONS

- Co-author, Decision Re-Affirms Critical Role of Shareholders, Benefits and Pensions Monitor (October 2014)
- Co-author, Meltdowns crank up muni-bond litigation, Daily Journal (September 18, 2013)
- Co-author, SEC takes hard line on 'cyber incidents', Daily Journal (April 5, 2013)
- Co-author, Lower Courts Interpret The Supreme Court's Decision In Janus Capital Group, Inc. v. First Derivative Traders, Financial Fraud Law Report 4:5 (May 2012)

## PROFESSIONAL ACTIVITIES

- Visiting Lecturer, Tufts University: Experimental College (2013-2015)

Block & Leviton Partner Joel Fleming has significant experience in stockholder litigation. Since graduating with honors from the Harvard Law School, Joel has spent his entire career practicing stockholder litigation. In 2019, Law360 named Joel as one of the top six securities litigators in the country under the age of 40.

Since joining Block & Leviton in 2014, Joel has played a lead role in cases that have recovered over $100 million for investors in actions in which the firm was lead or co-lead counsel. Those cases include:

- *In re Pilgrim's Pride Corporation Derivate Litigation* (Del. Ch.) ($42.5 million settlement of derivative litigation arising from conflicted, related-party transaction with controlling stockholder);
- *In re Handy & Harman Corporation Stockholders Litigation* (Del. Ch.) ($30 million settlement of class action arising from sale of Handy & Harman to its controlling stockholder; recovery was a 33% premium to deal price; a near-record for merger litigation in Delaware);
- *In re Rentrak Corporation Shareholders Litigation* (Ore. Sup. Ct.) ($19.5 million settlement of litigation arising from all-stock merger between Rentrak Corporation and comScore, Inc.; largest settlement of merger litigation in Oregon state court history); and
- *In re Tangoe, Inc. Stockholders Litigation* (Del. Ch.) ($12.5 million settlement of litigation arising from sale of Tangoe, Inc. to affiliates of Marlin Equity Partners in take-private transaction).

Joel also played a key role in several other actions where Block & Leviton was able to achieve significant settlements, including

- *In re McKesson Corporation Derivative Litigation* (N.D. Cal.) (Block & Leviton was one of five firms that played a leading role in this action, which resulted in a $175 million derivative settlement of litigation arising from the McKesson Board's alleged oversight failures relating to opioid distribution; one of the five largest derivative settlements of all time);
- *Snap, Inc. Securities Cases* (Sup. Ct. Cal.) (Block & Leviton was co-lead counsel in this action which resulted in a $32.8 million settlement of claims arising from alleged misstatements made in connection with Snap's IPO) (final approval pending); and
- *In re Tezos Securities Litigation* (N.D. Cal.) (Block & Leviton was co-lead counsel in this action which resulted in a $25 million settlement of claims arising from the alleged unregistered sale of securities in connection with an initial coin offering of cryptocurrency) (final approval pending).

Prior to joining the firm, Joel was a member of the Securities Litigation and Enforcement group at Wilmer Cutler Pickering Hale and Dorr—a large defense firm headquartered in Boston and Washington, D.C. While at WilmerHale, he served as a member of the trial team in *AATI v. Skyworks*, the first-ever arbitration to go to trial before the Delaware Chancery Court, in a case involving a merger-related dispute between two companies in the high technology industry. Joel represented both companies in a subsequent shareholder class action that ended with the dismissal with prejudice of all counts.



## JACOB WALKER
*Partner*

 jake@blockleviton.com

### EDUCATION
- University of Michigan Law School, J.D., *cum laude*
- Babson College, B.S., Business Administration

### BAR ADMISSIONS
- Massachusetts
- California

### COURT ADMISSIONS
- Supreme Court
- First and Ninth Circuit Courts of Appeal
- D. Mass.
- N.D. Cal. and C.D. Cal.

### PROFESSIONAL CERTIFICATIONS
- Certified Information Privacy Professional (CIPP/US)

### PUBLICATIONS
- Co-author, PLI's Securities Litigation treatise – chapters on loss causation and securities trials

Jake Walker is a partner who focuses primarily on federal securities litigation throughout the country. He has been named a "Rising Star" in securities litigation since 2016 by Super Lawyers.

Among other cases, Jake is actively litigating cases on behalf of investors against *Immunomedics, Inc.* (D. N.J.) related to the company's misrepresentations about FDA inspections of its drug manufacturing facilities; *Lyft, Inc.* (N.D. Cal.) arising out of the company's 2019 initial public offering; *Mammoth Energy Services, Inc.* (W.D. Okla.) arising from the indictment of the CEO of the company's most significant division over bribery in Puerto Rico following Hurricane Maria; *Mattel* (C.D. Cal.) related to the company's restatement of financial results; *Synchronoss Technologies* (D. N.J.) related to the company's sale of a profitable business division; and *Trevena* (E.D. Pa.) related to the Company's public statements concerning their interactions with the FDA. Jake is also instrumental in the appeal to the First Circuit on behalf of investors in *Keryx Biopharmaceuticals* (1st Cir.) arising from the company's misstatements concerning a key supplier.

