# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## YOUNGSTOWN DIVISION

| | |
|---|---|
| MATTHEW RICO, Individually and On Behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    v.<br><br>LORDSTOWN MOTORS CORP., STEPHEN S. BURNS, RICH SCHMIDT, and JULIO RODRIGUEZ,<br><br>      Defendants. | Case No. 4:21-cv-00616-PAG<br><br>**RESPONSE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE THE RELATED ACTIONS, APPOINT ASHITH PABBATHI AS LEAD PLAINTIFF AND APPROVE THE SELECTION OF LEAD COUNSEL** |

010996-11/1557792 V1

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     ARGUMENT.......................................................................................................... 5

        A.      Mr. Troicky's Grossly Exaggerates His Financial Interest in the
                Case ........................................................................................................... 5

        B.      Tavares/Globestar is Inadequate .......................................................... 9

        C.      The RIDE Investor Group is an Artificial and Attorney-Driven
                Group....................................................................................................... 11

        D.      Mr. Pabbathi Is the Most Adequate Plaintiff ....................................... 12

        E.      The Court Should Approve Mr. Pabbathi's Selection of Counsel ...................... 13

III.    CONCLUSION..................................................................................................... 14

010996-11/1557792 V1

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*In re Am. Med. Sys.*,
  75 F.3d 1069 (6th Cir. 1996) ........................................................................................ 13

*Atkinson v. Morgan Asset Mgmt.*,
  2008 U.S. Dist. LEXIS 130567 (W.D. Tenn. Sep. 23, 2008) ............................................. 12

*Buettgen v. Harless*,
  2009 U.S. Dist. LEXIS 104604 (N.D. Tex. Nov. 9, 2009) .................................................... 11

*Camp v. Qualcomm Inc.*,
  2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ......................................................................... 10

*In re Cardinal Health, Inc. Sec. Litig.*,
  226 F.R.D. 298 (S.D. Ohio 2005) ......................................................................................... 7

*In re Charles Schwab Corp. Securities Litigation*,
  Case No. 3:08-1510-WHA (N.D. Cal.) ................................................................................ 13

*In re Cloudera, Inc. Sec. Litig.*,
  2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) .................................................................. 5, 6

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................*passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
  2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ................................................................6, 11

*In re Enzymotec Ltd. Sec. Litig.*,
  2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) ............................................................ 4

*In re Hebron Technology Co., Ltd. Securities Litigation*,
  2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sept. 16, 2020) .................................................... 8

*Kasper v. AAC Holdings, Inc.*,
  2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. July 14, 2017) ............................................. 3, 9

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
  2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009) ...................................................... 12

*In Re McKesson Corporation Derivative Litigation*,
  Case No. 4:17-CV-1850-CW (N.D. Cal.) ............................................................................ 13

*Owens v. FirstEnergy Corp.*,
  2020 U.S. Dist. LEXIS 219573 (S.D. Ohio Nov. 23, 2020) ................................................ 13

010996-11/1557792 V1

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ........................................................................10, 11

*Pio v. GM Co.*,
   2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) .................................................. 6

*Piven v. Sykes Enters., Inc.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000) ............................................................... 10

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015) ..........................................................................3, 6, 7

*Steamfitters v. Local 449 Pension Fund v. Central European Distribution Corp.*,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012).............................................................. 9

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ................................................................ 11

*Tsirekidze v. Syntax-Brilliam Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008).............................................................. 11

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   2007 WL 2683636 (D.N.J. Sept. 7, 2007) ............................................................ 10

*Willis v. Morgan Keegan & Co. (In re Regions Morgan Keegan Closed-End Fund Litig.)*,
   2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010)................................................ 12

**FEDERAL STATUTES**

15 U.S.C. §78u-4 *et seq.*.......................................................................................*passim*

15 U.S.C. §78u-4(a)(2) .................................................................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................... 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .......................................................................................*passim*

Fed. R. Civ. P. 23(a)(4).................................................................................... 13

- iii -

Lead Plaintiff movant Ashith Pabbathi ("Mr. Pabbathi") respectfully submits this memorandum of law in further support of his motion to consolidate cases, appointment as lead plaintiff, approval of his selection of counsel, and in opposition to the competing lead plaintiff motions.

