**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| MATTHEW RICO, individually and on behalf of all others similarly situated, | No. 4:21-cv-00616-PAG |
| Plaintiff, | Judge Patricia A. Gaughan |
| v. | CLASS ACTION |
| LORDSTOWN MOTORS CORP., STEPHEN S. BURNS, RICH SCHMIDT, and JULIO RODRIGUEZ, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GEORGE TROICKY'S UNOPPOSED MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Proposed Lead Plaintiff Mr. Troicky respectfully submits this reply memorandum of law in further support of his unopposed motion for appointment as Lead Plaintiff and approval of his selection of counsel.[1]

## PRELIMINARY STATEMENT

Mr. Troicky's motion for appointment as Lead Plaintiff is currently unopposed. Mr. Troicky has the undisputed largest financial interest based on his LIFO loss of $864,202, the outcome determinative factor used to gauge financial interest in this District. Because Mr. Troicky has also satisfied the typicality and adequacy requirements of Rule 23, he is the presumed "most adequate plaintiff" under the PSLRA. 15 U.S.C. 78u-§ 4(a)(3)(B)(iii). As this presumption is unrebutted, Mr. Troicky is entitled to appointment as Lead Plaintiff and his choice of counsel approved. Mr. Troicky respectfully requests that the Court grant his motion.

## ARGUMENT

### I. MR. TROICKY HAS THE LARGEST FINANCIAL INTEREST

It is undisputed that Mr. Troicky has claimed the largest LIFO loss among all movants. "In this district, LIFO has been held to be the appropriate method for calculating losses at [the lead plaintiff] stage." *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-cv-1106, 2017 WL 5759361, at *8 (N.D. Ohio Nov. 28, 2017) (citing *Johnson v. Dana Corp.*, 236 F.R.D. 349,

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from Mr. Troicky's previous submissions before this Court and emphasis added throughout. *See* ECF No. 21 *et seq*. Following the filing of Mr. Troicky's opposition brief (ECF No. 39), the Chan Group and Mr. Pabbathi filed notice that they do not oppose Mr. Troicky's motion. ECF Nos. 40, 41. Therefore, no movant currently opposes Mr. Troicky's motion. Concurrent with the filing of Mr. Troicky's brief in further support of his motion, Raymond Romano ("Mr. Romano"), Plaintiff in the *Romano* Action, filed a notice of availability that he was willing to serve as co-Lead Plaintiff on behalf of Class members with standing under Section 14(a) of the Exchange Act. ECF No. 38.

351 (N.D. Ohio 2006)).[2]  Therefore, under a straightforward application of the loss methodology adopted by this District, Mr. Troicky has claimed the largest financial interest.  *See Corwin v. ViewRay, Inc.*, No. 1:19-cv-2115, 2019 WL 6914774, at *2 (N.D. Ohio Dec. 19, 2019) (appointing movant with largest LIFO loss).

Moving to *Dura*,[3] "[m]ost courts in the Sixth Circuit do not adopt the *Dura* analysis to calculate financial interest at the lead plaintiff stage." *FirstEnergy*, 2020 WL 6873421, at *7 ("This Court agrees with this majority and declines to use the *Dura* method to calculate the lead plaintiff candidates' losses."); *Blitz v. AgFeed Indus., Inc.*, No. 3:11-0992, 2012 WL 1192814, at *4 (M.D. Tenn. Apr. 10, 2012) (rejecting the *Dura* damages analysis because it "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses").  Tellingly, because "numerous factors may affect the price of a security," in its opinion in *Dura*, "[t]he Supreme Court ***did not*** suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue." *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *15 n.6 (W.D. Wash. July 13, 2005).

Even were the Court inclined to consider *Dura,* Mr. Troicky ***still*** possesses the largest loss under the traditional application of *Dura* at the lead plaintiff stage.  *Dura*'s holding is simple:

---

[2]    *See also Owens v. FirstEnergy Corp.*, No. 2:20-cv-03785, 2020 WL 6873421, at *6 (S.D. Ohio Nov. 23, 2020) ("Finding that the LIFO method more accurately depicts the financial interests of lead plaintiff candidates in securities class actions, this Court opts to use the LIFO method."); *Johnson v. Dana Corp.*, 236 F.R.D. 349, 353 (N.D. Ohio) ("Therefore, to determine which party has the largest financial interest for the purposes of appointing a lead plaintiff, this court endorses the use of LIFO over FIFO."); *see also Louisiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, No. 2:19-CV-3347, 2020 WL 3396660, at *6 (S.D. Ohio June 19, 2020) (nothing that "court[s] in the Northern District of Ohio, have chosen LIFO as its preferred method of calculating losses").

