**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE LORDSTOWN MOTORS CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00616 (PAG) <br><br> **CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR A PARTIAL LIFTING OF THE PSLRA DISCOVERY STAY**
**PURSUANT TO 15 U.S.C. § 78u-4(b)(3)(B)**

Lead Plaintiff George Troicky ("Lead Plaintiff") and additional named Plaintiffs Daniel Tavares, Globestar Systems Inc., Ashith Pabbathi, and FNY Managed Accounts LLC (together, "Plaintiffs") respectfully move the Court to partially lift the Private Securities Litigation Act of 1995 ("PSLRA") discovery stay to allow particularized discovery into the specific categories detailed below from Defendant Lordstown Motors Corp. ("Lordstown" or the "Company").

## I.  PRELIMINARY STATEMENT

As the recently filed Consolidated Amended Complaint ("Complaint," ECF No. 61) details, Plaintiffs represent investors that lost hundreds of millions of dollars due to Defendants' brazen fraud.[1]  Specifically, Defendants misrepresented the supposed pre-orders for Lordstown's only product (the "Endurance" truck) and the Company's production capabilities.[2]  The conduct has spawned U.S. SEC and U.S. DOJ investigations and has led to the resignation of both Lordstown's founder/Chairman/CEO (Defendant Burns) and its CFO (Defendant Rodriguez).

Now, a lawsuit alleging corporate espionage by Lordstown to poach another firm's employees and steal intellectual property for the computer systems used in the Endurance has revealed that Defendant Lordstown blatantly destroyed evidence during litigation.[3]  The District Court in the *Karma* Action found that Lordstown and its employees "were under a duty to preserve [certain] documents once they became aware of the complaint against them," but "intentionally deleted information" from multiple devices.  Based on these facts, the District Court in the *Karma* Action found that Defendant Lordstown committed multiple acts of

---

[1] Defendants include Lordstown Motors Corp. F/K/A DiamondPeak Holding Corp. ("LTM"), Lordstown EV Corporation f/k/a Lordstown Motors Corp., Stephen S. Burns, Shane Brown, Caimin Flannery, David T. Hamamoto, Julio Rodriguez, Rich Schmidt, and Darren Post.

[2] The Complaint also alleges certain Defendants made negligent misrepresentations.

[3] *See Karma Auto. LLC v. Lordstown Motors Corp.*, No. 8:20-cv-02104-JVS-DFM (C.D. Cal.) (the *"Karma* Action").

spoliation and held that the jury will receive an instruction permitting jury members to draw adverse inferences therefrom.[4]

Given this deeply troubling finding, Plaintiffs request a partial lifting of the PSLRA stay to request narrow discovery in order to protect against further spoliation of relevant evidence.

The holding in the *Karma* Action shows that Defendants have *already* spoiled evidence that may be relevant to this case, as the *Karma* Action overlaps with this Action insofar as it relates to (1) Lordstown's true production capabilities, which were apparently at least partially predicated on stolen intellectual property (ECF No. 61, ¶¶186-199), and (2) Defendants' brazen disregard for the law across its operations (including corporate espionage), which will be (or at the very least could be) relevant to the Court's, and ultimately the jury's, assessment of Defendants' scienter.

Additionally, the finding of spoliation in the *Karma* Action — which occurred *after this Action* was filed — credibly demonstrates Defendants' willingness to spoil evidence relevant to ongoing litigation, and gives Plaintiffs serious concerns that without immediate protective action, such destruction of evidence will continue.

Congress enacted the discovery stay to deter the filing of frivolous cases backed by the threat of onerous discovery in an effort to win quick meritless settlement.  This case poses none of those concerns.  The 158-page Complaint pleads a highly particularized and detailed account of Defendants' misconduct and the discovery Plaintiffs seek is modest and targeted.

Furthermore, Congress expressly drafted language covering this *exact* rare situation.  The PSLRA itself states that "upon the motion of any party that particularized discovery is necessary *to preserve evidence* or to prevent undue prejudice," the stay may be modified or lifted.  15

---

[4]  *See* Declaration of Carol C. Villegas ("Villegas Decl."), Ex. A (*Karma* Action, Order Regarding Motions for Preliminary Injunction and Sanctions ("Order on Spoliation"), ECF No. 159) at 9.

