**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE LORDSTOWN MOTORS CORP. SECURITIES LITIGATION<br><br>-------------------------------------------------------<br><br>This Document Relates to:<br><br>ALL ACTIONS. | CASE NO.: 4:21-CV-00616 (PAG)<br><br>JUDGE PATRICIA A. GAUGHAN |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY LIFT**
**PRIVATE SECURITIES LITIGATION REFORM ACT DISCOVERY STAY**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT BACKGROUND ..........................................................................................3

I.      The Karma Trade Secrets Action ("*Karma* Action") ...........................................3

II.     This Federal Securities Class Action ....................................................................5

ARGUMENT......................................................................................................................5

I.      Lifting The Reform Act's Discovery Stay Requires Exceptional Circumstances Not Present Here. ....................................................................................................5

II.     Plaintiffs Fail To Demonstrate That Lifting The Stay Is Warranted. ...................7

        A.      Lifting The Stay Is Not Necessary To Preserve Evidence......................8

        B.      Plaintiffs Do Not Seek "Particularized" Discovery. .............................10

III.    Lordstown Is Willing To Submit A Proposed Preservation Order. .....................11

CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2018 WL 1122195 (N.D. Ohio Mar. 1, 2018) ...........................................................................6

*Dailey v. Medlock*,
2012 WL 13013004 (E.D. Mich. Dec. 7, 2012) ................................................................6, 8, 11

*Frank v. Dana Corp.*,
2007 WL 1748887 (N.D. Ohio June 18, 2007)......................................................................6, 7

*Gruber v. Gilbertson*,
2017 WL 3891701 (S.D.N.Y. Sept. 5, 2017)...........................................................................10

*Karma Automotive LLC v. Lordstown Motors Corp., et al.*,
No. 20-cv-2104-JV-DFM (C.D. Cal. Oct. 30, 2020)..................................................................3

*In re L.G.Philips LCD Co., Ltd. Sec. Litig.*,
2009 WL 10695549 (S.D.N.Y. Feb. 19, 2009).........................................................................11

*Mangrove Partners Master Fund, LP v. 683 Cap. Partners, LP*,
2020 WL 7335313 (S.D.N.Y. Dec. 14, 2020) ......................................................................2, 10

*In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*,
2004 WL 305601 (S.D.N.Y. Feb. 18, 2004)...........................................................................7, 9

*In re MGM Mirage Sec. Litig.*,
2012 WL 2367567 (D. Nev. June 21, 2012)...........................................................................7, 9

*Miller v. Champion Enterprises Inc.*,
346 F.3d 660 (6th Cir. 2003) .....................................................................................................6

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
2010 WL 1628059 (N.D. Ohio Apr. 22, 2010).......................................................................7, 8

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
2021 WL 312752 (D. Del. Jan. 28, 2021)................................................................................10

*In re Rambus, Inc. Sec. Litig.*,
2007 WL 1430047 (N.D. Cal. May 14, 2007)..................................................................7, 9, 10

*Sarantakis v. Gruttaduaria*,
2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ..................................................................... *passim*

ii

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
　551 U.S. 308 (2007).................................................................................................................1

*Winer Fam. Tr. v. Queen*,
　2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ..............................................................................6

**Statutes**

15 U.S.C. § 4(b)(2)(A).............................................................................................................1

15 U.S.C. § 4(b)(3)(B).............................................................................................................1

15 U.S.C. § 78u-4(b)(1)(B).....................................................................................................1

15 U.S.C. § 78u-4(b)(3)(B)..................................................................................................6, 7

**PRELIMINARY STATEMENT**

Plaintiffs' motion seeking a "partial" lift of the Reform Act's mandatory discovery stay is nothing more than gamesmanship—a fishing expedition designed to get improper discovery to try to bolster their weak claims, while at the same time casting aspersions on the Defendants. Indeed, Plaintiffs did not bother to confer with Defendants before filing the motion.  Had they done so, they would have learned that Defendants have taken all reasonable steps to preserve information potentially relevant to this case and correct preservation issues that have arisen, and if necessary, would consent to a reasonable further preservation order, obviating the need for Plaintiffs' motion.  But Plaintiffs' real interest here is not in preservation but in gaining access to exactly the type of pre-motion-to-dismiss discovery that the Reform Act prohibits.

