# EXHIBIT A

THOMAS R. LUCCHESI (*admitted pro hac vice*)
*tlucchesi@bakerlaw.com*
TERRY M. BRENNAN (*admitted pro hac vice*)
*tbrennan@bakerlaw.com*
ANTHONY B. PONIKVAR (*admitted pro hac vice*)
*aponikvar@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Key Tower, 127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:　(216) 621-0200
Facsimile:　(216) 696-0740

WILLIAM W. OXLEY (SBN 136793)
*woxley@bakerlaw.com*
RYAN D. FISCHBACH (SBN 204406)
*rfischbach@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, California 90025-0509
Telephone:　(310) 820-8800
Facsimile:　(310) 820-8859

*Attorneys for Defendants*
LORDSTOWN MOTORS CORP., *et al.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARMA AUTOMOTIVE LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>LORDSTOWN MOTORS CORP., an Ohio corporation; STEVE BURNS, an individual, JOHN LEFLEUR, an individual, DARREN POST, an individual, RICH SCHMIDT, an individual, ROGER J. DURRE, an individual, HONG XIN HUAN (A.K.A. "GEORGE" HUAN), an individual, BEI QIN, an individual, STEPHEN PUNAK, an individual, CHRISTOPHER KIM, an individual, DAN ZHIHONG HUANG, an individual, PUNAK ENGINEERING, INC., a California corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 8:20-cv-02104-JVS-DFM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Date:　September 20, 2021<br>Time:　1:30 p.m.<br>Ctrm:　10C<br>Judge:　Hon. James V. Selna |

# **TABLE OF CONTENTS**

**Page No.**

I.    Introduction ...................................................................................................... 1

II.   Factual Background ......................................................................................... 2

    A.     LMC ................................................................................................ 2

    B.     Joe Durre ....................................................................................... 3

    C.     George Huan .................................................................................. 5

    D.     The Deleted Information ............................................................... 6

III.   Argument ......................................................................................................... 8

    A.     Karma cannot establish spoliation because Karma cannot show any relevant evidence was lost. .................................................. 8

    B.     Terminating sanctions are not appropriate here. ....................... 11

       1.     Durre and Huan did not act in bad faith. ......................... 13

       2.     Neither the public's interest in expeditious resolution nor the Court's need to manage its docket favor a default judgment. ......................................................................... 15

       3.     Karma has not been prejudiced. ........................................ 16

       4.     This case should be decided on the merits. ....................... 18

       5.     Less drastic sanctions would suffice. ............................... 18

       6.     Karma fails to establish a nexus between the alleged misconduct and its claims for relief. ................................ 19

    C.     Durre's and Huan's conduct cannot be imputed to LMC. ......... 20

IV.   Conclusion ..................................................................................................... 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS, ETC.
CASE NO.:3:20-CV-02474-CAB-LL

Case 8:20-cv-02474-CAB-LL Document 66-2 Filed 10/28/21 Page 4 of 28 Page ID #:10470

# TABLE OF AUTHORITIES

**Page No.**

*Advantacare Health Partners v. Access IV*, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004 ..................................................................................... 19

*Am. Builders & Contractors Supply Co. v. Roofers Mart*, Inc., 2012 WL 2992627 (E.D. Mo. July 20, 2012) ....................................................... 21

*Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337 (9th Cir.1995)). ............................................................................................ 12

*Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976 (N.D. Cal. 2012) ............... 13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ...................................................... 12

*ChromaDex, Inc. v. Elysium Health, Inc.*, 2021 WL 1656108 (C.D. Cal. Apr. 27, 2021) ............................................................................ 19

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091(9th Cir. 2007) ................................................................... 12

*Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360 (N.D. Ga. 2008 ......................... 20

*De Contreras v. City of Rialto*, 2012 WL 13076609 (C.D. Cal. Aug. 31, 2012) ...... 11

*Edifecs, Inc. v. Welltok, Inc.*, 2019 WL 5862771 (W.D. Wash. Nov. 8, 2019), *aff'd*, 840 F. App'x 224 (9th Cir. 2021) ................. 21

*Faerfers v. Caviar Creator, Inc.*, 359 F. App'x 739 (9th Cir. 2009) ....................... 12

*Galicia v. Nat'l R.R. Passenger Corp.*, 2018 WL 6314191 (C.D. Cal. July 20, 2018) .......................................................................... 16, 19

*Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220 (C.D. Cal. Feb. 10, 2015) ..................................................... 20

*Halaco Eng'g Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988) ............................... 12, 20

*Johnson v. Am. Honda Motor Co., Inc.*, 2013 WL 12133910 (D. Mont. May 13, 2013) ................................................................................. 13, 18

*Kleinberg v. 516 W. 19th LLC*, 31 N.Y.S.3d (N.Y. App. Div. 2016) ....................... 14

*Leon v. IDX Sys. Corp.*, No. C03-1158 P, 2004 WL 5571412 (W.D. Wash. Sept. 30, 2004), *aff'd*, 464 F.3d 951 (9th Cir. 2006) ..................... 14

*Martins v. Interstate Power Co.*, 2002 WL 534890 (Iowa Ct. App. Apr. 10, 2002), *aff'd*, 652 N.W.2d 657 (Iowa 2002) .................... 14

*McLaughlin v. Denharco, Inc.*, 129 F. Supp. 2d 32 (D. Me. 2001) ......................... 14

ii

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS, ETC.

