**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE LORDSTOWN MOTORS CORP. SECURITIES LITIGATION | Case No. 4:21-cv-00616 (PAG) |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION**
**FOR A PARTIAL LIFTING OF THE PSLRA DISCOVERY STAY**
**PURSUANT TO 15 U.S.C. § 78u-4(b)(3)(B)**

Lead Plaintiff George Troicky ("Lead Plaintiff") and additional named Plaintiffs Daniel Tavares, Globestar Systems Inc., Ashith Pabbathi, and FNY Managed Accounts LLC (together, "Plaintiffs") respectfully submit this reply in support of Plaintiffs' motion for a partial lifting of the PSLRA discovery stay.  ECF No. 63 (the "Motion").

## I.        PRELIMINARY STATEMENT

Congress expressly provided a mechanism to lift the PSLRA discovery stay to preserve evidence.  The Motion is appropriate under both the spirit and the letter of that rule, because Plaintiffs have serious concerns that documents will be destroyed, given a recent finding that Lordstown spoiled evidence in a separate ongoing suit.  Incredibly, Defendants try to downplay the severity of the spoliation, but a review of facts strongly supports that Plaintiffs' concern that Lordstown may continue destroying documents is warranted.

The Consolidated Amended Complaint ("Complaint," ECF No. 61) provides highly particularized allegations that Defendants raised massive sums from investors and artificially inflated Lordstown's securities prices, through a brazen scheme to drastically misrepresent demand for the Company's vehicles and the Company's production capabilities.  The very conduct at issue in this case gave rise to an SEC investigation, and yet ***despite learning of that investigation***, Defendants continued to tout the same falsehoods.  Complaint, ECF No. 61 at ¶¶212-215, 364.  Eventually, as the truth began to come to light, and as Lordstown came under criminal investigation by the DOJ, Defendants ***admitted*** to at least a portion of the misrepresentations, as both the CEO and CFO resigned, at least partially due to the alleged misconduct.  *Id.* at ¶¶224-227, 230.

1

While committing a brazen scheme to defraud investors, Defendants were also allegedly engaged in astounding corporate espionage.[1]  After executing an NDA with a potential supplier (Karma Automotive LLC), Lordstown allegedly poached Karma's employees and took its intellectual property ("IP").  FAC, ECF No. 72, at ¶¶1-5.[2]  Karma sued, and upon learning of the lawsuit, Lordstown employees began deleting files relevant to that suit.  Order on Spoliation, ECF No. 159, at 3.[3]  A Federal Court found this destruction to constitute spoliation.  *Id.* at 11.

The totality of these circumstances — which demonstrate a pattern of disregard for the law — strongly justifies the modest relief of a partial lifting of the PSLRA stay to mitigate the risk of further document destruction.  As described herein, Defendants' arguments against the Motion are meritless.

## II.    ARGUMENT

### A.      There Is a Serious Risk That Defendants Will Destroy Evidence Again

Contrary to Defendants' characterization that the risk of document destruction is speculative, Opp. at 8, the conclusion that there is a serious and imminent risk that documents will be destroyed is evidenced by (1) the recent finding by the court in the *Karma* Action that Lordstown destroyed and spoiled documents (that may be relevant to the ***this*** case); (2) the brazen scheme to defraud investors, especially given Defendants' continued misrepresentations that occurred even after Lordstown learned of the SEC's investigation; and (3) Defendants' corporate espionage alleged by Karma.  This conduct is evidence of Lordstown's disregard for lawfulness and the increased risk of document destruction here.

---

[1] *Karma Auto. LLC v. Lordstown Motors Corp.*, No. 8:20-cv-02104-JVS-DFM (C.D. Cal.) ("*Karma* Action").

[2] *See* Ex. B (*Karma* Action, First Amended Complaint ("FAC")) to Declaration of Carol C. Villegas ("Villegas Decl."), ECF No. 63-4.

[3] *See* Ex. A (*Karma* Action, Order Regarding Motions for Preliminary Injunction and Sanctions ("Order on Spoliation")) to Villegas Decl., ECF No. 63-3.

