IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE LORDSTOWN MOTORS CORP. SECURITIES LITIGATION<br><br>-------------------------------------------------------<br><br>This Document Relates to:<br><br>    ALL ACTIONS. | CASE NO.: 4:21-CV-00616 (DAR)<br><br>JUDGE DAVID A. RUIZ<br><br><u>CLASS ACTION</u> |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**
<u>**PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

**Page**

I.     Plaintiffs Cannot Plead a § 10(b) Claim for Multiple Independent Reasons ...................... 2

       A.     None of the Challenged Statements Was Materially False or Misleading ............ 2

            1.     Defendants Cannot Be Liable for Statements They Did Not Make ............ 2

            2.     The Pre-Order Statements Were Not Materially False or Misleading ..................................................................................... 3

            3.     The Production Statements Were Not False or Misleading ...................... 11

       B.     Plaintiffs Fail to Plead a Strong Inference of Scienter as to Any Defendant ........ 16

            1.     Plaintiffs Fail to Plead Motive ................................................... 16

            2.     Plaintiffs' Circumstantial Evidence of Scienter Is Equally Weak ............ 18

       C.     Plaintiffs Cannot Plead Loss Causation ................................................. 22

       D.     Plaintiffs Fail to Plead Reliance on the Pre-Merger Statements .......................... 23

       E.     Plaintiffs Fail to Plead a Scheme Liability Claim ................................................ 23

II.    Plaintiffs Fail to Plead a §20(a) Control Person Claim ....................................................... 24

III.   Plaintiffs Fail to Plead a §14(a) Claim ................................................................................ 24

IV.   Plaintiffs Fail to Plead a §20A Insider Trading Claim ....................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Almost Fam., Inc. Sec. Litig.,*
2012 WL 443461 (W.D. Ky. Feb. 10, 2012) ...........................................................................22

*Beaver Cnty. Ret. Bd. v. LCA-Vision Inc.,*
2009 WL 806714 (S.D. Ohio Mar. 25, 2009).....................................................................17, 18

*Bondali v. Yum!Brands, Inc.,*
620 F.App'x 483 (6th Cir. 2015) .........................................................................................24

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.,*
865 F.Supp.2d 811 (W.D. Mich. 2012) ................................................................................16

*City of Pontiac Police & Fire Ret. Sys. v. Jamison,*
2022 WL 884618 (M.D. Tenn. Mar. 24, 2022) ......................................................................25

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.,*
29 F.4th 802 (6th Cir. 2022) ...............................................................................................19

*City Pension Fund for Firefighters & Police Off. in Tampa Bay v. Generac
Holdings Inc.,*
765 F.Supp.3d 775 (E.D. Wis. 2025).....................................................................................13

*Dailey v. Medlock,*
551 F.App'x 841 (6th Cir. 2014) .......................................................................................... 9

*In re Diebold Sec. Litig.,*
2008 WL 3927467 (N.D. Ohio Aug. 22, 2008)............................................................7, 18, 24

*Dougherty v. Esperion Therapeutics, Inc.,*
905 F.3d 971 (6th Cir. 2018) .........................................................................................17, 19

*In re DVI, Inc. Sec. Litig.,*
2013 WL 56083 (E.D. Pa. Jan. 4, 2013) ...............................................................................23

*Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.,*
889 F.3d 1153 (10th Cir. 2018) ...........................................................................................11

*In re FirstEnergy Corp. Sec. Litig.,*
2025 WL 2331754 (6th Cir. Aug. 13, 2025)...........................................................................23

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.,*
675 F.3d 1047 (7th Cir. 2012) ............................................................................................. 3

*Hubiack v. Li-Cycle Holdings Corp.*,
2024 WL 2943959 (S.D.N.Y. June 10, 2024) .........................................................................21

*Huey v. Anavex Life Scis. Corp.*,
2025 WL 1707581 (S.D.N.Y. June 18, 2025) .........................................................................23

*In re Huffy Corp. Sec. Litig.*,
577 F.Supp.2d 968 (S.D. Ohio 2008) ....................................................................................15

*Humphrey v. U.S. Att'y Gen.'s Off.*,
279 F.App'x 328 (6th Cir. 2008) ........................................................................................2, 4

*Hunt v. Bloom Energy Corp.*,
2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) .................................................................15, 17

*Indiana State Dist. Council of Laborers & Hod Carriers Pens. & Welf. Fund v.
Omnicare, Inc.*,
583 F.3d 935 (6th Cir. 2009) .................................................................................................22

*Indiana Elec. Workers' Pens. Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) .................................................................................................17

*Kerr v. Exobox Techs. Corp.*,
2012 WL 201872 (S.D. Tex. Jan. 23, 2012) ............................................................................3

*Kolominsky v. Root, Inc.*,
667 F.Supp.3d 685 (S.D. Ohio 2023), *aff'd*, 100 F.4th 675 (6th Cir. 2024)............................4

*Konkol v. Diebold, Inc.*,
590 F.3d 390 (6th Cir. 2009) ............................................................................................15, 17

*In re IAC/InterActiveCorp Sec. Litig.*,
478 F.Supp.2d 574 (S.D.N.Y. 2007).......................................................................................25

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) .................................................................................................23

*Louisiana Sch. Employees' Ret. Sys. v. E&Y, LLP*,
2008 WL 11412015 (W.D. Tenn. Aug. 14, 2008)...................................................................16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)................................................................................................................13

*Mosaic Fin. Ltd. v. Mut. S'holder Servs., LLC*,
767 F.Supp.3d 619 (N.D. Ohio 2025).....................................................................................19

*Newtyn Partners LP v. All. Data Sys. Corp.*,
2025 WL 872967 (S.D. Ohio Mar. 20, 2025)..........................................................................20

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
   2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ............................................................3

*In re Omnicare, Inc. Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ....................................................................................1

*Irwin ex rel. Omnicare, Inc. v. Gemunder*,
   2006 WL 3366180 (E.D. Ky. Nov. 20, 2006)...........................................................25

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................1, 4, 5, 9

*Parnes v. Gateway 2000, Inc.*,
   122 F.3d 539 (8th Cir. 1997) ................................................................................7, 8

*Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*,
   614 F.App'x 237 (6th Cir. 2015) ...........................................................................12

*Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.*,
   556 F.Supp.3d 772 (N.D. Ohio 2021),
   *aff'd*, 2022 WL 3972478 (6th Cir. Sept. 1, 2022).........................................6, 7, 8, 17

*Porter v. Graftech International Ltd.*,
   2025 WL 2393087 (N.D. Ohio Aug. 18, 2025).........................................1, 2, 16, 20

*Ricker v. Zoo Ent., Inc.*,
   2012 WL 3070717 (S.D. Ohio July 30, 2012),
   *aff'd*, 534 F.App'x 495 (6th Cir. 2013).....................................................................16

*Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*,
   485 F.3d 840 (6th Cir. 2007) ..................................................................................16

*Sapssov v. Health Mgmt. Assocs.*,
   608 F.App'x. 855 (11th Cir. 2015) ..........................................................................23

*Saraf v. Ebix, Inc.*,
   2023 WL 4561655 (S.D.N.Y. July 17, 2023) ...........................................................17

*Sarafin v. BioMimetic Therapeutics, Inc.*,
   2013 WL 139521 (M.D. Tenn. Jan. 10, 2013)..........................................................16

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
   119 F.Supp.3d 1213 (C.D. Cal. 2015) .....................................................................23

*SEC v. Kelly*,
   817 F.Supp.2d 340 (S.D.N.Y. 2011)........................................................................24

*Sneed v. Talphera, Inc.*,
    2025 WL 2406424 (9th Cir. Aug. 20, 2025)..............................................................5

*Stark Trading v. Falconbridge Ltd.*,
    552 F.3d 568 (7th Cir. 2009) .................................................................................23

*In re Supreme Indus., Inc. Sec. Litig.*,
    2018 WL 2364931 (N.D. Ind. May 23, 2018) ........................................................10

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    2022 WL 989240 (W.D. Tenn. Mar. 31, 2022),
    *aff'd*, 83 F.4th 514 (6th Cir. 2023)........................................................................22