In the past year, Jake has led litigation teams that recovered $32.8 million from Snap, Inc. in litigation arising from its initial public offering (Cal. Sup. Ct.) and $25 million from the Tezos Foundation (N.D. Cal.), in litigation arising from the cryptocurrency's initial coin offering. Both cases are awaiting preliminary approval. Jake has also obtained recoveries on behalf of investors in *EZCORP, Inc.* (W.D. Tex.), *Amicus Therapeutics* (D. N.J.), *Atossa Therapeutics* (W.D. Wash.), *Onyx Pharmaceuticals* (Cal. Sup. Ct.), and *Globalscape, Inc.* (W.D. Tex.), among others.

In addition to his securities litigation work, Jake also assisted the firm in its work on the $14.7 billion settlement in the Volkswagen Diesel engine multi-district litigation, and has also led consumer litigation, including obtaining 100% recovery of damages for Massachusetts subscribers to newspapers published by Gatehouse Media, who were overcharged by the company.

Prior to joining Block & Leviton in 2015, Jake was an associate at two of the country's top defense firms: Gibson Dunn in Palo Alto and Skadden, Arps in Boston. There, he represented boards of directors, corporate acquisition targets, and acquirers in litigation related to mergers and acquisitions. Jake represented defendants in litigation related to the $5.3 billion private equity acquisition of Del Monte Foods Company in state and federal courts in California and in the Delaware Court of Chancery, as well as in litigation related to Intel's $7.7 billion acquisition of McAfee Inc. in the Superior Court of California, Santa Clara County. He has also represented numerous third parties, including various

investment banks, in M&A litigation in California and Delaware courts.

While Jake's ten-year career has centered on securities and corporate governance litigation, Jake also has significant experience representing several large technology companies, including in the defense of consumer class actions related to privacy and technology issues. He is a Certified Information Privacy Professional and has a deep understanding of technology and privacy issues. Jake has also represented companies in antitrust class actions and investigations, stockholder derivative actions, securities class actions, and in investigations before the F.T.C. and the Massachusetts Attorney General's Office.

Jake graduated from Babson College with a B.S. degree in Business Administration in 2001 and received his law degree, with honors, from the University of Michigan in 2010.

## VINCENT CHENG
*Senior Associate*

 vincent@blockleviton.com

### EDUCATION
- University of California Berkeley School of Law, J.D.
- University of California, Berkeley, B.A., Philosophy and Mathematics

### BAR ADMISSIONS
- California

### COURT ADMISSIONS
- N.D. Cal., E.D. Cal., and C.D. Cal.
- N.D. Ill.

### PUBLICATIONS
- Author, "A Jigsaw of Worker Classifications," Trial Magazine (September 2018)
- Author, "National Railroad Passenger Corporation v. Morgan: A Problematic Formulation of the Continuing Violation Theory," California Law Review (October 2003)

Vincent Cheng is an associate at the firm and a member of the Employee Benefits Group and Veterans/Servicemember Rights Group. Since graduating from law school, Vincent has focused his work on advocating for the rights of employees and retirees and of veterans and servicemembers. Prior to joining Block & Leviton in January 2017, he had over 8 years of experience in litigating a variety of lawsuits on behalf of employees.

Vincent has litigated cases brought under the Employee Retirement Income Security Act (ERISA) involving breach of fiduciary duty and benefit denial claims and cases brought under the Uniformed Services Employment and Reemployment Rights Act (USERRA) involving veterans' employment rights and benefits. He has also litigated employment cases involving unpaid overtime wages under the Fair Labor Standards Act (FLSA) and the California Labor Code and race and gender discrimination under Title VII and the California Fair Employment and Housing Act (FEHA).

### Notable Employee Benefits Cases

- *Foster v. Adams Associates, Inc.,* No. 18-cv-02723 (N.D. Cal.): represents a class of participants in an ESOP alleging that the directors and shareholders of Adams engaged in prohibited transactions and fiduciary breaches in connection with the October 2012 sale of Adams to the ESOP.

- *Hurtado v. Rainbow Disposal Co., Inc. ESOP Committee,* No. 8:17-cv-01605 (C.D. Cal.): represents a class of employees alleging that the October 2014 sale of Rainbow to the ESOP was not for adequate consideration and included various prohibited transactions and fiduciary breaches.

- *Carlson v. Northrop Grumman Severance Plan,* No. 13-cv-02635 (N.D. Ill.): represented a class of employees who were laid off from Northrop Grumman alleging they were improperly denied cash severance under the severance plan.

- *Aguilar v. Melkonian Enterprises, Inc.,* No. 05-cv-00032 (E.D. Cal.): represented a class of participants in two pension plans alleging that the fiduciaries failed to prudently invest the plan assets; obtained a settlement that provided for recovery of more than 85% of the losses to the plans.

- *Simpson v. Fireman's Fund Insurance Company,* No. C 05-000225 (N.D. Cal.): represented disabled employee-participants alleging that FFIC terminated them in violation of ERISA § 510 to prevent them from continuing to receive medical benefits; obtained a settlement that provided for restoration of their right to benefits for a period of years and reimbursement of past medical expenses.

- *Paulsen v. CNF Inc.,* No. C 03-3960 (N.D. Cal.): represented a group of employees alleging that the fiduciaries breached their duties under ERISA in connection with the spinoff of a division of CNF, and that the CNF pension plan's actuary breached its duty of care under state law in valuing the plan liabilities to be transferred at spinoff and certifying post spinoff that the new plan was adequately funded.