### I.     PRELIMINARY STATEMENT

Before the Court were eleven motions for appointment as lead plaintiff filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] Although certain of the competing movants purport to claim a larger financial interest than Mr. Pabbathi, as reflected by the chart below and explained more fully herein, these applicants have either grossly exaggerated their financial interest in the action or suffer from disqualifying typicality and adequacy issues rendering them incapable of representing the Class.

| Movant | Claimed Loss | Actual Loss | *Prima Facia* Adequacy Showing? | Disqualifying Issue |
|---|---|---|---|---|
| **Mr. Troicky** | $864,201.53 | $461,866.38 (LIFO / DURA) | No | Smaller recoverable losses; Atypical trading patterns rendering him susceptible to |

---

[1] Competing motions were filed by: (i) Ethan Fingerer, Kevin Levent, M.R.S. Leasing Corporation LTD, Mario Guerrero, and Carole Cooper (the "Lordstown Shareholder Group") – withdrawn (ECF No. 30); (ii) George Troicky ("Mr. Troicky"); and (iii) Daniel Tavares and Globestar Systems Inc. ("Tavares/Globestar") – filed a non-opposition to Mr. Troicky's motion (ECF No. 32); (iv) Steven Terry, Kin San Chan, and Randy Slipher (the "RIDE Investor Group"); (v) Gurpreet Singh ("Mr. Singh"); (vi) John H. Jenkins and Robert Miller ("Jenkins/Miller") – withdrawn (ECF No. 31); (vii) FNY Managed Accounts, LLC ("FNY") – filed non-opposition to Mr. Troicky's motion but also does not contest Mr. Pabbathi's motion (ECF No. 33); (viii) Joshua Betof and Kenneth Davenport ("Betof/Davenport"); (vix) Mohammed Chowdhury and Simha & Pnina Cohen ("Chowdhury/Cohen") – withdrawn (ECF No. 29); and (x) Dare Tehrani and Eskandar Tehrani ("Tehrani") – withdrawn (ECF No. 28). The defined terms in Mr. Pabbathi's opening brief (ECF No. 23) shall have the same meaning herein.

010996-11/1557792 V1

|  |  |  |  | unique reliance defenses |
| --- | --- | --- | --- | --- |
| **Tavares/Globestar – Filed a non-opposition** | Tavares - $178,636.67<br><br>Globestar - $678,855.56<br><br>$853,492.23 | $178,636.67 (LIFO / DURA) | No | Inadequate; lacking standing and authority to bind corporation |
| **RIDE Investor Group** | Kin San Chan - $161,871.87<br><br>Randy Slipher - $135,602.23<br><br>Steven Terry - $430,500.00<br><br>$732,381.63 | $430,500.00 (LIFO / DURA) | No | Improper and attorney-driven group |
| **Mr. Pabbathi** | $657,924.32 | $657,924.32 (LIFO / DURA) | Yes | None |
| **Mr. Singh** | $538,843.63[2] | $538,843.63[3] (LIFO) | N/A[4] | Smaller losses |
| **FNY – Filed a Non-opposition** | $418,997.43 | $418,997.43 (LIFO) | N/A | Smaller losses |

First, while Mr. Troicky purports to claim losses of $864,201.53, this figure is entirely detached from the law and therefore grossly exaggerated. Under the principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), a plaintiff must allege and prove a causal

---

[2] Mr. Singh claims in a footnote that his losses would be greater if his Lordstown option trading profits were excluded. *See* ECF No. 22-1 at 13, n.4. However, several of the complaints at issue cover Mr. Singh's option trades, as the classes are properly defined as including all Lordstown securities. *See Rico* Complaint at ¶ 1; *see also Bury* Complaint at ¶ 1.

[3] Mr. Pabbathi does not contest the calculation of damages of competing movants who have claimed smaller losses.

[4] Pursuant to the lead plaintiff determination process, the Court need not determine the adequacy of movants with smaller losses than Mr. Pabbathi. *See* discussion *infra* § II.D.