[3]    The term "*Dura* losses" refers to the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

trading losses incurred prior to a corrective disclosure cannot satisfy loss causation.  *Dura*, 544 U.S. at 342. ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  Recognizing this, courts that do consider *Dura* in the context of lead plaintiff appointment exclude losses incurred prior to **any** disclosure of fraud.[4]  As applied, under a "*Dura* Recoverable Losses Using LIFO Accounting" method, the entirety of Mr. Troicky's LIFO loss is attributable to shares held over the partial disclosures at issue in this litigation, and thus recoverable under *Dura*:

| Partial Drop Date | Shares Held Over Drop |
|---|---|
| 2/12/2021 | 18 |
| 3/12/2021 | 91,750 |
| 3/18/2021 | 101,750 |
| 3/24/2021 | 20,001 |

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015).

In sum, LIFO loss is the measure of financial interest in this District, and Mr. Troicky has the undisputed largest LIFO loss. Because Mr. Troicky has claimed the largest loss, he "wins," and should be "appointed lead plaintiff." *In re Ply Gem Holdings, Inc., Sec. Litig.*, No. 14-CV-3577 (JPO), 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014).

---

[4]   *See, e.g.*, *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) ("[U]nder *Dura*, I am inclined to exclude in-and-out transactions ***prior to the first alleged corrective disclosure***, *i.e.*, those losses that [each movant] may have incurred before [Defendants'] misconduct was ever disclosed to the public.") (citation and internal quotation marks omitted).  This proposition is not unique to *Dura*.  *See In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03 CV 2166, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004) (collecting cases and finding movant subject to disqualifying unique defenses for having sold all of its shares before the corrective disclosure).

3

## II.   MR. TROICKY'S LIMITED POST-DISCLOSURE PURCHASES HAVE NO BEARING ON HIS TYPICALITY AND ADEQUACY

Mr. Troicky's limited post-disclosure purchases do nothing to alter his typicality and adequacy.  Courts in this Circuit and throughout the country routinely find that purchases made during the class period but after partial disclosures, do not affect a lead plaintiff's or class representative's adequacy or typicality. *See* Materiality of individual fact differences—Securities, 1 Newberg on Class Actions § 3:41 (5th ed.) ("The fact that the named plaintiff sold more stock than she bought over the relevant period of time does not preclude typicality, nor does the existence of different purchase dates, ***even if the named plaintiff purchased stock after the fraud was revealed***.); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 130 (M.D. Tenn. 2020), *leave to appeal denied sub nom. In re Tivity Health, Inc.*, No. 20-0501, 2020 WL 4218743 (6th Cir. July 23, 2020) (collecting authority and holding that a class representative who purchased after a corrective disclosure was adequate and typical and noting that disqualification based on post-disclosure purchases was against "the weight of authority, . . . a deviat[ion] from th[e] general rule, and not generally accepted.") (citations omitted); *Kasper v. AAC Holdings, Inc.*, No. 15-cv-00923-JPM-jsf, 2017 WL 3008510, at *10 (M.D. Tenn. July 14, 2017) (collecting authority and noting that "in the Rule 10b-5 context, our sister courts find that 'purchasing stock subsequent to a materially adverse disclosure, 'averaging down,' is a common technique used to decrease the average cost of an investment and which cannot [automatically] be used to defeat a proposed class representative's typicality.'") (citations omitted).[5]

---

[5]  *See also In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *5 (N.D. Cal. May 12, 2010) (citing *In re LDK Solar Sec. Litig.,* 255 F.R.D. 519, 528 (N.D. Cal. 2009) ("[W]here the fraud is only partially revealed (and the stock price only partially adjusted), or where factual uncertainty persists regarding the extent to which a disclosure revealed the fraud, the presumption of reliance on the alleged misrepresentations is not defeated and the class can

Here, Mr. Troicky purchased only 90,000 shares following partial disclosure of the fraud on March 12, 2021, and before the end of the Class Period, representing just 18.7 percent of his class period purchases of 481,750 shares.  Following this, on March 15, 2021, the trading day after the publication of the Hindenburg Report, Defendants expressly denied the Hindenburg Report's core thesis of a three-to-four-year production timeline, stating that "Lordstown Motors remains on track for start of production of its Lordstown Endurance all-electric pickup truck in September 2021."[6]  Defendants' denial falsely reassured investors, thereby increasing the artificial inflation in the Company's stock price, as evidenced by the nearly 10 percent stock price increase on that day, and confirms the validity of the currently pled Class Period.  Thus, Mr. Troicky, as did countless members of the putative Class, purchased Lordstown shares while Defendants disclaimed any allegations of fraud.  Accordingly, Mr. Troicky's purchases do nothing to impact Troicky's adequacy or typicality.