U.S.C. § 78u-4(b)(3)(B) (emphasis added).  Here, Plaintiffs seek targeted discovery into a small set of highly relevant topics.

In the alternative, Plaintiffs request the Court enter an order requiring Defendant Lordstown to preserve all potentially relevant documents, including specific categories and sources of documents enumerated herein.  While Defendants are already required to preserve all documents, Plaintiffs believe the real risk of imminent destruction of evidence would be lessened by such an order.

## II.  FACTUAL BACKGROUND

### A.  This Action

This case is about an electric vehicle company that was taken public through a SPAC acquisition (the "Merger").  The Company, started by Defendant Burns, acquired a recently closed factory from General Motors and claimed that it would build an electric pickup truck, the Endurance, with an in-wheel "hub motor" design, which had never been used in automobiles.

Throughout the Class Period, Defendants repeatedly: (1) misrepresented the demand for the Endurance by falsely describing the nature and quantity of the Company's supposed pre-order sales of the truck; and (2) falsely described the Company's production capabilities, including the timeline for production of the Endurance.  The fraud began to be revealed on March 12, 2021, when Hindenburg Research published a bombshell report detailing the prevalence of fake and unrealistic preorders, as well as numerous facts showing that the Company's production capabilities had been overstated.  Subsequent revelations, admissions by Lordstown, government investigations, and Plaintiffs' investigation have further proven the fraud, including Defendants' knowledge and involvement in the fraud.

Plaintiffs bring this Action to recover the losses investors suffered due to Defendants' misrepresentations and omissions.  Lordstown's stock price reached a Class Period high of

$31.57 on February 11, 2021, as a result of Defendants' misrepresentations and omissions.  As the truth was partially revealed, Lordstown's stock price fell to a Class Period low of $6.69.

On September 10, 2021, Plaintiffs filed the Complaint against Defendants.  ECF No. 61. Defendants' motion to dismiss or answer is due by November 9, 2021, with briefing on any such motion to be completed by March 3, 2022.  As a result, the earliest Plaintiffs could have access to Defendants' documents in discovery, if the PSLRA stay is not lifted, is spring 2022, after the motion to dismiss is fully briefed and ruled upon by the Court.

### B. The *Karma* Action

Karma Automotive LLC ("Karma") manufactures computer systems used in vehicles. On October 30, 2020, Karma filed a complaint for temporary and preliminary injunctive relief and damages alleging that Lordstown "gained access to Karma's trade secrets for five months while pretending to engage with Karma in due diligence over a deal with Karma that was projected to bring in over Three Billion Dollars ($3,000,000,000) in revenue by 2024." *Karma* Action, Complaint, ECF No. 1 at ¶4.  Specifically, Karma alleges that from February 2020 to July 2020, Lordstown entered into a due diligence period with Karma's engineering and project management staff to explore the possibility of Karma developing a computer system for the Lordstown Endurance.  Villegas Decl. Ex. B (*Karma* Action, First Amended Complaint ("FAC"), ECF No. 72) at ¶¶2-5, 63-87.  However, this purported "courtship was a ruse and the promised check never arrived.  Instead, [Lordstown] used those five months to begin poaching and onboarding key Karma employees, and to steal Karma's confidential information and trade secrets . . . about *every aspect of Karma's business*." *Id.* at ¶4 (emphasis added).  Indeed, according to the *Karma* Action FAC, throughout the spring and summer of 2020, Lordstown prompted various employees of Karma to leave the company and take certain trade secrets with them to Lordstown.  *Id.* at ¶6.  As a result of Lordstown's actions, much of Karma's source code

is now contained in Lordstown's systems.  *Id.* at ¶11.  Karma filed suit, naming Lordstown, Joe Durre, and George Huan (amongst other individuals) as defendants.