The relief Plaintiffs seek is incompatible with both the letter and purpose of the Private Securities Litigation Reform Act of 1995 ("Reform Act").  Congress enacted the Reform Act "as a check against abusive litigation by private parties," hoping and intending that it would "curb . . . nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313, 320–21 (2007).  To prevent meritless securities class actions, the Reform Act amended the Securities Act of 1933 and the Securities Exchange Act of 1934 to impose heightened requirements for pleading that a challenged statement was false or misleading, and that it was made with intent to defraud (scienter); it also established a *mandatory* discovery stay during the pendency of any motion to dismiss, with only limited exceptions for the unusual circumstances where "particularized" discovery is necessary either to "preserve evidence" or to "prevent undue prejudice."[1]  The heightened pleading requirements and discovery stay work in tandem to

---

[1] 15 U.S.C. § 78u-4(b)(1)(B), 4(b)(2)(A), 4(b)(3)(B).

perform a vital gatekeeping function, ensuring that "complaints in these securities actions . . . stand or fall based on the actual knowledge of the plaintiffs rather than information produced by defendants after the action has been filed." *Mangrove Partners Master Fund, LP v. 683 Cap. Partners, LP*, 2020 WL 7335313, at *3 (S.D.N.Y. Dec. 14, 2020) (citations omitted).

For precisely that reason, Plaintiffs' gambit to get broad, early discovery here cannot be allowed to succeed. As will be detailed in the Defendants' forthcoming Motion to Dismiss, the Consolidated Amended Complaint, which essentially repackages unfounded accusations from an inflammatory short-seller report, is deeply flawed and fails to plead any of its claims. Recognizing the fundamental weakness of their claims and pleadings, Plaintiffs now seek what they characterize as "limited" discovery regarding *every major issue in the litigation*, under the pretense that it is necessary to "preserve evidence." It is not.

In connection with this litigation and the disclosed investigation by the U.S. Securities and Exchange Commission, Lordstown has issued a broad document preservation notice. (*See* Declaration of Douglas L. Shively, dated October 28, 2021 ("Shively Decl.") ¶ 3.) It has also promptly taken appropriate steps to remedy preservation issues brought to its attention. Indeed, to the extent the spoliation order issued in the *Karma* Action is relevant here, the *Karma* court found that Lordstown has fully complied with its preservation and discovery obligations in that case, including recovering and producing many of the documents that were spoliated by others. The *Karma* court's order does not warrant the draconian remedy Plaintiffs suggest here. Indeed, Plaintiffs cite no authority supporting lifting the Reform Act's mandatory discovery stay under these circumstances, and instead cite only cases in which courts have denied similar motions. Finally, it is worth noting that Plaintiffs waited *two months* after Karma filed its motion for sanctions to file this motion—and without ever inquiring as to Lordstown's document

2

preservation efforts or requesting to meet and confer. This strongly suggests both that Plaintiffs do not view the risk of destruction as imminent and that their motion's filing has more to do with an attempted strategic move evidencing Plaintiffs' concern about the upcoming motion to dismiss than the substance of Plaintiffs' request.

Plaintiffs cannot be allowed to run roughshod over the Reform Act's guardrails in this manner. Congress intentionally forbade exactly what Plaintiffs seek here and with good reason: allowing Plaintiffs broad discovery into the heart of their claims before the motion to dismiss is decided would subject Lordstown to the significant burden and expense associated with civil discovery in these types of cases—the very *in terrorem* settlement pressures that the Reform Act was enacted to correct. For the many reasons discussed below, Defendants respectfully ask the Court to reject this overreach and deny the instant motion.