CASE NO.:3:20-CV-02474-CAB-LL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**Page No.**

*Meggitt (Orange Cty.), Inc. v. Nie Yongzhong*, 2015 WL 1809354
C.D. Cal. Apr. 21, 2015). ............................................................................ 1, 11

*Nucor Corp. v. Bell*, 251 F.R.D. 191 (D.S.C. 2008) .................................................. 21

*Pacificorp v. Northwest Pipeline*, 2012 WL 6131558 (D. Or. Dec 10, 2012).......... 13

*Price v. Peerson*, 2014 WL 12558253(C.D. Cal. Apr. 23, 2014) ............................. 22

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517
(N.D. Cal. 2009).......................................................................................... 22

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) ................................ 20

*Uschold v. Carriage Servs., Inc.*, 2019 WL 8275629
(N.D. Cal. Oct. 11, 2019) ............................................................................ 11

*Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051 (9th Cir. 1998)................ 12

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010). ............ 20

*Victorino v. FCA US LLC*, 2017 WL 4541653 (S.D. Cal. Oct. 11, 2017) ............... 13

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585 (9th Cir. 1983) ........................ 1, 11

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) ........................ 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

## I.    INTRODUCTION

Karma has tried for almost a year to substantiate its now 18-count Amended Complaint against LMC and the various individual defendants without any evidence that Karma's trade secrets are actually being used by LMC or that Karma has otherwise suffered any cognizable harm as a result of the alleged taking of its information. But now—faced with an April 2022 trial date and no credible evidence to support its allegations—Karma seeks to avoid its burden of proof on all but a handful of those claims, alleging that it is entitled to default judgments against not just the individual defendants who allegedly deleted some of their files (Joe Durre and George Huan), but also against LMC, which had no role in the deletions and, in fact, promptly counseled its employees to preserve information that could be relevant to the lawsuit.

Terminating sanctions (such as default judgments) are "so harsh a penalty" that they "should be imposed only in extreme circumstances." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Indeed, "the entry of a default judgment" should be "a measure of last resort." *Meggitt (Orange Cty.), Inc. v. Nie Yongzhong*, 2015 WL 1809354, at *12 (C.D. Cal. Apr. 21, 2015). This case does not warrant such an extraordinary remedy.

It is undisputed that Durre and Huan retained certain files from their employment at Karma and subsequently deleted those files after learning that Karma had named them as defendants in this lawsuit. But that alone does not warrant the extreme remedy of a default judgment against them on the claims asserted by Karma, including claims alleging violations of the Computer Fraud and Abuse Act, misappropriation of trade secrets, unfair competition, breach of contract, tortious interference, conspiracy, and violations of the civil RICO statute.

As explained below, Karma's request for such an extreme remedy is not supported by either the facts or the law. While Durre and Huan deleted information after having knowledge of the lawsuit, they did not act in bad faith and the deletions

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

have not resulted in any actual loss of evidence or otherwise prejudiced Karma as required to rise to the level of spoliation. Nor can their conduct be imputed to LMC, as Karma alleges.

Likewise, even if Karma could establish spoliation, it cannot satisfy the Ninth Circuit's five-factor test for terminating sanctions, or demonstrate a causal nexus between the alleged spoliation and the 41 claims on which it now seeks default judgment. For all these reasons, the Court should deny Karma's motion.

## II.    FACTUAL BACKGROUND

### A.    LMC

Karma filed this lawsuit on October 30, 2020, naming (among others), LMC, Joe Durre, and George Huan as defendants. LMC was served the next day—Saturday, October 31. (*See* Dkt. 19 (LMC Proof of Service); Canepa Decl. ¶ 4.)

On Sunday, November 1, 2020, LMC reached out to its counsel at Baker Hostetler to discuss representing LMC and the various individual defendants in the lawsuit. (Canepa Decl. ¶ 4.) The next day, Monday, November 2, attorneys at Baker Hostetler conducted interviews of several of the defendants, including Durre and Huan. (*Id.*) During those initial conversations, the attorneys informed Durre and Huan of their obligation to preserve all potentially relevant documents, and instructed them not to delete any documents from any of their devices. (*Id.*; Durre Decl. ¶ 14; Huan Decl. ¶ 19.)

On November 5, 2020, LMC's in-house legal department circulated a litigation hold memo, instructing the defendants and other employees in writing to preserve all relevant documents. (*Id.*) At no time did anyone at LMC direct Durre or Huan to delete documents, whether before or after learning about the lawsuit. (Canepa Decl. ¶ 5.) Nor was any person at LMC aware that Durre or Huan were in possession of any Karma information on their personal devices, or that they were planning to delete potentially relevant documents from any source. (*Id.* ¶ 6.)

2

In fact, the use of third-party confidential information is prohibited by LMC. The company has a formal policy prohibiting any employee from using or disclosing any confidential or proprietary information that belongs to his or her former employer or other persons or entities to which that employee owes a duty of nondisclosure. (*Id.*)

### B.    Joe Durre

On Saturday, October 31, 2020, Joe Durre received a call from another individual defendant in the case, Darren Post, in which Durre learned that he and several other LMC employees had been sued. (Durre Decl. ¶ 11.) Later that same morning—without speaking to counsel or to anyone else at LMC about his plans—Durre deleted documents from two personal devices he had used while employed at Karma: a SanDisk USB drive and a Western Digital external hard drive. (*Id.* ¶¶ 11-13.) Durre did not delete specific documents from these devices. Rather, he indiscriminately deleted information from these sources because he knew they contained information from his employment at Karma. (*Id.*)

While employed at Karma, Durre had generally used the SanDisk USB to complete everyday tasks such as flashing software updates, and the Western Digital drive to regularly archive both his work and personal files. (*Id.* ¶ 7.) In the weeks leading up to his departure from Karma, Durre had also downloaded copies of his working files to the Western Digital drive—not to use at LMC, but to assist his former colleagues at Karma with any future questions about his work there. (*Id.* ¶¶ 8-9.) Given Karma's recent spate of layoffs and extended furloughs, as well as the reorganization of Karma's engineering department, Durre had reason to be concerned that the employees remaining at Karma would not be able to find or decipher his working files without his help. (*Id.* ¶ 9.) He believed that having a copy of his files would better position him to give assistance if there were future questions about the work he had performed. (*Id.*)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

Also, before leaving Karma, Durre deleted some of his own working files from his Karma work computer and Karma's SharePoint system in an effort to clean up his working files—knowing, as Karma has confirmed in deposition testimony in this case, that Karma maintained backups of those files and could access them if they ever were needed. (*Id.* ¶ 21.)