Defendants cannot dispute that the PSLRA stay may be lifted when there is a serious (as opposed to speculative) concern that documents will be destroyed.  15 U.S.C. § 78u-4(b)(3)(B); *see generally In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 2007 WL 518626, at *6 (E.D. Mich. Feb. 15, 2007); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 544, 545 (N.D. Ohio 2004); *Dailey v. Medlock*, 2012 WL 13013004, at *3 (E.D. Mich. Dec. 7, 2012).  Rather, Defendants attempt to downplay the seriousness and relevance of their past misconduct and document destruction, but as discussed below, their arguments are unfounded and do nothing to mitigate the risk of further destruction.

### 1.    Defendants' Attempt to Downplay the Significance of the Spoliation is Meritless

The *Karma* court was clear – defendants, including Defendant Lordstown, "were under a duty to preserve [relevant] documents . . . [and] intentionally deleted information from their respective devices."  Order on Spoliation, ECF No. 159, at 9.  The Court noted that it did not take "Lordstown's actions lightly" and found the evidence was "sufficient to establish a culpable state of mind."  *Id.* at 11.  As a result, the Court held that an instruction permitting "the jury to draw an adverse inference," was appropriate.  *Id.*  It is well understood that the issuance of such an instruction is a grave sanction.  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("In practice, an adverse inference instruction often ends litigation-it is too difficult a hurdle for the spoliator to overcome."); *Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982) (the adverse inference "was designed to serve a prophylactic and punitive purpose"); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1135 (N.D. Cal. 2012) (similar).

In light of that holding, it is almost unbelievable that Defendants have now tried to spin their spoliation as trivial.  The keystone of Defendants' efforts to downplay the spoliation is their

3

observation that the Court declined to issue the even more severe remedy of "terminating sanctions."  Opp. at 5, 8.  The phrase "terminating sanctions" refers to a "dismissal with prejudice or entry of a default judgment" against the sanctioned party.  *See Vaughn v. GEMCO2, LLC*, 2018 WL 6620600, at *5 (M.D. Fla. Oct. 31, 2018).  Thus, by touting the fact that they were not issued terminating sanctions, Defendants are literally claiming that their conduct was not so severe as to warrant the automatic entry of a judgment against them.  To be sure, the lack of terminating sanctions does not imply the spoilation was not egregious.  *See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (holding that terminating sanctions are a "drastic remedy that should be imposed only in extreme circumstances.").

Relatedly, Defendants cherry-pick a comment from the *Karma* court's analysis of whether to apply terminating sanctions.  They claim that the court praised their "good faith" in discovery.  Opp. at 8-9; Order on Spoliation, ECF No. 159, at 10.  However, far from a meaningful assessment of Lordstown as a general good actor, this quote narrowly referred to the fact that Lordstown had not engaged in the sort of extreme disregard for Court orders during the discovery process that would warrant elevating the (already severe) remedy of an adverse inference to issuing terminating sanctions.  *Id.*; *see generally Hull,* 845 F.2d at 1176 (noting that terminating sanctions may be appropriate "where a party fails to comply with the court's discovery orders willfully").

Next, Defendants note that they have recovered *some* of the spoiled evidence in the *Karma* Action and tout this as supposed evidence of their good behavior.  Opp. at 2, 8.  This contention is analogous to claiming that a thief who *partially* returns the stolen goods *after getting caught* is somehow demonstrating upstanding character.  Plaintiffs do not, and submit

4

that the Court should not, take solace in the possibility that if Plaintiffs are later able to detect that Defendants have continued destroying documents, Defendants might be so kind as to *partially* recover *some* destroyed documents when faced with a motion for spoilation.

### 2. Defendants' Attempt to Downplay the Relevance of the Spoilation is Meritless

Defendants baldly assert that the *Karma* action, and the spoliation therein, is irrelevant to the present case.  Opp. 9-10.  This argument is wrong for three reasons.