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    2022 WL 5236833 (W.D. Tenn. Oct. 5, 2022),
    *aff'd*, 83 F.4th 514 (6th Cir. 2023)........................................................................24

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    83 F.4th 514 (6th Cir. 2023) ...............................................................18, 19, 20, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................2

*In re Textainer P'ship Sec. Litig.*,
    2007 WL 108320 (N.D. Cal. Jan. 10, 2007) ..........................................................15

*Tian v. Peloton Interactive, Inc.*,
    2025 WL 510043 (E.D.N.Y. Feb. 14, 2025)..............................................................9

*Tiernan v. Sigma Cap., Inc. Ret. Sav. Plan*,
    2010 WL 4642889 (S.D. Ohio Sept. 30, 2010) .........................................................2

*Toussaint v. Care.com Inc.*,
    490 F.Supp.3d 341 (D. Mass. 2020) .........................................................................9

*In re Triangle Cap. Corp. Sec. Litig.*,
    988 F.3d 743 (4th Cir. 2021) ..................................................................................19

*In re UBS Auction Rate Sec. Litig.*,
    2010 WL 2541166 (S.D.N.Y. June 10, 2010) .........................................................10

*In re Vroom, Inc. Sec. Litig.*,
    2025 WL 862125 (S.D.N.Y. Mar. 18, 2025) ...........................................................13

**Other Sources**

*Clean Fuels Ohio Signs Letter of Intent to Drive Purchase of 500 Fully-Electric Pickup Trucks from Lordstown Motors*, Auto Channel (Mar. 18, 2020), https://www.theautochannel.com/news/2020/03/18/806147-lordstown-motors-press-release-clean-fuels-ohio-signs-letter-intent.html.................................................................9

Investopedia, https://www.investopedia.com/terms/l/letterofintent.asp (last visited Sept. 5, 2025) ...............................................................................................20

MadMoney, *Lordstown Motors CEO on early EV fleet orders, reviving GM plant and hiring*, CNBC (Nov. 17, 2020), *available at* https://www.cnbc.com/video/2020/11/17/lordstown-motors-ceo-early-ev-fleet-orders-reviving-gm-plant-and-hiring.html .......................................................................11

Mark Kane, *Lordstown Motors Reports New Order for 1,000 Endurance Pickups*, InsideEVs (Apr. 7, 2020), https://web.archive.org/web/20200410164619/https://insideevs.com/news/408469/lordstown-loi-1000-endurance-pickups/ ...........................................................................7

Plaintiffs' Opposition ("Opp.") only further exposes the weakness of their claims. The Opposition strings together a series of innocuous minutia to argue that Lordstown's statements regarding its pre-orders and production timeline (many of which were statements of opinion and/or protected forward-looking statements) were false and misleading, while simultaneously asking the Court to ignore the context in which those statements were made. And Plaintiffs combine the same innocuous minutia with the wisdom of hindsight to argue that Defendants must have known the Pre-Order and Production Statements were false at the time and must have intended to deceive investors. None of this is sufficient under the Reform Act or Rule 9(b).

Unlike other civil claims, "[p]leading a violation of the federal securities laws is not easy." *Porter v. Graftech Int'l Ltd.*, 2025 WL 2393087, at \*17 (N.D. Ohio Aug. 18, 2025). Indeed, "[t]he pleading standards of the [Reform Act] have been described by the Sixth Circuit as creating an **'elephant-sized boulder'** that must be surmounted to successfully state a claim." *Id.* (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014)) (emphasis added). Accordingly, "not all allegations that would survive a traditional motion to dismiss under Rule 12(b) are sufficient to survive dismissal in a private securities action." *Id.*

The Reform Act demands that a securities complaint "state 'with particularity' 'each statement alleged to have been misleading' and 'the reason or reasons why the statement is misleading.'" *Id.* And under the Supreme Court's directive in *Omnicare*, a statement is only false or misleading if it would have misled a "reasonable investor" reading it "fairly and in context." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

Similarly, the Reform Act demands that securities complaints "allege particularized facts giving rise to a strong inference of scienter"—that is, the challenged statements were made with "an intent to deceive, manipulate, or defraud," and were not the "product of mistake,

1

miscalculation, overoptimism, or unfulfilled prediction." *Porter*, 2025 WL 2393087, at *17. Under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007), "[a] scienter inference is 'strong' only if it is 'cogent' and 'at least as compelling as any opposing inference[.]'" *Porter*, 2025 WL 2393087, at *35. This holistic analysis "is 'inherently comparative,' and 'a court must consider plausible, nonculpable explanations for the defendant's conduct.'" *Id.* (quoting *Tellabs*).

Here, all of Plaintiffs' claims are subject to the heightened pleading standards of the Reform Act and Rule 9(b), and they fail to surmount this "elephant-sized boulder." *Porter*, 2025 WL 2393087, at *17. Defendants respectfully ask the Court to dismiss the SAC with prejudice.[1]

## I.      Plaintiffs Cannot Plead a § 10(b) Claim for Multiple Independent Reasons

Plaintiffs' §10(b) claims fail for several, independently dispositive reasons: they cannot plead a materially false or misleading statement (or a deceptive act), scienter, loss causation, or, with respect to pre-merger statements, reliance.

### A.      None of the Challenged Statements Was Materially False or Misleading

Plaintiffs challenge two types of statements, concerning (1) pre-orders and demand for the Endurance, and (2) Lordstown's anticipated production timeline and financing. Plaintiffs fail to plead that any challenged statement in either category was materially false or misleading.[2]

#### 1.      *Defendants Cannot Be Liable for Statements They Did Not Make*

Under *Janus*, the 10(b) Defendants cannot be liable for statements they did not make. MTD 13. Plaintiffs concede that statements made by non-party DPHC and by non-party

---

[1] Plaintiffs did not file, and have thus waived, any opposition to Defendants' RJN (ECF 86-2). *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F.App'x 328, 331 (6th Cir. 2008). Plaintiffs' one-sentence assertion that Defendants improperly cite to "facts that fall outside the four corners of the complaint" (Opp. 13) is too perfunctory to constitute an opposition. *See Tiernan v. Sigma Cap., Inc. Ret. Sav. Plan*, 2010 WL 4642889, at *2 (S.D. Ohio Sept. 30, 2010) ("well established" in Sixth Circuit that "issues averted to [on opposition] in a perfunctory manner unaccompanied by some effort at developed argumentation, are deemed waived").

[2] This fully disposes of Plaintiffs' §14(a) claim as well. MTD 13 n.18.

Hamamoto were not "made" by any 10(b) Defendant and are not relevant to Plaintiffs' §10(b) claims. Opp. 23; MTD 13. Plaintiffs likewise concede that the 10(b) Defendants did not "make" the statements made by Lordstown directly, yet argue that these statements are relevant to scienter and control person liability. Opp. 22. Plaintiffs thus ignore the fundamental fact that Defendants cannot be liable under §10(b) for statements they did not make. MTD 13; *Kerr v. Exobox Techs. Corp.*, 2012 WL 201872, at *11 (S.D. Tex. Jan. 23, 2012) (under *Janus*, "just because a person or entity may 'control' the company filing the document does not mean that the control person can be liable under 10b-5 for making the statements"). As for President Trump's comment, Plaintiffs do not contend that Burns "made" that statement; they instead seek to hold Burns liable for purportedly "nodd[ing] in agreement." Opp. 23. This is incompatible with *Janus*: the "[f]ederal securities laws impose no liability [] when a person fails to correct a misstatement . . . by another 'statement maker.'" *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at *8 (C.D. Cal. Jan. 17, 2017); *Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051 (7th Cir. 2012) (similar).

Because the 10(b) Defendants did not "make" these challenged statements, they cannot ground Plaintiffs' §10(b) claims.[3] In any event, no challenged statement was false or misleading.