**BLOCK & LEVITON LLP**

- *Hurlic v. Southern California Gas Company,* No. 05-5027 (C.D. Cal.): represented a putative class of participants alleging that the pension benefit accrual formula under SCGC's cash balance defined benefit plan violated ERISA's prohibition against age discrimination and ERISA's anti-backloading rules.

## Notable Cases Involving Veterans and Servicemembers Rights

- *Anderson v. City and County of San Francisco,* No. 20-cv-01149 (N.D. Cal.): represents a putative class of employees alleging that the City's policies and practices governing military leave impose burdensome procedures not required by law and fail to provide servicemembers with certain benefits and proper reemployment in violation of USERRA, the California Military and Veterans Code ("MVC"), and the City's Annual Salary Ordinances.

- *Clarkson v. Alaska Airlines, Inc.,* No. 19-cv-00005 (E.D. Wash.): represents putative classes of servicemembers alleging that Alaska Airlines and Horizon Air violated USERRA by subjecting employees who took military leave to Horizon's "virtual credit" policy and by failing to provide paid short-term military leave when providing paid leave for other comparable short-term leave.

- *Nelson v. Ditech Financial, LLC,* No. 17-cv-05582 (W.D. Wash.), represents servicemember alleging Ditech violated the Servicemembers Civil Relief Act ("the SCRA") by refusing to apply the statutory 6% interest rate cap to mortgage loans incurred by servicemembers  and their spouses.

- *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan,* No. 14-cv-10138 (D. Mass.), obtained settlement of 100% actual damages on behalf of a class of pilots alleging that American Airlines allegedly violated USERRA and ERISA by making deficient pension contributions when pilots took military leave.

- *Bush v. Liberty Life Assurance Company of Boston,* No. 14-cv-01507 (N.D. Cal.), obtained settlement whereby Liberty Life agreed to return 60% of reduced long-term disability benefits to veteran-claimants and further agreednot to reduce future benefits absent state approval of revised policy language.

- *Munoz v. InGenesis STGi Partners, LLC,* No. 14-cv-1547 (S.D. Cal.),  a USERRA discrimination and failure-to-reemploy case that settled for full amount of the plaintiff's lost pay and benefits plus interest and a sizable amount of liquidated damages.

## Notable Employment Cases

- *Walkinshaw v. CommonSpirit Health,* No. 19-cv-03012 (D. Neb.): represents a putative class of employees who have worked as hourly-rate medical nurses alleging that the defendants violated the Fair Labor Standards Act ("the FLSA"), the Nebraska Wage and Hour Act ("the NWHA"), and the Nebraska Wage Payment and Collection Act ("the NWPCA"), by paying employees less than overtime and minimum wages for work performed while they were "on call."

- *Gutierrez v. Schmid Insulation Contractors, Inc.,* No. 07-cv-5852 (C.D. Cal.), a wage-and-hour class action alleging that the defendants failed to pay for travel time from offices to construction sites, provide meal and rest breaks, and pay overtime to a group of Spanish-speaking, immigrant workers.

- *Wynne v. McCormick & Schmick's Seafood Restaurants, Inc.,* 06-cv-03153 (N.D. Cal.), a Title VII and  FEHA class action alleging race discrimination in hiring and job assignments, which resulted in a consent decree through settlement that provided for significant injunctive relief to promote equal employment opportunity.



# STEPHEN TETI

*Senior Associate*

 steti@blockleviton.com

## EDUCATION

- Quinnipiac University School of Law, J.D., *magna cum laude*
- Fairfield University, B.A., Political Science and French, *cum laude*

## BAR ADMISSIONS

- Massachusetts
- Connecticut

## COURT ADMISSIONS

- Ninth Circuit Court of Appeals
- D. Mass.
- D. Conn.
- D. Colo.
- S.D.N.Y.
- W.D.N.Y.

Stephen Teti is a senior associate at Block & Leviton LLP, and with nearly a decade of experience litigating complex securities fraud, antitrust, and consumer class actions, he serves as a lead case investigator at the Firm.

Steve has recovered tens of millions of dollars in securities fraud class actions for shareholders. Steve's securities successes include *City of Birmingham Ret. & Relief Sys. v. MetLife, Inc.,* Case No. CV-2012-902101 (Ala. Cir. Ct.) ($9.75 million settlement); *Rosenberg v. Cliffs Natural Resources, Inc.,* No. 2014 CV 828140 (Ohio Ct. Com. Pleas) ($10 million settlement); and *Niitsoo v. Alpha Natural Resources, Inc.,* No. AD-303-2014 (Pa. Ct. Com. Pleas) ($3.6 million settlement).

Steve has also represented banks and financial institutions in high-profile data security breach class actions nationwide. Representative matters include *In re Home Depot Inc. Customer Data Security Breach Litig.,* 14-md-2583 (N.D. Ga.) ($27.25 million settlement; served on Plaintiffs' Coordination & Discovery Committee); *In re Target Corp. Customer Data Security Breach Litig.,* 14-md-2522 (D. Minn.) ($59 million settlement); and *WinSouth Credit Union v. Mapco Express, Inc.,* No. 14-cv-1573 (M.D. Tenn.) (largest dollar-per-card settlement obtained on behalf of financial institutions involving data breach of credit and debit card information).