010996-11/1557792 V1

connection between the alleged fraudulent statement or conduct and the plaintiff's economic loss.[5] Courts must consider this causal connection when evaluating financial interest at the lead plaintiff stage.[6] Depending on whether a FIFO or LIFO calculation is used, 47-60% of Mr. Troicky's losses (or $342,049.25 (FIFO); $461,866.38 (LIFO)) were suffered prior to the disclosure of the alleged fraud. When properly excluding the portion of Mr. Troicky's losses incurred before or by in-and-out trading between any corrective disclosures, Mr. Troicky's losses are only $342,049.25 (under a FIFO calculation) or $461,866.38 (LIFO),[7] much lower than Mr. Pabbathi's losses.

Moreover, Mr. Troicky's irregular trading patterns present a host of serious issues. Apart from making large sales of shares prior any corrective disclosure and therefore benefitting from inflated share prices, Mr. Troicky bought 90,000 shares from March 12 - 24, 2021, subsequent to the release of multiple reports issued by Hindenburg exposing Defendants fraud. These substantial post-disclosure purchases are fatal to his appointment and suggest that Mr. Troicky—unlike other members of the class—chose to invest in Lordstown even though he was on notice of Defendants' misstatements and omissions.

Second, Tavares/Globestar has filed a notice of non-opposition to Mr. Troicky's motion, and has not submitted any arguments in opposition to any other motion. Moreover, Tavares/Globestar cannot be appointed Lead Plaintiff because has failed to evince its standing and authority.[8] Tavares submitted a motion purportedly on behalf of Globestar Systems Inc.

---

[5] *Dura*, 544 U.S. at 337.

[6] *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015).

[7] *See* Ex. A, Estimated Losses and Damages for George Troicky, prepared by a financial analyst retained by Hagens Berman, and attached to the Declaration of Danielle Smith ("Smith Decl."), filed in support hereof.

[8] Standing requires a showing by Plaintiffs of: (1) injury in fact; (2) causal connection between the injury and the complained of conduct; and (3) that success on the merits will likely redress the injury. *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608, at *26 n.3 (M.D. Tenn. July 14, 2017) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.

010996-11/1557792 V1

("Globestar"), but did not provide any evidence or authority suggesting he has the ability to bring litigation on behalf of Globestar or otherwise bind this artificial entity. Nowhere in his declaration does he explain his authority as Globestar's purported Chairman or state that the Board or company authorized the company's involvement in this suit.[9] Moreover, the information publicly available regarding Globestar suggests Tavares has no such authority. In the motion, Daniel Taveres claims to be the Chairman of Globestar, but public records do list Tavares as even a Board member. Rather, these records show Globestar's Board as having two directors – David Tavares and Anna Tavares –neither of whom are before the Court.[10]

Third, the sole remaining competing movant group, the RIDE Investor Group, is patently inadequate as it constitutes an improper attorney-driven group. The RIDE Investor Group is comprised of three investors who individually suffered varying levels of losses, all substantially lower losses than Mr. Pabbathi. Moreover, it is apparent that their counsel put together these individuals as a group for the sole purpose of aggregating their individual losses and leapfrogging more deserving applicants. The group members have nothing in common other their counsel, as they are geographically dispersed individuals residing in Cunningham, Kentucky, San Francisco, California, and Troutdale, Oregon (ECF No. 13-2, Ex. A). None of the group members has any pre-existing relationship with one another. Indeed, the group admits that they "learned of each other's existence" only after contacting the Levi & Korsinsky law firm. *Id*., Ex. D. Moreover, the

---

Ct. 2130, 119 L. Ed. 2d 351 (1992). Without a demonstration of Tavares's authority to act on behalf of Globestar, Tavares lacks standing.

[9] See e.g., *In re Enzymotec Ltd. Sec. Litig*., 2015 U.S. Dist. LEXIS 25720, at *9 (D.N.J. Mar. 3, 2015) (finding that a lead plaintiff movant must "identify his/her position within the company and **provide a basis for his/her signing authority**" and noting that "[i]t seems plain to this Court [ . . .] that any proper certification would include such basic information.").

[10] *See* Smith Decl. Ex. B, filed in support hereof.

010996-11/1557792 V1

joint declaration submitted by the group lacks any more than brief conclusory statements about the group's ability to work effectively together and effectively oversee counsel. *Id.*

Finally, the motions of the remaining movants have either been withdrawn or should be denied as they each claim smaller losses than Mr. Pabbathi.