### III.    MR. ROMANO'S CO-LEAD PLAINTIFF REQUEST IS UNNECESSARY AND CONTRARY TO THE PSLRA

Mr. Romano notes that he is "available" to be appointed as co-Lead Plaintiff based on his standing to pursue claims under Section 14(a) of the Exchange Act.  *See* ECF No. 38.  This request is premised on the different pleading standards under Section 14(a) and potentially differing damages calculations.  Adding an additional plaintiff is wholly unneeded at this stage in the

---

contain members who purchased both before and after the alleged corrective disclosure.'"); *Dodge v. Cambrex Corp.*, No. 03-cv-4896 (PGS), 2007 WL 608365, at *6 (D.N.J. Feb. 23, 2007) ("courts have ruled that purchases of stock by the class representative after negative announcements during the class period do[es] not destroy typicality.  In addition, it has been held that proposed class representatives who purchased shares mid-stream, *i.e.* during the course of a series of disclosures may satisfy the typicality test.") (internal citations omitted).

6       *Lordstown Responds to Hindenburg: Output Plan Is on Track* (Mar. 15, 2021), https://www.thestreet.com/investing/lordstown-responds-to-hindenburg-criticism-says-output-plan-on-track.

litigation and directly at odds with the PSLRA's largest financial interest requirement. Mr. Romano's request should be rejected.

"The law is clear that a lead plaintiff does not have to have standing on every claim in order to satisfy the typicality or adequacy requirements of Rule 23." *Eshe Fund v. Fifth Third Bancorp*, No. 1:08-cv-421, 2008 WL 11322108, at \*6 (S.D. Ohio Dec. 16, 2008) (citing *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) "[B]ecause the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id.* (quoting *Hevesi*, 366 F.3d at 82). This is the case even if the claims have differing pleading standards or damages calculations—"the determination of lead plaintiff under the PSLRA is not the correct time to consider these differences." *Id.* at \*7 (finding a plaintiff with standing on Exchange Act claims could be appointed lead plaintiff for a class that also included claims under the Securities Exchange Act of 1933); *In re Tyco Intl' Ltd. Sec. Litigation*, No. 00-MD-1335-B, 2000 WL 1513772, at \*8 (D.N.H. Aug. 17, 2000) ("While the potential for conflict based on the different remedies available to the § 10(b) and § 20A plaintiffs is real, the lead plaintiff determination is not the appropriate stage of litigation to address this concern."). Courts, therefore, "should be discouraged from cobbling together a group of plaintiffs so that a lead plaintiff has standing to sue on each claim asserted." *Eshe*, 2008 WL 11322108, at \*6.

Turning to the present matter, it is well-settled that the appointment of "niche plaintiffs" with standing under Section 14(a) of the Exchange Act is wholly unneeded where the lead plaintiff has standing under Section 10(b) of the Exchange Act. *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) ("[Lead plaintiff movant's] proposed appointment as niche plaintiff for the Section 14(a) class would add to the expense of the litigation,

6

to the detriment of [the class], and is not warranted under the circumstances."); *In re Bank of America Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 291 (S.D.N.Y. 2010) (noting "[n]ovel questions arising under Section 10(b) are often resolved with authority applying Section 14(a), and vice versa" and the "PSLRA's threshold for alleging with particularity a[n] [Exchange Act] violation applies to both Sections 14(a) and 10(b)"). Indeed, "requests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of . . . ***common facts and legal issues*** . . . , would undermine the purpose of the PSLRA.  *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (refusing to appoint "niche plaintiffs").

As the movant with the largest financial interest, Mr. Troicky is not only equipped to represent ***all*** members of the Class for ***all*** claims, but such representation is required by the PSLRA.  Mr. Romano's request to be appointed co-Lead Plaintiff on behalf of a Section 14(a) subclass should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Troicky respectfully requests the Court grant his Motion and enter an Order: (1) appointing Mr. Troicky as Lead Plaintiff, (2) approving Mr. Troicky's selection of Labaton Sucharow as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

DATED:  June 8, 2021

Respectfully submitted,

*/s/ Francis P. McConville*
**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
David J. Schwartz
140 Broadway
New York, New York 10005

7

Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

*Counsel for Proposed Lead Plaintiff George Troicky and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for George Troicky*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ *Francis P. McConville*
Francis P. McConville