Joe Durre was Karma's Director of Engineering and one of the key project managers on the proposed deal with Lordstown, who himself performed significant work for Lordstown for several weeks while still employed by Karma, with access to all of Karma's trade secrets.  *Id.* at ¶¶5-7.  Likewise, George Huan, Karma's Software System Architect, was also hired by Lordstown during the relevant time period and allegedly downloaded/copied Karma's confidential information while working for Karma.  *Id.* at ¶¶25; 100.  Due to their particular job duties, Durre and Huan had access to and downloaded ***thousands*** of files containing Karma's trade secrets and confidential information to external storage devices.  *Id.* at ¶¶16, 40-42.

The complaint further alleges that in or around February 2020, Darren Post, Lordstown's Chief Technology Officer and Defendant in the Action before this Court, contacted Durre at Karma to discuss developing computer systems for the Endurance.  *Id.* at ¶60.  On February 7, 2020, Karma entered into a Mutual Non-Disclosure Agreement ("MNDA") with Lordstown to permit the parties to exchange confidential and trade secret information as part of due diligence.  *Id.* at ¶63.  By June 2020, Lordstown informed Karma that it selected Karma for the Endurance project and on June 11, 2020, Karma and Lordstown entered into a Letter of Intent ("LOI") that detailed the services Karma would provide.  *Id.* at ¶66.  The LOI specifically emphasized that the MNDA would remain in full force and effect.  *Id.* Throughout the months of June and July 2020, Lordstown gave every indication to Karma that it intended to move forward with utilizing Karma's services.  *Id.* at ¶70.

However, on August 6, 2020, Lordstown suddenly terminated the LOI, informing Karma that it had "decided to move in a different direction with respect to [Karma's] current offering."

*Id.* at ¶71.  In its letter terminating the LOI, Lordstown stated it would "return, destroy, and/or erase any confidential information received from Karma."  *Id.*  However, Karma alleges that its own investigation shockingly revealed that Lordstown began coordinating with Durre as early as March 2020—***while he was working for Karma***—to plan the transition of Durre's team over to Lordstown, along with all of Karma's confidential and trade secret information.  *Id.* at ¶¶72-74.  Indeed, in July 2020, Defendant Post emailed Lordstown's Chief Production Officer to propose hiring Durre and his team.  The email stated, "this is the opportune time to hire [Durre] and his furloughed team," and that Defendant Post and "[Defendant Burns]" had "discussed this strategy to instantly build our software / hardware team and get our infotainment team for ½ the cost (***labor without Karma costs or licensing fee***)."  *Id.* at ¶78 (emphasis added).  To that end—just as Lordstown planned all along—on August 1, 2020, Durre was offered by Lordstown to become their Director of Software and was employed by Lordstown on August 3, 2020.  *Id.* at ¶83.

Durre then received notice of the Karma lawsuit on October 31, 2020, and, shockingly, he "***immediately***" deleted the relevant information from his external hard drive.  Villegas Decl. Ex. A (*Karma* Action, Order on Spoilation, ECF No. 159) at 3 (emphasis added).  According to his deposition, Durre deleted information from a Western Digital hard drive and a SanDisk dual drive, essentially reformatting the latter to wipe out its contents.  *Id.*  While Durre stated that he could not recall what was on the disk, "he deleted whatever was on it" – and subsequent analysis of Durre's computer revealed that he had access to over 100 files pertaining to Karma.  *Id.*  Durre admitted in his deposition to using a piece of "software" to completely wipe out the drive. Villegas Decl. Ex. C (*Karma* Action, Durre Tr. 111:15, ECF No. 133-2) at 7.

Durre was not the only Lordstown employee to knowingly destroy valuable documents. Huan started working for Lordstown around August 2020.  Villegas Decl. Ex. B (*Karma* Action,

FAC, ECF No. 72) at ¶100.  Huan deleted information from his SSD card "somewhere around November 1st, November 2nd," according to his deposition, Villegas Decl. Ex. D (*Karma* Action, Huan Tr. 25:11-12, ECF No. 133-2) at 16, doing so "after he became aware of the lawsuit against Lordstown."  Villegas Decl. Ex. A (*Karma* Action, Order on Spoilation, ECF No. 159) at 3.  The SSD card contained information which belonged to Karma.  *Id.*

The *Karma* Court found that Lordstown destroyed evidence and held that an instruction permitting the jury to draw an adverse inference would be the appropriate remedy.  *Id.* at 11.