## RELEVANT BACKGROUND

### I.     The Karma Trade Secrets Action ("*Karma* Action")

On October 30, 2020, Karma commenced a trade secrets misappropriation action against Lordstown and various individual defendants, five months before the first complaint in this now-consolidated securities class action was filed. *See* Complaint, *Karma Automotive LLC v. Lordstown Motors Corp., et al.*, No. 20-cv-2104-JV-DFM (C.D. Cal. Oct. 30, 2020) ("*Karma* Action"), ECF No. 1. As is often the case in trade secrets misappropriation lawsuits, former Karma employees left Karma to work for Lordstown, and Karma now alleges Lordstown stole its employees, confidential information, and trade secrets relating to Karma's electric vehicles. (*See* Shively Decl., Exhibit B (Order dated September 16, 2021, *Karma* Action, ECF No. 159 ("*Karma* Order")), at 2.)

On October 31, 2020, a former Karma employee, Joe Durre learned that he was a named defendant in the *Karma* Action and deleted Karma information on two personal drives that he

3

used while employed at Karma: a SanDisk USB that he used for everyday work tasks and the "Karma" folder on a Western Digital drive that he used to archive his work and personal files. (*See* Shively Decl., Exhibit A (Defendants' Opposition to Plaintiffs' Motion for Sanctions, *Karma* Action, ECF No. 141) ("LMC Karma Opp."), at 3.)  On the same day, October 31, 2020, or the day after, November 1, 2020, another former Karma employee, George Huan learned from Durre that he was also a named defendant. (*Id.* at 5.)  Huan then proceeded to delete Karma information on an external Samsung hard drive that he had compiled for his manager at Karma before he left the company. (*Id.*)

On November 2, 2020, the first business day after Lordstown was served in the *Karma* Action, Lordstown's counsel, BakerHostetler, conducted interviews of several defendants, including Durre and Huan, and instructed them of their obligations to preserve all potentially relevant information. (*Id*. at 2.)  On November 5, 2020, Lordstown's in-house legal department circulated a litigation hold. (*Id.*)

Almost a year after commencing its lawsuit, in mid-August 2021, Karma moved for a preliminary injunction and filed a separate motion for sanctions for spoliation of evidence by the two former Karma employees and named defendants, Durre and Huan.  *See* Motion for Preliminary Injunction, *Karma* Action, ECF No. 129; Motion for Sanctions, *Karma* Action, ECF No. 133.  On September 16, 2021, the *Karma* court issued an order that 1) denied Karma's request for a preliminary injunction because Karma failed to establish a likelihood that it would suffer irreparable harm based on the alleged trade secrets misappropriation; and 2) found Durre and Huan had spoliated evidence but that Karma would not suffer substantial prejudice as the overwhelming majority of deleted information has been or will be produced. (*See Karma* Order at 11.)  The *Karma* court expressly recognized that little if any information was actually lost (*id.*;

4

*see also* LMC Karma Opp. at 6), and highlighted the fact that "Lordstown has also seemingly abided by its discovery obligations, producing voluminous files and records in the course of discovery."  (*Karma* Order at 10.)  The *Karma* court also found that Karma failed to show that any potentially remaining, unrecoverable information "is so relevant that Karma is unable to prosecute its case."  (*Id*.)  Accordingly, the court declined to issue terminating sanctions and instead issued sanctions in the form of a jury instruction "permitting, but not requiring" the jury to draw an adverse inference.  (*Id.* at 11.)

## II.  This Federal Securities Class Action

The Consolidated Amended Complaint in this action, filed on September 10, 2021, alleges that the Defendants (i) violated Section 10(b) of the Exchange Act by intentionally making false and misleading statements between August 3, 2020 and July 2, 2021 about pre-orders for the Endurance and its likely production timeline (and allegedly participating in a fraudulent "scheme" to do the same); (ii) violated Section 14(a) by negligently making some of the same statements in the proxy materials for legacy Lordstown's de-SPAC merger with DiamondPeak Holding Corp. ("DPHC"); (iii) violated Section 20A by selling Lordstown stock while allegedly in possession of material non-public information; and (iv) violated Section 20(a) by acting as controlling persons of legacy Lordstown and DPHC.  As Defendants will show in their forthcoming Motion to Dismiss, none of these claims have merit.