During his September 1, 2020 exit interview from Karma, Durre was asked to sign paperwork confirming that he was not in possession of any of Karma's information. (*Id.* ¶ 10.) Durre told the interviewer he could not sign the form, because he still had certain Karma documents on his personal drives. But, the interviewer told Durre to simply sign anyway, and delete the documents at a later time. (*Id.*) When Durre heard he was being sued, he recalled that he had not yet fulfilled his pledge to delete the Karma documents from his drives. So, believing that it would be best to do so, Durre deleted the entire contents of the SanDisk USB, and deleted a folder titled "Karma" (or something similar) from the Western Digital drive. (*Id.* ¶¶ 11.)

After deleting the contents of the SanDisk USB, Durre used software to wipe the drive's contents, because—as a trained software engineer—Durre knew that merely deleting the files by moving them to his computer's recycle bin would not render them inaccessible to him. (*Id.* ¶ 12.) The only reason he did not do the same for the Western Digital drive was that he did not know how to segregate and wipe only the Karma folder, and did not want to lose access to other, non-Karma information on the drive. (*Id.* ¶ 13.)

Two days after deleting the files from the SanDisk USB and the Western Digital drive—on Monday, November 2, 2020, the first business day after he was served—Durre had his first conversation with legal counsel regarding the lawsuit, and was advised for the first time that he had an obligation to preserve relevant documents. (*Id.* ¶¶ 14.) He also received a copy of the litigation hold from LMC on November 5. (*Id.*)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS, ETC.
CASE NO.:3:20-CV-02474-CAB-LL

Since the initial call with counsel on November 2, Durre has not deleted any potentially relevant documents or information, and has produced the relevant devices for full forensic imaging. (*Id.* ¶ 15.) At no point prior to deleting documents from the SanDisk USB and the Western Digital drive on October 31, 2020 did Durre discuss the possibility of deleting those documents with anyone, let alone anyone at LMC. (*Id.* ¶ 16.) Nor did he discuss the issue of deleting documents with Huan prior to Huan's alleged deletion of documents from his own personal drive. (*Id.*)

## C.    George Huan

On either October 31 or November 1, 2020, Huan received a call from Joe Durre informing Huan that he was among those named in a lawsuit by his former employer, Karma. (Huan Decl. ¶ 15.) Although Huan, who had previously worked at Karma, had not been specifically instructed upon his departure to delete Karma information by an HR representative when he left the company, hearing about the lawsuit reminded him that he had an external Samsung hard drive that contained Karam information he had been asked to compile by his manager at Karma before he left the company. (*Id.* ¶¶ 11-14.)

Throughout his entire career, including while at Karma, Huan had a practice of incrementally backing up all of his working papers to a removable storage device. (*Id.* ¶ 7.) While with Karma, Huan did this with the Samsung drive. Specifically, Huan would save files to a folder on his desktop called "ghuan_ca," and then save that entire folder periodically to the Samsung drive. (*Id.*) That included a handful of files added after Huan had submitted his resignation on August 17, 2020, in response to a request from his then-supervisor, Shen Zhang, to put together a package of materials from his working files to help his successor take over his tasks. (*Id.* ¶¶ 11-12.) Huan did so by saving documents to his "ghuan_ca" desktop folder between August 17 and August 28—the same folder that he routinely backed up to his Samsung drive. (*Id.*)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5

So, after Huan learned of the lawsuit—but before he spoke to counsel or even saw Karma's complaint—he deleted from that Samsung device any top-level file directories that may have contained Karma documents. (*Id.* ¶¶ 15-16.) Although Huan deleted the files on his storage device, Karma still has access to them, as he had turned them over to his supervisor Zhang before he left the company. (*Id.* ¶ 12.) Moreover, Karma has Huan's Karma-issued laptop, which includes both copies of these documents and all associated metadata.[1] (*Id.* ¶ 20.)

Like Durre, Huan did not delete any potentially relevant documents after he spoke with counsel on November 2, and he has produced both his computer and the Samsung drive for full forensic imaging. (*Id.*) At no point prior to deleting documents from that device did Huan discuss the possibility of deleting those documents with anyone, let alone anyone at LMC. (*Id.* ¶ 16.)

### D. The Deleted Information

Karma has admitted that it still has almost all of the Karma documents that were once stored on Durre's or Huan's removable storage devices. (Mem. at 12-13; *see also* Kunkel Decl. ¶¶ 18-20; Hernandez Decl. ¶ 12.) Karma's motion is therefore premised on two discrete categories of information it claims are lost: (1) metadata showing when the Karma information on the external hard drives was "last accessed," "modified," "used or shared"; and (2) 94 files from Durre's devices that Karma allegedly could not recover after undertaking an unspecified search—none of which Karma has provided any details about or even attempted to argue constitute trade secrets. (Mem. at 2-3; Kunkel Decl. ¶ 20.)

---

[1] Unrelated to his deletion of files on the Samsung drive after learning about the lawsuit, Huan also uploaded and then deleted certain "virtual machines" or "virtual box files" from the Samsung drive, thereby overwriting the data pertaining to the Karma documents formerly saved on the device. (Huan Decl. ¶ 17.) Although he was aware generally that using the available space on the device would overwrite older, deleted files, he did not upload the virtual machines with that intent. Rather, loading and deleting virtual machines is common practice, and his work at the time required him to use a Linux-based virtual machine. (*Id.* ¶ 18.)

6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Full forensic images of Durre's and Huan's computers have been created and are being produced to Karma pursuant to the parties' Forensic Protocol. (*See* Dkt. 123 (Order Entering Stipulated Forensic Inspection Protocol); *see also* Canepa Decl. ¶ 7.) These images include metadata regarding when files were accessed or modified for the entire life of the computer—including files on any removable storage device, such as Durre's SanDisk USB and Western Digital drive, or Huan's Samsung drive. The forensic images will also contain metadata produced during the alleged "activity gap" identified by Karma. (Kelley Decl. ¶¶ 12-22.) Further, full copies of all of Huan's and Durre's email accounts, less any privileged communications, are also being produced to Karma pursuant to the Forensic Protocol. (*Id.* ¶ 24) Thus, the metadata showing whether and when Karma information—including Karma information on Durre and Huan's personal storage devices—was accessed, modified, used, or sent is still available and will be produced.