**First**, the *Karma* action and discovery therein is highly relevant to the present case, because as alleged in the Complaint, Defendants' corporate espionage speaks to their scienter. Analyzing the scienter element of fraud claims requires one to consider "all of the facts alleged, taken collectively" to determine whether they support an "inference of scienter."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-323 (2007).  That Defendants were engaging in corporate espionage is clearly a fact that is relevant to the analysis of whether Defendants' misrepresentations were made innocently or with fraudulent intent.

**Second**, the *Karma* action speaks directly to Defendants' production capabilities.  For example, Defendants falsely claimed that Lordstown was capable of producing 600,000 vehicles annually with "only modest incremental investment" and that it was "near production ready." Complaint, ECF No. 61 at ¶330.  In truth, the Company was nowhere near production-ready, and has completely blown through its oft-repeated September 2021 deadline for when it assured investors it would begin delivering vehicles.  That Lordstown was also propping up its supposed production progress through the use of stolen IP, would mean both that its supposed production timeline could be further set back (*e.g.,* through an injunction in the *Karma* Action), and that its

5

supposed internal production capabilities were overstated (*i.e.*, because it appeared as though it had the capability to develop valuable IP, when in fact, it had stolen the technology).[4]

**Third**, Defendants also contend that the previously destroyed documents are not themselves relevant to this case. Opp. at 9. As a threshold matter, Plaintiffs are unable to determine what evidence was in fact destroyed. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 501-502 n. 7 (D. Md. 2010) (noting the "Catch 22" in evaluating spoliation sanctions because "after evidence no longer exists, it often is difficult to evaluate its relevance and the prejudice associated with it.").[5] However, the evidence certainly could be of direct relevance to this Action insofar as it speaks to (1) whether Lordstown in fact engaged in the brazen corporate espionage, (2) who at Lordstown accessed stolen documents concerning the stolen IP (as that would be shown in the deleted metadata), and (3) how much of Lordstown's supposedly internally developed systems were ripped-off from Karma IP.

Furthermore, in addition to the high probability that the destroyed evidence would have been relevant to this case, Defendants' prior acts of spoliation are themselves relevant *regardless* of the specific documents they previously destroyed. That Lordstown had previously permitted its employees to wipe drives containing documents relevant to discovery, itself speaks to the validity of Plaintiffs' concerns that there is an imminent risk of document destruction.

### B. The Motion Should Be Granted Under Both the Letter and Spirit of the PSLRA

While Defendants offer generic policy arguments lauding the merits of the PSLRA's discovery stay in general, they offer no compelling argument as to why Plaintiffs should bear the

---

[4] Notably, emails sent by Lordstown insiders show that one purpose for stealing Karma's IP was to (supposedly) allow Lordstown to "bypass all the time and resources otherwise needed to recruit and train top engineering talent." FAC, ECF No. 72, at ¶49.

[5] What is known, is that documents were destroyed, and the *Karma* court found the conduct "sufficient to establish a culpable state of mind." Order on Spoliation, ECF No. 159, at 11.

risk of continued spoliation, especially given the express statutory text permitting a partial lifting of the stay.

### 1.        The Motion Comports With the Letter of the PSLRA

The PSLRA states that "upon the motion of any party that particularized discovery is necessary *to preserve evidence* or to prevent undue prejudice," the stay may be modified or lifted. 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).  As described herein, there is a serious risk of document destruction if the stay is not lifted, meaning that the Motion falls squarely within the letter of the PSLRA's rule, permitting the stay to be lifted to preserve evidence.

Curiously, Defendants cite an example given in the legislative history of the PSLRA, that notes that one reason to lift the stay might be the existence of a terminally ill witness, as if this demonstrates that the stay cannot be lifted here.  Opp. at 6; S. Rep. No. 104–98, at 14 (1995).  Of course, that example was not an exhaustive list and of course there have been many *other* instances where the PSLRA stay was lifted.  *See, e.g.*, *FirstEnergy*, 229 F.R.D. at 545 (lifting discovery stay on grounds that "[w]ithout discovery of documents already made available to government entities, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategies."); *In re WorldCom Sec. Litig.*, 293 B.R. 308, 314 (S.D.N.Y. 2003) (similar); *In re Comdisco Sec. Litig.*, 166 F. Supp. 2d 1260, 1262-1263 (N.D. Ill. 2001).