**2.**   ***The Pre-Order Statements Were Not Materially False or Misleading***

As an initial matter, Plaintiffs' Opposition significantly narrows the Pre-Order Statements and arguments at issue. Plaintiffs do not contest that Pre-Order Statements conveying, among other things, Lordstown's belief that it would "revolutionize the pickup truck industry" and would be "first to market," and Lordstown's expectation and belief that the nonbinding pre-orders indicated

---

[3] Accordingly, the SAC attributes only one challenged statement to Flannery (¶313), two each to Rodriguez (¶329, 394) and Schmidt (¶367, 414), and others to Burns. Post and Brown are not alleged to have made any challenged statement, so the claims against them must be dismissed.

3

strong demand, are opinions, puffery, and/or protected forward-looking statements. MTD 20-22; Opp. 17.[4] Plaintiffs have thus waived any such challenges. *Humphrey*, 279 F.App'x at 331.

Plaintiffs also now concede that Lordstown repeatedly disclosed that its pre-orders were nonbinding. Opp. 3 ("[Lordstown's] SEC filings stated that 'pre-orders' were non-binding"); MTD 5-7, 14-15. The SAC claimed the Pre-Order Statements were false and misleading because Lordstown "did not have any pre-orders and instead had non-binding letters of intent" (¶287), but the Opposition abandons that argument. That leaves only Plaintiffs' challenge to statements containing pre-order totals, which Plaintiffs argue were misleading because (1) a handful of pre-orders were "fake" or "from businesses that could not place the touted orders," (2) Defendants at times said the pre-orders were "all" from fleets when some were from intermediaries, and (3) Defendants described the pre-orders as "serious" when (according to Plaintiffs) they were not. Opp. 7-15. None of these theories is adequately pleaded or sufficient to show falsity.

Under *Omnicare*, a statement is only false or misleading if it would have misled a "reasonable investor" reading it "fairly and in context." 575 U.S. at 190 (whether statement is false or misleading "always depends on context"); *Kolominsky v. Root, Inc.*, 667 F.Supp.3d 685, 710 (S.D. Ohio 2023), *aff'd*, 100 F.4th 675 (6th Cir. 2024) (similar). That context includes a broad swath of public materials, including "all [the] surrounding text, including hedges, disclaimers, and apparently conflicting information," other company disclosures, the "customs and practices of the relevant industry," and other public information. *Omnicare*, 575 U.S. at 186-91, 194. Thus,

---

[4] MTD 22-23. Plaintiffs' single-sentence assertion, in a footnote, that the Pre-Order forward-looking statements generally "were not accompanied by meaningful cautionary language and were known to be misleading when made" (Opp. 17 n.4), is too perfunctory to constitute an opposition. *Supra* n.1. Plaintiffs are also incorrect; the forward-looking statements were accompanied by meaningful cautionary language either with the statements themselves or similar contemporaneous statements, and no facts show any Defendant knew any statement to be false. MTD 22.

whether a statement was false or misleading is an objective inquiry focused on a "reasonable investor" who is assumed to be informed about that full context, including an understanding of the industry and the Company's prior public statements, and who incorporates all public information into their decision-making. *Id.*; *Sneed v. Talphera, Inc.*, 2025 WL 2406424, at *5 (9th Cir. Aug. 20, 2025) (reasonable investor "presumed to carefully scour all the fine print").

Here, a reasonable investor is assumed to have understood and factored in the following context when evaluating the Pre-Order Statements: (1) any customer could make a nonbinding pre-order through Lordstown's website or by submitting a nonbinding LOI (MTD 6-7); (2) Lordstown repeatedly disclosed that pre-orders were nonbinding and there was no guarantee that the Company or any particular customer would convert those pre-orders to sales (*id.* 5-6, 14-15; Opp. 3); (3) Lordstown used pre-orders to gauge demand and to plan for employees, factory tooling, and production at scale (MTD 6); (4) numerous competitors in the electric-vehicle industry also used nonbinding pre-orders in identical or similar ways (MTD 5 & n.12); (5) the widely-known fact, reflected in Lordstown's disclosures, that in the fleet sector of the automotive industry, commercial fleets often procure and service their vehicles through fleet management companies or other fleet intermediaries (*id.* 7 & n.14, 19 & nn.25-26); (6) Lordstown disclosed that it would target such intermediaries given their importance within the industry (*id.*); and (7) Lordstown received pre-orders "primarily," but not exclusively, from fleets (¶¶290, 317, 319, 329, 337, 345).

All this provides critical context for the Pre-Order Statements and defeats any suggestion that they were misleading. Plaintiffs' piecemeal attacks cannot show otherwise.

***Lordstown's Pre-Order Numbers Were Not "Inflated."*** Like the SAC, the Opposition targets a handful of customers Plaintiffs claim should not have been included in Lordstown's pre-order totals. Opp. 7-10. But no facts indicate that any particular pre-order was not legitimate or

show how counting these pre-orders misled investors regarding overall demand. MTD 16-20. As Lordstown repeatedly disclosed, and consistent with industry practice, nonbinding pre-orders were simply a means to estimate market demand and to plan for production. *Supra* 5; MTD 6. A reasonable investor would have understood that some pre-orders were "more solid than others" (¶358) and that the reported totals did not represent actual sales or guarantees of future sales.[5]

In this context, Plaintiffs' attacks on certain pre-order customers do not render any Pre-Order Statement false or misleading. As an initial matter, Plaintiffs do not legitimately dispute that Lordstown in fact received nonbinding pre-orders from these customers. For example, Plaintiffs do not dispute the fact of an LOI from E Squared, but instead argue it should not have been included in pre-order counts because the LOI originally was from Grid X and only later entered into by E Squared (as confirmed by E Squared's CEO, Tim Grosse, in a Dec. 24, 2020 press release). ¶¶183-186; Ex. 17; Opp. 8; MTD 18. But the fact that the LOI originated under a different entity name does not render its inclusion in the pre-order totals false. Plaintiffs also claim the E Squared LOI's inclusion was misleading because (1) in a couple off-the-cuff emails, Burns criticized E Squared's website and speculated regarding its "financial strength," and (2) the Hindenburg Report claimed E Squared was a DBA for Tim Grosse and had "only one other employee." ¶¶144, 185-186. But neither allegation establishes that the LOI was not legitimate; that any Defendant believed it was illegitimate; that it did not indicate demand; or that counting it among Lordstown's pre-orders was misleading. MTD 17-18. Plaintiffs do not sufficiently "explain why these [pre-]orders [were] invalid," nor do they detail what specific criteria was required for "includ[ing] such a [pre-]order" in Lordstown's pre-order totals, or how any such criteria—based on the "particular facts and circumstances"—was violated. *Plymouth Cnty. Ret. Ass'n v. ViewRay,*

---

[5] Indeed, Burns explicitly said as much in TV interviews. MTD 16 & n.21.

*Inc.*, 556 F.Supp.3d 772, 788 (N.D. Ohio 2021), *aff'd*, 2022 WL 3972478 (6th Cir. Sept. 1, 2022).

Similarly, Plaintiffs quibble with only ancillary aspects of other pre-orders. Opp. 8-9. For instance, Plaintiffs allege that the Innervations LOI was not a "purchase LOI," rather Innervations intended to "broker" Endurance trucks to its clients. *Id.*; ¶195. But that fact was fully disclosed to investors in Lordstown's announcement of the LOI (well before the class period).[6] In any event, expressions of interest from intermediaries are also meaningful indicators of demand in the fleet market—the point of pre-orders. *Supra* 5; MTD 6; ¶195. As for CW-2's vague claim that some unnamed "member of [the] sales team" told Burns the Innervations LOI was "sketchy," this is unsupported hearsay entitled to no weight. ¶449; MTD 27 n.42; *In re Diebold Sec. Litig.*, 2008 WL 3927467, at *6 (N.D. Ohio Aug. 22, 2008) (rejecting CW allegations based on "hearsay" or "rumor"). And even accepting this ill-pled account, including the LOI in Lordstown's pre-order totals would not have misled a reasonable investor about demand for the Endurance, given Lordstown's transparency about the nature of the LOI, and the context discussed above.[7]

Nor did Lordstown "invent[] the pre-orders" from Sacramento Clean Cities Coalition (SCCC) "out of thin air." Opp. 8. SCCC's letter, cited by Plaintiffs, expressly stated that SCCC was "aware of demand for 300-500" trucks and that "statewide demand is certainly more than ten times that number." MTD 18, Ex. 33. Indeed, SCCC later included the Endurance in its infrastructure vehicle list. MTD 18-19; Ex. 34. Likewise, Plaintiffs concede that the City of

---

[6] *See* ECF 76 n.7 (citing Mark Kane, "Lordstown Motors Reports New Order for 1,000 Endurance Pickups," InsideEVs (Apr. 7, 2020), https://web.archive.org/web/20200410164619/https://insideevs.com/news/408469/lordstown-loi-1000-endurance-pickups/ (Innervations LOI "to broker 1,000 [] Endurances to their clients to convert their [] fleets to electric vehicles") (incorporated by reference at ¶¶147,178, 449).