Steve's antitrust matters include *In re Thalomid & Revlimid Antitrust Litig.,* No. 14-cv-6997 (D.N.J.) ($34 million settlement preliminarily approved), a class action alleging that the defendant's extensive anticompetitive conduct excluded generic alternatives for Thalomid and Revlimid, two drugs used to treat rare but deadly conditions, from entering the market, causing end payors to incur millions of dollars in overcharges. Steve is also a member of the team representing direct purchasers in *In re Broiler Chicken Antitrust Litig.,* No. 16-cv-8637 (N.D. Ill.), a class action alleging that broiler chicken producers engaged in a price fixing conspiracy. Steve is also a member of the team representing direct purchasers in *In re Pork Antitrust Litig.*, No. 18-cv-1776 (D. Minn.), a class action alleging that pork producers engaged in a price fixing conspiracy.

Steve joined Block & Leviton after practicing securities, derivative, and consumer class litigation for six years at a nationally-recognized plaintiffs' law firm in Connecticut. He previously clerked for the judges of the Connecticut Superior Court. During law school, Steve served as Publications Editor of the Quinnipiac Law Review, a judicial extern to the Honorable Stefan R. Underhill in the United States District Court for the District of Connecticut, an intern for the State of Connecticut Office of the Attorney General, and as a legislative extern to the Judiciary Committee of the Connecticut General  Assembly.

## Additional Notable Cases

- Obtained a significant decision for consumers in *Friedman v. Maspeth Fed. Loan & Savings Ass'n,* 30 F. Supp. 3d 183 (E.D.N.Y. 2014). In a case before the Honorable Jack B. Weinstein, raising "issues of first impression on the reach of the Real Estate Settlement Procedures Act," Steve defeated a motion to dismiss, and later obtained a settlement that reimbursed consumers for 100% of their losses in the case which involved wrongful imposition of late charges on timely received mortgage payments;

- Lead associate in several successful appeals, including *Cottrell v. Duke,* 737 F. 3d 1238 (8th Cir. 2013); *Westmoreland Cty. Emp. Ret. Sys. v. Parkinson,* 737 F.3d 719 (7th Cir. 2013); and *Chavez v. Nestlé USA, Inc.,* 511 Fed. Appx. 606 (9th Cir. 2013);

- Achieved several favorable decisions regarding the improper removal of class actions under the Securities Act of 1933, including *Niitsoo v. Alpha Natural Resources, Inc.,* 902 F. Supp. 2d 797 (S.D. W. Va. 2012); *Rosenberg v. Cliffs Natural Resources, Inc.,* 2015 WL 1534033 (N.D. Ohio Mar. 25, 2015); and *Rajasekaran v. CytRx Corp.,* 2014 WL 4330787 (C.D. Cal. Aug. 21, 2014).



# NATE SILVER

*Associate*

 nate@blockleviton.com

## EDUCATION

- Boston College Law School, J.D. '15, *magna cum laude*
- Suffolk University, B.A., History '11, *magna cum laude*

## BAR ADMISSIONS

- Massachusetts
- New York

## COURT ADMISSIONS

- First Circuit Court of Appeals
- D. Mass

## PUBLICATIONS

- Contributing author to Massachusetts Evidence: A Courtroom Reference (MCLE)

Nate Silver is an associate in Block & Leviton's securities litigation practice.

Nate is a member of the teams actively litigating on behalf of investors against *Immunomedics, Inc.* (D. N.J.) related to the Company's misrepresentations about FDA inspections of its drug manufacturing facilities; *Lyft, Inc.* (N.D. Cal.) arising out of its initial public offering; *Mammoth Energy Services, Inc.* (W.D. Okla.) arising from the indictment of the CEO of the Company's most significant division over bribery in Puerto Rico following Hurricane Maria; *Synchronoss Technologies* (D. N.J.) related to the Company's sale of a profitable business division; and *Trevena, Inc.* (E.D. Pa.) related to the Company's public statements concerning their interactions with the FDA.

Recently, Nate was a member of the litigation teams that recovered $32.8 million from Snap, Inc. in litigation arising from its initial public offering (Cal. Sup. Ct.) and $25 million from the Tezos Foundation (N.D. Cal.), in litigation arising from the cryptocurrency's initial coin offering. Nate was also a member of the litigation teams that obtained recoveries on behalf of shareholders in *EZCORP, Inc.* (W.D. Tex.) and *Globalscape, Inc.* (W.D. Tex.).

Prior to joining Block & Leviton in 2018, Nate was an associate at one of Massachusetts' premier criminal defense firms – J. W. Carney, Jr. & Associates – where he represented defendants in criminal trials and appeals in state and federal court. There, Nate gained valuable litigation and trial experience as the lead associate on a broad range of matters, including securities fraud, visa fraud, murder, and drug distribution cases.

Nate also represented indigent individuals accused of crimes in state court as a member of Middlesex Defense Attorneys, Inc., a non-profit organization that administers criminal defense services to those who cannot afford legal services.

While attending law school, Nate served as a senior editor for the Boston College Law Review, interned at the New England Innocence Project, and was a summer associate at Day Pitney LLP.