In sum, Mr. Pabbathi does not suffer from any of the deficiencies that affect the competing movants, and no evidence exists to rebut the presumption that Mr. Pabbathi now stands as the most adequate plaintiff. In addition, Mr. Pabbathi is well positioned to litigate this action. With approximately $657,924 in losses, Mr. Pabbathi has a significant financial stake in the claims. *See* ECF No. 23-2. His interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. Thus, Mr. Pabbathi is the most adequate Lead Plaintiff candidate and respectfully submits that the Court appoint him as Lead Plaintiff on behalf of the proposed Class of Lordstown investors.

## II. ARGUMENT

### A. Mr. Troicky's Grossly Exaggerates His Financial Interest in the Case

In *Dura*, the Supreme Court determined that simply pleading an economic loss and a misrepresentation are insufficient under the U.S. securities laws. Instead, a plaintiff suffering economic loss must provide the causal connection between the plaintiff's loss and the alleged misrepresentation made by the defendant.[11] As summed up by Judge Koh in *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *5 (N.D. Cal. Dec. 16, 2019):

> In *Dura*, the Supreme Court clarified that some losses may not be recoverable in a securities fraud action where a plaintiff cannot not establish loss causation, i.e., that the loss was attributable to the fraud, rather than other market factors. *Id.* at 342-43, 125 S.Ct. 1627. In so holding, the Supreme Court made it clear that a purchaser of stock at fraudulently inflated prices may suffer economic losses that are not caused by a defendant's misrepresentations. *Id.* The Court

---

[11] *Dura*, 544 U.S. at 347.

010996-11/1557792 V1

observed that the lower price at which purchasers of inflated stock resell their stock "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.*

At the lead plaintiff stage, courts must consider this causal connection when evaluating the financial interest of a potential lead plaintiff.[12] In sum, the Court should modify its calculations to consider only those securities affected by the defendant's alleged misconduct.

As shown in the chart below, of all the complaints in this action, the first possible corrective disclosure at issue in this case is alleged to have come on February 12, 2021, and the first disclosure in most cases came on March 12, 2021 when Hindenburg Research released a report revealing that, among other things, Lordstown reported fictitious orders in order to raise capital and confer legitimacy on the Company. Troicky's moving papers demonstrates that he bought and sold shares numerous times prior to each of these disclosures and bought and sold between disclosures.

---

[12] *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015)); *Pio v. GM Co.*, 2014 U.S. Dist. LEXIS 151205, at *7-8 (E.D. Mich. Oct. 24, 2014) ("Since the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, however, most courts have modified their calculations to consider only those securities affected by the defendant's alleged misconduct. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.* (holding that losses incurred before the first fraud-correcting disclosure alleged in an action must be excluded pursuant to *Dura*); *In re Comverse Tech., Inc. Sec. Litig.* (holding that "under *Dura* and its progeny, any losses that [a class member] may have incurred before [the defendant]'s misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation"); *In re The Goodyear Tire & Rubber Co. Sec. Litig.* (rejecting movant as the lead plaintiff because it sold all of its shares of the defendant's stock prior to the disclosure of the alleged fraud and thus its losses were not caused by the alleged fraud) (citing cases).") (citations omitted).

| Complaint | 02/12/21 Disclosure[13] | 03/12/21 Disclosure[14] | 03/17/21 Disclosure[15] | 03/24/21 Disclosure[16] |
|---|---|---|---|---|
| *Rico v. Lordstown Motors Corp., et al.,* No. 4:21-cv-00616 | | ✓ | ✓ | |
| *Palumbo v. Lordstown Motors Corp., et al.,* No. 4:21-cv-633 | | ✓ | ✓ | |
| *Zuod v. Lordstown Motors Corp., et al.,* No. 4:21-cv-720 | | ✓ | ✓ | ✓ |
| *Brury v. Lordstown Motors Corp., et al.,* No. 4:21-cv-760 | | ✓ | ✓ | |
| *Romano v. Lordstown Motors Corp., et al.,* No. 4:21-cv-00994 | | ✓ | ✓ | ✓ |
| *FNY v. Lordstown Motors Corp., et al.,* No. 4:21-cv-01021 | ✓ | ✓ | ✓ | ✓ |