## III.    DISCUSSION

### A.    Legal Standard

Plaintiffs bring their claims under the Securities Exchange Act of 1934 ("Exchange Act"), which means this action is subject to the PSLRA.  Under the PSLRA, discovery is "stayed during the pendency of any motion to dismiss."  15 U.S.C. § 78u-4(b)(3)(B).

According to the legislative history of the PSLRA, Congress enacted the stay to minimize the incentive for parties to file frivolous securities suits to coerce settlements using high discovery costs, or to prevent parties from using discovery as a fishing expedition to find support for claims not pleaded in the complaint.  *See In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (citing H.R. Conf. Rep. No. 104–369, at 37 (1995) and S. Rep. No. 104–98, at 14 (1995)).  "'[T]he stay of discovery procedures adopted in conjunction with the heightened pleading standards under the PSLRA is a reflection of the objective of Congress to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.'"  *Dailey v. Medlock*, No. 12-10586, 2012 WL 13013004, at *2 (E.D. Mich. Dec. 7, 2012) (quoting *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 691-92 (6th Cir. 2003)).

However, if "the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice," the stay may be modified or

lifted.  15 U.S.C. § 78u-4(b)(3)(B); *see also In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541,

543 (N.D. Ohio 2004).  Courts in this circuit have held that the PSLRA discovery stay may be

lifted under the evidence preservation prong if the plaintiff shows more than "speculative

allegations of possible loss of documents."  *In re Delphi Corp. Sec. Derivative & "ERISA"*

*Litig.*, No. 05-MD-1725, 2007 WL 518626, at \*6 (E.D. Mich. Feb. 15, 2007); *FirstEnergy*, 229

F.R.D. at 544; *Dailey*, 2012 WL 13013004, at \*3.

> **B.      The Court Should Partially Lift the PSLRA Discovery Stay to Preserve Evidence**

Highly relevant documents in this case are at a substantial risk of being destroyed by

Defendants.  This risk is not merely speculative given Defendant Lordstown's proven track

record of document destruction (as shown in the *Karma* Action).  Highly relevant documents,

including those related to purported preorders for the Endurance and the Company's production

capabilities, are essential for Plaintiffs to litigate this case, and Plaintiffs will be substantially

prejudiced if such documents are destroyed.

> **1.      Plaintiffs' Motion Is Consistent With the Purposes Underlying the PSLRA Discovery Stay**

The purposes of the PSLRA stay are to prevent plaintiffs from using the specter of

discovery costs to coerce a settlement in cases without merit and to prevent plaintiffs from

fishing for evidence of claims not pleaded in their complaint.  *See Worldcom*, 234 F. Supp. 2d at

305; *Dailey*, 2012 WL 13013004, at \*2.  Neither concern is implicated here.  Plaintiffs are not

pursuing a frivolous claim, as evidenced by the well-pleaded allegations in the Complaint.

Plaintiffs do not seek a partial lifting of the PSLRA stay to attempt to make or support

allegations not adequately pleaded in the Complaint.  Rather, Plaintiffs seek a partial lifting of

the PSLRA discovery stay for the sole purpose of protecting class members, by ensuring they are

not substantially prejudiced by litigating for years against Defendants who have deleted their most relevant (and potentially incriminating) documents.