### ARGUMENT

## I.  Lifting The Reform Act's Discovery Stay Requires Exceptional Circumstances Not Present Here.

The Reform Act requires that:

> [A]ll discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

5

15 U.S.C. § 78u-4(b)(3)(B). "[T]he stay of discovery procedures adopted in conjunction with the heightened pleading standards under the [Reform Act] is a reflection of the objective of Congress to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." *Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 691–92 (6th Cir. 2003) (quotation omitted). Thus, the considered purpose of the Reform Act's mandatory discovery stay is "to preclude plaintiffs from engaging in fishing expeditions to secure facts for a sustainable claim" and to curb "the filing of frivolous lawsuits aimed at forcing corporate defendants to settle rather than bear the costs of discovery." *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2018 WL 1122195, at *1 (N.D. Ohio Mar. 1, 2018) (citation omitted); *see also Frank v. Dana Corp.*, 2007 WL 1748887, at *3 (N.D. Ohio June 18, 2007) ("[T]he [Reform Act] precludes discovery intended to remedy the defects of a complaint being challenged in a motion to dismiss.") (collecting cases).

Consistent with these purposes, Congress made clear that only "exceptional circumstances" could justify modifying the mandatory discovery stay before a motion-to-dismiss decision. *See* H.R. Conf. Rep. No. 104-369, at 37, reprinted in 1995 U.S.C.C.A.N. Specifically, the discovery stay may be modified only upon a showing that discovery "is necessary" to "preserve evidence" or "prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B); *Dailey v. Medlock*, 2012 WL 13013004, at *1 (E.D. Mich. Dec. 7, 2012), objections overruled, 2012 WL 13013443 (E.D. Mich. Dec. 28, 2012). Congress provided only one example of such potentially exceptional circumstances—"the terminal illness of an important witness," which might "necessitate the deposition of the witness prior to ruling on the motion to dismiss." *See* S. Rep. No. 104–98, at 14 reprinted in 1995 U.S.C.C.A.N.; *Sarantakis v. Gruttaduaria*, 2002 WL 1803750, at *2 (N.D. Ill. Aug. 5, 2002); *see, e.g.*, *Winer Fam. Tr. v. Queen*, 2004 WL 350181, at

6

*5 (E.D. Pa. Feb. 6, 2004) (granting limited discovery relating to witness due to diagnoses of stage four brain cancer and defendants agreed to the relevancy of the witness and seriousness of the illness).  As relevant here, anything less than an imminent risk of losing relevant evidence, however, has generally been found insufficient reason to lift the stay.  Indeed, even in cases where instances of spoliation already have occurred within the same litigation, courts have denied motions to lift the discovery stay.  *See, e.g.*, *In re MGM Mirage Sec. Litig.*, 2012 WL 2367567 (D. Nev. June 21, 2012); *In re Rambus, Inc. Sec. Litig.*, 2007 WL 1430047 (N.D. Cal. May 14, 2007); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 2004 WL 305601 (S.D.N.Y. Feb. 18, 2004).  Moreover, even if a plaintiff can establish exceptional circumstances exist, she must still show that "particularized discovery is necessary to remedy the problem." *See Sarantakis*, 2002 WL 1803750, at *2.

In short, courts "do not routinely lift the [Reform Act's] discovery stay," but instead strictly enforce its stringent requirements.  *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2010 WL 1628059, at *4 (N.D. Ohio Apr. 22, 2010) ("[M]aintaining the discovery stay furthers the purpose of the [Reform Act] to limit discovery pending resolution of a motion to dismiss."); *see also Frank*, 2007 WL 1748887, at *3 ("[T]he policy against discovery during the pendency of a motion to dismiss" is not "to be ignored or disregarded.").

## II.      Plaintiffs Fail To Demonstrate That Lifting The Stay Is Warranted.

Plaintiffs' sole basis for lifting the mandatory discovery stay is Plaintiffs' claim that "Lordstown has a very recent history of destroying evidence and such destruction of evidence in this case would put Plaintiffs (and the class) at a significant disadvantage."  (P. Br. at 10.)  This

falls far short of meeting the stringent requirements for lifting the Reform Act's discovery stay for several reasons.[2]

### A.      Lifting The Stay Is Not Necessary To Preserve Evidence.

Demonstrating that lifting the Reform Act's mandatory discovery stay is necessary to preserve evidence requires a specific showing that the loss of evidence is "imminent." *Sarantakis*, 2002 WL 1803750, at *2.  "Speculative allegations of possible loss of documents are wholly insufficient to justify lifting the . . . stay." *Dailey*, 2012 WL 13013004, at *3.  Plaintiffs do not come close to meeting this standard.