As it relates to the 94 "missing" documents, it is unclear what efforts Karma undertook to locate these documents. Nonetheless, 64 of these documents were in fact recoverable (and have been recovered), have a file name identical to a document stored in a different location on the same removable storage device, or maybe be available in the public domain. (Kelley Decl. ¶ 26.) Thus, only thirty files have yet to be recovered so far and in fact may be recoverable from sources other than the removable storage devices such as the Karma SharePoint site, other computers, or e-mail accounts. (*Id.*) In any event, Karma has not even attempted to argue what these documents are, whether they are trade secrets, or how Karma has been damaged because of their deletion. This is likely because a cursory review of the file names shows that these documents are not Karma trade secrets and instead are predominantly administrative documents such as statements of work from vendors, invoices, and outdated organizational charts. (Durre Decl. ¶¶ 17-18.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III. ARGUMENT

Karma contends that Durre, Huan, and LMC deserve terminating sanctions—in the form of a default judgment on each and every claim asserted against them in the Amended Complaint—"as a result of their intentional, bad faith spoliation of relevant evidence." (Mem. at 4; Motion ¶¶ 1-3 (asking that default judgment be entered against Durre, Huan, and LMC on each and every count applicable to each defendant).)

As explained below, no such sanctions are warranted here. Although Durre and Huan deleted information after becoming aware of the lawsuit against them, their deletion: (1) has not resulted in the loss of any relevant evidence or otherwise caused any prejudice to Karma; (2) does not meet the Ninth Circuit's five-factor test for terminating sanctions; and (3) cannot be imputed to LMC in any event. Nor does Karma allege, let alone demonstrate, a causal nexus between the deletions and the 41 claims on which it now seeks default judgment. For all these reasons, the Court should deny Karma's motion.

### A. Karma cannot establish spoliation because Karma cannot show any relevant evidence was lost.

Karma asserts that "Durre and Huan intentionally deleted information from their respective devices after being served with Karma's Complaint," and that conduct alone amounts to sanctionable spoliation. (Mem. at 8.) This is not correct.

To establish spoliation, Karma must "establish[] that the files cannot be restored or replaced through further discovery." *Neely v. Boeing Co.*, 2019 WL 1777680, at *4 (W.D. Wash. Apr. 23, 2019); *see also Thompson v. United States*, 2003 WL 27392841, at *7 (S.D. Fla. Apr. 15, 2003) ("Cumulative or duplicative evidence, if destroyed, may not result in a viable claim of spoliation."); *Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 5836438, at *19-20 (S.D.N.Y. Sept. 30, 2020) (finding no spoliation where plaintiffs "failed to satisfy their burden of showing [the deleted document] cannot be reproduced if discoverable"); *Distefano v. L. Offs. of*

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Barbara H. Katsos, PC*, 2017 WL 1968278, at *27 (E.D.N.Y. May 11, 2017) (no spoliation in part because "there is some indication that the missing information has been (or could be) obtained from other sources"); Fed. R. Civ. P. 37(e), 2015 Advisory Committee Notes (noting that "because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere").

Furthermore, "[m]ere speculation" that documents no longer exist "is an insufficient basis for a finding of spoliation." *U.S. Legal Support, Inc. v. Hofioni*, 2014 WL 172336, at *4 (E.D. Cal. Jan. 15, 2014) (no spoliation where plaintiff submitted no evidence that evidence was actually lost).

Here, Karma acknowledges that it has already recovered much of the information Durre and Huan deleted. (Mem. at 12-13.) Nevertheless, Karma maintains that two pieces of information have been lost: (1) the contents of 94 documents deleted by Durre that Karma could not identify on its own system based on the list of filenames that was recovered (Kunkel Decl. ¶ 20 & Ex. 4); and (2) "metadata that would show when [the] documents were last accessed or modified," and thus show whether the documents were "used or shared . . . *after* [Durre and Huan's] resignation from Karma, while [they were] working for LMC." (Mem. at 2 (Durre documents); *see also id.* at 3 (Huan documents).) But Karma fails to show that even this information cannot be recovered from other sources.

First, with respect to the 94 allegedly missing documents, Karma asserts that it engaged in a "substantial effort" to recover those files, but was unsuccessful. (Kunkel Decl. ¶ 20.) However, Karma provides no details on exactly what its "effort" entailed. In fact, contrary to Karma's claim, LMC's forensic expert was able to recover all but 30 in some way. (Kelley Decl. ¶ 26.) And 29 of the 94 files are still stored directly on the removable storage device itself, despite Karama's assertion. (*Id.* at ¶ 27.) Further, 25 others were recovered and require specific applications or software to be reviewed. (*Id.*) And 10 of them can be found on the internet and are

9

BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

public domain. (*Id.*) Thus, Karma's claim that these 94 documents are irretrievably "lost" appears to be based on mere speculation, or else a lack of any diligent search on Karma's part. In either case, a finding of spoliation based on those allegedly missing documents is not warranted.

Second, with respect to the metadata showing when documents saved to external storage devices are accessed, modified, copied, or used, is present in more than one place—not just on the storage device itself, but on each computer to which the device is subsequently connected. (Kelly Decl. ¶¶ 16-17.) In other words, when a removable storage device is plugged into a computer, and documents from that device are accessed, copied, or moved, metadata is left on the computer *as well as* the storage device. So, the fact that Durre and Huan may have deleted the metadata from their storage devices results in no prejudice where—as here—the parties have all of the computers to which the devices were connected, and have already submitted those computers for forensic imaging.

Importantly, that includes the metadata associated with the 94 documents Durre allegedly copied but that Karma has been unable to find in its own files. So, to the extent those documents were transferred to or used by LMC—which they were not—there would be proof of that in the metadata on the computers LMC is providing to Karma as part of the agreed forensic protocol.