Furthermore, the requested discovery is particularized, seeking "a clearly defined universe of documents" – only the most relevant documents, grouped by specific and finite *categories*. *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002), *see also Gruber v. Gilbertson*, 2017 WL 3891701, at *2 (S.D.N.Y. Sept. 5, 2017) (finding "four discrete categories of documents" from two parties to be "sufficiently particularized").  As courts have recognized the definition of "particularized" discovery is "nebulous," *Mishkin v. Ageloff*, 220 B.R. 784, 793 (S.D.N.Y. 1998), and needs to be considered in the context of Plaintiffs'

significant allegations and the comprehensive 158-page Complaint.  *See In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (lifting the discovery stay as the motion described a "clearly defined universe of documents," and the "volume of requested documents is not unreasonable" against the backdrop "of the underlying litigation").

### 2.      The Motion Comports With the Spirit of the PSLRA

Congress recognized that the PSLRA stay generally increases "the likelihood that relevant evidence may be lost," and sought to remedy this concern both by requiring the preservation of relevant documents while the stay is pending, and by permitting plaintiffs to lift the stay where there is a risk of destruction.  *See* S. Rep. No. 104–98, at 44 (1995); 15 U.S.C. § 78u-4(b)(3)(B).  The Motion, which is directly addressed to the concern of document destruction, is in line with Congress' express goals in providing a mechanism to lift the stay "to preserve evidence."  *Id.*

Defendants' policy arguments are meritless.  They primarily rehash the general reasons for the existence of the PSLRA stay — to prevent "the filing of frivolous lawsuits aimed at forcing corporate defendants to settle rather than bear the costs of discovery.'"  *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2018 WL 1122195, at *1 (N.D. Ohio Mar. 1, 2018).  But the issue before the Court is not whether the stay is good as a general matter, but whether it should be lifted here.  To credit Defendants' generalized policy arguments would effectively mean that the stay could never be lifted, a holding that is clearly at odds with the PSLRA.

The goals furthered by the PSLRA stay are not impugned by the Motion, as this is clearly **not** a fishing expedition in service of a frivolous strike suit.  As described in the Complaint, Plaintiffs strongly allege an obscene fraud.  Moreover, Plaintiffs' counsel undertook an extensive investigation to support the claims and 158-page Complaint, including "interviews with former employees of Defendants and Defendants' purported customers, business partners, and affiliates"

8

and "consultation with experts on the automotive industry."  Complaint, ECF No. 61, at 1.

Defendants' argument, which casts Plaintiffs' case as frivolous is disingenuous and raises its

own set of concerns regarding whether Defendants are taking these claims seriously —

especially given the gravity of parallel SEC and DOJ investigations, prior admissions that the

Company made misrepresentations, and the related resignations of Lordstown's CEO and CFO.

**C.      Any Pre-Motion Meet and Confer Would Have Been Futile**

Defendants claim that had Plaintiffs reached out to and conferred with Defendants prior

to filing the Motion, Plaintiffs "would have learned that Defendants have taken all reasonable

steps to preserve information potentially relevant to this case and correct preservation issues that

have arisen, and if necessary, would consent to a reasonable further preservation order, obviating

the need for Plaintiffs' motion."  Opp. at 1.  However, the parties do not have a requirement to

meet and confer, and Plaintiffs have reason to doubt any representations by Defendants

concerning their document preservation.  And unfortunately, spoliation is difficult to catch,

considering it can only be shown by the absence of documents.  *See Victor Stanley*, 269 F.R.D. at

501-502 n. 7 (noting the "Catch 22" in evaluating spoliation sanctions because "after evidence

no longer exists, it often is difficult to evaluate its relevance and the prejudice associated with

it.").[6]

More specifically, Defendants' representations regarding document preservation carry

little weight.  As explained herein, Defendants have demonstrated a reoccurring course of

conduct of illegality (i.e., securities fraud, corporate espionage, and spoliation).[7]  Notably, the

---

[6] In addition, Defendants claim that it is "worth noting that Plaintiffs waited two months after Karma filed its motion for sanctions to file this motion."  Opp. at 2.  This is pure misdirection, as the Motion was filed promptly after the *Karma* court's finding that Defendant Lordstown spoiled evidence.