[7] This LOI for 1,000 trucks was also immaterial relative to pre-order totals: ~3.7% of the 27,000 pre-orders initially reported, and ~1% of the 100,000 reported later. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) (2% overstatement of assets immaterial as a matter of law).

Ravenna sent a letter to Lordstown expressing interest in purchasing the Endurance. ¶187. The Mayor's supposed post-facto statement to Plaintiffs' counsel that Ravenna could not have purchased 15 trucks at the time for budget reasons does not show the LOI was illegitimate, that any 10(b) Defendant knew it to be illegitimate, or render its inclusion in pre-order totals false or misleading.[8] As with E Squared, Plaintiffs fail to explain why these indications of interest were invalid or any other criteria that would require their exclusion from the reported pre-order totals.

In sum, none of Plaintiffs' attacks on these or other pre-order customers renders any Pre-Order Statement false or misleading, much less materially so.[9] There *was* significant demand for the Endurance, and no factual allegations suggest otherwise. *See ViewRay*, 556 F.Supp.3d at 787 (company's statements "tout[ing] its backlog" of orders not false or misleading in context).

***Defendants Did Not Misrepresent Demand from Fleets***. Plaintiffs also argue statements that Lordstown "primarily" received pre-orders from fleets, or that "all" pre-orders were from fleets, were false or misleading because many pre-orders came from fleet management companies or other fleet intermediaries. Opp. 11-12. This too ignores the full context in which these statements were made. A reasonable investor would have understood that: (1) fleet management companies and other intermediaries play a prominent role in the commercial fleet industry, with many fleet operators leasing, buying, and/or servicing their vehicles through intermediaries (MTD 7; Ex. 16); (2) Lordstown repeatedly explained this and disclosed that it was targeting fleet intermediaries (MTD 7; Exs. 5, 11, 14); (3) many pre-order customers were well-known to be fleet

---

[8] Even if Plaintiffs could somehow show it was misleading to include 15 trucks from the City of Ravenna in its pre-orders (they cannot), Plaintiffs still fail to plead that any overstatement was material: 15 trucks was less than .05% of reported pre-orders at all times. *Parnes*, 122 F.3d at 547.
[9] Moreover, Plaintiffs do not dispute—indeed, their own charts show—that Lordstown *under*reported its pre-order figures at all times, such that Plaintiffs cannot show how inclusion of any particular pre-order would have been materially false or misleading. MTD 20; *supra* nn.7-8.

management companies/intermediaries, and/or were explicitly described as such in Lordstown's press releases;[10] and (4) from the beginning of the class period, Lordstown disclosed that its pre-orders were "primarily," but not exclusively, from fleet customers (*see, e.g.,* ¶¶290, 317, 319, 329).

In this context, no reasonable investor would have understood statements that the Company received its pre-orders "primarily" or "all" from "fleets" as meaning only fleet end users and excluding fleet management companies or other intermediaries. *See* Opp. 11, 13; MTD 19-20. Nor, given how the industry works, would a reasonable investor have deemed LOIs with fleet management companies like Holman Enterprises as any less of a "big deal" (Opp. 14)—or less meaningful indicators of demand—than if Holman's customer had submitted an LOI directly.

This is not, as Plaintiffs would have it, a dispute over the "meaning of the term 'fleets'" or otherwise a "question of fact." Opp. 13.[11] The issue is a legal one: how a reasonable investor would have understood the Pre-Order Statements reading them "fairly and in context." *See supra* 4; *Dailey v. Medlock*, 551 F.App'x 841, 847-48 (6th Cir. 2014) (must consider industry context); *Tian v. Peloton Interactive, Inc.*, 2025 WL 510043, at *11 (E.D.N.Y. Feb. 14, 2025) (no reasonable investor could have been misled by term given industry context); *Toussaint v. Care.com Inc.*, 490 F.Supp.3d 341, 348-49 (D. Mass. 2020) (similar); MTD 15; RJN 2. Fairly read in context, none of the fleet-related Pre-Order Statements could have misled a reasonable investor. *Supra* 5.

---

[10] MTD 7; Exs. 15, 19-26; *supra* nn.5 & 9; Auto Channel, "Clean Fuels Ohio Signs Letter of Intent to Drive Purchase of 500 Fully-Electric Pickup Trucks from Lordstown Motors," (Mar. 18, 2020), https://www.theautochannel.com/news/2020/03/18/806147-lordstown-motors-press-release-clean-fuels-ohio-signs-letter-intent.html (Clean Fuels Ohio LOI "to help deploy" 500 Endurance) (incorporated by reference at ¶¶28, 150-151, 159, 203-205, 209, 493).

[11] Nor does Defendants' argument "depend[] on facts that fall outside the four corners of the complaint." Opp. 13. Rather, these are documents incorporated by reference in the SAC that show Lordstown explicitly disclosed that commercial fleets often procure vehicles through fleet intermediaries, and that it was targeting such intermediaries to secure nonbinding pre-orders. MTD 7; RJN 3; Exs. 5 & 11. Plaintiffs cannot avoid consideration of this critical context, under *Omnicare*, by leaving it out of their complaint. 575 U.S. at 190.

Plaintiffs' ancillary arguments are equally unavailing. The Special Committee's vague finding that there were "issues regarding the accuracy of certain [unspecified] statements" about pre-orders, cannot establish that any particular statement was materially false or misleading under the securities laws, and it does not distinguish between fleet end-users and intermediaries (Opp.14, 30). To the contrary, the Committee concluded that Lordstown "has obtained tens of thousands of pre-orders from fleets, fleet management companies, or other end users"—treating both end users and intermediaries as important indicators of demand. Ex. 12 at 02. As for "untested assertions made by [the SEC]" in a non-fraud settlement with Lordstown, those are "not binding on this Court" nor are they persuasive, particularly since the settlement did not involve §10(b) claims and was not subject to the Reform Act's heightened pleading standards. *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *19 n.11 (S.D.N.Y. June 10, 2010) (collecting cases); Opp. 12.

***Defendants Did Not Mislead Investors as to the "Seriousness" of the Pre-Orders***. Plaintiffs' arguments regarding off-the-cuff comments describing nonbinding pre-orders as "orders," "pre-sales," "sold," "firm," "serious," "sticky," or "basically binding"—and statements ascribing a value to the pre-order book—fail for similar reasons. Opp. 15-16. Reasonable investors understand that oral, unscripted statements are "less precise than written ones" and may contain "off-the-cuff judgments" that, for purposes of the securities laws, "do not affect the mix of more detailed information upon which a reasonable investor relies." *In re Supreme Indus., Inc. Sec. Litig.*, 2018 WL 2364931, at *12 (N.D. Ind. May 23, 2018); MTD 15. Moreover, Burns explained on several occasions why he believed the nonbinding pre-orders were still "serious" and "sticky":

> [I]f a company [] orders 600 preorders, that is signed by the CEO of that company all likelihood or at least some C-suite person. They take it very seriously. They've got to figure out how they're going to layer these electrics in there. And the appetite for them to do that way early like that, a year out from some of them means they're trying to do their part to ensure this comes to market. So they're standing behind it and they're putting these pre-orders in. . . . I'd say it's much stickier than a

10

consumer putting a hundred dollars [] refundable down on a Cybertruck[.] And I think these orders are very, very sticky because I know what it takes to get them, the education you have to do. This isn't somebody again on a website, a hundred bucks, refundable with a credit card. This is a fleet. And fleets generally take their business very, very seriously. So I think they're very sticky. (¶357; *see also* ¶339).