**BLOCK & LEVITON LLP**

## COLIN M. DOWNES

*Associate*

 colin@blockleviton.com

### EDUCATION

- University of Virginia School of Law, J.D
- University of Massachusetts, B.A., Philosophy

### BAR ADMISSIONS

- District of Columbia
- New York

### COURT ADMISSIONS

- D. D.C.
- S.D.N.Y
- First Circuit Court of Appeals

### PUBLICATIONS

- *Appointing Chapter 11 Trustees in Reorganizations of Religious Institutions,* 101 Va. L. Rev. 2225 (2015)

Colin M. Downes is an associate with the firm who focuses his practice on defending the rights and benefits of workers and retirees. His experience includes cases brought under the Employee Retirement Income Security Act (ERISA) involving employee stock ownership plans, excessive 401k and 403b fees, pension plan underfunding, and the ERISA obligations of religiously affiliated nonprofits. He has also provided pro bono representation to indigent clients in contested asylum and child custody matters.

Prior to joining the firm, Colin practiced as an associate with Groom Law Group (an employer-side employment benefits boutique) and with the international law firm Clifford Chance. Colin served on the editorial board of the Virginia Law Review while in law school.



# AMANDA R. CRAWFORD

*Associate*

 amanda@blockleviton.com

### EDUCATION

- University of North Carolina School of Law, J.D.
- Eugene Gressman and Daniel H. Pollitt Oral Advocacy Award for Best Overall Argument
- Certificate of Merit for highest grade in Legal Research, Reasoning, Writing, and Advocacy
- California State University, Fullerton, Criminal Justice, *cum laude*

### BAR ADMISSIONS

- Massachusetts

### COURT ADMISSIONS

- D. Mass

Amanda Crawford is an associate in Block & Leviton LLP's shareholder litigation practice.

Amanda is proficient in all stages of litigation. She has experience conducting pre-suit investigation of state and federal law violations, drafting initial pleadings, performing legal research and analyses, preparing for depositions, drafting case-dispositive motions, and participating in mediation. Amanda has also overseen large-scale discovery efforts, including developing case-specific strategies in complex, multi-million document cases.

 She was a member of the litigation team in *In re Handy & Harman, Ltd. Stockholders Litigation,* a securities class action that obtained a $30 million settlement—a 33% premium to the deal price and one of the largest sell-side premiums achieved for stockholders in Delaware. She was also part of the litigation team that secured a $12.5 million recovery for investors in *In re Tangoe, Inc. Stockholders Litigation*. Most recently, she was on the team of attorneys who obtained a $42.5 million recovery in *In re Pilgrim's Pride Corporation Derivative Litigation*.

Before joining Block & Leviton, Amanda gained practical corporate work experience in finance and employment law. During law school, she served as Executive Editor of the North Carolina Journal of International Law, Co-chair of the Craven Moot Court Board, a research assistant to the Assistant Dean of the Writing and Learning Resources at UNC School of law, a law clerk at TIAA, and a summer associate at Mayer Brown LLP.



## LAUREN GODLES MILGROOM

*Associate*

 lauren@blockleviton.com

### EDUCATION

- Harvard Law School, J.D., *cum laude*
- Tufts University, B.A., *summa cum laude*

### BAR ADMISSIONS

- Massachusetts

Lauren is an associate in Block & Leviton's shareholder litigation practice.

Before joining Block & Leviton, Lauren served as a judicial law clerk for the Honorable Denise Casper on the United States District Court of Massachusetts. Immediately prior to her clerkship, she was a litigation associate at Foley Hoag in Boston, where she primarily worked on *Doe v. Trump*, a federal challenge to the transgender military ban. In law school, Lauren served as the President of the Harvard Mediation Program and Executive Editor of the Harvard Latino Law Review. She was also a national competitor with the Harvard Mock Trial Association.



## JEFFREY GRAY
*Associate*

 jgray@blockleviton.com

### EDUCATION

- Suffolk University Law School, J.D.
- Sawyer Business School, Suffolk University, M.B.A.
- Connecticut College, B.A., Economics

### BAR ADMISSIONS

- Massachusetts

Jeff Gray joined Block & Leviton LLP as an Associate in 2016. His practice focuses on complex securities and antitrust litigation. Jeff is currently a member of the litigation team representing a putative class of Charter Communications shareholders, challenging an unfair share issuance to Charter's controlling shareholders, in connection with Charter's purchase of Time Warner Cable and Bright House Networks. See *Sciabacucchi v. Liberty Broadband Corporation,* No. CV 11418-VCG, 2017 WL 2352152, at *3 (Del. Ch. May 31, 2017). Jeff is a member of the litigation team in *Karth v. Keryx Biopharmaceuticals, Inc., et al.* (D. Mass.), a federal securities class action involving misrepresentations about the risks of relying on a single contract manufacturer.

Jeff is a member of the litigation team representing the City of Providence in an antitrust class action against Celgene Corp. for unlawfully excluding generic competition for vital cancer treatment drugs.  See *In re Thalomid & Revlimid Antitrust Litig.,* 14-cv-6997 (D.N.J.) ($34 million settlement preliminarily approved).

Jeff was a member of the litigation team that represented shareholders in *In re McKesson Corporation Derivative Litigation,* 4:17-cv-01850-CW (N.D.Cal.) (settled for $175M, plus significant corporate governance reforms). Jeff was a member of the litigation team in *In re Pilgrim's Pride Corporation Derivative Litigation,* Consol. C.A. No. 2018-0058-JTL (Del. Ch.), a derivative action challenging a conflicted transaction between Pilgrim's Pride and its majority stockholder, JBS (settled for $42.5M).