Accordingly, the portion of Mr. Troicky's shares sold before any corrective disclosure alleged to have caused a stock price decline does not represent any compensable loss. *See also In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 310 (S.D. Ohio 2005) (finding that the presumption of typicality and adequacy was rebutted when the "timing of [the movant's] purchases undermines any causal nexus between the Defendants' alleged misrepresentation and the resulting injury."). *Sallustro v. CannaVest Corp.*, 93 F.Supp.3d 265, 273 (S.D.N.Y. 2015) ("Therefore, when evaluating a plaintiff's financial interest for purposes of selecting lead plaintiff, courts in this

---

[13] Morgan Stanley Analyst questions Lordstown's commercial viability, causing the stock to drop 13.34% drop or $3.84.

[14] Hindenburg Report alleges fictitious orders, causing the stock to drop 16.5% or $2.93.

[15] Lordstown announces SEC investigation, causing the stock to drop 14% to $13.01 or $2.08.

[16] Hindenburg publishes pictures of broken down truck, causing the stock to drop $1.21 per share.

010996-11/1557792 V1

Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures.") (citing cases)).

Because 47-60% of Mr. Troicky's losses were suffered prior to alleged disclosure of the fraud, these losses do not represent compensable damages or a legitimate financial interest in this litigation. Pursuant to the principles articulated in *Dura*, the Court should therefore exclude that portion of Mr. Troicky's losses incurred before any corrective disclosure or purchases and sales between disclosures. Excluding these non-compensable losses result in Mr. Troicky having damages of $342,049.25 (under a FIFO calculation) or $461,866.38 (LIFO), much lower than Mr. Pabbathi's losses. [17]

Moreover, Troicky's trading patterns raise other disqualifying defects that render him inadequate and atypical, and require that his motion be rejected under the PSLRA. In particular, in a twelve day period following Hindenburg's release of a second report further revealing Defendants' fraud on March 12, 2021, Mr. Troicky purchased approximately 90,000 shares of Lordstown. These substantial post-disclosure purchases raise significant reliance issues and make him susceptible to unique defenses regarding his trading pattern that render him inadequate and atypical. *See In re Hebron Technology Co., Ltd. Securities Litigation*, 2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sept. 16, 2020) at *18 ("In this District, a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative."). Accordingly, Troicky's post-disclosure purchases alone disqualify him from serving as Lead Plaintiff. Any attempt by Troicky to provide supplemental information to explain away his trading would be futile given that, as

---

[17] *See* Smith Decl. Ex. A, Calculations of Mr. Troicky's losses that are attributable to disclosures. These calculations exclude losses before the first disclosure in the operable complaints and excludes purchases and sales between disclosures that inflated the stock.

- 8 -

explained by *Hebron*, the very need to address this issue establishes Mr. Troicky's inadequacy. *See* 2020 U.S. Dist. LEXIS 169480, at *19-21 (rejecting movant despite attempts to explain trading and stating that "there is little doubt that [movant] 'increase[d] his holdings in a security after revelation of an alleged fraud.'").

**B.      Tavares/Globestar is Inadequate**

Daniel Tavares, along with an unknown entity labeled "Globestar Systems Inc." also moved for appointment as Lead Plaintiff, but the motion plainly fails Rule 23's requirements and should be denied. While Tavares/Globestar did not file a response (only a non-opposition) this group is inadequate and atypical for other reasons.

Globestar's certification is signed by Daniel Tavares, who identifies himself as "Chairman of the Board of Globestar Systems Inc." No information is provided about Globestar whatsoever, let alone its corporate structure or management. Public records indicate that Globestar is a Canadian-based company in Ontario, and that David Tavares, an individual who passed away earlier this year, is the CEO. Two individuals – David Tavares and Anna Tavares – are publically listed as directors, but neither of these persons have submitted any certification or documentation concerning their willingness or ability to participate in this action.[18] There is no indication in Ontario's public records that Daniel Tavares has any actual authority to bind Globestar. *See Kasper v. AAC Holdings, Inc*., 2017 U.S. Dist. LEXIS 109608, at *26 n.3 (M.D. Tenn. July 14, 2017) (requiring a showing of, *inter alia*, an actual injury in fact to show standing) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

---

[18] *See* Smith Decl. Ex. A.