### 2. Lifting the Discovery Stay is Necessary to Preserve Evidence

As noted above, "[o]ne of the PSLRA's exceptions to its stay of discovery rule is where the discovery sought 'is necessary to preserve evidence.'" *Dailey*, 2012 WL 13013004, at *3 (quoting 15 U.S.C. § 78u-4(b)(3)(B)). "To show 'necessity,' the plaintiffs 'must present more than mere generalizations of fading memories and allegations of possible loss or destruction of documents.'" *Id.* (quoting *Delphi*, 2007 WL 518626, at *6). Plaintiffs have done just that. Moreover, while "speculative allegations of possible loss of documents" are "insufficient," *Delphi*, 2007 WL 518626, at *6, Plaintiffs do not speculate. Rather Plaintiffs point to a direct finding by a federal district court that Defendant Lordstown destroyed documents. The potential "loss of evidence" here is "imminent" where Defendant Lordstown has a very recent history of destroying evidence and such destruction of evidence in this case would put Plaintiffs (and the class) at a significant disadvantage. *Sarantakis v. Gruttaduaria*, No. 02 C 1609, 2002 WL 1803750, at *2 (N.D. Ill. Aug. 5, 2002).

Moreover, the *Karma* Action establishes that Defendant Lordstown has ***already*** spoiled evidence that may be relevant to this case because the documents destroyed in the *Karma* Action involve stolen intellectual property, which was, at least in part, the basis for Lordstown's true production capabilities. In addition, Defendants' blatant disregard for the law across its operations (including brazen corporate espionage), will be (or at the very least could be) relevant to the Court's, and ultimately the jury's, assessment of Defendants' scienter. At a minimum, Defendants' willingness to destroy documents poses an of imminent risk of repetition.

As a result, Defendants' conduct warrants lifting of the PSLRA stay as necessary to preserve evidence.

### 3. Plaintiffs Seek Particularized Discovery

Plaintiffs' proposed partial lifting of the PSLRA stay is sufficiently particularized. *Delphi*, 2007 WL 518626 at *5 (finding that the "meaning of ['particularized'] in any particular case must take into account the nature of the underlying litigation" and holding that "given the breadth of [the] allegations" — including a complaint over 250 pages long alleging a fraud committed by numerous defendants that resulted [in] billions of dollars of losses on investors — "the volume of requested documents is not unreasonable."); *Worldcom*, 234 F. Supp. 2d at 306 (finding request sufficiently particularized where plaintiffs identify "a clearly defined universe of documents").

Here, Plaintiffs allege complex securities claims against the Company, its senior executives, and CEO of the SPAC that acquired the Company. Notwithstanding the expansive allegations detailed in the Complaint, Plaintiffs seek only a limited set of documents concerning the most highly relevant allegations in this Action, that are at risk of being destroyed. More specifically, Plaintiffs propose lifting the PSLRA stay to obtain documents relating to (1) orders, preorders, reservations, or indications of interest of the Endurance; (2) any internal investigation or external investigation (*e.g.*, by the SEC or DOJ); (3) the Hindenburg Report; and (4) reports or schedules regarding Lordstown's production capabilities.[5] *See Sarantakis*, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) (inferring that the particularity requirement would be met had plaintiffs "[listed] specific discovery or categories of discovery"); *Gruber v. Gilbertson*, No. 16-cv-9727, 2017 WL 3891701, *2 (S.D.N.Y. Sept. 5, 2017) (finding "four discrete categories of

---

[5] To be clear, Defendants are under a duty to preserve and ultimately produce in discovery more than this set of documents. However, Plaintiffs seek production of at least this limited set now to avoid any spoliation of the most important documents.

documents" from two parties to be "sufficiently particularized").  As a result, Plaintiffs' request satisfies the particularity requirement.

        **C.**      **In the Alternative, Plaintiffs Request the Court Order Defendant Lordstown to Preserve All Relevant Documents**

In the event the Court does not grant Plaintiffs' request to lift the PSLRA stay to seek particular documents, Plaintiffs request the Court order Defendant Lordstown to preserve all relevant documents, including the following:

- **Time period**.  Documents from June 1, 2019 to the present.

- **Subject of Information**.  All information relevant to the allegations in this Action, including, for the avoidance of doubt, all versions or iterations of any document regarding: (1) orders, preorders, reservations, or indications of interest of the Endurance; (2) Lordstown's sales practices; (3) Lordstown's financial condition; (4) public communications or private communications with analysts, journalists or market participants; (5) the diligence performed by any prospective acquiror or financier of Lordstown; (6) any internal investigation, external investigation (e.g., by the SEC or DOJ), or any internal complaint; (7) the Hindenburg Report; (8) Lordstown's production capabilities, production timeline, productions costs and arrangements with suppliers or other vendors; (9) Defendants' financial incentives or compensation; (10) the Merger between DiamondPeak Holding Corp. and Lordstown and any related financing; and (11) Defendants' spoliation or destruction of any documents relevant to this Action or the *Karma* Action.