Lordstown has issued a broad document preservation notice in connection with this litigation.  (Shively Decl. ¶ 3.)  It has also taken prompt and appropriate action to ensure compliance with that notice and to remedy issues that arose. Plaintiffs' selective and misleading focus on a narrow discovery issue in the *Karma* litigation is a transparent attempt to portray Lordstown in a negative light and gain access to burdensome discovery prohibited by the Reform Act.  Plaintiffs ignore that the court in *Karma* declined to impose the most serious discovery sanctions, finding that overall "Lordstown has . . . seemingly abided by its discovery obligations, producing voluminous files and records in the course of discovery." (*Karma* Order at 10.)  Even with respect to the narrow issue that Plaintiffs focus on, the court found that "Lordstown has recovered (and produced) approximately a third of the missing 94 documents (and additional documents are likely to also be recovered)." (*Id.*)  Contrary to Plaintiffs' hyperbolic and self-serving characterization, these findings evidence Lordstown's good faith efforts to comply with

---

[2] Plaintiffs do not ask this Court to lift the Reform Act's discovery stay to prevent "undue prejudice."  This is unsurprising given that "[u]ndue prejudice has been defined as improper or unfair treatment amounting to something less than irreparable harm"—something Plaintiffs cannot establish here.  *Sarantakis*, 2002 WL 1803750, at *2 (internal quotation marks omitted); *Ohio Pub. Emps. Ret. Sys.*, 2010 WL 1628059, at *3.

8

its discovery obligations, notwithstanding isolated issues that sometimes occur in large, ESI-intensive litigation.

Nor can Plaintiffs establish any meaningful connection between the issues in this securities class action and the data lost (if any) in the *Karma* trade-secrets case.  Plaintiffs assert that the "*Karma* Action overlaps" because it generally "relates . . . to Lordstown's true production capabilities."  (P. Br. at 3.)  Plaintiffs also point to the *Karma* plaintiff's unproven (and untrue) allegations of "corporate espionage" as somehow relating to an "assessment of Defendants' scienter" to commit securities fraud in this case.  (*Id.*)  But Plaintiffs do not (and cannot) explain how the (potential) loss of a limited amount of Karma-related data has any material bearing on the issues in this case.

Absent such a showing, lifting the Reform Act's discovery stay would not serve any legitimate purpose.  In cases where instances of spoliation already have occurred within the same litigation, courts have denied motions to lift the discovery stay because, among other reasons, "[t]he destruction of evidence cannot be undone by discovery."  *In re MGM Mirage Sec. Litig.*, 2012 WL 2367567, at *5 (D. Nev. June 21, 2012) (denying motion to lift Reform Act stay where defendants allegedly concealed the destruction of 500 boxes of relevant evidence).  Other courts have denied such motions because a plaintiff's "attempt to have any of the preserved materials *produced* to them"—as opposed to merely preserved—"is precisely at the heart of the rule enacted by Congress and thus is clearly inappropriate."  *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 2004 WL 305601, at *1 (S.D.N.Y. Feb. 18, 2004) (defendant allegedly deleted relevant emails).  As these courts recognize, "appropriate sanctions" (if any) at an appropriate time—not lifting the Reform Act stay—is the appropriate remedy for past instances of evidence destruction.  *Id.*; *see also In re Rambus, Inc. Sec. Litig.*, 2007 WL 1430047, at *1

9

(N.D. Cal. May 14, 2007) (defendant's "history of destroying documents many years ago in patent infringement cases is insufficient to satisfy the 'preserve evidence' prong for lifting the discovery stay in this securities fraud case").