Evidence of use—not just possession—is at the core of Karma's claims. Indeed, the fact that Durre and Huan were in possession of Karma documents is not even in dispute. Karma already has a list of the documents that were copied by Durre and Huan onto their external drives. (*See* Kunkel Decl. ¶¶ 10-16, 22-34.) So, Karma can readily establish that Durre and Huan retained Karma documents when they left their employment—a fact that both defendants have already readily admitted in any event.

But to show that Karma was actually *harmed* by that retention, or that LMC *benefitted* from it, Karma needs to show that the documents (or the information

10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Case 8:20-cv-00406-JLS-DAR MD Document 66-2 Filed 10/28/21 Page 15 of 27 Page ID #:10482

contained in them) were actually *used* at LMC. Durre and Huan's deletions have no effect on any evidence of *use*—that is, evidence that the documents they retained were subsequently transferred to LMC, or otherwise incorporated into the design of LMC's Endurance pickup truck. The fact that no such evidence exists supports defendants' position that LMC is not using the deleted documents or any of the information contained in them—and not, as Karma implies, that the evidence has been destroyed.

In fact, Karma itself has demonstrated that the evidence Durre and Huan allegedly destroyed has little to do with its core claims. For example, Karma's motion for preliminary injunction—filed contemporaneously with this motion for terminating sanctions—does not contain a single reference to a document that was deleted and subsequently recovered by Karma, or any suggestion that those documents made their way to LMC, let alone that they were used to design LMC's Endurance. And courts have held that where the parties have a substantive sample of the deleted information and there is "no reason to believe" that additional evidence would support plaintiff's claim, then plaintiff has not demonstrated relevance or prejudice as a result of the deletions. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003); *Reinsdorf*, 296 F.R.D. at 631 (C.D. Cal. 2013).

## B.    Terminating sanctions are not appropriate here.

Regardless of whether Durre and Huan's deletion of documents constitutes spoliation, their conduct should not result in "the most severe penalty" of terminating sanctions, which "should be imposed only in extreme circumstances" and only as a measure of "last resort." *Uschold v. Carriage Servs., Inc.*, 2019 WL 8275629, at *5 (N.D. Cal. Oct. 11, 2019) (quotations omitted); *see also Wyle*, 709 F.2d at 589 (terminating sanctions are "so harsh a penalty" that they "should be imposed only in extreme circumstances"); *Meggitt*, 2015 WL 1809354, at *12 ("the entry of a default judgment" should be "a measure of last resort"); *De Contreras v. City of Rialto*, 2012 WL 13076609, at *5 (C.D. Cal. Aug. 31, 2012) ("terminating sanctions is a harsh

11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

penalty that should only be issued in extreme circumstances"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (internal citations omitted) ("outright dismissal of a lawsuit . . . is a particularly severe sanction"); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) ("A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe.").

Anytime spoliation is alleged, a court must consider a person's "motive or degree of fault in destroying evidence." *Reinsdorf*, 296 F.R.D. at 627 (internal quotations and citation omitted). Terminating sanctions, due to their severity, are only warranted when a party acts with "willfulness, bad faith, [or] fault." *Id.* Additionally, the Ninth Circuit has held that before awarding terminating sanctions, the district court must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Faerfers v. Caviar Creator, Inc.*, 359 F. App'x 739, 740–41 (9th Cir. 2009) (quotations omitted).

Terminating sanctions may be appropriate "where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Id.* (quotations omitted). Even then, terminating sanctions are only justified "where a 'pattern of deception and discovery abuse made it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'" *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057–58 (9th Cir. 1998) (quoting *Anheuser–Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th Cir.1995)). And "most critical[ly] . . . the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case"— in other words, "[t]here must be a nexus between the party's actionable conduct and the merits of his case." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

12

Because Karma cannot satisfy any of these elements, its motion for terminating sanctions should be denied.

### 1. Durre and Huan did not act in bad faith.

As an initial matter, terminating sanctions are not appropriate here irrespective of how the above-described factors are weighed because Durre and Huan did not act in bad faith. *See Victorino v. FCA US LLC*, 2017 WL 4541653, at \*6 (S.D. Cal. Oct. 11, 2017) (terminating sanctions denied where spoliation was not the result of bad faith); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) (observing that courts "have denied requests for [sanctions] even where the three-part test for spoliation was satisfied, upon concluding that the degree of fault and level of prejudice were insufficient to justify imposition of the sanction").

Karma contends that Durre's wiping of his SanDisk device and Huan's copy of filings onto his external hard drive were done "to make sure the evidence they deleted could never be recovered," and therefore constitutes "bad faith." (Mem. at 8.) But bad faith requires more than just intentional conduct—it requires some other improper motive or purpose, neither of which Karma can demonstrate. *Johnson v. Am. Honda Motor Co., Inc.*, 2013 WL 12133910, at \*11–12 (D. Mont. May 13, 2013) (bad faith requires evidence of deliberate delay, disruption, or "improper motive"); *Pacificorp v. Northwest Pipeline GP*, 2012 WL 6131558 \*10–11 (D. Or. Dec 10, 2012) (holding that the Ninth Circuit's definition of "bad faith" requires more "than mere willful destruction of potentially relevant evidence," such as evidence that the spoliating party was "substantially motivated by an improper purpose").