[7] Further, counsel for *Karma* defendants, including Lordstown—BakerHostetler—is the same counsel representing Defendants here, and thus, while Plaintiffs appreciate Lordstown's representations that it "takes its

strong allegations of fraud further provide a reason for Plaintiffs to distrust Defendants now, where the evidence asked to preserve may be the basis of establishing Defendants' fraud. Moreover, Defendants are opposing this Motion, which means that meeting and conferring on this issue would have been futile as Defendants would not have agreed (and are not agreeing) to lift the discovery stay to preserve documents.

Taken collectively, Plaintiffs advance that any pre-Motion meet and confer with Defendants, notwithstanding their hindsight promises, would have been futile, especially because Defendants now oppose the relief that Plaintiffs believe is necessary.

## III.     CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for a partial lifting of the PSLRA discovery stay to make the particularized requests detailed in the Motion should be granted.  In the alternative, Plaintiffs request that the Court order Defendant Lordstown to preserve all relevant documents.[8]

[signatures on following page]

---

document preservation responsibilities seriously," Opp. at 11, these representations provide little comfort, especially given the risk for the same laissez-faire conduct by counsel that impacted Lordstown's spoliation in *Karma*.

[8] Defendant Lordstown claims it "would be willing to submit a proposed preservation order to the Court for the Court to enter."  In the event, the Court enters a preservation order, Plaintiffs request the Court require Defendants to preserve all relevant evidence, including the specific categories enumerated in the Motion.  *See* Motion at 12-13.

10

DATED: November 4, 2021

**LABATON SUCHAROW LLP**

By: *Carol C. Villegas*

Carol C. Villegas (*admitted pro hac vice*)
David J. Schwartz (*admitted pro hac vice*)
Jake Bissell-Linsk (*admitted pro hac vice*)
Charles M. Farrell (*admitted pro hac vice*)
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Email: cvillegas@labaton.com
Email: dschwartz@labaton.com
Email: jbissell-linsk@labaton.com
Email: cfarrell@labaton.com

*Counsel for Lead Plaintiff*
*George Troicky and Lead*
*Counsel for the Class*

**THE SCHALL LAW FIRM**

Brian Schall (*admitted pro hac vice*)
Rina Restaino (*pro hac vice forthcoming*)
2049 Century Park East, Suite 2460
Los Angeles, CA 60067
Telephone: (424) 303-1964
Email: brian@schallfirm.com
Email: rina@schallfirm.com

*Additional Counsel for Lead*
*Plaintiff George Troicky*

**ENTWISTLE & CAPPUCCI LLP**

Andrew J. Entwistle (*pro hac vice forthcoming*)
Frost Bank Tower
401 Congress Avenue, Suite 1170
Austin, TX 78701
Telephone: (512) 710-5960
Email: aentwistle@entwistle-law.com
-and-

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Reed R. Kathrein (admitted *pro hac vice*)
Lucas Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman (admitted *pro hac vice*)
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

*Counsel for Additional Named Plaintiff Ashith*
*Pabbathi and Additional Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim (*admitted pro hac vice*)
Daniel Tyre-Karp (*admitted pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: pkim@rosenlegal.com
Email: dtyrekarp@rosenlegal.com

*Counsel for Additional Named Plaintiffs*
*Daniel Tavares and Globestar Systems Inc.*
*and Additional Counsel for the Class*

11

Robert N. Cappucci (p*ro hac vice
forthcoming*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone: (212) 894-7200
Email: rcappucci@entwistle-law.com

***Attorneys for Plaintiff FNY
Managed Accounts LLC
and Additional Counsel for the Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2021, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Carol C. Villegas*

Carol C. Villegas