The securities laws do not require a speaker to repeat all caveats every time she speaks, and no reasonable investor would have evaluated these one-off statements in a vacuum. MTD 16. Given the full context in which these statements were made, a reasonable investor would have understood at all times that Lordstown's pre-orders were nonbinding and that there was no guarantee that all or even most of the pre-orders would be fulfilled.[12] *See Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1163 (10th Cir. 2018) ("reasonable investor" understood risk of agreed transaction not being consummated despite descriptions of it as "done," "completed," and "finished"). Moreover, Plaintiffs do not challenge that descriptions of Lordstown's pre-orders as "serious," "firm," "sticky," or "basically binding" are all statements of opinion under *Omnicare*. MTD 20-21. Plaintiffs fail to plead any facts showing that Defendants did not genuinely believe these characterizations,[13] or any particular omitted facts that rendered the challenged statements misleading in context. MTD 21.

### 3. The Production Statements Were Not False or Misleading

Plaintiffs also fail to plead particularized facts showing how any of the challenged

---

[12] That Jim Cramer (a TV personality known for hyperbole) later claimed to have believed pre-orders were actual "orders" cannot show how a reasonable investor would have understood Burns' statements in context. Opp. 16. Contemporaneous statements in Burns's Nov. 17, 2020 *MadMoney* interview explicitly stated the "very serious orders" Burns referenced were nonbinding pre-orders. *See* CNBC, "Lordstown Motors CEO on early EV fleet orders, reviving GM plant and hiring" *MadMoney* (Nov. 17, 2020), https://www.cnbc.com/video/2020/11/17/lordstown-motors-ceo-early-ev-fleet-orders-reviving-gm-plant-and-hiring.html (Cramer stating Lordstown claims "50,000 nonbinding reservations" (00:45); screen banner referencing "about 50,000 nonbinding production reservations" (01:40); same at beginning of discussion re "seriousness of orders" (2:58)) (incorporated by reference at ¶¶14, 126, 339).

[13] Indeed, Lordstown invested extensively in tooling and equipment based on Defendants' genuine belief that the pre-orders showed strong demand. *See* ¶¶ 357, 363; Ex. 14, at 18; Ex. 29, at 04-05.

statements concerning Lordstown's anticipated production timeline or capital requirements ("Production Statements") were false or misleading at the time. Plaintiffs challenge these statements on two grounds, arguing: (1) certain of the statements are not statements of opinion or protected forward-looking statements; and (2) even if they are, the SAC's allegations demonstrate that Defendants knew the Sept. 2021 production timeline was "obviously unattainable," rendering the Production Statements false or misleading. Opp. 19-22. Neither argument has merit.

*The Production Statements Were True Statements of Opinion and Protected Forward-Looking Statements*. Each of the Production Statements expressed the 10(b) Defendants' subjective beliefs, at particular moments in time, as to when, in the future, Lordstown would likely start production, and whether it would need additional cash to do so. MTD 23. Indeed, many of the statements are explicitly couched in terms of *projected*, *anticipated*, or *expected* future developments—clearly forward-looking expressions of the speakers' subjective judgments and beliefs. *Id.*; *Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F.App'x 237, 243 (6th Cir. 2015) ("predictions," "projections," and "expectations" about future events are forward-looking).

Plaintiffs do not seriously dispute that the Production Statements are statements of opinion. Instead, Plaintiffs nakedly assert that four statements were "ordinary factual assertions." Opp. 21. They were not. For instance, Plaintiffs argue Burns's Oct. 26, 2020 statements conveyed that production and deliveries starting in Sept. 2021 were "assured," and that the merger funding was sufficient to achieve this goal. *Id.* (citing ¶¶388, 390, 392). But the full text shows Burns was merely expressing the Company's subjective judgment that the funding would enable it to achieve production by Sept. 2021—projections about the future. *Id.* The same is true of Hamamoto's Aug. 3, 2020 statement that the funding "will fully fund Lordstown's current business plan" (¶380); and in any case, the Defendants did not "make" this statement and cannot be liable for it. *Supra* 2-3.

12

Nor do Plaintiffs seriously dispute that the Production Statements were forward-looking. Opp. 21-22.[14] Instead, Plaintiffs argue that they "were nearly all made without cautionary language." *Id.* at 22 (citing ¶¶386, 390, 398, 410). Not so: the vast majority of the forward-looking Production Statements were accompanied by meaningful cautionary language, as detailed in the Motion. MTD 8, 23 nn.35, 36 (citing ¶¶376, 378, 380, 382, 388, 394, 396, 402, 404, 406, 412). Plaintiffs baldly assert that this "does nothing to satisfy Defendants' obligation to warn investors of risk."[15] Opp. 22. But this is disingenuous at best, given that Lordstown clearly and repeatedly warned investors of the risks to its production timeline and capital needs. MTD 8, 23. Moreover, even if a forward-looking statement is not accompanied by meaningful cautionary language, it still falls within the safe harbor's protection if it was made without actual knowledge of falsity—i.e., the Defendant genuinely believed it. MTD 22. That is the case here, as detailed *infra*. MTD 22-29.

***The 10(b) Defendants Genuinely Believed the Production Statements and No Facts Suggest Otherwise.*** Plaintiffs fail to plead any facts showing that any 10(b) Defendant did not believe the Sept. 2021 timeline was achievable (and that funding was sufficient) when they made the Production Statements. As a result, the Production Statements are protected under the "no actual knowledge" prong of the Reform Act's safe harbor, and Plaintiffs also cannot plead that these opinion statements were false or misleading under *Omnicare*. MTD 22.

Confronted with these pleading deficiencies, Plaintiffs point to several innocuous facts,

---

[14] Plaintiffs' bare assertion that the safe harbor "does not apply to statements Burns made before the merger" is both wrong and too conclusory to constitute an opposition. MTD 22-23; *supra* n.1.

[15] Plaintiffs do not address Defendants' argument that Item 105 cannot provide a basis for §10(b) liability, and have thus waived any such claim. MTD 27-28; *supra* n.1. Regardless, the Supreme Court's decision in *Macquarie Infrast. Corp. v. Moab Partners*, 601 U.S. 257, 260 (2024), clarifies that an Item 105 violation cannot ground a §10(b) claim. MTD 28 n.43; *In re Vroom, Inc. Sec. Litig.*, 2025 WL 862125, at *39 n.9 (S.D.N.Y. Mar. 18, 2025); *City Pension Fund for Firefighters & Police Off. in Tampa Bay v. Generac Holdings Inc.*, 765 F.Supp.3d 775, 797 n.4 (E.D. Wis. 2025).

none of which shows knowledge of falsity. First, Plaintiffs claim McKinsey "warned" Lordstown it could not begin production by Sept. 2021, pointing to a single slide from a July 2020 presentation—over a year before the anticipated start date. Opp. 19. But that slide simply presented three alternative production-timeline scenarios; it did not "warn" that Lordstown's timeline was unachievable. MTD 24-25. Even if it had, that would not establish that any 10(b) Defendant *believed* the Sept. 2021 timeline was unachievable when they made the Production Statements months later. *Id.*[16] And the fact that General Motors and DPHC invested significant capital in Lordstown around the time of the merger, fully aware of McKinsey's analysis and Lordstown's timeline, suggests they, like Defendants, saw that timeline as achievable. *Id.* 4-5.

Next, Plaintiffs point to internal emails from fall 2020 discussing certain issues with GM parts, but these cannot show the timeline was doomed or that Defendants believed it to be so. Lordstown, like any other manufacturer setting up a new supply chain, had to iron out numerous procurement issues in the months leading up to production. The fact that certain 10(b) Defendants and others expressed temporary concerns about discrete sourcing issues during that process does not establish that any 10(b) Defendant believed Lordstown could not correct those issues, or that the Sept. 2021 timeline was unachievable. MTD 25. Plaintiffs' only response is the conclusory assertion that the "issues were far more serious than that," citing a description of GM supply issues in the SEC's settlement with Lordstown. Opp. 20. Neither Plaintiffs' conclusory assertion nor the SEC's untested findings are entitled to any weight here, and in any case they say nothing about what any Defendant believed when making the Production Statements. MTD 34-35.[17]

---

[16] This remains true even if, months before the class period, Mr. Rodriguez expressed in a one-off email that an "8 months delay [McKinsey] predict[s] sounds reasonable." ¶490.