Earlier in his career, Jeff was a management consultant at a financial services firm in the Boston area and, prior to that, was a project manager in commercial lending at FleetBoston Financial. While in law school, he completed internships with MFS and with The Nature Conservancy and was a law clerk at CT Corporation System.

**BLOCK & LEVITON LLP**

## DAVID DORFMAN

*Associate*

  david@blockleviton.com

### EDUCATION
- Harvard Law School, J.D.
- New York University, M.B.A

### BAR ADMISSIONS
- New York

  *Not admitted in Massachusetts. Practicing under the supervision of firm principals.

David Dorfman is an associate at Block & Leviton, focusing his practice on securities litigation.

Prior to joining Block & Leviton, David worked as an equity research analyst for a leading investment bank covering the consumer sector. Earlier in his career, he was an associate at one of the country's top securities law firms, specializing in corporate finance and investment management.

## MICHAEL GAINES
*Associate*

 michael@blockleviton.com

### EDUCATION
- Tulane University School of Law, J.D., magna cum laude
- Wesleyan University, B.A., History

### BAR ADMISSIONS
- Massachusetts

### PUBLICATIONS
- Adrift at Sea in Search of the Proper Scope of the Penhallow Rule: D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd., 39 Tul. Mar. L.J. 749 (2015)

Michael Gaines is an associate in Block & Leviton's securities litigation practice.

Before joining Block & Leviton, Michael served as a judicial law clerk for the Honorable Louis Guirola, Jr. (2018-2020) and the Honorable John C. Gargiulo (2016-2018), both in the United States District Court for the Southern District of Mississippi.  During law school, Michael was elected Senior Managing Editor of the Tulane Maritime Law Journal, served as Invitational Brief Grading Chair of the Mood Court Board, and served as a Senior Fellow for the international LLM student Legal Research and Writing course.  He was also a summer associate at Proskauer Rose LLP.



## MAE OBERSTE

*Associate*

 mae@blockleviton.com

### EDUCATION

- Seattle University School of Law ( J.D., *summa cum laude*)
- Syntra Antwerpen & Vlaams-Brabant (B.A.)
- University of Missouri (B.S., *magna cum laude*)

### BAR ADMISSIONS

- Delaware
- Washington State

### COURT ADMISSIONS

- United States District Court for the District of Delaware

### DISTINCTIONS

- Research and Technical Editor, *Seattle University Law Review*
- Lead Associate Editor, *American Indian Law Journal*

### MEMBERSHIPS AND AFFILIATIONS

- American Bar Association
- Richard S. Rodney Inn of Court

Mae is an associate in Block & Leviton's Wilmington, Delaware office. Her practice focuses on the representation of stockholders in corporate governance and breach of fiduciary duty matters.

After receiving her law degree, Mae served as a judicial clerk for then-Vice Chancellor Tamika R. Montgomery-Reeves of the Delaware Court of Chancery (now Justice Montgomery-Reeves of the Delaware Supreme Court). From her clerkship experience, she gained invaluable insights into the Court's perspective on both the legal and practical aspects of litigation.

Mae also gained significant experience with two of Delaware's premier defense firms—Young Conaway Stargatt & Taylor, LLP and Wilson Sonsini Goodrich & Rosati. During those experiences, she represented numerous Fortune 500 companies, financial services companies, and multinational conglomerates. She was also an essential part of numerous litigations, including *In re WeWork Litigation* and derivative litigation involving DISH Network Corporation.

Mae graduated *summa cum laude* from the Seattle University School of Law, where she served as an editor for the *Seattle University Law Review*. During law school, Mae immersed herself in Delaware corporate law by leading a course comparing Delaware corporate law to that of Washington and other states.

Contact Us

## BLOCK & LEVITON LLP

260 Franklin Street, Suite 1860 | Boston, MA 02110
100 Pine Street, Suite 1250 | San Francisco, CA 94111
1735 20th St NW | Washington, DC 20009
8 W. Mozart Dr. | Wilmington, DE 19807

T. (617) 398-5600 | F. (617) 507-6020

www.blockleviton.com

# EXHIBIT G



A full service business law firm practicing nationwide with offices in Ohio, New Jersey, New York, Pennsylvania & Connecticut

# PEREZ & MORRIS LLC FIRM BROCHURE

**|** MAY 17, 2020



Good people.
Doing great legal work.
Exceptionally well.

perez-morris.com
855-580-7530

# OUR FIRM

Perez Morris is a certified women-owned law firm headquartered in Columbus, Ohio.  We also have offices in Philadelphia, New York, New Jersey, Connecticut, and Massachusetts.  In the Northeast, the firm operates as Perez Morris Hyde.  Our attorneys were partners in large law firms, in-house counsel and general counsel for privately owned and publicly-held companies.  Our commitment is to provide superior, personalized service at a cost-effective rate, without the inherent inefficiencies of a large law firm. This philosophy is reflected in our conscientious billing practices and alternative fee arrangements.

Our firm brings decades of legal experience, a diverse and collaborative approach to creatively solving problems, and a keen focus on meeting our clients' highest expectations.  Individually, we are personable, approachable and remain attentive to our clients' needs through the timely delivery of strategic, efficient and effective services.  Collectively, we are good people, doing great legal work, exceptionally well.