010996-11/1557792 V1

These discrepancies are problematic as the Court and other movants cannot adequately assess whether Globestar's certification was executed by someone who had authority or who could bind Globestar.

Moreover, if the certification was not executed by a person with authority, then Globestar suffers from a disabling unique defense as it failed to timely make the representations required by the PSLRA. *See, Steamfitters v. Local 449 Pension Fund v. Central European Distribution Corp*., 2012 WL 3638629, at * 12 (D.N.J. Aug. 22, 2012) (movant rejected as lead plaintiff because of questions about the validity of certification and whether movant made the requisite representations required by the PSLRA); 15 U.S.C. §78u-4(a)(2) (setting forth requirement to PSLRA certification for lead plaintiff movant and certain representations required of movant).

Even assuming Daniel Tavares has authority to bind Globestar, and each are properly before this Court, neither Tavares nor Globestar has made any showing that they have the experience or sophistication to lead this action. *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig*., 2007 WL 2683636, at *6 (D.N.J. Sept. 7, 2007) ("If the movant with the largest financial losses lacks legal experience or sophistication, or selects lead counsel plainly incapable of undertaking the representation . . . , courts might conclude that the movant had failed to surmount the threshold adequacy inquiry.").

Tavares and Globestar provided no information about themselves in their Lead Plaintiff motion, and thus failed the basic requirements for any lead plaintiff. *See Camp v. Qualcomm Inc*., 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (finding movant did not satisfy Rule 23's typicality requirement because he "failed to include any basic details about himself, including where he lives or who he is specifically in his motion"); *Piven v. Sykes Enters., Inc*., 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (a lead plaintiff movant is inadequate where it "has not proffered

- 10 -

any information regarding its identity, resources, and experience"). Tavares's and Globestar's motion should therefore be denied.

**C.      The RIDE Investor Group is an Artificial and Attorney-Driven Group**

Courts are skeptical of lead plaintiff movant groups, particularly artificial groupings designed merely to qualify as lead plaintiff under the PSLRA, because such groupings run counter to the PSLRA's intent to have investor led, rather than attorney driven, litigation. *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015). In limited scenarios, courts will allow groups if they can "demonstrate their ability to function as a cohesive and independent unit to protect the interests of the class." *Id* at 622. "Relevant considerations include whether the group's members have a pre-existing relationship, whether they have cooperated effectively thus far, and whether they have a coherent plan for dividing responsibilities, resolving conflicts, and managing the litigation." *Id*. (*citing Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). Even then courts are generally loath to aggregate losses because it games the system.

Here, the RIDE Investor Group may not be appointed as a group because it consists of nothing more than a set of unrelated investors that were "cobbled together" by counsel and the "clear implication is that counsel, rather than the parties, are steering the litigation." *Buettgen v. Harless*, 2009 U.S. Dist. LEXIS 104604, at *7 (N.D. Tex. Nov. 9, 2009); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999); *Tsirekidze v. Syntax-Brilliam Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008).

The RIDE Investor Group is comprised of three unrelated and geographically dispersed individuals (ECF No. 13-2, Ex. A), none of whom have any pre-existing relationship. The group submitted a "joint declaration" that asserts that the group will reach "joint decisions regarding litigation matters and will use consensus decision making" (ECF No. 13-2, ¶ 15). These statements

- 11 -

fall far short of clearly explaining "how the group will tackle the massive coordination and strategic issues" likely to arise in the litigation. *Eichenholtz v. Verifone Holdings, Inc*., 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008). The Court should reject any such "conclusory declaration[s]" with "little or no substance." Neither joint declaration explains how it is that the group chose their counsel.

Accordingly, the 'group' therefore consists of no "more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into a retainer with the same attorney." *Atkinson v. Morgan Asset Mgmt*., 2008 U.S. Dist. LEXIS 130567, at *50 (W.D. Tenn. Sep. 23, 2008) (*citing In re Telxon Corp. Sec. Litig*., 67 F.Supp.2d 803, 813 (N.D. Oh. 1999)).