- **Types of Documents**.  All forms of documents routinely preserved or produced in discovery, including, for the avoidance of doubt: hard copy documents, including physical files, print outs, and home files; network share drives and other cloud-based

servers; file storage systems and archives; databases; personal computers, files stored on phones, external or portable storage, including external hard drives and USB; emails, text messages, iMessages, and all other means of electronic messaging, including WhatsApp, MS Teams, Slack, Google Chat; phone records; and calendars and scheduling invitations.

While Defendant Lordstown is currently under a duty to preserve documents pursuant to the PSLRA,[6] the Company intentionally violated a similar obligation in *Karma*.[7]  As a result, Plaintiffs seek assurances through order by the Court that Defendants will not similarly destroy documents that will significantly prejudice Plaintiffs.

## IV.    CONCLUSION

For the reasons detailed above, Plaintiffs seek a partial lifting of the PSLRA discovery stay to make the particularized requests detailed herein of Defendant Lordstown, or in the alternative, to request the Court order Defendant Lordstown to preserve all relevant documents.

[signatures on following page]

---

[6] *See* 15 U.S.C. § 78u-4(C)(b)(3)(i) ("During the pendency of any stay of discovery . . . any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such persons and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.").

[7] The *Karma* court ruled that the defendants "were under a duty to preserve these documents once they became aware of the complaint against them."  Villegas Decl. Ex. A (*Karma* Action, Order on Spoilation, ECF No. 159) at 9.

DATED: October 14, 2021

**LABATON SUCHAROW LLP**

By: *Carol C. Villegas*         

Carol C. Villegas (*admitted pro hac vice*)
Christine M. Fox (*admitted pro hac vice*)
David J. Schwartz (*admitted pro hac vice*)
Jake Bissell-Linsk (*admitted pro hac vice*)
Charles M. Farrell (*admitted pro hac vice*)
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Email: cvillegas@labaton.com
Email: cfox@labaton.com
Email: dschwartz@labaton.com
Email: jbissell-linsk@labaton.com
Email: cfarrell@labaton.com

*Counsel for Lead Plaintiff*
*George Troicky and Lead*
*Counsel for the Class*

**THE SCHALL LAW FIRM**

Brian Schall (*pro hac vice forthcoming)*
Rina Restaino (*pro hac vice forthcoming)*
2049 Century Park East, Suite 2460
Los Angeles, CA 60067
Telephone: (424) 303-1964
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead*
*Plaintiff George Troicky*

**ENTWISTLE & CAPPUCCI LLP**

Andrew J. Entwistle (*pro hac vice forthcoming*)
Frost Bank Tower
401 Congress Avenue, Suite 1170
Austin, TX 78701
Telephone: (512) 710-5960
Email: aentwistle@entwistle-law.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Reed R. Kathrein (admitted *pro hac vice*)
Lucas Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman (admitted *pro hac vice*)
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

*Counsel for Additional Named Plaintiff Ashith*
*Pabbathi and Additional Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim (*admitted pro hac vice*)
Daniel Tyre-Karp (*admitted pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com
Email: dtyrekarp@rosenlegal.com

*Counsel for Additional Named Plaintiffs*
*Daniel Tavares and Globestar Systems Inc.*
*and Additional Counsel for the Class*

| -and-<br>Robert N. Cappucci (p*ro hac vice forthcoming*)<br>230 Park Avenue, 3rd Floor<br>New York, New York 10169<br>Telephone: (212) 894-7200<br>Email: rcappucci@entwistle-law.com<br><br>***Attorneys for Plaintiff FNY Managed Accounts LLC and Additional Counsel for the Class*** | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2021, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Carol C. Villegas*
Carol C. Villegas