Rather than serve any legitimate purpose, lifting the Reform Act's stay would only serve to subject Lordstown to burdensome discovery and permit Plaintiffs to fish for information to bolster their complaint—both of which contradict Congress's express purposes in enacting the Reform Act.  *See, e.g., In re Pattern Energy Grp. Inc. Sec. Litig.*, 2021 WL 312752, at *3 (D. Del. Jan. 28, 2021) ("The idea that Plaintiffs might use discovery to bolster the allegations in their complaint—whether in advance of a motion to dismiss or to amend in the event that a motion to dismiss is granted—plainly conflicts with the directive set forth in the [Reform Act].");  *Mangrove Partners Master Fund, LP v. 683 Cap. Partners, LP*, 2020 WL 7335313, at *3 (S.D.N.Y. Dec. 14, 2020) (same);  *Sarantakis*, 2002 WL 1803750, at *1 (same).

Plaintiffs do not cite any case where a court lifted the discovery stay based on similar facts.  Indeed, in the three cases Plaintiffs do cite—*In re Delphi*, *Dailey*, and *Sarantakis*—the courts *denied* the motions to lift the discovery stay.  (*See* P. Br. at 10.) The same result is warranted here.

**B.      Plaintiffs Do Not Seek "Particularized" Discovery.**

Plaintiffs also fail to identify "particularized" discovery necessary to remedy the alleged problem.  "A discovery request is particularized when it is directed at specific persons, and it identifies specific types of evidence that fall within its scope."  *Gruber v. Gilbertson*, 2017 WL 3891701, at *2 (S.D.N.Y. Sept. 5, 2017) (internal quotation and citation omitted).  Here, Plaintiffs do not identify the particular categories of documents supposedly in danger of being destroyed.

Instead, Plaintiffs request broad categories of documents allegedly "concerning the most highly relevant allegations in this Action." (P. Br. at 11.)  Plaintiffs' requests include:

> (1) Documents relating to order, preorders, reservations, or indication of interest of the Endurance;
>
> (2) Documents relating to any internal investigation or external investigation (e.g., by the SEC of DOJ);
>
> (3) Documents relating to the Hindenburg Report; and
>
> (4) Documents relating to reports or schedules regarding Lordstown's production capabilities.

(*Id.*)  These requests resemble general discovery requests, not particularized requests for specific information at imminent risk of spoliation that could justify lifting the Reform Act stay.  *See Sarantakis*, 2002 WL 1803750, at *4 ("[t]he motion does not list any specific discovery or categories of discovery that are in danger of being destroyed. . . . The plaintiffs do not . . . explain how [the requested discovery] differs from the litigation discovery").  That Plaintiffs supposedly identified "highly relevant" categories is beside the point—what matters is Plaintiffs' failure to identify particularized discovery that is necessary to prevent the imminent destruction of documents.  *See In re L.G.Philips LCD Co., Ltd. Sec. Litig.*, 2009 WL 10695549, at *5 (S.D.N.Y. Feb. 19, 2009) ("[T]he specificity of the proposed discovery requests are irrelevant unless Plaintiffs establish that the relief sought is necessary to prevent . . . spoliation of evidence[.]").

## III.    Lordstown Is Willing To Submit A Proposed Preservation Order.

Lordstown takes its document preservation responsibilities seriously.  To state the obvious, with this Court, the *Karma* court, and regulators set to ensure Lordstown's preservation efforts, Lordstown is and will remain vigilant.  In apparent recognition that it has not come close to meeting the standard to lift the Reform Act's discovery stay, Plaintiffs in the alternative ask

the Court to issue a preservation order.  While Lordstown does not believe such an order is necessary in light of its existing preservation efforts, Lordstown would be willing to submit a proposed preservation order to the Court for the Court to enter.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a partial lifting of the Reform Act's discovery stay should be denied.

Dated: October 28, 2021

Respectfully submitted,

*/s/ Douglas L. Shively*

**BAKER & HOSTETLER LLP**

Douglas W. Greene
Email:   dgreene@bakerlaw.com
45 Rockefeller Plaza, 14th Floor
New York, NY  10111
Telephone:   212.589.4200
Facsimile:    212.589.4201

Douglas L. Shively
Email: dshively@bakerlaw.com
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record.

/s/ Douglas L. Shively
An attorney for Defendants