As explained above, Durre deleted the files from his personal devices because he had previously agreed to do so during his exit interview from Karma, and believed he would be better off if he followed through on that promise. (Durre Decl. ¶ 6.) Similarly, Huan deleted the files from his personal device because he believed that is what Karma wanted him to do, and that he would be better off in the litigation having deleted the files than having retained them. (Huan Decl. ¶¶ 16, 18.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

Indeed, several courts have held that deleting or destroying evidence in an effort to mitigate damages does not warrant sanctions for spoliation. *See CPCI v. Tech. Transportation, Inc.*, 2005 WL 8172263, at *1, *3 (W.D. Wash. Oct. 14, 2005) (no spoliation where evidence was destroyed to mitigate damages, rather than in bad faith to harm opponent in litigation); *McLaughlin v. Denharco, Inc.*, 129 F. Supp. 2d 32, 36 (D. Me. 2001) (same); *Kleinberg v. 516 W. 19th LLC*, 31 N.Y.S.3d 12, 13 (N.Y. App. Div. 2016) (same); *Martins v. Interstate Power Co.*, 2002 WL 534890, at *5 (Iowa Ct. App. Apr. 10, 2002) (same), *aff'd*, 652 N.W.2d 657 (Iowa 2002). That is effectively what Durre and Huan have testified here—testimony that is unrebutted by any actual evidence to the contrary.

The fact that Durre and Huan "double deleted" documents provides no additional evidence of bad faith. As Karma itself points out, both Durre and Huan are technically competent—and as such, both are aware that electronic documents may remain accessible despite being nominally "deleted" unless additional steps are taken to remove them. In other words, for someone like Durre or Huan who is well versed in technology, "deleting" documents and "double deleting" documents are the same thing.

In fact, Durre and Huan's concern about continued possession of even the remnants of Karma has proved justified. Karma has already relied on the existence of hidden "cache" files on Durre's devices as evidence of misappropriation for purposes of its pending motion for preliminary injunction.

In support of its "bad faith" argument, Karma relies primarily on *Leon v. IDX Sys. Corp.*, No. C03-1158 P, 2004 WL 5571412, at *4 (W.D. Wash. Sept. 30, 2004), *aff'd*, 464 F.3d 951 (9th Cir. 2006), which Karma describes as "a nearly identical case." (Mem. at 8.) That could not be further from the truth.

Unlike here, not only was the defendant in *Leon* already represented by counsel at the time of the deletions, but he had received *explicit instructions* from the plaintiff—in writing—that he had a duty to ensure that the data on his computer was

14

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS, ETC.

CASE NO.:3:20-CV-02474-CAB-LL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

not lost or destroyed. Also, unlike here, the Court found that in that case there was "no way of knowing" what evidence had been on the device, and "no reliable way of recreating what might have been there"—neither of which are true in this case. *Id.* at \*3. Finally, the evidence in *Leon* suggested that the plaintiff was not entirely forthcoming about exactly what he had deleted from the laptop, in contrast to Durre and Huan, who have acknowledged their deletions from the outset.

In short, Karma offers little support for its claim that Durre and Huan acted in bad faith or in a sufficiently culpable manner to warrant the harsh sanction of a default. That is all the more true for LMC, for which Karma does not even *attempt* to provide evidence of bad faith apart from Durre and Huan's conduct. Accordingly, the Court should deny Karma's motion for sanctions.

### 2. Neither the public's interest in expeditious resolution nor the Court's need to manage its docket favor a default judgment.

Turning to the five-factor test for terminating sanctions, Karma claims that "the first, second, and fourth factors are summarized into a single inquiry"—namely, whether a party has "'engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.'" (Mem. at 14 (quoting *Leon*, 464 F.3d at 958.) But *Leon* says no such thing—in fact, the Ninth Circuit in *Leon* specifically addressed each of the five factors, including the first two: holding that both "the need to manage the court's docket, as well as the public interest in expeditious resolution of litigation, weigh[ed] in favor of dismissal" in that case. *Leon*, 464 F.3d at 960.

Karma's attempt to gloss over these first two factors is no accident, because neither factor favors terminating sanctions here, as such a sanction would neither bring an end to this litigation nor significantly narrow the issues before the Court. Even if the Court were to grant Karma's request for a default judgment against LMC, Durre, and Huan on the dozen-plus claims against each defendant, all of those claims would still remain pending against at least nine other defendants (plus up to 50 "Doe" defendants).

15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

And because the first two factors weigh against terminating sanctions, the remaining three factors must "*strongly*" favor such sanctions for Karma to succeed on its motion. *Galicia v. Nat'l R.R. Passenger Corp.*, 2018 WL 6314191, at \*5 (C.D. Cal. July 20, 2018) (emphasis added). Not surprisingly, they do not.

### 3.     Karma has not been prejudiced.

As explained above, Karma has not been prejudiced by Durre's and Huan's deletions. The core of Karma's trade secret allegations is that LMC is improperly using Karma's trade secret information to develop its all-electric work pickup truck, the Endurance. To fully evaluate these claims, there are two potentially relevant sources of information: (1) the forensic artifacts from the defendants' computers that would show whether any Karma information was accessed, manipulated, sent, or otherwise used by any of the Defendants, and (2) the technical specifications, source code, and other information related to the development of the Endurance so Karma could determine whether any of its alleged trade secrets (which it admits were not lost) are being implemented by LMC.[2] Both of these categories of information remain intact and have not been affected by the deletions from the removable storage devices.

Throughout its memorandum, Karma argues that the deletions from the removable storage devices altered "metadata that would show when [Karma's] documents were last accessed or modified, and which would indicate whether Durre

---

[2] Additionally, copies of the actual Karma documents themselves are relevant to the extent Karma is alleging that any of the Defendants removed the only copy of any of Karma's trade secrets and thereby denied Karma the opportunity to use its intellectual property. Karma has admitted that the vast majority of which remain in their possession. Out of the over 500,000 files that have been produced in discovery so far, a number that is likely to grow exponentially in the future given the fact that Karma has requested full forensic images of over 20 devices and accounts, Karma has identified only 94 files from Durre's Western Digital drive that it claims has not been recovered yet. (Kunkel Decl., Ex. 4.) Karma has not indicated what these documents are, how they constitute trade secret information, or how they have been damaged by not having these documents. This is likely because a cursory review of the file names shows that these documents are not Karma trade secrets and instead are predominantly administrative documents such as statements of work from vendors, invoices, and outdated organizational charts. (Durre Decl. ¶¶ 17-18.)