[17] The SEC's settlement findings also were made in the different context of its non-fraud claims, and are not probative of whether the Production Statements are adequately pleaded as false under the heightened pleading standards that govern this case. *Supra* 10; Opp. 21 n.7.

Allegations from CW-3 and an anonymous "expert" are equally unavailing. CW-3 was an "administrative assistant" to a "third-party contractor" and is not alleged to have had contact with any 10(b) Defendant; he was not in a position to know either the status of Lordstown's production or what any 10(b) Defendant knew or believed about the production timeline at any time. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009) (rejecting allegations from CWs who did not interact with defendants).[18] Plaintiffs' anonymous "expert" likewise cannot be credited because the SAC fails to plead any of the necessary details regarding this purported expert's "qualifications," "unspecified analysis," or the "data upon which [he] relied"—rendering all of his allegations "inadequate under the [Reform Act's] heightened pleading standard." *In re Textainer P'ship Sec. Litig.*, 2007 WL 108320, at *5 (N.D. Cal. Jan. 10, 2007). Moreover, he does not "claim to have any experience with or knowledge of [Lordstown] or [the Endurance]" specifically—or any 10(b) Defendant—rendering his allegations not "probative of falsity." *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *10 (N.D. Cal. Sept. 29, 2021).

As for Defendants' other arguments, Plaintiffs have no answer. The Opposition does not contest that Hindenburg's allegations concerning production (e.g., that a prototype caught fire, that by March 2021 Lordstown had not completed certain testing and validation) were consistent with Lordstown "remaining on track" for a Sept. 2021 start date. Nor do Plaintiffs dispute that Lordstown had already started building Beta Endurances in Apr. 2021, completed crash testing by June 2021, and that Lordstown's new management and the Special Committee both confirmed the Sept. 2021 timeline—indicating the production timeline was on track (and Defendants genuinely believed it to be so). MTD 26-27.

---

[18] *In re Huffy Corp. Sec. Litig.*, 577 F.Supp.2d 968 (S.D. Ohio 2008), is inapposite because the CWs worked at the defendant company and "had sufficient contact with [its] management decision making and the Defendants." *Id.* at 993, 1000 n.32, 1012.

15

Because "Plaintiffs do not identify particularized facts showing that any Defendant was in possession of information contradicting these opinions, or that the speakers did not genuinely hold such opinions," (*Porter*, 2025 WL 2393087, at *23), Plaintiffs have failed to plead that any Production Statement was false or misleading or falls outside of the safe harbor's protection.

## B.  Plaintiffs Fail to Plead a Strong Inference of Scienter as to Any Defendant

The Reform Act requires Plaintiffs to "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind." *Supra* 1-2. "A scienter inference is 'strong' only if it is 'cogent' and 'at least as compelling as any opposing inference.'" *Id.* Thus, "[s]cienter is the most difficult element to plead under the [Reform Act]." *Louisiana Sch. Employees' Ret. Sys. v. E&Y, LLP*, 2008 WL 11412015, at *6 (W.D. Tenn. Aug. 14, 2008). Here, Plaintiffs claim the 10(b) Defendants had "motive to commit fraud" and that they knowingly or recklessly made the challenged statements. Opp. 23-36. Both theories fail.

### 1.  Plaintiffs Fail to Plead Motive.

"Motive and opportunity" allegations alone cannot "satisfy the scienter requirement of a [§]10(b) action." *Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 848 (6th Cir. 2007). The absence of motive, in contrast, undermines scienter. *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F.Supp.2d 811, 835 (W.D. Mich. 2012). Plaintiffs' only two asserted motives—that Lordstown "desperately needed capital," and Schmidt, Rodriguez, Brown, and Post sold stock during the class period (Opp. 31-34)—fail for multiple reasons.

It is well established that the "desire to raise capital is insufficient to demonstrate scienter," (*Sarafin v. BioMimetic Therapeutics, Inc.*, 2013 WL 139521, at *17 (M.D. Tenn. Jan. 10, 2013); MTD 31), even where, as here, Plaintiffs allege that the company "desperately needed capital" or wanted to stave off "insolvency." Opp. 32-33; *Ricker v. Zoo Ent., Inc.*, 2012 WL 3070717, at *4 (S.D. Ohio July 30, 2012) (rejecting motive that defendants "desperately needed capital"), *aff'd*,

16

534 F.App'x 495 (6th Cir. 2013); *Saraf v. Ebix, Inc.*, 2023 WL 4561655, at *6 (S.D.N.Y. July 17, 2023) (motive to prevent "insolvency" through IPO "do[es] not support an inference of scienter").[19] The mere fact that Lordstown, like most startups, needed to raise capital to fund operations, is insufficient to suggest scienter. Likewise, Plaintiffs' allegation that raising funds was "critical" to Defendants maintaining their jobs (Opp. 32) is also insufficient to plead motive.[20]

Nor do Plaintiffs' stock-sale allegations provide a motive, as none occurred "at a suspicious time or in an unusual amount." *Konkol*, 590 F.3d at 399. Plaintiffs do not dispute that Burns and Flannery sold no stock during the class period, retaining their substantial holdings; Plaintiffs only argue that Burns's sales *months after* the class period suggest scienter because he "needed to cash out." Opp. 33-34. But Plaintiffs cite no legal authority for this proposition, and it makes no sense: how could sales after the alleged artificial inflation dissipated from the stock price suggest a motive to have created that artificial inflation? The more plausible, nonculpable inference is that Burns sold his shares because the lockup expired and he had left the Company. *See Indiana Elec. Workers' Pens. Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 543 (5th Cir. 2008) (sales after lockup not unusual or suspicious); *Beaver Cnty. Ret. Bd. v. LCA-Vision Inc.*, 2009 WL 806714, at *24 (S.D. Ohio Mar. 25, 2009) (sales after departure create nonculpable inference).

As for other defendants, Plaintiffs do not dispute that 10(b) Defendants Schmidt and Rodriguez, and 20(a) Defendants Brown and Post, retained the bulk of their holdings during the class period, which cuts against scienter. MTD 30-31; Opp. 33. Moreover, the SAC "offers no information about the Defendants' [other] stock transactions" that would enable the Court to

---

[19] The SAC does not plead any "particular link" between avoiding insolvency and any "specific payment" to any 10(b) Defendant. *ViewRay*, 556 F.Supp.3d at 799; Opp. 32-33.

[20] *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971 (6th Cir. 2018) is not contrary. *Id.* at 981-82 ("allegations of 'an executive's desire to protect his position . . . or increase his compensation' do not comprise a motive for fraud"); Opp. 32.

"assess[] whether Defendants' sales were unusual," which is reason enough to reject the allegations. *Diebold*, 2008 WL 3927467, at \*9. Instead, Plaintiffs primarily argue that the timing of these sales was "suspicious." Opp. 33. That is incorrect. Schmidt, Rodriguez, Brown, and Post did not sell stock within "days" of the Jan. 13, 2021 prototype fire "but rather several weeks later," which cuts against an inference of scienter. *Beaver*, 2009 WL 806714, at \*24. And Plaintiffs' allegation that they sold stock while knowing "the true nature of Lordstown's pre-orders and production timeline" amounts to nothing more than a generic claim that they "sold during the class period," which does not demonstrate suspicious timing. *Diebold*, 2008 WL 3927467, at \*9.

### 2. *Plaintiffs' Circumstantial Evidence of Scienter Is Equally Weak*.

In the Sixth Circuit, simple recklessness is not enough: Plaintiffs must plead particularized facts creating a strong inference that each Defendant made each statement with intent to defraud or recklessness so severe it is "akin to conscious disregard" or actual intent. *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 526 (6th Cir. 2023); MTD 29. The SAC fails to clear this high bar.