# AWARDS & ACCOLADES

> 2020 Best Places to Work for Young Professionals, Columbus Young Professionals Club

> 2019 Medical Mutual Pillar Award Honoree

> 2018 Diversity Champion Award, Ohio Women's Bar Association

> 2018 Outstanding Diverse Organization, Columbus Business First

> 2018 40 Under 40 Honoree – Columbus Business First, Sarah Perez

> 2018 C-Suite Award: Most Admired Executive Nominee, John Perez

> 2017 Smart Women Advocate for Advancement, John Perez

# NATIONAL COORDINATING COUNSEL

We are privileged to serve several clients as national coordinating counsel for general liability, property loss and damage case, creditors' rights, employment, and civil rights defense litigation.  Working with our clients' legal and risk teams, we help formulate, implement and supervise litigation strategy.  We work with local counsel to formulate procedural and substantive strategy, internal information gathering, coordination of defense, and complete and consistent discovery responses with minimal disruption to our clients.  We identify and develop appropriate company witnesses and properly focused expert witnesses.  We also manage budgets and reporting processes and participate in pretrial, trial and settlement strategies. We assist our clients in achieving and maintaining a streamlined, consistent approach to litigation.  As part of this program, we are proud to support other minority and women-owned law firms across the country.  Where possible based on jurisdiction and subject matter expertise, we utilize minority and women-owned firms as local counsel to serve our clients who are part of this program.



# PRACTICE AREAS

> Aviation
> Business  Advice & Counseling
> Commercial Litigation
> Risk & Compliance
> Construction
> Creditor's Rights & Collection
> Civil Rights Defense
> Business Immigration
> Financial Services Litigation
> Labor & Employment
> Property Subrogation

> Logistics & Transportation
> New York Labor Law
> Premises Liability
> Products Liability
> Real Estate
> Retailer Representation
> Self-Insured Representation
> Sexual Misconduct
> Special Investigations & Fraud
> Trucking Defense Litigation
> Workers' Compensation (CT & OH)



# BUSINESS ADVICE & COUNSELING
## CORPORATE GOVERNANCE

With our breadth of experience both as in-house counsel and in the seat of General Counsel for several of our attorneys, corporate governance has developed as an area of strength within our Business Advice and Counseling practice.  We understand the complexities of various organizational structures and the exposure that can be created by missing steps or failing to appreciate structural details when making decisions at the highest levels of a company.  We regularly maintain corporate books for our clients and assist in managing the governance process to ensure all filings are up to date and proper procedures and protocols are followed in the internal governance of the company.



# BUSINESS LITIGATION

We aggressively handle all types of litigation arising out of business and commercial disputes.  We have successfully defended and prosecuted claims involving breach of contract, trade secrets, non-competition, intellectual property, injunctive relief, breach of fiduciary duty and a multitude of other claims arising in everyday business.  In addition to litigation, we counsel businesses and help them plan to conform to their institutional needs.  Whether we are assisting in business planning or in litigation, we pride ourselves in remaining attentive to our clients' goals and needs and providing efficient, effective and timely services in response to those needs.

# REPRESENTATIVE CLIENTS

> Airstream

> Abercrombie & Fitch

> ACI Industries Ltd., L.P.

> Amazon

> American Eagle Outfitters

> American Electric Power

> Ann Taylor Stores

> Bath & Body Works

> Bob Evans Farms

> Boehringer–Ingelheim Roxane, Inc.

> Caesars Entertainment Group

> Chapman Corporation

> Charter Hill Construction

> Cleveland State University

> DHL

> DSW

> 84 Lumber

> Express

> Federal-Mogul Corporation

> Federated Department Stores/Macy's

> Forever 21

> Gap

> Garner Trucking

> Henri Bendel

> iTickets

> Kaiser Aluminum Fabricated Products

> Lacko Poured Walls

> Miami University of Ohio

> Mid Ohio Foodbank

> MXD Group

> Nagle Leasing, Inc.

> NEX Transport

> Norfolk Southern Railway Company

> OhioHealth

> Ohio Restaurant Association

> Paragon Management Associates

> Precision Strip

> PERS of Ohio

> Rising Sun Express

> RS Hanline

> Safelite Group

> Sapa Extrusions Americas

> Sears

> School Employees RetirementSystem of Ohio

> Stanley Steemer International

> Steak 'N Shake

> Steiner + Associates

> Talbots

> The Children's Place

> The Ohio State University

> TJX Companies

> Victoria's Secret

> Wendy's International

> Williams Sonoma

> Wright State University





# JUAN JOSE PEREZ
## FOUNDING ATTORNEY

Juan Jose (John) is a founding member Ohio's largest Hispanic-owned law firm.  Opened in January 1997, he was joined by Troy Morris two years later to form Perez & Morris LLC. Prior to opening his own office, John was General Counsel and Vice President of Administration for a publicly traded $150 million company. He was responsible for all legal aspects of this international company and its subsidiaries and supervised the company's domestic and international counsel. John also supervised the company's human resources, risk management and administrative functions.

His main practice is corporate transaction, real estate, and commercial and construction litigation, where he has achieved successful jury verdicts and arbitration/mediation results including many in excess of millions of dollars.

From 1987 to 1994, John was with a major Columbus, Ohio, law firm, first as an associate and later as a partner. He was involved in all aspects of litigating minor and major commercial and employment cases throughout the country.