The RIDE Investor Group additionally lacks any demonstration of the group's cohesiveness or "rationale" for grouping other than merely to manufacture the largest financial interest in order to be appointed lead plaintiff. *In re Level 3 Commc'ns, Inc. Sec. Litig*., 2009 U.S. Dist. LEXIS 44706, at *11, *15 (D. Colo. May 4, 2009) (noting courts around the country caution "that groups comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel should not be appointed lead plaintiff under the Reform Act").

### D.      Mr. Pabbathi Is the Most Adequate Plaintiff

Once the Court concludes that the movants claiming greater losses (i.e., Lordstown Shareholder Group, Tavares/Globestar, and RIDE Investor Group) do not satisfy the adequacy requirement, the Court must then consider whether the movant with the next largest financial stake, Mr. Pabbathi, satisfies Rule 23's typicality and adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Willis v. Morgan Keegan & Co. (In re Regions Morgan Keegan Closed-End Fund Litig.)*, 2010 U.S. Dist. LEXIS 132902, at *13 (W.D. Tenn. Dec. 15, 2010).

010996-11/1557792 V1

As demonstrated in his moving papers, Mr. Pabbathi is a typical class representative. *See* ECF No. 23. Mr. Pabbathi filed a declaration showing he fully understands his duties and setting forth his background with Master of Science degree in Computer Science from Cleveland State University and 20 years of experience in managing his own investments. *See* ECF No. 23-2.

Like all other Class members, Mr. Pabbathi: (1) purchased RIDE shares during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements; and (3) was harmed when the truth was revealed. *See Owens v. FirstEnergy Corp.*, 2020 U.S. Dist. LEXIS 219573, at \*36 (S.D. Ohio Nov. 23, 2020) ("A candidate for lead plaintiff meets the typicality requirement if its claims arise out of the same conduct or series of events and rely on the same legal theory as the claims of the other class members.") (*In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). As such, Mr. Pabbathi is a typical Class representative. Mr. Pabbathi similarly satisfies Rule 23's adequacy requirement because he is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). Mr. Pabbathi has a substantial financial stake in the litigation as well as the incentive and ability to vigorously represent the Class' claims. Accordingly, Mr. Pabbathi satisfies the typicality and adequacy requirements of Rule 23.

**E.      The Court Should Approve Mr. Pabbathi's Selection of Counsel**

For the reasons articulated in Mr. Pabbathi's opening brief (ECF No. 23), Mr. Pabbathi's choice of counsel should be approved. Hagens Berman is a leading securities class action law firm, has previously been appointed as lead counsel in numerous other cases, and has an established track record obtaining successful recoveries for investors in securities class actions. *See* ECF No. 23-2 at Ex. E; *see also In re Charles Schwab Corp. Securities Litigation*, Case No. 3:08-1510-WHA (N.D. Cal.) ($235 million class recovery); *In Re McKesson Corporation Derivative Litigation*, Case No. 4:17-CV-1850-CW (N.D. Cal.) ($175 million class recovery). Karon is also a highly experienced firm, and is familiar with this Court, and should be approved as Liaison

010996-11/1557792 V1

Counsel. *See* ECF No. 23-2 at Ex. F. Accordingly, the Court may be assured that by granting this Motion, the Class will receive the highest caliber of legal representation.

## III.    CONCLUSION

For all the foregoing reasons, Mr. Pabbathi respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Mr. Pabbathi as Lead Plaintiff on behalf of the putative Class; (3) approve Mr. Pabbathi's selection of counsel, Hagens Berman and Karon, as Lead Counsel and Liaison Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

DATED:  June 1, 2021

Respectfully submitted,

KARON LLC

By    */s/ Daniel R. Karon*
     Daniel R. Karon
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113–1998
Telephone: (216) 622–1851
Facsimile: (216) 241–8175
dkaron@karonllc.com

*Liaison Counsel for [Proposed] Lead Plaintiff Ashith Pabbathi*

Reed R. Kathrein (139304)
Lucas Gilmore (250893)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594

- 14 -

010996-11/1557792 V1

steve@hbsslaw.com

*Lead Counsel for [Proposed] Lead Plaintiff Ashith Pabbathi*

- 15 -

010996-11/1557792 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

By     */s/ Daniel R. Karon*
                    DANIEL R. KARON

- 16 -