16

[or Huan] used or shared those documents *after* [their] resignation from Karma[.]" (Mem. at 2.) In support of this assertion, Karma relies on a declaration from its forensic analyst, Michael Kunkel, in which Kunkel asserts that metadata *from the removable storage devices* was altered because of the deletion. (Kunkel Decl. ¶ 19.) However, this oversimplified approach is purposefully misleading and ignores the fact that the metadata regarding whether any of the Karma documents were accessed or sent is available on other sources—namely the computers to which the removable storage devices were connected. Those forensic artifacts either have already been produced or will be produced pursuant to the parties' agreed upon Forensic Protocol, which Karma drafted. (Kelly Decl. ¶ 23.)

Documents stored on a removable storage device cannot be accessed unless that device is inserted into a computer. (Id. ¶ 16.) When a removable storage device is inserted into a computer and files stored on that device are accessed, a forensic artifact is created on *both* the removable storage device and the computer. (*Id.*) The computers themselves include metadata related to what files were accessed, when, and whether they were modified. (*Id.* ¶¶ 16-17.) Here, Durre's and Huan's devices have been forensically imaged. (*Id.* ¶¶ 12-13.) These images contain all of the metadata regarding which files were accessed by the computers, when those files were accessed, and whether the documents were modified. (*Id.*) Thus, contrary to Karma's conclusory assertion, there is no "activity gap" and all evidence related to whether any Karma document or information was accessed remains intact.

Additionally, Karma argues that the deletion from the removable storage device has prevented Karma from analyzing whether Durre "shared" Karma information with others. Karma has made this assertion without articulating what artifact from the removable storage device would have shown whether Durre shared that information. While the removable storage device might show whether a document was accessed, it would not have data showing whether the document was sent or shared with others. (*Id.* ¶ 16.) In any event, full copies of all of Durre's and

17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Huan's email accounts, both professional and personal, are being produced in discovery pursuant to the Forensic Protocol. (Dkt. 123; Canepa Decl. ¶ 7.) Thus, to the extent any Karma information has been shared with others, that evidence has not been altered by the deletions from the removable storage devices.

Finally, and most importantly, Karma's ability to evaluate whether its trade secrets are being used in the development of LMC's Endurance pickup truck has not been affected. LMC, and the other Defendants, have produced over 500,000 files related to the development of the Endurance and its infotainment system. Karma has not, and cannot, show that any information that was deleted from the removable storage devices has affected its ability to prosecute its claims.

### 4. This case should be decided on the merits.

As Karma acknowledges, "the fourth [] factor" of the terminating sanctions inquiry—"the public policy favoring disposition of cases on their merits"— "normally weighs against dismissal." (Mem. at 15.) In fact, courts have gone so far as to say that factor "*always*" weighs "against imposing dismissal as a spoliation sanction." *Johnson v. Am. Honda Motor Co., Inc.*, 2013 WL 12133910, at *10 (D. Mont. May 13, 2013) (emphasis added). That is certainly the case here.

In fact, particularly so—as a result of the alleged spoliation in this case, Karma seeks judgment on 41 separate claims, all with their own separate elements, and all of which Karma seeks to resolve without a full and fair hearing on the merits. And as discussed below, many of those claims have little or nothing to do with the documents Durre and Huan allegedly deleted. In short, the fourth factor weighs against granting Karma's motion.

### 5. Less drastic sanctions would suffice.

As discussed above, dismissal or default "is a drastic substitute for the adversary process of litigation and should only be used when absolutely necessary to protect the orderly administration of justice and integrity of judicial proceedings." *ChromaDex, Inc. v. Elysium Health, Inc.*, 2021 WL 1656108, at *5 (C.D. Cal. Apr.

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

27, 2021). Indeed, terminating sanctions are "appropriate only when the complained-of activity is a pattern of deception that threatens to interfere with the rightful decision of the case or makes it impossible to conduct a trial with any reasonable assurance that the truth would be available." *Id.* (denying request to impose terminating sanctions based on executives lying at depositions); *see also Valley Engineers Inc.,* 158 F.3d at 1057–58 ("[S]omething other than case-dispositive sanctions will often suffice.").

Given the lack of culpability and the absence of prejudice to Karma, to the extent any sanction is warranted here, entry of a default judgment on 41 different causes of action is hardly appropriate. Instead, there are a number of less drastic sanctions available, including "monetary sanctions, an adverse-inference jury instruction, [or] exclusion of testimony." *Galicia*, 2018 WL 6314191, at *3.

But given that default is the only remedy Karma requests, the Court need not decide at this time whether or to what extent other sanctions might be appropriate. It is enough that, based on the evidence submitted, Karma has failed entirely to demonstrate that it is entitled to the "extreme" sanction of a default judgment, that defendants are engaged in an ongoing course of conduct aimed at thwarting the Court's ability to resolve the case on the merits, or that a lesser sanction would be futile in curing any purported prejudice arising out of Durre and Huan's deletions. *See Advantacare Health Partners v. Access IV*, 2004 WL 1837997, at *6-7 (N.D. Cal. Aug. 17, 2004) (declining to impose terminating sanctions where there was no indication the defendants would "continue in a way that will meaningfully affect the Court's ability to decide or try the case on the merits" despite previously engaging in "egregious" behavior including "deletion of files").

### 6. Karma fails to establish a nexus between the alleged misconduct and its claims for relief.

Even if Karma could satisfy all of the elements above, the Ninth Circuit has held that "[t]he most critical criterion for the imposition of a dismissal sanction is

19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case"—in other words, "[t]here must be a nexus between the party's actionable conduct and the merits of his case." *Halaco*, 843 F.2d at 381. Karma makes no effort to establish such a nexus between the alleged deletions and the 41 claims on which it seeks default judgment. Nowhere in its motion does Karma describe the elements of any of its claims, or explain how the evidence it supposedly lost would prove any of those elements. Its failure to do so is yet another reason to deny its motion.