***Pre-Order Statements***. Plaintiffs' recklessness theory boils down to the following: (1) Burns and Flannery were personally involved in the pre-order process (Opp. 29-31); (2) Lordstown used pre-orders to "driv[e] investment" and they were "essential to the Company's success" (*id.* 24, 35); and (3) Defendants allegedly had "access to information" showing "Lordstown's pre-order numbers were bogus," that they "were not attributable to fleet customers," that LOIs and pre-orders are different, and that pre-orders were "not a 'binding commitment'" (*id.* 24-25). None of these is sufficiently pleaded or supports a strong inference as to any 10(b) Defendant.

Burns' and Flannery's involvement in the pre-order process does not suggest scienter.[21] As

---

[21] The Opposition drops all allegations that Rodriguez and Schmidt were personally involved in

the CEO and SVP of Business Development, respectively, for a young startup, both had to gauge market demand not only to estimate potential sales, but also to plan for production. "[T]he fact that [they were] intimately familiar with a core component of their business does little to suggest fraudulent intent." *ServiceMaster*, 83 F.4th at 531. Similarly, that Defendants allegedly may have used pre-orders to "drive investment" is a goal "virtually all corporate insiders share" and does not suggest bad faith. *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 754 (4th Cir. 2021); MTD 31. As detailed *supra* 5-8, no factual pleadings show that any particular pre-order was "bogus," much less that any Defendant knew or believed it to be so. Neither Burns' one-off comments about E Squared's website and financial strength, nor CW-2's hearsay allegation that the Innervations LOI was "sketchy," demonstrate that including them in the pre-order totals amounted to severe recklessness. Opp. 24, 27-28; *ServiceMaster*, 83 F.4th at 531. And even assuming some LOIs were "more solid than others," this does not suggest Defendants knew any were illegitimate. *Supra* 5-6.

By contrast, Plaintiffs' cases all involved strong, particularized evidence showing the defendants knew their statements were false. In *Dougherty*, 905 F.3d at 981, the FDA explicitly told defendants they would need to complete certain clinical trials and could not use a particular "endpoint," and then issued a press release stating the exact opposite. Likewise, in *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802 (6th Cir. 2022), particularized facts showed the CEO was "intimately aware" of severe internal problems and then made directly contradictory disclosures about the company's business. *See also Mosaic Fin. Ltd. v. Mut. S'holder Servs., LLC*, 767 F.Supp.3d 619 (N.D. Ohio 2025) (similar). No such strong, particularized evidence of actual knowledge of falsity is pled here. No 10(b) Defendant is alleged to have had "intimate aware[ness]" of the intentions, operations, or financial strength of the challenged pre-order

_____

the pre-order process, and any such argument is waived. Opp. 29-31; *supra* n.1.

19

*customers*, or any "obvious red flags" that Defendants knew or recklessly disregarded when making the Pre-Order Statements. *ServiceMaster*, 83 F.4th at 531. And even if Defendants "could have done more to verify" the strength of certain pre-orders, that cannot establish scienter under the Reform Act. *Id.*; Opp. 35-36 (accusing Defendants of not "inquiring further").

Finally, that certain Defendants may have had access to excel spreadsheets cataloguing LOIs and pre-orders secured through Lordstown's website;[22] were aware that some pre-orders were with fleet intermediaries rather than fleet end users; and/or knew that pre-orders were nonbinding, cannot establish a strong inference of scienter. Opp. 25-31. Lordstown repeatedly disclosed this information, or this information was otherwise well-known, throughout the class period (*supra* 5), which cuts against scienter. *See Newtyn Partners LP v. All. Data Sys. Corp.*, 2025 WL 872967, at *19 (S.D. Ohio Mar. 20, 2025) ("publicly disclosed facts" about transaction undermined inference of scienter); *Porter*, 2025 WL 2393087, at *37 (similar).[23]

Because the 10(b) Defendants are not alleged to have been "intimately aware" of any particular facts "flatly contradict[ing]" their Pre-Order Statements, Plaintiffs' circumstantial evidence cannot raise a strong inference of scienter. *ServiceMaster*, 83 F.4th at 530-31.

***Production Statements***. The same is true for the Production Statements. The sum total of Plaintiffs' argument here is a single paragraph referencing the McKinsey Report and GM supply issues. Opp. 29. Neither shows that the Sept. 2021 production timeline was unachievable at any point in time; that any Defendant knew or believed it was unachievable; or that any Defendant

---

[22] Nor does this distinction matter, given Lordstown disclosed that all "pre-orders" (including LOIs) were "nonbinding." *Supra* 4-5; *see also* Investopedia, https://www.investopedia.com/terms/l/letterofintent.asp (LOIs "are almost universally intended to be non-binding").

[23] Given the numerous disclosures before and during the class period that pre-orders were nonbinding, Burns's statement that "we've never said we had orders" is entirely correct. Opp. 34.

made any Production Statement intending to deceive investors. MTD 32-33; *supra* 12-16. Simply put, a single McKinsey slide from July 2020, and discrete GM supply issues in the fall of 2020, do not constitute red flags so obvious that the 10(b) Defendants must have made the Production Statements knowing they were false and intending to deceive investors. *Supra* 14. The stronger and more compelling inference is that Defendants truly believed Lordstown could start production by Sept. 2021, given that it had received a near-production ready plant from GM months before the class period; received large capital investments through the merger, GM, and other institutional investors; and worked aggressively to address the GM supply issues when they arose. Indeed, the Company was able to build "Beta" Endurances and complete crash testing in the spring of 2021, thanks to the measures it took to address the supply chain issues posed by the COVID pandemic. Exs. 11 (3/25/21 PR), 45 (3/17/21 PR) (discussing COVID supply chain issues and mitigating measures). And when it later became clear the timeline would be delayed due to COVID-related supply chain issues, the Company promptly disclosed that fact to investors, further cutting against scienter. MTD 9. All this suggests good faith.

***Plaintiffs' Additional Arguments Fail***. Finally, Plaintiffs raise three generalized scienter arguments, none of which moves the needle. The mere commencement of an SEC investigation cannot support an inference of scienter. MTD 34; *ServiceMaster*, 83 F.4th at 530; Opp. 31. Nor do entirely unrelated litigations, SEC filings, "utility bills," or allegedly unpaid "taxes" show anything about the 10(b) Defendants' mindset with respect to the challenged statements. MTD 34-35; Opp. 35. Likewise, that 10(b) Defendants spoke "specifically" about pre-orders and production cannot support an inference of scienter, as the Court may not "divine scienter from the mere (assumed) falsity" of the challenged statements. *Hubiack v. Li-Cycle Holdings Corp.*, 2024 WL 2943959, at *10 (S.D.N.Y. June 10, 2024); Opp. 35. Finally, resignations cannot support scienter absent

suspicious circumstances not pled here. The SAC alleges only that Hamamoto said Burns's resignation "was best for Lordstown" based on "several" unspecified "factors" (no mention of Rodriguez). MTD 34. And merely resigning after commencement of a government investigation cannot support scienter because executives routinely leave in those circumstances to improve the company's optics. *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 989240, at \*34 (W.D. Tenn. Mar. 31, 2022). The most reasonable inference is that Burns and Rodriguez resigned because Lordstown was transitioning to a new stage, and the Board believed their resignations would be well-received by investors. MTD 34. No facts suggest otherwise.

## C.      Plaintiffs Cannot Plead Loss Causation

Plaintiffs' §10(b) claim also fails because the Hindenburg Report offered only speculation and repackaged public information, which cannot establish loss causation. MTD 35-36; *Indiana State Dist. Council of Laborers & Hod Carriers Pens. & Welf. Fund v. Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009) ("speculation" insufficient for loss causation). The fact that pre-orders were nonbinding was repeatedly disclosed both before and during the class period. *See* ¶¶154-158; *supra* 5. Moreover, Hindenburg merely speculated that certain pre-orders were illegitimate based on publicly available information. *See, e.g.*, ¶146 ("Grid X *does not appear* to own any fleet trucks according to [DOT] records" and Grid X's "website"); ¶¶147, 151, 152 (public information regarding LOIs from Innervations, Momentum, and First Energy). And Hindenburg's production allegations are nothing more than innuendo concerning a potential *risk* that Lordstown might not achieve its Sept. 2021 timeline. *In re Almost Fam., Inc. Sec. Litig.*, 2012 WL 443461, at \*12 (W.D. Ky. Feb. 10, 2012) ("risk" or "rumor[s] of wrongdoing" insufficient for loss causation); ¶¶211-216. In sum, Hindenburg did not identify any "new" facts that revealed the allegedly hidden truth.