Prior to 1987, John served as a law clerk to Federal District Court Judge Nicholas J. Walinski in Toledo, Ohio.  John and his wife, Joan, have three sons and five grandchildren. He is active in church and community activities and is fluent in Spanish.

## ADMISSIONS

> Ohio

> Pennsylvania

> Florida

> New York

## CONTACT

jperez@perez-morris.com
D | (614) 540-2250
O | (614) 431-1500
8000 Ravine's Edge Court
Suite 300
Columbus, Ohio 43235

## PRACTICE

Corporate Transaction
Real Estate
Complex Litigation
Construction Litigation

## EDUCATION

The University of Toledo College of Law, Juris Doctor

Lee University, Bachelor of Arts



# JUAN JOSE (JOHN) PEREZ
CONTINUED

## MEMBERSHIPS, BOARD POSITIONS & COMMUNITY SERVICE

### Current

> The National Association of Minority and Women Owned Law Firms, Inc., Member

> Ohio Chamber of Commerce, Board of Directors, Member – Board of Directors

### Past

> Columbus First Bank, Board of Directors, Asset Liability Committee, Information Technology and Loan Committees, Member

> Mount Carmel Health System, Board of Directors Chair, Member

> Columbus Hispanic Chamber of Commerce, Member

> University of Toledo Board of Trustees, Member

> National Make-A-Wish Foundation of America, Governance Committee, Member

> Make-A-Wish Foundation of Ohio, Kentucky, and Indiana, Past Chair, Governance Board

> Task Force on Hispanic Affairs, Member

> National Kidney Foundation Serving Ohio Board, Member

> Columbus Crew Foundation Board, Member

> Ohio Advisory Committee to the U.S. Civil Rights Commission, Member

> The Gathering, Advisory Board, Member

> Greater Columbus Chamber of Commerce, Small Business Council, Member

> Franklin County Foster Parent Association, Member

> Ohio Commission on Dispute Resolution and Conflict Management, Commissioner

> United Way of Franklin County, Planning, Evaluation and Allocations Committee, Volunteer

> National Association of Women Business Owners, Columbus Chapter, Advisory Board, Member



# ANNE MARIE SCHLOEMER
## ATTORNEY

Anne Marie defends clients in all general litigation claims from inception to resolution, including claims of property damage, personal injury, wrongful death, and breach of contract. She has experience working in all levels of the judicial system in numerous states.

Anne Marie's general litigation practice extends into labor and employment expertise, where she defends employers in matters pertaining to Title VII, ADA, ADEA, FMLA, and state discrimination laws.

Though an astute advocate when the situation warrants it, Anne Marie works strategically with clients to decrease the risk of employment-related litigation by ensuring that clients have the proper policies and procedures in place. She also regularly counsels clients through complicated disciple and leave-related

issues, including new work-related challenges presented by COVID-19.

Additionally, Anne Marie specializes in workers' compensation matters. She represents self-insured and state-funded clients throughout the course of administrative proceedings and appeals to court.

While attending law school at The Ohio State University, Anne Marie acted as a managing editor on the *Ohio State Journal on Dispute Resolution*. She also studied abroad for a summer at St. Anne's College at the University of Oxford. During her time as an undergraduate at Syracuse University, Anne Marie spent a semester at the University of Wollongong in Australia studying politics in international media.

Anne Marie lives in Clintonville with her husband, Mark, and two daughters, Quincy and Eliza.

## CONTACT

aschloemer@perez-morris.com
D | (614) 987-0506
O | (614) 431-1500
8000 Ravine's Edge Court
Suite 300
Columbus, Ohio 43235

## PRACTICE

Labor and Employment
Workers' Compensation
Business Litigation

## EDUCATION

The Ohio State University,
Juris Doctor, 2011

Syracuse University, Bachelor of Arts, magna cum laude, 2008



# ANNE MARIE SCHLOEMER
CONTINUED

## ADMISSIONS

Ohio

> United States District Court, Northern District of Ohio, 2020

> United States District Court, Southern District of Ohio, 2010

Texas

## AWARDS & RECOGNITION

> 2021 Ohio Rising Star

## BOARD POSITIONS & COMMUNITY SERVICE

> Junior Achievement of Central Ohio, Operations Committee (February 2019-present)

# OUR LOCATIONS

## OHIO

8000 Ravine's Edge Court
Suite 300
Columbus, Ohio 43235
Phone: (855) 580-7530
email: contact@perez-morris.com

## NEW YORK

140 Broadway
46th Floor
New York, NY 10005
Phone: (855) 580-7530
email: contact@perez-morris.com

## NEW JERSEY

103 Carnegie Center
Suite 300
Princeton, NJ 08540
Phone: (855) 580-7530
email: contact@perez-morris.com

## CONNECTICUT

15 River Rd.
Ste. 15B
Wilton, CT 06897
Phone: (855) 580-7530
email: contact@perez-morris.com

## PHILADELPHIA

100 North 20th Street
Suite 303
Philadelphia, PA 19103
Phone: (855) 580-7530
email: contact@perez-morris.com

## PITTSBURGH (SATELLITE OFFICE)

500 Grant St.
2900, 29th Floor
Pittsburgh, PA 15219
Phone: (855) 580-7530
email: contact@perez-morris.com

## MASSACHUETTS (SATELLITE OFFICE)

101 Arch St.
8th Floor
Boston, MA 02110
Phone: (855) 580-7530
email: contact@perez-morris.com