### C. Durre's and Huan's conduct cannot be imputed to LMC.

Karma's claim that it is entitled to a default judgment against LMC is limited to a single, conclusory paragraph stating that Durre and Huan were employed by LMC at the time of the deletions, and that "an agent's willful destruction of evidence can and should be imputed to its principal." (Mem. at 11.) In support of that claim, Karma relies on cases from federal courts in Maryland, South Carolina, and Georgia—none of which support the result Karma seeks here.

In fact, two of the four cases Karma cites involve a situation where a party's *lawyer* spoliated evidence, and the lawyer's conduct was imputed to the client for purposes of issuing sanctions. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 516 n.23 (D. Md. 2010). A third involved a direct supervisor making an employment decision. *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360 (N.D. Ga. 2008). All three are classic examples of an agent acting well within the scope of his or her authority. But they provide little support to Karma under the facts of this case.

It is black letter law that to hold a principal liable for the conduct of its agent, the agent must be acting within the scope of his authority. *See Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL 12746220, at *9–10 (C.D. Cal. Feb. 10, 2015).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

But where—as here—the agents (Durre and Huan) have deleted information from personal devices neither issued nor controlled by the principal (LMC), and the principal has expressly instructed against the agent possessing or using such information and has taken reasonable and timely steps to prevent the destruction or loss of information upon learning of the lawsuit, there is no possible argument that the agents are acting within the scope of their authority sufficient to bind the principal. *See Edifecs, Inc. v. Welltok, Inc.*, 2019 WL 5862771, at \*4 (W.D. Wash. Nov. 8, 2019), *aff'd*, 840 F. App'x 224 (9th Cir. 2021) (declining to impute spoliation to a party where a defendant employee destroyed a USB thumb drive "to protect himself," not his employer, had not disclosed its existence to the employer, and had not consulted with the defendant company about discarding the device); *Am. Builders & Contractors Supply Co. v. Roofers Mart*, Inc., 2012 WL 2992627, at \*7 (E.D. Mo. July 20, 2012) (no spoliation as a result of reinstallation of files on employee's personal laptop where there was "no evidence suggesting that [the employer] knew of or had control over the laptop at the time," and where the actions were taken for the employee's "personal benefit—not for the benefit" of the employer).

That is in contrast to the fourth case Karma cites, *Nucor Corp. v. Bell*, 251 F.R.D. 191 (D.S.C. 2008), where the employee spoliated evidence on his *work* laptop, which was under his employer's control. *Id.* at 197-99. But the court in *Nucor* also held that the employer was *not* liable for the employee's spoliation of data on a separate external thumb drive because the employee never disclosed that device's existence nor consulted with anyone at the company about discarding it. *Id.* at 196.

Similarly, in this case, neither Durre nor Huan acted on instructions from anyone at LMC when deleting data from their personal storage devices; nor was anyone at LMC aware of their plans to delete Karma information from their personal devices (or even that they *had* Karma information on their personal devices). (Canepa Decl. ¶¶ 4-6.) In short, Karma cannot point to any evidence linking LMC to Durre's and Huan's deletion of documents from their personal storage devices, or showing

21

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

that LMC was anything but diligent in seeking to preserve relevant information once it was served with the lawsuit.

Indeed, the same weekend LMC was served with the complaint, it immediately hired counsel to represent both the company and the individual defendants, and by Monday its counsel had advised Durre and Huan of their preservation obligations. (*Id.* ¶ 4.) LMC followed up with a written hold notice as well, and has since turned over the devices in question for a full forensic analysis, at Karma's request. (*Id.* ¶¶ 4, 7.) There is simply no evidence of culpable conduct on the part of LMC, and no possible justification for entering a default judgment against LMC on any of Karma's claims.

Nor does Karma's argument that LMC should have been on notice of a potential lawsuit since August 2020—implying that it should have instructed Durre and Huan to retain potentially relevant documents prior to being sued on October 30, 2020—change the analysis. (Mem. at 6-7.)

As an initial matter, litigation must be more than just "possible" to trigger a party's obligation to preserve documents—it must be "probable." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009). Thus, "a general concern over litigation"—like the one expressed by Post in his August 2020 email—does not suffice. *Id.*; *see also Price v. Peerson*, 2014 WL 12558253, at *8 (C.D. Cal. Apr. 23, 2014) (filing of administrative complaints did not give rise to a duty to preserve evidence in a civil rights action against police officers arising out of plaintiff's arrest.), *aff'd*, 643 F. App'x 637 (9th Cir. 2016).

The subject of Post's concern in that August 2020 email—the fact that LMC hired Joe Durre while he was still at Karma—indicates anxiety over potential employment-related claims, not claims for misappropriation of trade secrets or any of the myriad other torts Karma has accused LMC and Durre of committing. (Post Decl. ¶ 7; Durre Decl. ¶ 20.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

22

Indeed, Post's email on its face expresses an intent to "avoid lawsuits" relating to LMC's hiring of Durre—the opposite of an indication that Post (or anyone else at LMC) viewed litigation as "probable" at that point.

And perhaps most importantly, at the time of the August 2020 email, the allegedly wrongful conduct that would have put LMC on notice of a potential claim—namely, Durre's and Huan's retention of trade secrets following their resignations from Karma—*had not even happened yet.* So, there is no logical way LMC could have believed that a lawsuit was probable based on *future* conduct by Durre and Huan that had not yet occurred and that LMC had no reason to expect would occur, let alone lead to litigation.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for terminating sanctions in the form of default judgments on all counts against LMC, Joe Durre, and George Huan.

Dated: August 30, 2021           Respectfully Submitted,

**BAKER & HOSTETLER LLP**

By:     /s/ Thomas R. Lucchesi
        Thomas R. Lucchesi *(Pro Hac Vice)*
        Terry M. Brennan *(Pro Hac Vice)*
        Anthony B. Ponikvar *(Pro Hac Vice)*
        William W. Oxley (SBN 136793)
        Ryan D. Fischbach (SBN 204406)

        *Attorneys for Defendants*
        LORDSTOWN MOTORS CORP., *et al.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

23