Likewise, the SEC and DOJ inquiries, and the Special Committee's report, cannot establish loss causation because they concerned the same allegations in the Hindenburg Report. MTD 36;

22

Opp. 37-38. Moreover, the mere announcement of a government investigation, without a determination of wrongdoing, "cannot qualify as a corrective disclosure." *See Sapssov v. Health Mgmt. Assocs.*, 608 F.App'x. 855, 863 (11th Cir. 2015); *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014). That the Company disclosed late in the class period that it was on track for "limited production" in Sept. 2021, and that it "may need significant capital," did not, in hindsight, reveal that any earlier Production Statement was fraudulent. *In re DVI, Inc. Sec. Litig.*, 2013 WL 56083, at *7 (E.D. Pa. Jan. 4, 2013). And given the stock price went up after the Company's May 24, 2021 announcement, loss causation cannot be attributed to that disclosure. *See Huey v. Anavex Life Scis. Corp.*, 2025 WL 1707581, at *7 (S.D.N.Y. June 18, 2025).

### D.      Plaintiffs Fail to Plead Reliance on the Pre-Merger Statements

Plaintiffs concede that the Pre-Merger Statements cannot ground their §10(b) claims. *Supra* n.1. Regardless, reliance is not a "premature fact-based argument." Opp. 38; *see, e.g., Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568 (7th Cir. 2009) (affirming dismissal; "inference of reliance" was "implausible"); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F.Supp.3d 1213 (C.D. Cal. 2015) (dismissing; "market [was] not efficient"). Plaintiffs fail to plead facts showing the (pre-merger) market for DPHC stock was efficient generally *or* that it was efficient with respect to Lordstown, and thus cannot invoke the fraud-on-the-market presumption. MTD 36-37; *In re FirstEnergy Corp. Sec. Litig.*, 2025 WL 2331754 (6th Cir. Aug. 13, 2025). And because the SAC primarily alleges affirmative misstatements, not omissions, *Affiliated Ute* does not apply. *Id.*

### E.      Plaintiffs Fail to Plead a Scheme Liability Claim

Nowhere in the Opposition do Plaintiffs mention the term "scheme" or address Defendants' scheme liability arguments. MTD 37-38. Plaintiffs have thus abandoned any scheme liability claim. *Supra* n.1. In any event, Plaintiffs' scheme claim fails for the same reasons as their Rule 10b-5(b) misrepresentation claim, including failure to plead a deceptive act, scienter, or loss

causation. MTD 37-38. Moreover, Plaintiffs' claims exclusively concern Defendants' challenged statements—not any other allegedly deceptive conduct—making a scheme claim inappropriate. *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 5236833, at *5-7 (W.D. Tenn. Oct. 5, 2022) (dismissing scheme claim on this basis).

## II.    Plaintiffs Fail to Plead a §20(a) Control Person Claim

Plaintiffs' §20(a) claims fail because they have not sufficiently alleged either a §10(b) violation or "control" by the 20(a) Defendants. MTD 38-39. Plaintiffs' only response is the conclusory assertion that "as high-level executives … Defendants possessed the power to direct or cause the direction of management of Lordstown and culpably participated in [its] wrongdoing." Opp. 39. This is insufficient as a matter of law. Section 20(a), like §10(b), is subject to Rule 9(b)'s heightened pleading requirements. *Bondali v. Yum!Brands, Inc.*, 620 F.App'x 483, 488–89 (6th Cir. 2015). Here, there are no factual allegations that the 20(a) Defendants had "the practical ability to direct the actions of the" primary violator, or that they "induced the fraud." MTD 38; *Diebold*, 2008 WL 3927467, at *11 (cannot plead §20(a) liability "by virtue of [defendants'] positions").

## III.    Plaintiffs Fail to Plead a §14(a) Claim

Plaintiffs do not meaningfully dispute that the SAC fails to plead falsity, a strong inference of negligence, or loss causation with respect their §14(a) claim. MTD 39-40. The Opposition offers just two, conclusory responses: that the statements are "actionable without regard to whether [they] were made with scienter," and that *Janus* does not apply to §14(a) claims. Opp. 39. Both miss the point. The MTD detailed the SAC's failure to plead *negligence* with particularity; Plaintiffs' argument regarding *scienter* is non-responsive. And whether or not *Janus* applies to 14(a) claims,[24] Plaintiffs "fail[] to articulate just how Defendants were involved in the preparation or

---

[24] Some courts have applied *Janus* to securities provisions beyond §10(b). *See SEC v. Kelly*, 817 F.Supp.2d 340, 345 (S.D.N.Y. 2011).

dissemination of proxy statements at all." *City of Pontiac Police & Fire Ret. Sys. v. Jamison*, 2022 WL 884618, at \*19 & n.22 (M.D. Tenn. Mar. 24, 2022).

## IV.     Plaintiffs Fail to Plead a §20A Insider Trading Claim

Without a predicate Exchange Act violation by 20A Defendants Rodriguez, Schmidt, Brown, or Post, Plaintiffs' §20A claim must fail (indeed, Brown and Post are not even named as defendants in any Exchange Act claim). MTD 40. Regardless, Plaintiffs fail to adequately plead that the 20A Defendants' stock sales were "on the basis of, and because of" material non-public information ("MNPI"). *Id.*; *Irwin ex rel. Omnicare, Inc. v. Gemunder*, 2006 WL 3366180, at \*2– 3 (E.D. Ky. Nov. 20, 2006). Instead, Plaintiffs make three legally deficient assertions: that (1) information about Lordstown's pre-orders and production is not immaterial; (2) the 20A Defendants possessed a July 2020 email discussing McKinsey, and an Aug. 2020 spreadsheet and Dec. 2020 email cataloguing pre-orders when they sold stock; and (3) Lordstown's disclosures that pre-orders were "non-binding" do not negate the nonpublic nature of the spreadsheet and email. Opp. 39-40. None of this has merit. It defies logic that the 20A Defendants sold stock in *Feb. 2021* on the basis of a spreadsheet and emails they received months earlier.[25] Plaintiffs fail to allege any material nonpublic content to the pre-order spreadsheet or email: that they "catalogued all Endurance pre-orders" (Opp. 40) does not suggest that information differed from what was publicly known. *See In re IAC/InterActiveCorp Sec. Litig.*, 478 F.Supp.2d 574, 605 (S.D.N.Y. 2007) (no insider trading in light of previous disclosures). Accordingly, Plaintiffs have failed to show that the 20A Defendants sold stock "on the basis of, and because of" MNPI.

## CONCLUSION

Defendants respectfully ask the Court to dismiss the SAC in its entirety with prejudice.

---

[25] Plaintiffs also fail to plead any other facts or context from which the Court might assess whether the stock sales were unusual or suspicious in timing or amount. *Supra* 17-18.

Dated:  September 5, 2025                        Respectfully submitted,


                                                 _s/ Douglas W. Greene_____
                                                 **BAKER & HOSTETLER LLP**
                                                 Douglas W. Greene
                                                 Zachary R. Taylor
                                                 Email:   dgreene@bakerlaw.com
                                                          ztaylor@bakerlaw.com
                                                 45 Rockefeller Plaza, 14th Floor
                                                 New York, NY  10111
                                                 Telephone:   212.589.4200
                                                 Facsimile:    212.589.4201

                                                 Douglas L. Shively
                                                 Email: dshively@bakerlaw.com
                                                 Key Tower, 127 Public Square, Suite 2000
                                                 Cleveland, OH 44114
                                                 Telephone: 216.621.0200
                                                 Facsimile: 216.696.0740

                                                 *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically on September 5, 2025. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Douglas W. Greene*
Douglas W. Greene

*An Attorney for the Defendants*
